# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

RAMONA TROMBLEY, BRIAN WELLS, and JEFF DOEHNER, individually and on behalf of themselves and all others similarly situated,

                    Plaintiffs,

      v.

NATIONAL CITY BANK AND JOHN DOES 1-50,

                    Defendants

Case No. _____

(JURY TRIAL DEMANDED)

## PLAINTIFFS' CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Ramona Trombley, Brian Wells, and Jeff Doehner, ("Plaintiffs"), on behalf of themselves and all persons similarly situated, by and through their attorneys, allege as follows.

## INTRODUCTION

1.      This is a civil action brought on behalf of Plaintiffs, individually, and on behalf of other similarly situated consumers relating to the unlawful practices of Defendant National City Bank (formerly independent but now controlled by PNC Financial Services Group, Inc.) (collectively "National City Bank" or "the Bank" or "Defendant").

2.      Plaintiffs allege that the Bank:

    a. Charges Overdraft Fees or Insufficient Fund Fees (collectively, "Overdraft Fees") when in fact the customer has never overdrawn his/her checking account;

    b. Fails to properly disclose its overdraft policies;

    c. Charges Overdraft Fees when it never had to pay out more funds than were in the customer's checking account;

    d. Provides false and misleading account balance information on the Bank's website and at the point of sale;

    e. Violates Regulation E, including 12 C.F.R. §205.7 and 12 C.F.R. §205.9, and the Electronic Funds Transfer Act, including 15 U.S.C. §1693c and §1693h; and

    f. Re-orders electronic debit transactions from the highest dollar amount to lowest dollar amount so as to deplete the customer's available funds as quickly as possible while maximizing the number of Overdraft Fees collected by National City Bank.

## PARTIES

3.      Plaintiff Ramona Trombley is a resident of Centerline, in the State of Michigan.

4.      Plaintiff Brian Wells is a resident of Brighton, in the State of Michigan.

5.      Plaintiff Jeff Doehner is a resident of Novelty, in the State of Ohio.

6.      The members of the putative Classes, defined below, are those individuals that have been harmed by Defendant's acts and practices, specifically those acts and practices related

to Defendant's unfair, deceptive, unconscionable, and bad faith assessment and collection of excessive overdraft charges through the means outlined above. Upon information and belief, members of the putative Classes number in the hundreds of thousands.

7.     National City Bank is a financial institution with principal markets in the Eastern and Midwestern United States. It offers a broad array of retail, small business and commercial banking products and services. On December 31, 2008, the PNC Financial Services Group ("PNC") acquired National City. National City continues to do business under its own name. PNC is one of the nation's largest financial services companies with assets of $286 billion. PNC is a diversified financial institution, which includes a regional banking franchise operating primarily in 14 states and the District of Columbia, serving approximately 6 million customers and small businesses.

8.     National City Bank is headquartered in Pittsburg, PA.

9.     Various others, presently unknown to Plaintiffs, participated as co-conspirators with the Defendant in the violations of law alleged in this Complaint, and have engaged in conduct and made statements in furtherance thereof. The acts charged in this Complaint have been done by Defendant and its co-conspirators, or were authorized, ordered or done by its respective officers, agents, employees or representatives while actively engaged in the management of Defendant's business or affairs. These others shall be referred to herein as the "John Doe Defendants."

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action in which

some members of the Classes are citizens of states different than Defendant.  *See* 28 U.S.C.

§ 1332(d)(2)(A).

11.     This Court has personal jurisdiction over Defendant because Defendant owns and

operates businesses that are located within the District of Columbia.

12.     Venue properly lies in this district pursuant to 28 U.S.C. § 1391(a)(2) because

Defendant conducts substantial business in this judicial district. Defendant has sufficient

minimum contacts with the District of Columbia and intentionally avails itself of the consumers

and markets within the District of Columbia through the promotion, marketing, sale, and service

of checking and savings accounts in this District.

## FACTUAL BACKGROUND

13.     National City Bank issues debit cards to its checking account customers. These

debit cards allow its customers to have electronic access to their checking accounts in order to

debit funds directly and instantaneously from their account for purchases from merchants, on-

line usage, payment of bills, cash withdrawals, perform deposits at ATMs, and for other

electronic debit transactions.

14.     National City Bank improperly charges Overdraft Fees and violates both state and

federal law because it:

    a.   Charges overdraft fees when in fact the customer has never overdrawn his/her
        checking account;
    b.   Charges overdraft fees when it never had to pay out more funds than were in
        the customer's checking account and thus endured no losses whatsoever;
    c.   Violates Regulation E, including 12 C.F.R. §205.7 and 12 C.F.R. §205.9, and
        the Electronic Funds Transfer Act, including 15 U.S.C. §1693c and §1693h;
    d.   Provides false and misleading account balance information on the bank's
        website and at the point of sale;
    e.   Re-orders electronic debit transactions from the highest dollar amount to
        lowest dollar amount so as to deplete the customer's available funds as
        quickly as possible while maximizing the number of Overdraft Fees;

  f. Does not clearly disclose and/or refuses to allow its customers to opt out of its overdraft protection program;

  g. Does not obtain affirmative consent from its customers prior to processing transactions that will result in Overdraft Fees;

  h. Does not alert its customers that a debit card transaction will trigger an Overdraft Fee, and does not provide its customers with an opportunity to cancel such transactions;

  i. Breaches its account agreement;

  j. Charges exorbitant Overdraft Fees that bear no relationship to the actual costs and risks of covering insufficient funds transactions; and

  k. Requires its customers to enter into standardized account agreements which include unconscionable provisions.

15. Consumers are often surprised to discover that they are allowed to make debit card purchases even when they lack sufficient funds to do so. The Federal Reserve, which has the authority to regulate electronic funds transfers, including debit card purchases, issued a Final Rule in November, 2009, which severely restricts banks' ability to charge Overdraft Fees. The "Discussion" portion of the Rule states directly: "[M]any consumers may not be aware that they are able to overdraft at an ATM or POS. Debit cards have been promoted as budgeting tools, and a means for consumers to pay for goods and services without incurring additional debt. Additionally, the ability to overdraft at an ATM or POS is a relatively recent development. Consequently, consumers may unintentionally overdraw their account based on the erroneous belief that a transaction would be paid only if the consumer has sufficient funds in the account to cover it."

16. National City Bank Overdraft Fees intentionally target the most vulnerable, least affluent sector of the population. According to the Center for Responsible Lending, consumers who repeatedly overdraw their account are more likely to be low-income, single, non-white, and renters. In its commentary to a recently promulgated rule severely restricting the ability of banks to charge Overdraft Fees, the Board of the Federal Reserve stated: "available research indicates that the large majority of overdraft fees are paid by a small portion of consumers who frequently

overdraw their accounts." Moreover, Overdraft Fees have actually increased during the recent economic turmoil.

17.     In its analysis of the income and age of accountholders with overdrawn accounts, the FDIC found that lower-income groups and young adults age 18-25 were the most likely to incur an Overdraft Fee. FDIC Study of Bank Overdraft Programs, Federal Deposit Insurance Corporation, (November, 2008). The FDIC also found that nearly three-quarters of its banks' service charge income was the result of overdraft fees – an amount estimated to exceed $27 billion annually.

18.     According to the Center for Responsible Lending, "Overdraft fees eat into the already-strained budgets of working families, with Americans now spending far more on overdraft fees annually than they do on common household items such as books, cereal or postage stamps. Americans spend about the same amount on overdraft fees as they do on fresh vegetables every year, and only a little less than they do on fresh fruit."

19.     Overdraft Fees are often triggered by small dollar transactions, most typically occurring when a debit card is used. As such, the credit extended to cover the shortfall is often far smaller than the Overdraft Fee charged. A $34 Overdraft Fee for a $5 fast food purchase is not uncommon – a transaction for which the consumer is charged 700% interest.

## CLASS ALLEGATIONS

20.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

21.     The proposed Classes are defined as:

All National City Bank customers in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, were improperly charged Overdraft Fees or not notified of such fees under any of the following circumstances: (a) when National City Bank never had to pay out more funds than were in the customer's checking account; (b) when the customer was provided false and misleading account balance information on the Bank's website or at the point of sale; (c) when the customer's account had never been overdrafted; (d) when National City Bank re-ordered electronic debit transactions from the highest dollar amount to lowest dollar amount so as to deplete the customer's available funds as quickly as possible while maximizing the number of Overdraft Fees (the "National Class").

All National City Bank customers having accounts at branches in the State of Michigan who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, were improperly charged Overdraft Fees or not notified of such fees under any of the following circumstances: (a) when National City Bank never had to pay out more funds than were in the customer's checking account; (b) when the customer was provided false and misleading account balance information on the Bank's website or at the point of sale; (c) when the customer's account had never been overdrafted; (d) when National City Bank re-ordered electronic debit transactions from the highest dollar amount to lowest dollar amount so as to deplete the customer's available funds as quickly as possible while maximizing the number of Overdraft Fees (the "Michigan Subclass"). This Subclass asserts claims under the state consumer protection statute (*see* Seventh Claim for Relief, *infra*).

All National City Bank customers having accounts at branches in the State of Ohio who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, were improperly charged Overdraft Fees or not notified of such fees under any of the following circumstances: (a) when National City Bank never had to pay out more funds than were in the customer's checking account; (b) when the customer was provided false and misleading account balance information on the Bank's website or at the point of sale; (c) when the customer's account had never been overdrafted; (d) when National City Bank re-ordered electronic debit transactions from the highest dollar amount to lowest dollar amount so as to deplete the customer's available funds as quickly as possible while maximizing the number of Overdraft Fees ("Ohio Subclass") (with Michigan subclass, the "Subclasses"). This Subclass asserts claims under the state consumer protection statute (*see* Seventh Claim for Relief, *infra*).

The National Classes and the Subclasses are collectively referred to as the

"Classes."

22.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

23.     Excluded from the putative Classes are National City Bank, its parents, subsidiaries, affiliates, officers and directors, any entity in which National City Bank has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

24.     The members of the putative Classes are so numerous that joinder is impractical. The putative Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resorting to National City Bank's records.

25.     The claims of the representative Plaintiffs are typical of the claims of the putative Classes in that the representative Plaintiffs, like all putative Class members, were charged Overdraft Fees by National City Bank as a result of its practice of charging an Overdraft Fee when in fact the customer had never overdrawn his/her checking account; charging Overdraft Fees when National City Bank never had to pay out more funds than were in the customer's checking account; providing false and misleading account balance information on the bank's website and at the point of sale; violating regulations implementing the National Bank Act; and re-ordering of electronic debit transactions from the highest dollar amount to lowest dollar amount so as to deplete the customer's available funds as quickly as possible while maximizing the number of Overdraft Fees.  The representative Plaintiffs, like all putative Class members, have been damaged by National City Bank's misconduct because they have incurred and/or will continue to incur unfair and unconscionable Overdraft Fees. Furthermore, the factual basis of National City Bank's misconduct is common to all putative Class members.

26.     There are numerous questions of law and fact common to the putative Classes and

those common questions predominate over any questions affecting only individual putative Class

members.

27.     Among the questions of law and fact common to the putative Classes are whether

National City Bank:

 a. Charges Overdraft Fees when in fact the customer had never overdrawn his/her checking account;

 b. Charges Overdraft Fees when it never had to pay out more funds than were in the customer's checking account and thus endured no losses whatsoever;

 c. Violates Regulation E, including 12 C.F.R. §205.7 and 12 C.F.R. §205.9, and the Electronic Funds Transfer Act, including 15 U.S.C. §1693c and §1693h;

 d. Provides false and misleading account balance information on the bank's website and at the point of sale;

 e. Re-orders electronic debit transactions from the highest dollar amount to lowest dollar amount so as to deplete the customer's available funds as quickly as possible while maximizing the number of Overdraft Fees;

 f. Does not clearly disclose and/or refuses to allow its customers to opt out of its overdraft protection program;

 g. Does not obtain affirmative consent from its customers prior to processing transactions that will result in Overdraft Fees;

 h. Does not alert its customers that a debit card transaction will trigger an Overdraft Fee, and does not provide its customers with an opportunity to cancel such transactions;

 i. Charges exorbitant Overdraft Fees that bear no relationship to the actual costs and risks of covering insufficient funds transactions;

 j. Breaches its covenant of good faith and fair dealing with Plaintiffs and the other members of the putative Classes through its overdraft policies and practices;

 k. Breaches its account agreement;

 l. Converts moneys belonging to Plaintiffs and the other members of the putative Classes through its overdraft policies and practices;

 m. Requires its customers to enter into standardized account agreements which include unconscionable provisions;

 n. Is unjustly enriched through its overdraft policies and practices;

 o. Violates the regulations implementing the National Bank Act, including but not limited to 12 C.F.R. §7.4002.

 p. Violates the consumer protection acts of Michigan and Ohio through its overdraft policies and practices; and

 q. Continues to commit wrongdoing through its overdraft policies and practices.

28.     Other questions of law and fact common to the putative Classes include:

    a.   The proper method or methods by which to measure damages; and

    b.   The injunctive relief to which the putative Classes are entitled.

29.    Plaintiffs' claims are typical of the claims of other putative Class members, in that they arise out of the same wrongful overdraft policies and practices and the same or substantially similar unconscionable provisions of National City Bank's account agreements and other related documents. Plaintiffs have suffered the harm alleged and have no interests antagonistic to the interests of any other putative Class member.

30.    Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the putative Classes.

31.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual putative Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of National City Bank, no putative Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the putative Class members will continue to suffer losses and the misconduct of National City Bank will proceed without remedy.

32.    Even if putative Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of

bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

A.    **National City Bank's Misleading, Unconscionable, Deceptive and Incomplete Disclosures in its Account Agreement**

33.    Plaintiffs Trombley, Wells, and Doehner have or have had checking accounts with Defendant National City Bank.  Plaintiff Trombley opened her account in 1998.

34.    After opening the checking account with National City Bank, Plaintiffs were provided with a "Personal Account Agreement" booklet ("Account Agreement").  Within the thirty-nine pages of fine print of this pamphlet are the following relevant and contradictory provisions:

> "**Overdrafts.**  Depositor agrees that although Bank has no obligation to permit an overdraft, Bank may do so.
>
> **Paying Items and Entries.**  For Checking or Savings Accounts, when a sufficient balance of the Account is available, Bank shall pay Items and honor Entries initiated or authorized by Depositor.  Bank may dishonor an Item or Entry when the Account has an insufficient balance available.  Bank may charge the Account for all properly payable Items and Entries, even though an overdraft may be created.  Depositor agrees that Depositor's Account may be debited on the business day an Item is presented or at an earlier time based on notification received by Bank that an Item drawn on the Account has been deposited for collection at another financial institution.  A determination of Account balance for purposes of making a decision to dishonor an Item or return an Entry for insufficient available balance may be made at any time between presentment or receipt of notice of pending presentment and the time of return of the Item; Bank has no obligation to make more than one such determination.  Generally, Bank pays Items and Entries from the Account in the order of largest dollar amount to smallest dollar amount, but Bank reserves the right to pay Items and Entries in any order."

35.    As discussed *infra*, the provisions in paragraph 34 misstate National City Bank's actual policy of determining account balance for the purpose of assessing Overdraft Fees. Moreover, the Bank uses the discretion it grants itself in this clause to gouge customers, in violation of its duty of good faith and fair dealing.

36.     The contractual language in paragraph 34 is in contrast to Defendant's actual practice and policy of automatically and in every case permitting offline debit transactions to occur despite inadequate funds.

37.     The Bank does not disclose the amount it charges for an Overdraft Fee, nor does it accurately explain how it calculates account balances.

38.     Such contractual provisions lead customers to believe that high-to-low posting and re-ordering are not automatic but merely exceptions.  In actuality, such policies are a codified secret daily routine aimed solely at maximizing Overdraft Fee revenue.

39.     Futher, the contractual provisions in paragraph 34 misstate the very structure of the modern payments system and imply there is no difference between the use of a debit card at a point of sale and the debit (ACH) or credit (offline) option.  This is far from the truth and is deceptive.  In an ACH transaction, the money is debited from the account nearly instantaneously.  On the other hand, an "offline signature" transaction occurs in two parts:  first, authorization for the purchase amount is obtained by the merchant.  At some later time, the settlement process begins, wherein the funds are transferred from the customer's accounts to the merchant's accounts.  This process is not instantaneous:  it can take as long as several days for funds to be deposited in the merchant's account.

40.     Even if Plaintiffs were given a collection of discrete contractual clauses that purport to authorize or disclose National City Bank's practices as described above, this notice is neither sufficient nor effective.  The interaction of several contractual clauses, themselves unclear, here combine to exert an unconscionable and materially deceptive effect which no lay person could possibly have foreseen.  Furthermore, no collection of clauses or disclosure can grant National City Bank the right to manipulate and abuse checking account transactions to

achieve the most Overdraft Fees on a consumer's account, even whenif that account was never overdrawn.

41.     National City Bank fails to adequately notify and explain to its customers that it engages in a systematic policy of charging Overdraft Fees when in fact the customer had never overdrawn his/her checking account.

42.     National City Bank fails to adequately notify and explain to its customers that it engages in a systematic policy of charging Overdraft Fees when it never had to pay out more funds than were in the customer's checking account.

43.     National City Bank fails to adequately notify and explain to its customers that it fails to provide accurate account balance information on the Bank's website and at the point of sale.

44.     National City Bank fails to adequately notify and explain to its customers that it always engages in a systematic policy of re-ordering electronic debit transactions from the highest dollar amount to lowest dollar amount so as to deplete the customer's available funds as quickly as possible while maximizing the number of Overdraft Fees.

**B.     The Bank Charges Overdraft Fees Even When It Never Had to Pay Out More Funds Than Were in the Customer's Checking Account**

45.     A debit card can be used to make a purchase in two ways:  an "ACH" transaction in which a customer enters his/her PIN number at the point of sale; or an "offline signature" transaction.  In the former, the money is debited from the account nearly instantaneously.  On the other hand, the "offline signature" transaction occurs in two parts:  first, authorization for the purchase amount is obtained by the merchant.  When a merchant swipes a customer's debit card, the credit card terminal connects, via an intermediary, to the customer's bank, which verifies that the customer's account is valid and that sufficient funds are available to cover the transaction's

cost.  At this step, National City Bank holds the funds and deducts them from the bank balance, but does not yet transfer the funds to the merchant.  At some later time, the settlement process begins, wherein the funds are transferred from the customer's accounts to the merchant's accounts.  This process is not instantaneous:  it can take as long as several days for funds to be deposited in the merchant's account.  The actual charge is not put through until the merchant submits its batch of transactions and the banking system transfers the funds.  While the merchant has obtained an authorization from the individual's bank by swiping the card through its credit card terminal, the actual balance with the bank has *does not change until settlement*, because the merchant has not actually collected the funds in question.  The transaction is not actually "settled" (that is, money between the bank and the merchant changes hands) until the merchant submits the transaction to the bank some time after the customer's purchase.

46.     National City Bank never discloses the difference between these two methods of using a debit card in its Account Agreement.

47.     National City Bank uses this gap between authorization and settlement to its advantage to create an overdraft that never actually occurs and is strictly theoretical.  The Bank retroactively constructs a picture of what the account balance *would have been had all transactions settled immediately, even when there are funds in the account to cover the purchases at the time of settlement.*  That is, National City Bank makes Overdraft Fee determinations neither at the time of settlement, nor even at the time of authorization.  Rather, at the time of settlement the Bank charges Overdraft Fees as if it had settled the transactions immediately.  This is a fiction, strictly created to advantage the bank and disadvantage its customers.  Because the time between authorization and settlement is often one in which customers make deposits to their accounts to cover debits, National City Bank's policy is

designed solely to charge more customers Overdraft Fees. The policy serves no function in ensuring the soundness or efficiency of the banking system. These overdrafts are "theoretical" because due to the gap between authorization and settlement, the customer's account never actually was overdrawn, and Overdraft Fees are charged without cause ("Theoretical Overdraft"). Such Theoretical Overdrafts, further, are hidden on account statements issued by the Bank, which often show Overdraft Fees even where the account balance is never shown to be negative.

48.    A Theoretical Overdraft is especially egregious when a customer has deposited money on the same day that a supposed "overdraft" transaction occurred, but the funds are not made available immediately per bank policy. That is, the Bank creates a notional picture of the account balance as if all debits settled immediately, but does not create a notional picture of the account balance as if all deposits had posted immediately.

49.    The Bank's use of Theoretical Overdrafts unlawfully caused financial losses to Plaintiffs and improper gains to the Bank. For example, on October 23, 2009, Plaintiff Trombley ended the day with an account balance of $19.01. On October 24, 2009, Plaintiff Trombley made a cash ATM deposit in the amount of $290, leaving her with at least $309.01 in her account. After the close of business on the 23rd, a Friday, and before the business day began on October 26, Plaintiff Trombley made a series of small purchases totaling $153.23. On October 26, Plaintiff Trombley was charged ten overdraft fees of $34 each, *even though she had a balance of over 340 dollars at the time*. This charge was incurred because the Bank manipulated the purchases and debits in the following manner in order to cause a Theoretical Overdraft:

   a. On October 23, 2009, Plaintiff Trombley's account balance ended the day at $19.01.
   b. Between the end of October 23 and October 25, Plaintiff Trombley made a series of purchases and debits totaling $153.23.

c. On October 24, Plaintiff Trombley made a cash ATM deposit in the amount of $290.

d. On October 26, the Bank settled the purchases Plaintiff Trombley had made between October 23 and October 25 for $153.23, and immediately charged her ten Overdraft Fees of $34.00 each, even though she had a current account balance of over $340.

e. Upon information and belief, National City Bank retroactively constructed a fictionalized account balance on October 25, deducting all "pending" transactions from Plaintiff's account even before settlement, in order to charge an Overdraft Fee.

f. Moreover, National City Bank knew Plaintiff Trombley had deposited funds in her account on October 24 well in excess of the amount actually needed by the Bank for settlement on October 26.

g. At no point did the Bank "lend" Plaintiff money or otherwise provide funds for a purchase not fully covered by Plaintiff's current account balance. In sum, National City Bank charges Overdraft Fees even when it suffers no harm, makes no extension of credit, and endures no loss of its own funds.

50. Charging an Overdraft Fee when in fact an account has never been over-drafted is materially deceptive.

51. In constructing Theoretical Overdrafts, the Bank did not process the electronic funds transfer in a timely fashion, in violation of the Electronic Funds Transfer Act, including §1693h. Theoretical Overdrafts are "transaction fees" that must be "disclosed on the receipt and displayed on or at the terminal," per Regulation E, 12 C.F.R. §205.9.

52. The Bank's practice of debiting funds from customers' checking account before funds are delivered to payees is a "float," and as such is a fee that must be disclosed at the point of sale or in the Account Agreement. National City Bank fails to disclose this fee. Lack of disclosure violates the Electronic Funds Transfer Act ("EFTA") and Regulation E, 12 C.F.R. §205.9.

53. Such machinations are not explained on National City Bank's periodic statements, online account statements, or transaction histories. National City Bank simply debits the Overdraft Fee without any explanation as to how the customer came to be charged that fee. The

date of the Overdraft Fee, in the majority of cases, does not correspond to the date of the

transaction, even though National City Bank uses the date of the transaction to determine

whether an account has gone into overdraft.  As such, a customer is unable to make efforts to

prevent future Overdraft Fees.

54.     Because consumers lose an opportunity to earn interest on funds not yet

transferred to payees during the period between authorization and settlement, a fee results even

when an Overdraft Fee does not result.  These losses are "transaction fees" that must be

"disclosed on the receipt and displayed on or at the terminal," per Regulation E, 12 C.F.R.

§205.9

55.     The lack of clear explanation on periodic statements violates the Electronic Fund

Transfer Act, 15 U.S.C. 1693 et seq., ("EFTA") and Regulation E, 12 CFR Part 205:

> For an account to or from which requires an electronic fund transfers can be
> made, a financial institution to provide consumers with account-opening
> disclosures and shall send a periodic statement for each monthly cycle in which
> an electronic fund transfer ("EFT") has occurred; and shall send a periodic
> statement at least quarterly if no transfer has occurred. If, under an overdraft
> protection program, a consumer could overdraw an account by means of an ATM
> withdrawal or POS debit card transaction, both are EFTs subject to EFTA and
> Regulation E.  Periodic statements must be readily understandable and accurate
> regarding debits made, current balances, and fees charged. The statement shall set
> forth the following information, as applicable:
>
> > (1) Transaction information. For each electronic fund transfer occurring
> > during the cycle:
> >
> > > (i) The amount of the transfer;
> > > (ii) The date the transfer was credited or debited to the consumer's
> > > account;
> > > (iii) The type of transfer and type of account to or from which funds
> > > were transferred;
> > > (iv) For a transfer initiated by the consumer at an electronic terminal
> > > (except for a deposit of cash or a check, draft, or similar paper
> > > instrument), the terminal location described in paragraph (a)(5) of
> > > this section; and

(v) The name of any third party to or from whom funds were transferred.  12 C.F.R. §205.9(b).

**C.   National City Bank Inconsistently Posts Debits and Credits, Using Whatever Method Maximizes Overdraft Fees**

56.    National City Bank does not always follow the procedure outlined in Section B, *supra*.  Instead, for certain transactions, it does not create Theoretical Overdrafts when such a process does not cause Overdraft Fees to be charged.

57.    When a Theoretical Overdraft policy does not result in Overdraft Fees, National City Bank instead calculates Overdraft Fees based on the date of settlement, not the date of transaction.

58.    For example, on July 31, 2009, a Friday, Plaintiff Wells ended the day with a balance of $808.34.  Between then and August 2, Plaintiff Wells proceeded to make a series of purchases and debits in the amount of $1375.83.   On August 3, Plaintiff Wells transferred $500 into his account from another National City Bank account, leaving him with a balance of $1308.34.  On August 3, all purchases in the amount of $1334.65 settled.  Also on that date, National City Bank charged Plaintiff Wells seven Overdraft Fees in the amount of $34 each.  However, the Bank did not create Theoretical Overdrafts to do so, assessing Overdraft Fees as if all purchases had settled on the date of authorization.  Instead, the Bank assessed Overdraft Fees based on the actual date of settlement, because in this instance this method of calculation allowed it to charge more Overdraft Fees.

59.    The seven Overdraft Fees were incurred because the Bank manipulated the purchases and debits in the following manner:

   a.   On July 31, 2009, Plaintiff Wells' account balance ended the day at $808.34.
   b.   Between then and August 2, Plaintiff Wells proceeded to make a series of offline purchases and debits in the amount of $1375.83.

c. On August 3, Plaintiff transferred $500 into his account from another National City Bank account, leaving him with a balance of $1308.34

d. A check written by Plaintiff Wells in the amount of $1061.81 posted to his account on August 3. The Bank deducted this amount first, lowering his account balance to $247.53.

e. The Bank then deducted the purchases Plaintiff Wells had made between July 31 and August 2 in a high-to-low order, totaling $315.02.

f. The Bank then, immediately charged him seven Overdraft Fees of $34.00 each, even though he would not have been charged the fees if National City Bank had employed its Theoretical Overdraft procedure, as it did in the example above. Instead, upon information and belief, the Bank assessed Overdraft Fees based strictly on settlement date.

g. Had these charges been posted in the Theoretical Overdraft manner, as above, Plaintiff Wells would have been charged no more than one Overdraft Fee.

**D.    National City Bank Provides False and Misleading Account Balance Information and Does Not Warn Customers that Purchases Will Result in Overdraft Fees, in Violation of Regulation E**

60.    Plaintiffs incorporate allegations above.

61.    Upon information and belief, at no time did National City Bank's online account information show a negative balance or otherwise warn Plaintiffs that they had overdrawn, or was going to overdraw, their checking accounts.

62.    When Plaintiffs made purchases with their debit cards, National City Bank did not provide them access to accurate electronic balance information.

63.    In some instances, National City Bank actually informs its customers that they have a positive balance when, according to National City Bank's own information and policies, they have a negative balance.

64.    Even when National City Bank has actual knowledge of outstanding transactions which have created a negative balance in a customer's account, the Bank encourages the customer to incur more Overdraft Fees by approving further debit card purchases and other electronic transactions.

65.     As the Board of the Federal Reserve stated in the "Discussion" section of its

recent Final Rule limiting Overdraft Fees,

> "Even if a consumer checked his or her balance prior to a transaction, the balance
> may not be updated, so the consumer may inadvertently overdraw his or her
> account on the belief funds are available. On balance, the Board believes financial
> institutions are in a better position to mitigate the information gap by developing
> improved processing and updating systems, as they have in recent years, and as
> the Board expects they will continue to do over time."

66.     Plaintiffs repeat the allegations above regarding Defendant' violation of EFTA

and Regulation E requirements.

67.     National City Bank's lack of disclosure of Overdraft Fees violates Regulation E,

including 12 C.F.R. §205.7 and 12 C.F.R. §205.9, which requires a financial institution to

provide an accurate receipt at the point of sale, including total cost and any fees associated with

the transaction; and the Electronic Funds Transfer Act, including 15 U.S.C. §1693c and §1693h,

which requires an institution to provide consumers with account-opening disclosures and to send

a periodic statement for each monthly cycle in which an EFT has occurred and at least quarterly

if no transfer has occurred.

68.     Terminal receipts also must be readily understandable and accurate regarding the

amount of the transfer.  According to 12 C.F.R. §205.9, "[A] financial institution shall make a

receipt available to a consumer at the time the consumer initiates an electronic fund transfer at an

electronic terminal. The receipt shall set forth the following information, as applicable:   (1)

Amount. The amount of the transfer. A transaction fee may be included in this amount, provided

the amount of the fee is disclosed on the receipt and displayed on or at the terminal."

69.     With specific regard to the debit card transactions which result in an Overdraft

Fee, the Bank does not disclose such fees "at the time the consumer initiates an electronic fund

transfer." These Overdraft Fees are "transaction fees" that must be "disclosed on the receipt and displayed on or at the terminal, per Regulation E.

70.     Upon information and belief, at no time did Bank's online account information warn Plaintiffs that they had overdrawn, or were going to overdraw, their checking accounts with further purchases.

**E.     National City Bank Re-orders Electronic Debit Transactions From the Highest Purchase Amount to Lowest Purchase Amount**

71.     National City Bank manipulates and reorders debits from highest to lowest during given periods of time.  The Bank reorders transactions for no reason having to do with the soundness of the banking system or operational efficiency, but only to maximize Overdraft Fees it can charge. This practice violates consumer protection laws and the covenant of good faith and fair dealing among others, in the Bank's Account Agreement.

72.     National City Bank misleads its customers regarding its reordering practices. The Bank states in its Account Agreement that "Bank may pay Items or honor Entries from Depositor's Account in any order that Bank chooses."  This statement is deceptive because, in fact, the Bank automatically and systematically reorders all debit transactions from highest to lowest, and because the Bank groups together debit card transactions that occurred on subsequent days with transactions that occurred on earlier days, and reorders them so that higher debits that occurred on subsequent days are posted to its customers' accounts before lower debits that occurred on earlier days, contrary to the terms of the Bank's Account Agreement and its customers' reasonable expectations.

73.     Transactions involving debit cards used by National City Bank customers, including the withdrawal of cash from ATM machines and point of sale transactions with vendors, are processed electronically. As a result, National City Bank is notified instantaneously

when a transaction occurs.  Notwithstanding the instantaneous nature of these electronic debit

card transactions, National City Bank fails to post charges in the order in which they are

authorized or received.  Instead of processing such transactions in chronological order, National

City Bank processes them starting with the largest debit and ending with the smallest debit.

National City Bank follows this policy solely to maximize the number of Overdraft Fees charged

to customers.

74.    National City Bank's practices ensure that smaller charges will result in multiple

Overdraft Fees. The Bank's policy is specifically designed to maximize the generation of

Overdraft Fees by triggering Overdraft Fees for account charges that would not otherwise result

in such fees.  The practices provide National City Bank with substantially higher service fee

revenues than it would otherwise achieve absent these practices.

75.    As a result, Plaintiffs and members of the putative Classes have been assessed

Overdraft Fees for transactions which occurred when they actually had sufficient funds in their

accounts to cover those transactions.

76.    For example, on August 3, 2009, Plaintiff Wells incurred seven Overdraft Fees

because the Bank manipulated the purchases and debits, posting debits from the highest

transaction amount to the lowest transaction amount in order to maximize the number of

Overdraft Fees:

    a.  On July 31, 2009, Plaintiff Wells' account balance ended the day at $808.34.
    b.  Between then and August 2, Plaintiff Wells proceeded to make a series of offline purchases and debits in the amount of $1375.83.   Most were very small purchases.
    c.  On August 3, Plaintiff  transferred $500 into his account from another National City Bank account, leaving him with a balance of $1308.34
    d.  A check written by Plaintiff Wells in the amount of $1061.81 posted to his account on August 3.  The Bank deducted this amount first, lowering his account balance to $247.53.

    e.  On August 3, the Bank settled the purchases Plaintiff Wells had made between July 31 and August 2, and immediately charged him seven Overdraft Fees of $34.00 each, even though he would not have been charged as many fees if the debits had been posted in the order in which they were authorized.

    f.  If the debits had been posted in a low-to-high order, rather than vice-versa, Plaintiff Wells would have been charged only one Overdraft Fee.

    g.  Even if the large check were properly posted first, which Plaintiffs dispute, the method of high-to-low posting still resulted in more Overdraft Fees than would otherwise have been incurred.

77.    By way of another example, on August 31, 2009, Plaintiff Doehner incurred three Overdraft Fees because the Bank manipulated the purchases and debits, posting debits from the highest transaction amount to the lowest transaction amount in order to maximize the number of Overdraft Fees:

    a.  On August 26, 2009, Plaintiff Doehner's account balance ended the day at $46.71.

    b.  On August 31, five charges were posted to Plaintiff Doehner's account, in a high-to-low order, in the amounts of $27.04 (a check), $15.14, $12.46, $6.70, $5.22, and $2.13.

    c.  Upon information and belief, Plaintiff Doehner would not have been charged as many fees if the debits had been posted in the order in which they were authorized.

    d.  If the debits had been posted in a low-to-high order, rather than vice-versa, Plaintiff Doehner would have been charged only one Overdraft Fee.

    e.  Upon information and belief, the five purchases settled before the check in the amount of $27.04 posted to Plaintiff Doehner's account. These purchases were shown on Plaintiff Doehner's online account information as having posted and settled, and having done so without causing his account to go into negative territory. Only later in the day did the Bank reorder the transactions and post the check first, causing the three Overdraft Fees.

78.    These Overdraft Fees are "transaction fees" that must be "disclosed on the receipt and displayed on or at the terminal, per Regulation E, 12 C.F.R. §205.9.

**F.    National City Bank Does Not Clearly Disclose and/or Refuses to Allow its Customers to Opt Out of its Overdraft Protection Program**

79.    The terms of National City Bank's checking accounts are contained in standardized Account Agreements, presented to its customers only after an account has been

opened.  Such agreements are drafted and imposed by National City Bank, which is the party of

vastly superior bargaining strength, and thus constitute agreements of adhesion. A representative

copy of the Account Agreement is attached as Exhibit A.

80.     The Account Agreement provided to customers is ineffective, ambiguous,

deceptive, unfair, and misleading in that it does not unambiguously state that the Bank always

reorders debits from high to low, even though the Bank systematically and automatically

reorders transactions in this way for customers in order to maximize overdrafts and Overdraft

Fee revenues for the Bank.

81.     According to the "Discussion" section of the Federal Reserve final rule on

Overdraft Fees, the current disclosure situation is as follows:  "some institutions may disclose the

opt-out right in a clause in their deposit agreement, which many consumers may not notice or

may not consider relevant because they do not expect to overdraw their accounts."  Contrary to

such common practices, National City Bank makes no mention of a right to opt-out of overdraft

coverage in its Account Agreement.

82.     In the absence of an ability to opt-out of overdraft protection, National City Bank

transforms an optional bank service into a mandatory one, allowing customers to enter into

purported overdraft transactions.  It then assesses overdraft fees in an unconscionable and

improper manner.

**G.    National City Bank's Overdraft Policies and Practices are Contrary to Best
        Practices**

83.     By engaging in the conduct described herein, National City Bank has failed to

follow the list of "best practices" for overdraft programs set forth in the "Joint Guidance on

Overdraft Protection Programs" ("Joint Guidance") issued by the United States Department of

the Treasury, the Office of the Comptroller of the Currency, the Board of Governors of the

Federal Reserve System, the Federal Deposit Insurance Corporation, and the National Credit Union Administration (collectively, the "Agencies") in February 2005. These "best practice" recommendations include: "Provide election or opt-out of service. Obtain affirmative consent of consumers to receive overdraft protection. Alternatively, where overdraft protection is automatically provided, permit consumers to opt-out of the overdraft program and provide a clear consumer disclosure of this option." 70 F.R. 9127-01, 9132.

84.    The Joint Guidance also advises banks to "[a]lert customers before a transaction triggers any fees. When consumers attempt to withdraw or transfer funds made available through an overdraft protection program, provide a specific consumer notice, where feasible, that completing the withdrawal may trigger the overdraft fees." 70 F.R. 9127, 9132. The Joint Guidance further advises that "[t]his notice should be presented in a manner that permits consumers to cancel the attempted withdrawal or transfer after receiving the notice." Id.

85.    National City Bank's overdraft policies make it difficult for customers to avoid injury even if they carefully track the balance in their account. In fact, the Agencies have stated that "Injury" resulting from such policies "is not reasonably avoidable" by the consumer. 73 F.R. 28904-01, 28929. "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out. Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account. For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available."

86.    Because substantially all national banks have the same, or nearly the same, Overdraft Fees and methods for charging Overdraft Fees, consumers do not have any meaningful

choice between banks.  Plaintiff was in effect precluded from opening a new checking account at

an institution with less onerous overdraft policies.

**H.     National City Bank's Overdraft Practices Violate Regulations Implementing the National Bank Act**

87.      12 C.F.R. § 7.4002(a), promulgated by the OCC, authorizes a national bank to

engage in activities that are part of, or incidental to, the business of banking as well as to engage

in certain specified activities listed in the statute.  Pursuant to 12 U.S.C. § 24(Seventh) and the

OCC's regulations, a national bank may charge its customers a fee.  The relevant section of the

OCC regulation states:

> (a) *Authority to impose charges and fees*.  A national bank may charge its customers non-interest charges and fees, including deposit account service charges.

88.      A bank must exercise its authority to establish fees in a manner that is consistent

with safe and sound banking practices.  Paragraph (b) of section 7.4002 sets out the factors that

the bank should consider in ensuring that its process for setting its fees and charges meets this

standard:

> (b) *Considerations*.  (1)  All charges and fees should be arrived at by each bank on a competitive basis and not on the basis of any agreement, arrangement, undertaking, understanding, or discussion with other banks or their officers. (2)  The establishment of non-interest charges and fees, their amounts, and the method of calculating them are business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles. A national bank establishes non-interest charges and fees in accordance with safe and sound banking principles if the bank employs a decision-making process through which it considers the following factors, among others:
>
>> (i) The cost incurred by the bank in providing the service;
>> (ii) The deterrence of misuse by customers of banking services;
>> (iii) The enhancement of the competitive position of the bank in accordance with the bank's business plan and marketing strategy; and

(iv) The maintenance of the safety and soundness of the institution. 12 C.F.R. § 7.4002.

89.     National City Bank violates § 7.4002(2)(i) because the $35 Overdraft Fee it charges bears no relation to the cost incurred in providing the overdraft service. The Bank charges this fee, as above, even when it has never had to pay out more money than in the account and even when the overdraft is *de minimis*. The Bank charges an Overdraft Fee even when it endures no losses whatsoever associated with the purported overdraft.

90.     National City Bank violates § 7.4002 (b)(1) because substantially all national banks have the same, or nearly the same, overdraft fees and methods for charging Overdraft Fees, thus depriving consumers of any meaningful choice between banks.

91.     Plaintiffs do not challenge the Bank's fundamental right to employ an overdraft fee. Rather, Plaintiffs challenge the Bank's manipulation of customers' transaction records so as to maximize overdraft penalties imposed on customers.

I.     **National City Bank's Overdraft Practices Harmed Plaintiffs**

92.     Plaintiffs are current or former account holders of National City Bank.

93.     National City Bank wrongfully charged Plaintiffs multiple Overdraft Fees.

94.     Based on information and belief, the Overdraft Fees incurred by Plaintiffs are representative of hundreds of millions of dollars of Overdraft Fees that National City Bank wrongfully assessed and deducted from its customers' accounts.

J.     **The Damages Sustained by Plaintiffs and the Classes**

95.     As shown by the above examples, National City Bank's overdraft policies make it difficult for a customer to avoid injury even if the customer keeps close track of the balance in his or her account. In fact, the Agencies have stated that "injury" resulting from such policies "is not reasonably avoidable" by consumers. 73 F.R. 28904-01, 28929. "It appears that consumers

cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out. Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account. For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available." Id.

96.     Due to National City Bank's overdraft policies and practices, Plaintiffs and the putative Classes have been wrongfully forced to pay Overdraft Fees. Defendant has improperly deprived Plaintiffs and the putative Classes of significant funds, causing ascertainable monetary losses and damages.

97.     Due to Defendant's unlawful policies, it has wrongfully deprived Plaintiffs and the putative Classes of funds to which it had no legitimate claim.

98.     Plaintiffs and members of the putative Classes had sufficient funds in their accounts to cover at least some of the transactions for which they were charged Overdraft Fees. Plaintiffs and members of the putative Classes either had adequate funds to cover the transactions posted to their accounts, or the accounts were allowed to become overdrawn so that National City Bank could impose improper charges.

99.     All conditions precedent to the relief sought herein have either occurred or have been performed or waived.

### FIRST CLAIM FOR RELIEF

**Breach of the Covenant of Good Faith and Fair Dealing and Breach of Contract
(On Behalf of the National Class and the State Subclasses)**

100.     Plaintiffs repeat paragraphs 1 through 99 above.

101.    Where a contractual agreement permits one party to unilaterally determine the extent of the other's required performance, an obligation of good faith in making such a determination is implied. Defendant Bank may unilaterally choose whether to impose Overdraft Fees by posting transactions in any order they wish by unilaterally deciding whether to honor requested transactions when consumers have insufficient funds and/or by unilaterally placing "authorization holds" without notice. Because the occurrence, amount, and frequency of Overdraft Fees are set unilaterally by Defendant, it has an obligation to impose Overdraft Fees on consumers' bank accounts in good faith. Defendant Bank has breached this obligation by intentionally delaying and rearranging the posting of transactions to accounts in a manner which maximizes the amount of Overdraft Fees. For example, National City Bank has the ability to post check card transactions to checking accounts immediately because it is made aware of check card transactions as they occur due to the electronic nature of these transactions. Instead of posting check card transactions to accounts immediately, however, or even posting check card transactions in chronological order, the Bank chooses to delay the posting of these transactions for hours or days and re-order these transactions in a nonchronological fashion so as to maximize the imposition of overdraft charges.

102.    In breach of its duties of good faith and fair dealing, Defendant Bank has assessed excessive, unreasonable, and unnecessary overdraft charges against Plaintiffs and putative Class members.

103.    Plaintiffs seek a judicial declaration determining that the charges actually levied by National City Bank are not consonant with its duties of good faith and fair dealing. Plaintiffs also seek compensatory damages resulting from the Bank's breach of its duties of good faith and fair dealing.

104.   Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance. Moreover, individual contractual clauses, themselves vague and misleading, combine to exert a further breach of the covenant of good faith and fair dealing.  No lay person could possibly read the Account Agreement to permit the imposition of Overdraft Fees in the manner employed by National City Bank.

105.   Since at least 2001, Defendant Bank has breached the covenant of good faith and fair dealing in the Account Agreement through its overdraft policies, authorization policies, and practices as alleged herein.

106.   Plaintiffs and members of the putative National Class have performed all, or substantially all, of the obligations imposed on them under the Account Agreement.

107.   Plaintiff and members of the putative  Bank National Class have sustained damages as a result of the Bank's breach of the covenant of good faith and fair dealing.

### SECOND CLAIM FOR RELIEF
**Unconscionability**
**(On Behalf of the National Class and the Subclasses)**

108.   Plaintiffs repeat paragraphs 1 through 107 above.

109.   The manner in which the Account Agreement is presented to customers is procedurally unconscionable.

110.   The imposition of Overdraft Fees which exceed the amount overdrawn (e.g., the imposition of a $34 charge on overdrafts often much less than $34) is itself unconscionable.

111.    The imposition of Overdraft Fees when the customer has not even overspent her account is itself unconscionable.

112.    The imposition of Overdraft Fees when the Bank never has to put forth more money than the amount in the customer's account, due to the delay in settlement of offline debit card transactions, is itself unconscionable.

113.    Defendant's overdraft policies and authorization practices, and the purported contractual provisions which reveal them unclearly, if at all, are substantively and procedurally unconscionable in the following respects, among others:

a.  The Bank combines every possible manipulation of the timing of deposits and the timing of debit posting in a way which could not be foreseen by the average customer;
b.  The Bank does not disclose or reasonably disclose to customers that they have the option to "opt out" of the Bank's overdraft scheme;
c.  The Bank does not obtain affirmative consent from checking account customers prior to processing a transaction that will overdraw the account and result in an Overdraft Fee;
d.  The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an Overdraft Fee;
e.  The Account Agreement is a contract of adhesion that is a standardized form, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety; and
f.  The amount of Overdraft Fees is disclosed in an ineffective, ambiguous, misleading, and unfair manner; and
g.  The Account Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank always reorders debits from high to low.

114.    Due to the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

115.    If the Account Agreement is understood to allow any of these practices, that contract is unconscionable.

116.    Plaintiffs and members of the putative National Class have sustained damages as a result of the Bank's unconscionable policies and practices as alleged herein.

**THIRD CLAIM FOR RELIEF**
**Breach of Contract**
**(On Behalf of the National Class and the Subclasses)**

117.    Plaintiff repeats paragraphs 1 through 116 above.

118.    Defendant has breached its contract with Plaintiff as alleged herein.

119.    By charging Overdraft Fees when in fact the customer's account has not been over-drafted, National City Bank breached its contract with Plaintiff.

120.    National City Bank breaches it contractual duty to charge Overdraft Fees only when an overdraft occurs because it engages in a systematic policy of charging Overdraft Fees when in fact the customer had never overdrawn his/her checking account.

121.    National City Bank breaches its contractual duty to charge Overdraft Fees only when an overdraft occurs because it engages in a systematic policy of charging Overdraft Fees when it never had to pay out more funds than were in the customer's checking account.

122.    Plaintiff and members of the putative Classes have sustained damages as a result of National City Bank's breach of contract as alleged herein.

**FOURTH CLAIM FOR RELIEF**
**Conversion**
**(On Behalf of the National Class and the Subclasses)**

123.    Plaintiffs repeat paragraphs 1 through 122 above.

124.    Defendant had a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

125.    Defendant has wrongfully collected, or caused to be collected, Overdraft Fees from Plaintiffs and the members of the putative Classes, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

126.    Defendant has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiffs and the members of the putative Classes, without legal justification.

127.    Defendant has, without proper authorization, assumed and exercised the right of ownership over these funds by placing undisclosed authorization holds, in hostility to the rights of Plaintiffs and the members of the putative Classes, without legal justification.

128.    Defendant intends to permanently deprive Plaintiffs and the members of the Classes of these funds.

129.    These funds are properly owned by Plaintiffs and the members of the putative Classes, not the Bank, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiffs and the members of the putative Classes.

130.    Plaintiff and the members of the putative Classes are entitled to the immediate possession of these funds.

131.    Defendant's wrongful conduct is continuing.

132.    As a direct and proximate result of this wrongful conversion, Plaintiffs and the members of the National Classes have suffered and continue to suffer damages.

133.    By reason of the foregoing, Plaintiffs and the members of the putative Classes are entitled to recover from Defendant all damages and costs permitted by law.

## FIFTH CLAIM FOR RELIEF
### Unjust Enrichment
### (On Behalf of the National Class and the Subclasses)

134.    Plaintiffs repeat paragraphs 1 through 133 above.

135.    Plaintiffs, on behalf of themselves and the putative National Class, assert a common law claim for unjust enrichment.

136.    By providing overdraft payments to National City Bank, Plaintiffs and putative Class members conferred a tangible economic benefit upon Defendant.  Plaintiffs and putative Class members would have expected remuneration from Defendant at the time the benefit was conferred had they known the true facts regarding Defendant's practices and policies.  Failing to require Defendant to provide remuneration under these circumstances would result in it being unjustly enriched.

137.    Defendant was and continues to be unjustly enriched at the expense of Plaintiffs and putative Class members.

138.    Defendant's retention (without an offsetting return payment) of the benefit conferred upon it by Plaintiffs and members of the putative Classes would be unjust and inequitable.

139.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of Overdraft Fees on Plaintiffs and members of the putative Classes in an unfair, unconscionable, and oppressive manner.

140.    The financial benefits derived by Defendant rightfully belong to Plaintiffs and members of the putative Classes.  Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiffs and members of the putative Classes all wrongful or inequitable proceeds received by them. A constructive trust should be imposed upon all wrongful or

inequitable sums received by National City Bank traceable to Plaintiffs and the members of the putative Classes.

141.    Plaintiffs and members of the putative National Class have no adequate remedy at law.

### SIXTH CLAIM FOR RELIEF
**Violation of the Electronic Funds Transfer Act and Regulation E
(On Behalf of the National Class and the State Subclasses)**

142.    Plaintiffs repeat paragraphs 1 through 141 above.

143.    Plaintiffs assert a claim based on Regulation E, including 12 C.F.R. §205.7 and 12 C.F.R. §205.9, and the Electronic Funds Transfer Act, including 15 U.S.C. §1693c and §1693h, because National City Bank failed to disclose the fees it charged for making a debit card purchase at the point of sale or in its Account Agreement.  The Bank further failed to adequately explain Overdraft Fees on periodic statements.

144.    Plaintiffs assert a claim based on Regulation E, including 12 C.F.R. §205.7 and 12 C.F.R. §205.9, and the Electronic Funds Transfer Act, including 15 U.S.C. §1693c and §1693h, because the interest National City Bank gained on the "float" in a Theoretical Overdraft constituted a "fee" that the EFTA requires be disclosed.

145.    Plaintiffs assert a claim based on the Electronic Funds Transfer Act, including §1693h, because in constructing Theoretical Overdrafts, National City Bank did not process the electronic funds transfer in a timely fashion.

146.    According to 15 U.S.C. §1693m(a), whoever violates EFTA is liable to such consumer in an amount equal to the sum of –

> (1)  any actual damage sustained by such consumer as a result of such failure;
> (2)  (A) in the case of an individual action, an amount not less than $100 nor greater than $1,000; or  (B) in the case of a class action, such amount as the court may allow, except that (i) as to each member of the class no minimum recovery

shall be applicable, and (ii) the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same person shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the defendant; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

## SEVENTH CLAIM FOR RELIEF
### Violations of State Unfair Trade Practice Laws
### (On Behalf of the Michigan Subclass)

147.    Plaintiffs Trombley and Wells repeat paragraphs 1 through 146 above. This claim

is asserted on behalf of the members of the putative Michigan Subclass.

148.    Defendant engages in deceptive and misleading business practices relating to the

imposition of Overdraft Fees on consumers, in violation of Michigan law, including the

Michigan Consumer Protection Act.

149.    National City Bank does not sufficiently or adequately inform, and deceives

consumers as to its policies, of:

    a.  Charging Overdraft Fees when in fact the customer had never overdrawn his/her checking account;

    b.  Charging Overdraft Fees when it never had to pay out more funds than were in the customer's checking account;

    c.  Failing to maintain accurate account balance information on the bank's website and at the point of sale;

    d.  Re-ordering electronic debit transactions from the highest dollar amount to lowest dollar amount so as to deplete the customer's available funds as quickly as possible while maximizing the number of Overdraft Fees;

    e.  Charging exorbitant Overdraft Fees that bear no relationship to the actual costs and risks of covering insufficient funds transactions;

    f.  Failing to alert its customers that a debit card transaction will trigger an Overdraft Fee, and does not provide its customers with an opportunity to cancel such transactions; and

    g.  Violating the Michigan Consumer Protection Actthrough its overdraft policies and practices.

150.    The above practices and policies are not adequately represented in National City

Bank's Account Agreement.  Such terms are deceptive in that consumers are not sufficiently

informed of the true practices of the Defendant.

151.    The putative Michigan Subclass is sufficiently large to make joinder

impracticable. Disposition of the claims in a class action will provide substantial benefits to both

the parties and the Court.

152.    The rights of each member of the putative Subclass was violated in a similar

fashion based upon Defendant's uniform actions.

153.    This action has been brought and may be properly maintained as a class action for

the following reasons:

a.  Numerosity: Members of the putative Subclass are so numerous that their individual joinder is impracticable. Plaintiffs are informed and believe, and on that basis allege, that the putative Subclasses contain thousands and perhaps tens of thousands of members. The precise number of putative Subclass members is unknown to Plaintiffs Trombley and Wells.

b.  Existence and Predominance of Common Questions of Fact and Law: Common questions of law and fact exist as to all members of the putative Subclass. These questions predominate over the questions affecting individual putative Subclass members. These common legal and factual questions include, but are not limited to, the following:

(i)  Whether Defendant violated the Michigan Consumer Protection Act.

(ii)  Whether Defendant's actions constituted a breach of contract due to the failure to operate with good faith and fair dealing in transactions with checking account customers in seeking to maximize the amount of Overdraft Fees allocated to an account.

(iii) Whether Defendant's actions constituted conversion due to Defendant's wrongful possession and detention of funds through unfair and deceptive practices.

(iv)  Whether Defendant's actions constituted an unjust enrichment for them since Defendant has received and is holding funds rightfully belonging to Plaintiffs Trombley and Wells and those similarly situated.

(v)  The appropriate nature of class-wide equitable relief; and

(vi) The appropriate measurement of restitution and/or measure of

damages to award to Plaintiffs Trombley and Wells and members of the putative Subclass. These and other questions of law or fact which are common to the members of the putative Subclass predominate over any questions affecting only individual members.

c. Typicality: Plaintiffs' claims are typical of the claims of the putative Subclass since Plaintiffs were banking customers of National City Bank as was each member of the putative Subclass. Furthermore, Plaintiffs Trombley and Wells and all members of the putative Subclass sustained monetary and economic injuries arising out of Defendant's wrongful conduct. Plaintiffs Trombley and Wells are advancing the same claims and legal theories on behalf of themselves and all absent putative Subclass members.

d. Adequacy: Plaintiffs Trombley and Wells are adequate representatives of the putative Subclass because their interests do not conflict with the interests of the putative Subclass that they seek to represent; they have retained counsel competent and highly experienced in complex class action litigation; and they intend to prosecute this action vigorously. The interests of the putative Subclass will be fairly and adequately protected by Plaintiffs Trombley and Wells and their counsel.

e. Superiority: A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiffs Trombley and Wells and members of the putative Subclass. The injury suffered by each individual putative Subclass member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the putative Subclass individually to redress effectively the wrongs done to them. Even if the members of the putative Subclass could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.

f. Defendant has acted, and refused to act, on grounds generally applicable to the putative Subclass, thereby making appropriate final injunctive relief with respect to the putative Subclass as a whole; and

g. In the absence of a class action, Defendant would be unjustly enriched because it would be able to retain the benefits and fruits of its wrongful conduct.

## EIGHTH CLAIM FOR RELIEF
### Violations of State Unfair Trade Practice Laws
### (On Behalf of the Ohio Subclass)

154. Plaintiff Doehner repeats paragraphs 1 through 153 above. This claim is asserted

on behalf of the members of the putative Ohio Subclass.

155.    Defendant engages in deceptive and misleading business practices relating to the imposition of Overdraft Fees on consumers, in violation of Ohio Consumers Sales Practices Act, Ohio Uniform Commercial Code §1345.

156.    National City Bank does not sufficiently or adequately inform, and deceives consumers as to its policy, of:

    a.  Charging Overdraft Fees when in fact the customer had never overdrawn his/her checking account;

    b.  Charging Overdraft Fees when it never had to pay out more funds than were in the customer's checking account;

    c.  Failing to maintain accurate account balance information on the bank's website and at the point of sale;

    d.  Re-ordering electronic debit transactions from the highest dollar amount to lowest dollar amount so as to deplete the customer's available funds as quickly as possible while maximizing the number of Overdraft Fees;

    e.  Charging exorbitant Overdraft Fees that bear no relationship to the actual costs and risks of covering insufficient funds transactions;

    f.  Failing to alert its customers that a debit card transaction will trigger an Overdraft Fee, and does not provide its customers with an opportunity to cancel such transactions; and

    g.  Violating the consumer protection act of Ohio through its overdraft policies and practices.

157.    The above practices and policies are not adequately represented in National City Bank's terms of service. Such terms are deceptive in that consumers are not sufficiently informed of the true practices of the Defendant.

158.    The putative Ohio Subclass is sufficiently large to make joinder impracticable. Disposition of the claims in a class action will provide substantial benefits to both the parties and the Court.

159.    The rights of each member of the putative Subclass were violated in a similar fashion based upon Defendant's uniform actions.

160.    This action has been brought and may be properly maintained as a class action for the following reasons:

a. Numerosity: Members of the putative Subclass are so numerous that their individual joinder is impracticable. Plaintiffs are informed and believe, and on that basis allege, that the putative Subclasses contain thousands and perhaps tens of thousands of members. The precise number of putative Subclass members is unknown to Plaintiffs.

b. Existence and Predominance of Common Questions of Fact and Law: Common questions of law and fact exist as to all members of the putative Subclass. These questions predominate over the questions affecting individual putative Subclass members. These common legal and factual questions include, but are not limited to, the following:

> (i) Whether Defendant violated the Ohio Consumers Sales Practices Act, Ohio Uniform Commercial Code §1345.
>
> (ii) Whether Defendant's actions constituted a breach of contract due to the failure to operate with good faith and fair dealing in transactions with checking account customers in seeking to maximize the amount of Overdraft Fees allocated to an account.
>
> (iii) Whether Defendant's actions constituted conversion due to Defendant's wrongful possession and detention of funds through unfair and deceptive practices.
>
> (iv) Whether Defendant's actions constituted an unjust enrichment for them since Defendant has received and is holding funds rightfully belonging to Plaintiffs and those similarly situated.
>
> (v) The appropriate nature of class-wide equitable relief; and
>
> (vi) The appropriate measurement of restitution and/or measure of damages to award to Plaintiffs and members of the putative Subclass.

These and other questions of law or fact which are common to the members of the putative Subclass predominate over any questions affecting only individual members.

c. Typicality: Plaintiff Doehner's claims are typical of the claims of the putative Subclass since Plaintiff Doehner was a banking customer of National City Bank as was each member of the putative Subclass. Furthermore, Plaintiff Doehner and all members of the putative Subclass sustained monetary and economic injuries arising out of Defendant's wrongful conduct. Plaintiff Doehner is advancing the same claims and legal theories on behalf of themselves and all absent putative Subclass members.

d. Adequacy: Plaintiff Doehner is an adequate representative of the putative Subclass because their interests do not conflict with the interests of the putative Subclass that he seeks to represent; he has retained counsel competent and highly experienced in complex class action litigation; and he intends to prosecute this action vigorously. The interests of the putative Subclass will be fairly and adequately protected by Plaintiff Doehner and his counsel.

e. Superiority: A class action is superior to other available means of fair and

efficient adjudication of the claims of Plaintiff Doehner and members of the putative Subclass. The injury suffered by each individual putative Subclass member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the putative Subclass individually to redress effectively the wrongs done to them. Even if the members of the putative Subclass could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.

    f.    Defendant has acted, and refused to act, on grounds generally applicable to the putative Subclass, thereby making appropriate final injunctive relief with respect to the putative Subclass as a whole; and

    g.    In the absence of a class action, Defendant would be unjustly enriched because it would be able to retain the benefits and fruits of its wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the putative Class and Subclasses they seek to represent, demand a jury trial on all claims so triable, and demand judgment as follows:

1.    Injunctive relief enjoining Defendant from charging Overdraft Fees, or causing Overdraft Fees to be charged, under their current policies and from engaging in the wrongful, unfair, and unconscionable practices alleged herein;

2.    Restitution of all overdraft fees paid to Defendant by Plaintiffs and the putative Class and Subclasses, as a result of the wrongs alleged herein, within the applicable statutes of limitations, in an amount to be determined at trial;

3.    Disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

4.    Actual damages in an amount according to proof;

5.    Punitive and exemplary damages;

6.    Pre-judgment interest at the maximum rate permitted by applicable law;

7.    Statutory penalties authorized by the EFTA;

8.   Costs and disbursements incurred by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

9.   Such other relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs, on behalf of themselves and the putative Class and Subclasses, demand a trial by jury on all issues so triable.

Dated:  February 17, 2010

_____
Hassan A. Zavareei
Jeffrey D. Kaliel
TYCKO & ZAVAREEI, LLP
2000 L Street, N.W., Suite 808
Washington, D.C. 20036
(202) 973-0900
(202) 973-0950 *facsimile*
hzavareei@tzlegal.com
jkaliel@tzlegal.com

*Attorneys for Plaintiffs Trombley,*
*Wells and Doehner*