## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| RAMONA TROMBLEY, et al.,<br>on behalf of herself and all others similarly situated,<br><br>                    Plaintiffs,<br><br>    -v-<br><br>NATIONAL CITY BANK, et al.,<br><br>                    Defendants. | Case No. 1:10-CV-00232<br><br>The Honorable John D. Bates |

## PLAINTIFF'S UNOPPOSED MOTION AND INCORPORATED STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SETTING OF A FINAL FAIRNESS HEARING

Plaintiffs Ramona Trombley, Jeff Doehner and Brian Wells ("Plaintiffs" or "Representative Plaintiffs"), individually and on behalf of the proposed Settlement Class (defined in the July 28, 2010 Settlement Agreement, attached hereto as Exhibit 1), respectfully submit their unopposed motion for and incorporated statement of points and authorities in support of motion for preliminary approval of class action settlement, certification of settlement class, and setting of a final fairness hearing. This motion is accompanied by the Settlement Agreement and exhibits thereto, the Declaration of Hassan A. Zavareei ("HAZ Decl."), and exhibits thereto, and a proposed order.

Pursuant to Local Civil Rule 7(f), Plaintiffs hereby request an oral hearing.

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     PRELIMINARY APPROVAL IS APPROPRIATE............................................... 4

   A.   The Parties Undertook Arms-length Negotiations.......................................... 5

   B.   Proposed Class Counsel Had Sufficient Information To Make A Reasonable
        Assessment Of The Risks Of Litigation ..................................................... 7

   C.   The Settlement Provides Excellent Monetary Relief for Settlement Class Members 11

        1.   Comparison To Expert Analyses in *Gutierrez*..................................12

        2.   Comparison To Settlement Of Similar Case…………………………15

   D.   The Settlement Fairly Allocates The Settlement Fund ............................... 17

IIII.   CERTIFICATION OF THE SETTLEMENT CLASS ................................... 18

   A.   The Settlement Class Meets All The Requirements For Class Certification Pursuant
        To Rule 23(a) Of The Federal Rules Of Civil Procedure ........................... 18

        1.   The Class is Sufficiently Numerous Because Joinder of All Members of the
             Class is Impracticable ..................................................................... 19

        2.   There are Questions of Law and Fact Common to the Settlement Class........ 19

        3.   Representative Plaintiffs' Claims are Typical of Those of the Settlement Class
             ......................................................................................................... 20

        4.   Rule 23(a)'s Adequacy Requirement is Satisfied ........................... 21

   B.   The Requirements Of Rule 23(b)(3) Are Satisfied .................................. 22

IV.     NOTICE.......................................................................................................... 24

   A.   Contents Of Notice .................................................................................... 25

        1.   Opting Out ...................................................................................... 26

        2.   Objecting......................................................................................... 26

i

B.  Scope Of Notice ................................................................................................ 27

V.      CONCLUSION ................................................................................................ 27

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Windsor*,
521 U.S. 591 (1997).................................................................................................. 18, 23

*Bennett v. Behring Corp.*,
96 F.R.D. 343 (S.D. Fla. 1982), *aff'd,* 737 F.2d 982 (11th Cir. 1984).......................... 24

*\*Bynum v. Dist. Of Columbia,*
217 F.R.D. 43 (D.D.C. 2003)............................................................................... 19, 23

*Cappuccitti v. DirecTV, Inc.*,
No. 09-14107, 2010 WL 2803093 (11th Cir. July 19, 2010)...................................... 1, 8

*Citizens for a Better Env't v. Gorsuch,*
718 F.2d 1117(D.C.Cir.1983)………………………………………………………….2

*Compare In re Checking Account Overdraft Litig.*,
694 F. Supp. 2d 1302 (S.D. Fla. 2010) ........................................................................ 1

*Closson v. Bank of America N.A.*,
No. CGC 04436877 (Cal. Super. Ct. 2009), ............................................... 12, 13, 15, 16

*Coleman v. Pension Benefit Guar. Corp.*,
196 F.R.D. 193 (D.D.C. 2000)..................................................................................... 19

*Daniels v. PNC Bank, N.A.,*
137 Ohio App.3d 247 N.E.2d 447 (2000)……………………………………………....13

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
89 F.R.D. 87 (S.D.N.Y. 1981) .................................................................................... 23

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)...................................................................................... 24, 25, 27

*Fetter v. Wells Fargo Bank Tex., N.A.,*
110 S.W.3d 683 (Tex. App. 2003)…...……………………………………………………..13

*Gen. Tel. Co. of the Northwest, Inc. v. EEOC,*
446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980)............................................... 19

*Gen. Tel. Co. of Sw. v. Falcon,*
457 U.S. 147 (1982)....................................................................................................... 21

*Gutierrez v. Wells Fargo*,
No. 07-cv-05923, 2010 WL 1233810 (N.D. Cal. March 26, 2010).................. 1, 8, 10, 12, 13, 14

*Hassler v. Sovereign Bank*,
644 F. Supp. 2d 509 (D.N.J. 2009)……………………………………………………….………7

*Hassler v. Sovereign Bank*,
No. 09-2982, 2010 U.S. App. LEXIS 5445 (3rd Cir. Mar. 15, 2010) ...................................... 1, 7

*Hill v. St. Paul Federal Bank for Savings*,
 329 Ill. App. 3d 705 (1st Dist. 2002)…...……………………………………………………….8, 13

*In re Baan Co. Sec. Litig.*,
284 F. Supp. 2d 62 (D.D.C. 2003) ............................................................................................. 14

*In re Checking Acct. Overdraft Litig.*,
09- MD-02036, 2010 WL 841305 (S.D. Fla. Mar. 11, 2010).................................................... 6

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981) ...................................................................................................... 5

*In re Linerboard Antitrust Litig.*,
292 F. Supp. 2d 631 (E.D. Pa. 2003) ......................................................................................... 12

*In re Lorazepam & Clorazepate Antitrust Litig.*,
205 F.R.D. 369 (D.D.C. 2002)……………………………………………………………….4, 11, 15

*\*In re Lupron Mktg. and Sales Practices Litig.*,
228 F.R.D. 75 (D. Mass. 2005)................................................................................................ 22, 23

*In re Medical X-Ray Film Antitrust Litig.*,
 No. CV 9305904, 1997 WL 33320580 (E.D.N.Y. Dec. 26, 1997)................................................ 4

*In re NASDAQ Market-Makers Antitrust Litig.*,
 176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................................................. 5

*In re National Student Marketing Litigation*,
68 F.R.D. 151 (D.D.C.1974)....................................................................................................... 4

*In re Newbridge Networks Sec. Litig.*,
No. 94-01678-cv-LFO, 1998 WL 765724, 1998 U.S. Dist. LEXIS 23238 (D.D.C. Oct. 23, 1998)
..................................................................................................................................................... 14

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,

163 F.R.D. 200 (S.D.N.Y.) 1995) ..................................................................................... 4

*In re Rite Aid Corp. Sec. Litig.,*
146 F. Supp. 2d 706 (E.D. Pa.2001) ............................................................................... 14

*\*In re Vitamins Antitrust Litig.,*
209 F.R.D. 251 (D.D.C. 2002) ....................................................................................... 20

*In re Vitamins Antitrust Litig.,*
305 F. Supp. 2d 100 (D.D.C. 2004)……………………………………………………...12

*In re Vitamins Antitrust Litig.,*
1999-2 Trade Cas. ¶ 72, 726, 1999 WL 1335318, (D.D.C. Nov. 23, 1999) .......................... 11, 12

*Lorazepam v. Mylan Laboratories, Inc., et al.,*
2003 WL 22037741 (D.D.C. June 16, 2003) ....................................................................... 7

*Luevano v. Campbell,*
93 F.R.D. 68 (D.D.C. 1981) ............................................................................................ 7

*Maywalt v. Parker and Parsley Petroleum Co.,*
67 F.3d 1072, 1079 (2nd Cir. 1995) ............................................................................ 26, 27

*McBean v. City of New York,*
233 F.R.D. 377 (S.D.N.Y. 2006) ................................................................................... 12

*McReynolds v. Sodexho Marriott Services, Inc.,*
208 F.R.D. 428 (D.D.C. 2002) ....................................................................................... 21

*Mullane v. Central Hanover Bank & Trust Co.,*
339 U.S. 306 (1950) ..................................................................................................... 27

*\*Osher v. SCA Realty I, Inc.,*
945 F. Supp. 298 (D.D.C. 1996) ................................................................................. 2, 10

*Peters v. Nat'l R.R. Passenger Corp.,*
966 F.2d 1483 (D.C. Cir. 1992) ..................................................................................... 24

*Phillips Co. v. Shutts,*
472 U.S. 797 (1985) ................................................................................................ 23, 27

*Pigford v. Glickman,*
185 F.R.D. 82 (D.D.C. 1999) .......................................................................................... 2

*\*Radosti v. Envision EMI, LLC,*

No. 09-cv-00887 (CKK), 2010 WL 2292343 (D.D.C. June 8, 2010) ......................................... 11

*Reilly v. Tucson Elec. Power Co.,*
512 U.S. 1220, 114 S. Ct. 2707, 129 L. Ed. 2d 834 (1994)........................................................ 27

*Smith v. First Union Nat'l Bank*
958 S.W.2d 113 (Tenn. Ct. App. 1997)..……………………………………………………13

*Sommers v. Abraham Lincoln Federal Savings & Loan Ass'n,*
79 F.R.D. 571 (E.D. Pa. 1978)...................................................................................................... 5

*Sunrise Toyota v. Toyota Motor Co., Ltd.,*
1973-1 Trade Cases ¶ 74,398 at 93, 821, 1973 WL 778 (S.D.N.Y. Feb. 20, 1973) ...................... 5

*Thomas v. Christopher,*
169 F.R.D. 224 (D.D.C. 1996), *aff'd in part and rev'd. in part,* 139 F.3d 227 (D.C. Cir. 1998)...
................................................................................................................................................ 19

*Thomas v. NCO Financial Sys.,*
No. CIV.A. 00-5118, 2002 WL 1773035 (E.D. Pa. July 31, 2002)............................................... 5

*Torres v. Wells Fargo,*
No. 07-cv-5561, 2008 WL 2397460 (N.D. Cal. June 11, 2008)…………………………...…8

*Torrisi v. Tucson Elec. Power Co.,*
8 F.3d 1370 (9th Cir. 1993) ..................................................................................................... 27

*Twigg v. Sears, Roebuck & Co.,*
153 F.3d 1222 (11th Cir. 1998) ................................................................................................ 24

*\*United States v. District of Columbia,*
933 F. Supp. 42 (D.D.C. 1996) .................................................................................................. 2

*\*Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.,*
246 F.R.D. 349 (D.D.C. 2007).................................................................................................. 15

*Wells v. Allstate Ins. Co.,*
210 F.R.D. 1 (D.D.C. 2002)...................................................................................................... 23

*White v. Wachovia Bank,* 5
63 F. Supp. 2d 1358 (N.D. Ga. 2008)…..………………………………………………………8

**Statutes**

D.C. Code § 28:4-303…………………………………………...………………….13

U.C.C § 4-303(b) (2009)..........................................................................................13

**Other Authorities**

Briefs of Appellants and Appellees, *Jan L. Petrus, et al. v. Rhonda J. Closson, et al., and Bank of America, N.A.*, 2010 WL 1747710 (Cal. App. 1 Dist.) (Docket Nos. A125963, A126230, A126606, A126608)…………………………………………………………………………..9

*Bank Fees: Federal Banking Regulators Could Better Ensure That Consumers Have Required Disclosure Documents Prior to Opening Checking or Savings Accounts*, U.S. Government Accountability Office, January 2008……………………………………………………………….9

*Banks Apply Pressure to Keep Fees Rolling In*, New York Times, February 22, 2010………….9

*CFA Survey of Big Bank Overdraft Fees and Terms* Consumer Federation of America, June 2010…………………………………………………………………………………………..9

*CFA Survey: Sixteen Largest Bank Overdraft Fees and Terms*, Consumer Federation of America, July 31, 2009 ...................................................................................................... 9

*CRS Report for Congress: Overdraft/Bounced-Check Protection*, Congressional Research Center, May 13, 2008……………………………………………………………………...9

*Debit Card Danger: Banks Offer Little Warning and Few Choices as Customers Pay a High Price for Debit Card Overdrafts*, Center for Responsible Lending, January 25, 2007…………..9

*Debit Card Overdraft Fees*, The Greenlining Institute, April 2010………………………..…9

*FDIC Study of Bank Overdraft Programs*, Federal Deposit Insurance Corporation. November 2008...................................................................................................................... 9, 13

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §§ 4.21, 4.25 (1992)................ 23

*Manual for Complex Litigation* at § 30.41 (West 1999)............................................. 4, 5

*National Bank Regulator Enabled Overdraft Abuses*, Center for Responsible Lending, February 2010…………………………………………………………………………….…9

*Overdraft Explosion: Bank fees for overdrafts increase 35% in two years*, Center for Responsible Lending, October 6, 2009........................................................................ 9

*Overdraft Fee Litigation and Legislation*, WL 1789 PLI/Corp 319, Practising Law Institute, 2009…………………………………………………………………………………..9

*Overdrawn: Consumers Face Hidden Overdraft Charges From Nation's Largest Banks*, Consumer Federation of America, June 9, 2005………………………………………………..9

*Shredded Security*, Center for Responsible Lending, June 18, 2008 ............................................ 9

**Rules**

12 C.F.R. §205 ....................................................................................................... 1, 9, 16

12 C.F.R. §205.7 ............................................................................................................ 20

12 C.F.R. §205.9 ............................................................................................................ 20

15 U.S.C. §1693c ........................................................................................................... 20

15 U.S.C. §1693h ........................................................................................................... 20

28 U.S.C. § 1332(a)………………………………………………………………………….8

Fed. R. Civ. P. 23(a)(1) .................................................................................................. 19

Fed. R. Civ. P. 23(a)(2) .................................................................................................. 19

Fed. R. Civ. P. 23(a)(3) .................................................................................................. 20

Fed. R. Civ. P. 23(a)(4) .................................................................................................. 22

Fed. R. Civ. P. 23(b)(3) ............................................................................................. 22, 24

Fed. R. Civ. P. 23(c)(2) ............................................................................................. 24, 27

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................. 24

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................................. 24

Fed. R. Civ. P. 26(f) ......................................................................................................... 5

STATEMENT OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On February 17, 2010, Plaintiffs initiated this consumer class action against the

defendant, National City Bank ("National City" or "Defendant"), alleging that National City's

practice of re-sequencing its customers' debit/check card transactions in various ways, including

from highest to lowest monetary value were unlawful, deceptive, and improperly disclosed, and

caused Plaintiffs to incur overdraft fees.   Plaintiffs also alleged that National City's failure to

alert customers that certain debit card and ATM transactions would incur an overdraft fee

violated both District of Columbia and state laws and the federal Electronic Funds Transfer Act.

The litigation commenced in an uncertain and shifting legal and regulatory landscape, and the

subsequent months have witnessed an intensification of such uncertainty.   Developments on the

legal status of overdraft fees include conflicting decisions from different courts,[1] an ongoing trial

in California with wildly varying damages estimates,[2] the promulgation of new overdraft fee

rules by the Federal Reserve,[3] and a major decision by the 11th Circuit that potentially strips the

transferee court in the overdraft fee multidistrict litigation of subject matter jurisdiction.[4]

In this context, Representative Plaintiffs and National City (collectively the "Settling

Parties") engaged in lengthy and intense arms length negotiations that culminated in the

execution of the Settlement Agreement.   The settlement provides valuable monetary benefits for

---

[1] *Compare In re Checking Account Overdraft Litig.*, 694 F.Supp.2d 1302 (S.D. Fla. 2010) (denying defendant banks' omnibus motion to dismiss in the multi-district overdraft proceedings) with *Hassler v. Sovereign Bank*, No. 09-2982, 2010 U.S. App. LEXIS 5445 (3d Cir. Mar. 15, 2010) (affirming dismissal with prejudice of similar claims against Sovereign Bank relating to its overdraft fee practices).

[2] *Gutierrez v. Wells Fargo*, No. 07-cv-05923, 2010 WL 1233810 (N.D. Cal. March 26, 2010)

[3] Federal Reserve Board Regulation E.  12 C.F.R § 205.

[4] *Cappuccitti v. DirecTV, Inc.*, No. 09-14107, 2010 WL 2803093 (11th Cir. July 19, 2010) (holding that subject matter jurisdiction does not exist over diversity cases filed in federal district court, including class actions, unless at least one plaintiff has pleaded a claim exceeding $75,000).

1

Settlement Class Members (as defined in the Settlement Agreement, Ex.1), and readily meets the standard for preliminary approval.  In evaluating a class settlement, courts in this Circuit and others have repeatedly and expressly deferred to the judgment of experienced counsel achieving class-wide settlements through arms-length negotiations.

Indeed, the court's discretion to reject a settlement is "restrained by the 'principle of preference' that encourages settlements." *Pigford v. Glickman,* 185 F.R.D. 82, 103 (D.D.C. 1999); *see also United States v. District of Columbia,* 933 F. Supp. at 42, 47 (D.D.C. 1996) ("'The trial court in approving a settlement need not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy, but need only determine that the settlement is fair, adequate, reasonable and appropriate under the particular facts and that there has been valid consent by the concerned parties.'") (quoting *Citizens for a Better Env't v. Gorsuch,* 718 F.2d 1117, 1126 (D.C. Cir.1983)).  "In the context of class actions, settlement is particularly appropriate given the litigation expenses and judicial resources required in many such suits. 'Absent evidence of fraud or collusion, such settlements are not to be trifled with.'" *Osher v. SCA Realty I, Inc.,* 945 F. Supp. 298, 304 (D.D.C. 1996) (internal citations omitted).

This settlement is more than fair, reasonable, and adequate.  The Settlement Agreement provides, *inter alia*:

> **A.  Settlement Class:** "All persons in the United States who hold or ever held a National City Account who at any time during the Class Period incurred at least one Overdraft Fee associated with at least one National City Debit Card Transaction that was not previously reversed, refunded, or returned to the Settlement Class Member by the Defendant." [Settlement Agreement, ¶ 7]

> **B.  Settlement Fund.** National City shall establish a $12,000,000 Settlement Fund, from which Settlement Class Members may receive reimbursement for Overdraft Fees incurred during any two (2) months during the Class Period. [Settlement Agreement ¶¶ 9, 27]

2

**C.  Notice and Claims Administration.**  National City will pay up to $500,000 for published notice, administration of the settlement, and other notice and administrative costs.  [Settlement Agreement ¶¶ 9].

**D.  Potential Trebling of Settlement Class Member Claims.**  After the costs of Notice and Claims administration (to the extent such costs exceed the $500,000 that National City is required to pay), attorneys' fees, costs, and expenses, and incentive awards are distributed, if the amount of valid claims submitted by Settlement Class Members is less than the amount of money remaining in the Settlement Fund, the remainder shall be distributed on a *pro rata* basis to each Settlement Class Member submitting a valid claim, with each such Settlement Class Member receiving up to (but not to exceed) three times the amount claimed on their Claim Form. [Settlement Agreement ¶ 31 (b)(ii)].

**E.  Attorneys' fees, costs, and expenses.**  Attorneys' fees, costs, and expenses, and incentive awards, subject to the approval of the Court, shall be paid from the Settlement Fund. National City has agreed not to oppose an application for payment of not more than 25% of the Settlement Fund for attorneys' fees [Settlement Agreement ¶¶ 10].

**F.  Cy Pres.**  All amounts remaining in the Settlement Fund after the trebling distribution described above shall be distributed through a *cy pres* to a nonprofit organization or organizations agreed upon by National City and Settlement Class Counsel. [Settlement Agreement ¶¶ 32, 33].

The Settlement Agreement is supported by Representative Plaintiffs and proposed class counsel, Jonathan K. Tycko and Hassan A. Zavareei ("Proposed Settlement Class Counsel"). HAZ Decl. ¶ 2 . The Settlement is intended to resolve all claims relating to National City's assessment of overdraft fees relating to debit/check card transactions during the Class Period (as defined in the Settlement Agreement, Ex. 1).  Representative Plaintiffs submit that the settlement is not only *within the range* of fair, adequate and reasonable under the relevant facts, but *is in fact* fair, adequate and reasonable, and should be preliminarily approved by the Court concurrent with certification of the requested Settlement Class Members. Accordingly, Representative Plaintiffs, by and through Proposed Settlement Class Counsel, respectfully move the Court for entry of an order:

3

(1) Preliminarily approving the settlement as set forth in the Settlement Agreement;

(2) Certifying the Settlement Class;

(3) Appointing Ramona Trombley, Jeff Doehner, and Brian Wells as Representative Plaintiffs;

(4) Appointing as Settlement Class Counsel Hassan A. Zavareei and Jonathan K. Tycko, Tycko & Zavareei LLP; and

(5) Scheduling a Final Fairness Hearing in this matter.

## II.      PRELIMINARY APPROVAL IS APPROPRIATE

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise of claims brought on a class basis.  "The Rule 23 requirements are fully consistent with the long-standing judicial attitude favoring class action settlements." *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 375 (D.D.C. 2002).

Preliminary approval of a proposed settlement is warranted "if the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval[.]"  *Manual for Complex Litigation*, Third, §30.41 (West 1999); *see also In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) ("at this stage of the proceeding, the Court need only find that the proposed settlement fits 'within the range of possible approval'") (citation omitted); *In re Medical X-Ray Film Antitrust Litig.,* No. CV 9305904, 1997 WL 33320580, at *6 (E.D.N.Y. Dec. 26, 1997) ("preliminary approval should be granted and notice of the proposed settlement given to the class if there are no obvious deficiencies in the proposed settlements").

4

Further, it is well-established that courts assume a limited role when reviewing a proposed class action settlement. *In re National Student Marketing Litigation,* 68 F.R.D. 151, 155 (D.D.C. 1974). They should not substitute their judgment for that of counsel who negotiated the settlement. *Sommers v. Abraham Lincoln Federal Savings & Loan Ass'n,* 79 F.R.D. 571, 576 (E.D. Pa.1978). In the context of class actions, settlement is particularly appropriate given the litigation expenses and judicial resources required in many such suits. *See Sunrise Toyota v. Toyota Motor Co., Ltd.,* 1973-1 Trade Cases ¶ 74,398 at 93,821, 1973 WL 778 (S.D.N.Y. 1973).

At the preliminary approval stage, the court does not make a final determination of the merits of the proposed settlement. *Thomas v. NCO Financial Sys.,* No. CIV.A. 00-5118, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002). "Once preliminary approval is bestowed, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *In re NASDAQ Market-Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Here, the facts establish that this is a fair, adequate and reasonable settlement deserving of preliminary approval.

### A.  The Parties Undertook Arms-length Negotiations

Shortly after initiating this case, Proposed Settlement Class Counsel and Defendant's counsel conferred to explore and advance early resolution, as mandated by Fed. R. Civ. P. 26(f). After lengthy negotiations, including dozens of telephone conferences and two in-person settlement conferences, the parties agreed to a settlement on July 28, 2010. There were serious, informed and adversarial negotiations held in arriving at the proposed settlement. HAZ Decl. ¶¶ 21- 23. Additionally, there are no obvious flaws in the settlement or distribution plan, and no segment of the proposed settlement class is unduly favored over any other. *See In re Corrugated*

5

*Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir. 1981); *Manual for Complex Litigation* at

§ 30.41 (noting that where the proposed settlement appears to be the product of "serious,

informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant

preferential treatment to class representatives or segments of the class and falls within the range

of possible approval, preliminary approval should be granted").

Here, Proposed Settlement Class Counsel are experienced litigators in both class action

and other civil litigation.  HAZ Decl. ¶¶ 7, 13.  Proposed Settlement Class Counsel have

litigated—and continue to litigate—numerous other class actions, including *Gregory Geis and*

*Stuart Roper, et al. v. Airborne Health, Inc.*, et al., No. 07-cv-04238 (D. NJ); *Thomas Wong, et*

*al. v. Truebeginnings, LLC, d/b/a/ True.com*, No. 07-cv-01244 (N.D. TX); *Chad Minnick, et al.*

*v. Clearwire US, LLC*, No. 09-cv-00912 (W.D. WA); and *Timothy Hennigan, Aaron McHenry,*

*and Christopher Cocks, et al., v. General Electric Company*, No. 09-cv-11912 (E.D. Mich.), and

have litigated civil actions through trial and appeal.  HAZ Decl. ¶¶ 7, 13.  Proposed Settlement

Class Counsel also represent numerous other plaintiffs in overdraft litigation class actions against

other banks, including *Marlene Willard, et al. v. Fifth Third Bancorp.*, No. 10-cv-00271 (N.D.

Ga.); *Jessica Duval v. Citizens Financial Group, Inc.*, No. 10-cv-21080 (S.D. Fla.); *Mascaro v.*

*TD Bank, Inc.*, No. 10-cv-21117 (S.D. Fla.); *David Johnson, et al v. UMB Bank, N.A. and UMB*

*Financial Corporation d/b/a UMB Bank, N.A.*, No. 10-cv-00654 (W.D. Mo.); *Kelly Mathena v.*

*Webster Bank, N.A.*, No. UWY-CV10-6004890-S (Superior Ct. of Conn., Dist. of Waterbury);

*Thomas Casto, et al. v. City National Bank, N.A.*, 10-cv-01089 (Cir. Ct. Kanawha County, W.

Va.); and *Harold J. Joseph, Jr., et al., v. Commerce Bank, N.A. and Commerce Bancshares, Inc.*

*d/b/a Commerce Bank, N.A.*, No. 10-cv-00685 (Cir. Ct. Jackson County, Mo.).  Two of these

cases are part of coordinated MDL proceedings.  *In re Checking Acct. Overdraft Litig.*, No. 09-

6

MD-02036 (S.D. Fla.).  HAZ Decl.  ¶ 7.  These experienced counsel are strongly of the opinion

that the settlement in this action is fair, adequate, and reasonable (HAZ Decl. ¶ 24), and their

opinion "should be afforded substantial consideration by a court in evaluating the reasonableness

of a proposed settlement."  *Lorazepam v. Mylan Laboratories, Inc.,* 2003 WL 22037741, at *6

(D.D.C. June 16, 2003).

### B.  Proposed Class Counsel Had Sufficient Information To Make A Reasonable Assessment Of The Risks Of Litigation.

"In evaluating the fairness and adequacy of a settlement, it is important to consider

whether the settlement was reached after extensive factual development, so that counsel on both

sides would have had information sufficient to make a reasonable assessment of their risks of

litigation."  *Luevano v. Campbell,* 93 F.R.D. 68, 86 (D.D.C.1981).  In some cases, this

information cannot be gleaned until after hard-fought discovery reveals documents that show

unknown strengths or weaknesses of the class action claims.  But this is not such a case.  Instead,

this is a case that depends primarily upon legal theories that are in continual flux and have been

for many years.  And Proposed Settlement Class Counsel are intimately familiar with these

issues and the ever-changing landscape.

Currently, dozens of cases against dozens of banks have been coordinated by the Judicial

Panel on Multidistrict Litigation before the Honorable James L. King in the Southern District of

Florida.  *In Re: Checking Account Overdraft Litigation,* MDL No. 2036.  Proposed Settlement

Class Counsel brought two lawsuits that are currently pending against two separate banks (TD

Bank and Citizens Bank) as part of those MDL proceedings.  Although Judge King has issued

some rulings favorable to the Plaintiffs in those proceedings, the only decision by a federal court

of appeal is unfavorable to the position of the plaintiffs in the MDL.  *See Hassler v. Sovereign*

*Bank*, No. 09-02982, 2010 WL 89134 (3rd Cir. Mar. 15, 2010).  Other courts have also rendered

opinions unfavorable to Plaintiff's position here.  *See, e.g., Hassler v. Sovereign Bank*, 644 F.

Supp. 2d 509, 512-13 (D.N.J. 2009); *Hill v. St. Paul Federal Bank for Savings*, 329 Ill. App. 3d

705 (1st Dist. 2002) (rejecting claims based on reordering of checks from high to low); *Torres v.

Wells Fargo*, No. 07-cv-5561, 2008 WL 2397460, at *1-2 (N.D. Cal. June 11, 2008) (same); *but

see White v. Wachovia Bank*, 563 F. Supp. 2d 1358 (N.D. Ga. 2008) (denying motion to dismiss

in overdraft fee re-ordering case).

    A recent decision by the 11th Circuit has injected further uncertainty into the legal

landscape surrounding overdraft fee litigation.  *See Cappuccitti v. DirecTV, Inc.*, 2010 WL

2803093 at *4-5.  Already, many of the defendant banks with cases pending in the MDL have

moved to dismiss their cases based on the *Cappuccitti* decision, which held that the plaintiff had

no subject matter jurisdiction in federal court under the Class Action Fairness Act of 2005

("CAFA") because the putative class representative's claimed damages did not reach the $75,000

amount in controversy requirement of 28 U.S.C. § 1332(a).  *Id.* Because the *Cappuccitti* decision

is now binding law in the jurisdiction where the MDL proceedings are pending, the transferee

court may lack subject matter jurisdiction over many, if not all, of the cases that make up the

MDL.[5]  Such an outcome would put into jeopardy any chance of recovery for plaintiffs.

    To date, only one case regarding allegations of unlawful debit card overdraft charges has

gone to trial.  *See Gutierrez v. Wells Fargo*, No. 07-cv-05923, 2010 WL 1233810 (N.D. Cal.

March 26, 2010).  After years of hard-fought and costly litigation, that case remains undecided.

On the other hand, Proposed Settlement Class Counsel believes strongly in the merits of this case

---

[5] Indeed, another class action lawsuit filed against National City and then transferred into the MDL, *Matos v. National City*, No. 10-cv-21771 (S.D. Fla., June 1, 2010), is one such case.  Because that case was filed in Florida, it is clearly subject to the authority of *Cappuccitti* and could potentially be dismissed summarily.

and other cases challenging the banks' debit card overdraft practices.  In short, the greatest risk

facing these claims is how they will be resolved by myriad courts in differing jurisdictions across

the country.  And Proposed Settlement Class Counsel—which now has seven cases regarding

similar practices by other banks—have more than sufficient information to evaluate that risk.

     With respect to the factual information impacting the risks, most of that information is in

the public domain.  These challenged practices have been the subject of intense Congressional

and regulatory scrutiny, as well as investigation by numerous public interest organizations.

These investigations together with other litigation and journalistic investigations have uncovered

a wealth of information.[6]  Proposed Class Counsel carefully cumulated, studied, and applied this

critical factual information to the negotiation of the Settlement Agreement. HAZ Decl. ¶¶ 20-21.

In addition, Proposed Settlement Class Counsel used informal and formal discovery to gather

specific and crucial information regarding National City's overdraft fee practices and revenues.

*Id.* ¶ 21.  They had multiple meetings and conferences with defense counsel and documents and

information was informally provided by National City.  *Id.* ¶ 21.  Prior to settlement, Proposed

---

[6] *See*, for example, *FDIC Study of Bank Overdraft Programs*, Federal Deposit Insurance Corporation, November, 2008; *CRS Report for Congress: Overdraft/Bounced-Check Protection*, Congressional Research Center, May 13, 2008; *Bank Fees: Federal Banking Regulators Could Better Ensure That Consumers Have Required Disclosure Documents Prior to Opening Checking or Savings Accounts*, U.S. Government Accountability Office, January, 2008; *National Bank Regulator Enabled Overdraft Abuses*, Center for Responsible Lending, February, 2010; *Overdraft Fee Litigation and Legislation*, WL 1789 PLI/Corp 319, Practising Law Institute, 2009; *Overdrawn: Consumers Face Hidden Overdraft Charges From Nation's Largest Banks*, Consumer Federation of America, June 9, 2005; Briefs of Appellants and Appellees, Jan L. Petrus, et al. v. Rhonda J. Closson, et al., and Bank of America, N.A., 2010 WL 1747710 (Cal. App. 1 Dist.), Docket Nos. A125963, A126230, A126606, A126608; *Banks Apply Pressure to Keep Fees Rolling In, New York Times*, February 22, 2010; *Overdraft Explosion: Bank fees for overdrafts increase 35% in two years,* Center for Responsible Lending, October 6, 2009; *Debit Card Overdraft Fees*, The Greenlining Institute, April, 2010; *Shredded Security*, Center for Responsible Lending, June 18, 2008; *CFA Survey: Sixteen Largest Bank Overdraft Fees and Terms*, Consumer Federation of America, July 31, 2009; Federal Reserve Board Regulation E. 12 CFR § 205; *CFA Survey of Big Bank Overdraft Fees and Terms*, Consumer Federation of America, June, 2010; *Debit Card Danger: Banks Offer Little Warning and Few Choices as Customers Pay a High Price for Debit Card Overdrafts*, Center for Responsible Lending, January 25, 2007.  HAZ Decl. ¶ 20.

Settlement Class Counsel submitted—and received responses to—written interrogatories both to National City's counsel and to National City Bank. These interrogatories were used to confirm informal exchanges of information prior to the culmination of the negotiations. *Id.* ¶ 21. Confirmatory discovery is also built into the Settlement Agreement. Proposed Settlement Class Counsel have the option to terminate the Settlement Agreement if confirmatory discovery reveals that the settlement is not fair, reasonable, or adequate. *See* Settlement Agreement ¶¶ 41.

In addition, Proposed Settlement Class Counsel reviewed and analyzed both Plaintiff's and Defendant's expert damages reports in *Gutierrez v. Wells Fargo*, No. 07-cv-05923, 2010 WL 1233810 (N.D. Cal. March 26, 2010). HAZ Decl. ¶ 22. Proposed Settlement Class Counsel were able to apply that analysis to projected damages in this case. As such, Proposed Class Counsel possessed well-founded views of the merits of the parties' respective positions and the potential for, and likely amount, of any recovery. HAZ Decl. ¶ 23.

Based on this information, Proposed Settlement Class Counsel concluded that a swift settlement with excellent monetary relief was undoubtedly in the interests of the Settlement Class Members. *Id.*

Under similar circumstances, this Court has repeatedly held that such settlements should be approved. For instance, in *Osher v. SCA Realty I, Inc.,* 945 F. Supp. 298, 306 (D.D.C. 1996), the District Court determined that where the case did not depend on disputed facts, but upon disputed legal issues, the parties could fairly evaluate the merits of their claims without any discovery: "This case has settled very early in the litigation process with little discovery. However, there are few, if any, disputed facts. The case turns on a determination of the authority held by the general partners and the rights held by the shareholders under the Partnership Agreement and the securities in question. A fair evaluation of the claims therefore may be made

10

prior to discovery." *Id. See also Radosti v. Envision EMI, LLC*, Civ. A. 09-887 (CKK), 2010 WL 2292343, *13 (D.D.C. June 8, 2010) ("In determining whether a proposed class action settlement is fair, adequate, and reasonable, courts consider whether counsel had sufficient information, through adequate discovery, to reasonably assess the risks of litigation vis-a-vis the probability of success and range of recovery.  In this case, the parties reached a settlement agreement before formal discovery began.  However, as noted above, Plaintiffs' counsel conducted significant factual investigation into possible class claims and the financial situation of defendant prior to the mediation.  S*ee In re Vitamins Antitrust Litig.*, 1999-2 Trade Cas. ¶ 72, 726, 1999 WL 1335318, *4 (D.D.C. Nov. 23, 1999) ("The pursuit of early settlement is a tactic that merits encouragement; it is entirely appropriate to reward expeditious and efficient resolution of disputes") (internal citations omitted); *Lorazepam Antitrust Litig.*, 205 F.R.D. at 369 ("early settlement of these types of cases is encouraged.").

In short, Proposed Settlement Class Counsel had more than sufficient information to evaluate the merits of its claims against Defendant and to evaluate the adequacy and fairness of ultimate Settlement Agreement reached by the parties.

### C.  The Settlement Provides Excellent Monetary Relief for Settlement Class Members

The relief the Settlement Agreement provides for Settlement Class Members is outstanding.  National City has agreed to create a settlement fund of $12 million to reimburse Settlement Class Members for an unlimited number of overdraft charges suffered during any two months during the period between July 1, 2004 and August 15, 2010, or the date of preliminary approval by this Court of the Settlement Agreement, whichever is earlier.  *See* Settlement Agreement ¶¶ 1(d), 9, 27.  There is no limit on the amount a Settlement Class Member may

recover, and Settlement Class Members submitting valid claims could potentially receive up to three times the amount of reimbursement requested.  In addition, National City has agreed to pay up to $500,000 for notice and administration costs.  *See* Settlement Agreement ¶¶ 9, 15.

In this case, the Court may use two separate benchmarks to evaluate the adequacy of the settlement.  First, the settlement compares favorably with an expert damages analysis performed in ongoing litigation in another case involving overdraft fees, *Gutierrez*.  Proposed Settlement Class Counsel analyzed two expert reports submitted in that case, substituting information provided in discovery by National City and information from publicly available sources to derive an estimate of the damages universe in this case.  HAZ Decl. ¶ 22.  Second, the comparison of settlements of similar cases is an accepted judicial tool for determining whether a settlement is fair, adequate and reasonable.  *See In re Vitamins Antitrust Litig.,* 305 F. Supp. 2d 100, 104 (D.D.C. 2004) (in evaluating class action settlement agreement, court makes comparison with prior, similar settlements).  *See also McBean v. City of New York*, 233 F.R.D. 377, 388–91 (S.D.N.Y. 2006); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003).  When compared to a settlement finally approved by a California State Court in *Closson v. Bank of America N.A.*, No. CGC 04436877 (Cal. Super. Ct. 2009), the substantial and excellent relief provided for by the Settlement becomes readily apparent.  HAZ Decl. ¶ 22, Ex. D.

### 1.   Comparison to Expert Analyses in *Gutierrez*

The range of damages at issue in *Gutierrez v. Wells Fargo* (which implicates Wells Fargo's allegedly unlawful debit card overdrafts by California consumers) is highly relevant here, as the total amount of overdraft fees earned by Wells Fargo during the class period is similar to the total amount of overdraft fees earned by National City in the proposed class period.  Based on information obtained through informal and formal discovery, Proposed Class Counsel

12

have determined National City's overdraft fee revenue is approximately 75% of Wells Fargo's during the respective class periods.

Because the allegations are that the overdraft policies and practices of the banks were similar, damages should be roughly proportional.  The parties in *Gutierrez* produced three separate expert reports – a time-consuming and expensive exercise which involved painstaking analysis of samples of individual accounts and the construction of complicated "but for" scenarios that attempted to recreate a world without particular high-to-low posting policies. Using this method, the *Gutierrez* plaintiff's expert report, when applied to this case, would result in an estimated best possible recovery for the Proposed Settlement Class Members of $52 to $73 million.[7]  The proposed settlement amounts to ***17% to 24%*** of this best possible recovery.

While the Proposed Settlement clearly and easily fits within the range of fair, reasonable and adequate when analyzed against the *Gutierrez* plaintiffs' expert report, that report itself was criticized harshly by defendant Wells Fargo as providing a vastly exaggerated estimate of damages.[8]  When compared to the Defendant's expert report (which deducts overdrafts incurred

---

[7] HAZ Decl. ¶ 22, Ex. B (Supplemental Expert Report of Arthur Olsen).  Plaintiffs estimated damages to be between approximately $69 million and $350 million after accounting for reversals and uncollectables.  However, a number of the damages calculations, including by far the highest calculations of $351 million, $214 million, and $195 million, involved hypothetically processing debit/check card transactions before processing checks – something not currently supported or required by settled law.  *See Hill v. St. Paul Fed. Bank for Sav.,* 329 Ill. App. 3d 705, 263, 768 N.E.2d 322 (2002) (holding that there can be no lack of good faith in acting as authorized by the  UCC); *Fetter v. Wells Fargo Bank Tex., N.A.,* 110 S.W.3d 683 (Tex. App. 2003) (adopting the holding in *Hill,* the court recognized that the legislature authorized Wells Fargo's practice of high to low posting); *Daniels v. PNC Bank, N.A.,* 137 Ohio App. 3d 247, 738 N.E.2d 447 (2000) (holding that the plaintiff had the insurmountable task of persuading the court that a statutorily authorized procedure constitutes an act of bad faith and unfair dealing); *Smith v. First Union Nat'l Bank,* 958 S.W.2d 113 (Tenn. Ct. App. 1997)  (holding that in light of the UCC, the bank had discretion to pay items in a manner convenient to it and the court could not substitute its judgment for the bank's because doing so would be undermining the fundamental purposes of the statute).  *See also* Supplemental Expert Report of Arthur Olsen (Sequencing Orders 1A, 2A, 3A).  The Uniform Commercial Code (UCC) generally endorses high-to-low posting of checks in U.C.C. § 4-303(b) (2009) (adopted by D.C. at D.C. Code § 28:4-303). Once this erroneous assumption is removed, Plaintiffs' highest damages estimate falls from $351 million to $98 million.
[8] Wells Fargo's expert attacked the *Gutierrez* plaintiffs' estimates on the basis that, for example, the damages should not include some of the overdraft fees incurred by people who repeatedly overdraft their accounts because those

13

by "chronic overdrafters"), the Proposed Settlement compares even more favorably.  That

report's best estimate of damages, when applied to this case, is between $3.75 and $24 million,

depending on whether an accountholder is deemed to have notice after 1, 5, or 10 discrete

banking days in which overdraft fees were incurred.  The Proposed Settlement amounts to *52%

to 333%* of these more likely possible recoveries.

This range is much higher than what has been accepted in other cases as an acceptable

range of recovery.  *See In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C.

Oct. 23, 1998) ("Courts have not identified a precise numerical range within which a settlement

must fall in order to be deemed reasonable; but an agreement that secures roughly *six to twelve

percent* of a *potential* trial recovery, while preventing further expenditures and delays and

eliminating the risk that no recovery at all will be won, seems to be within the targeted range of

reasonableness.") (first emphasis added, second emphasis in original); *see also In re Baan Co.

Sec. Litig*., 284 F. Supp. 2d 62, 65-66 (D.D.C. 2003) ("Given these risks and uncertainties, a

settlement for $32.5 million in cash represents a substantial recovery and is within the range of

reasonableness. According to Plaintiffs, that number is over *16%* of their estimated damages in a

best case scenario, and between *32.5%* and *54%* of the damages estimated by Defendants'

expert.") (emphasis added);  *In re Rite Aid Corp. Sec. Litig.,* 146 F. Supp. 2d 706, 715 (E.D. Pa.

2001) (noting that since 1995, class action settlements have typically recovered "between 5.5%

and 6.2% of the class members' estimated losses").

---

customers were on notice of Wells Fargo's ordering practices, yet still opted to engage in behavior that resulted in
overdraft fees from high to low reordering. Taking this latter variable into consideration, Wells Fargo's expert
calculated the damages as ranging between $5.4 million and $31.5 million—depending on how many overdraft
transactions a customer was allowed before being deemed to have notice.  *See* Report of Alan J. Cox in Support of
Defendant Wells Fargo's Motion for Summary Judgment and/or to Decertify Class, at 47, 51.  HAZ Decl., Ex. C.

*This monetary recovery (ranging from 17% to 333% of damages)* is certainly much more favorable than approved in other cases.  Moreover, the Court must consider this recovery in light of the risks of litigation (where one legal decision could wipe out the entire case) and the value of Settlement Class Members receiving money now and not three (3) or more years from now, if ever.  *See Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.,* 246 F.R.D. 349, 362 (D.D.C. 2007) ("even if Plaintiffs had prevailed at trial, it is likely that any verdict would have been followed by an appeal, which might have further delayed the final resolution of this case [...] [b]y contrast, the settlement negotiated by the parties provides for relatively prompt recovery") (internal citations omitted); *see Lorazepam Antitrust Litig.*, 205 F.R.D. at 375, ("The fact that this settlement amount is less than the total estimated damages is not surprising and ultimately does not render the terms of the settlement unfair, unreasonable, or inadequate in the Court's opinion, as several additional factors should be taken into consideration.  Continued litigation of these lawsuits would undoubtedly require substantial additional pretrial preparation and expense, as the defendants have denied all liability [...] [f]urther litigation also entails substantial risks").

### 2.   Comparison to Settlement of Similar Case

The second benchmark, the comparison of settlements of similar cases, also proves the Proposed Settlement to be more than fair, adequate and reasonable.  The *Closson* defendant was Bank of America, a company which reported assets of over 8 to 12 times those of National City during the relevant time period,[9] and the settlement provided for Bank of America to establish a $35 million settlement fund from which settlement class members could seek relief for harms

---

[9] Bank of America had between $1.2 trillion in assets (2005) and $1.8 trillion in assets (2008) before its acquisition of Wachovia in 2009.  National City had assets between $142 billion (2005) and $143 billion (2008) during the same time period.

suffered during a seven (7) year class period, not to exceed $78 per settlement class member.

*See Closson v. Bank of America N.A.*, No. CGC 04436877, Final Settlement Agreement, ¶ 10

(Cal. Super. Ct. July 30, 2008) (hereinafter "Closson Settlement").  Despite the fact that National

City reported assets of, on average, less than a tenth of those of Bank of America during the

relevant time period, the Settlement Agreement provides for a monetary settlement that is over

one-third of the size of the $35 million settlement fund created in *Closson*. Settlement

Agreement ¶ 9; Closson Settlement ¶ 10.  Because the settlement fund at issue is *proportionally*

*four times as large* as that in *Closson*—and covers a class period 2 years shorter than the one in

*Closson*—the Settlement is well within the ballpark of the range of reasonable settlement

amounts.[10]  Further, in *Closson* an artificial cap on the amount a class member could recover

resulted in most of the settlement fund ($17 million of the $35 million fund) going to a *cy pres*

recipient.  Such a result is highly unlikely in this proposed settlement, which has no such

artificial cap and which provides for up to a trebling of claimed damages for proposed Settlement

Class Members.

In the event that all of the funds are not distributed to the Settlement Class Members

(after trebling), the remainder of funds would go to a *cy pres* distribution.  Settlement Agreement

¶ 32, 33.  This *cy pres* shall be distributed to a nonprofit organization or organizations agreed

upon by National City and Settlement Class Counsel, and approved by the Court.

The proposed settlement should also be viewed in light of the Federal Reserve's new

overdraft fee regulations, effective August 15, 2010, which will require customers to "opt-in" to

overdraft protection.  *See* 12 C.F.R. § 205.  In the absence of an opt-in, a bank would not be

---

[10] Moreover, the amount an individual class member can seek to recover is uncapped, as opposed to *Closson* where the class members could only be reimbursed up to $78.  *Compare* Settlement Agreement ¶ 26 with *Closson* Settlement ¶ 10.

allowed to authorize transactions at the point of sale or at an ATM that it knows would result in an overdraft fee. *Id.* Going forward, such a reform presumably means customers will have had adequate notice prior to incurring overdraft fees.

### D.  The Settlement Fairly Allocates the Settlement Fund

The proposed fund distribution is fair, adequate and reasonable.  Because Plaintiffs' case is premised upon the improper notice allegedly provided by National City to its customers regarding overdraft fees, it makes good sense that the proposed allocation of the settlement fund also takes such legal theories into consideration.  *See* Settlement Agreement ¶ 27.  Pursuant to the Settlement Agreement, a Settlement Class Member may specify on the claim form the total number of overdraft fees that the Settlement Class Member incurred during any two months.  Or, the Settlement Class Member could elect to have the Claims Administrator determine the number of overdraft fees incurred on the claimant's highest two months using the best available data provided by National City.  By allowing Settlement Class Members to claim a refund of the total number of overdraft fees imposed on any two months, the allocation benefits all members of the Settlement Class, but does not unduly benefit those members who chronically made overdraft or insufficient funds transactions over many months or years.

The two month allocation also comports with rational theories of the case, one of which is that National City failed to adequately disclose the policies it used to assess overdraft fees, making it nearly impossible for many reasonable and diligent customers to avoid the imposition of these fees.  At some point, it could be argued that customers likely did become aware of the Bank's overdraft policies, and had either actual or constructive knowledge of the policies. National City could reasonably argue that it would be unfair to reward those customers who continually and chronically made overdraft transactions, even after notice.  It cannot be disputed

17

that chronic overdrafters—those persons who continued to incur overdraft fees even well after actual or constructive notice of National City's policies—would have a more difficult time convincing a judge or a jury that they are entitled to compensation.  The proposed allocation of settlement funds properly accounts for this reality.

## III.     CERTIFICATION OF THE SETTLEMENT CLASS

Prior to granting preliminary approval of a class action settlement, it is appropriate for a Court to certify a class for settlement purposes.  *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  The settling parties have stipulated, for settlement purposes only, to the following definition of the Settlement Class:

> All persons in the United States who hold or ever held a National City Account who at any time during the Class Period incurred at least one Overdraft Fee associated with at least one National City Debit Card Transaction that was not previously reversed, refunded, or returned to the Settlement Class Member by the Defendant.

Settlement Agreement ¶ 7.

The proposed Settlement Agreement is fair, adequate and reasonable, does not disclose any ground for the Court to doubt its fairness, and meets the requirements of Rule 23.  Thus, respectfully, the Settlement Class should be certified.

### A.  The Settlement Class Meets All the Requirements for Class Certification Pursuant to Rule 23(a) of the Federal Rules of Civil Procedure

Rule 23(a) sets forth the following prerequisites for certifying a class:  "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately

18

protect the interests of the class."  Fed. R. Civ. P. 23(a).  These requirements are all satisfied in this matter.

### 1.   The Class is Sufficiently Numerous Because Joinder of All Members of the Class is Impracticable

Fed. R. Civ. P. 23(a)(1) requires a showing that "the class is so numerous that individual joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  There is no specific threshold that must be surpassed in order to satisfy the numerosity requirement; rather, the determination "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Northwest, Inc. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).  That said, courts in this jurisdiction have observed that a class of at least forty members is sufficiently large to meet this requirement.  *See, e.g., Thomas v. Christopher,* 169 F.R.D. 224, 237 (D.D.C. 1996), *aff'd in part and rev'd. in part,* 139 F.3d 227 (D.C. Cir. 1998). The Settlement Class is estimated to include hundreds of thousands of persons.  Thus, the numerosity requirement is satisfied.

### 2.   There are Questions of Law and Fact Common to the Settlement Class

Commonality requires that the plaintiff raise claims which rest on "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This rule does not require that "every issue of law or fact be the same for each class member."  *Bynum v. District of Columbia,* 217 F.R.D. 43, 46 (D.D.C. 2003).  Rather, "[t]he commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Coleman v. Pension Benefit Guar. Corp.,* 196 F.R.D. 193, 198 (D.D.C. 2000) (internal quotation marks omitted).  Because the commonality requirement may be satisfied by a single common

issue, courts have noted that it is "often easily met." *In re Vitamins Antitrust Litig.,* 209 F.R.D.

251, 259 (D.D.C.2002).

Questions of law and fact common to all Settlement Class Members exist, and include,

*inter alia*:

a.  Whether National City's practice of re-sequencing Settlement Class Members' debit/check card transactions by monetary value prior to processing such transactions violated applicable consumer protection statutes;

b.  Whether National City's deposit agreement with Settlement Class Members constitutes an enforceable contract, and, if so, whether said deposit agreement expressly authorized National City to re-sequence Settlement Class Members' debit/check card transactions by monetary value prior to processing such transactions;

c.  Whether National City's practice of re-sequencing Settlement Class Members' debit/check card transactions by monetary value prior to processing such transactions breached the covenant of good faith implied into any contract between Settlement Class Members and National City Bank;

d.  Whether Defendant was unjustly enriched as the result of re-sequencing Settlement Class Members' debit/check card transactions from highest to lowest amount prior processing such transactions; and

e.  Whether Defendant violated Regulation E, including 12 C.F.R. §205.7 and 12 C.F.R. §205.9, and the Electronic Funds Transfer Act, including 15 U.S.C. §1693c and §1693h.

These legal and factual questions are common to each member of the Settlement Class.

Therefore, the commonality requirement is satisfied.

### 3.  Representative Plaintiffs' Claims are Typical of Those of the Settlement Class

Typicality is satisfied when "the claims or defenses of the representative parties are

typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Typicality requires that

the claims of the representative be typical of those of the class. Fed. R. Civ. P. 23(a)(3).  The

typicality requirement and the commonality requirement "tend to merge" because both serve as "guideposts" as to whether a particular class action is practical and whether the claims of the plaintiff and class are sufficiently interrelated to protect the class members in their absence. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364 (1982).

Representative Plaintiffs' claims arise from the same course of conduct as the other Settlement Class Members' claims.  Representative Plaintiffs and all other Settlement Class Members were subject to the same policy of National City of re-sequencing certain debit/check card transactions, and all incurred overdraft fees as a result of said policy.  Additionally, Representative Plaintiffs and all other Settlement Class Members claims are premised on the same legal theories.  Accordingly, the typicality requirement is satisfied.

### 4.   Rule 23(a)'s Adequacy Requirement is Satisfied

The fourth and final requirement of Rule 23(a) requires that the court determine whether the proposed representatives can adequately represent the interests of the class.  In making this determination, the court must be assured that (1) the proposed representative does not have any conflicts of interest with other class members; and (2) that the representative will vigorously prosecute the interests of the class through qualified counsel.  *McReynolds v. Sodexho Marriott Services, Inc.,* 208 F.R.D. 428, 446 (D.D.C. 2002).

Representative Plaintiffs do not have any claims antagonistic to or in conflict with those of the other Settlement Class Members, as Representative Plaintiffs are pursuing the same legal theories as the rest of the Settlement Class relating to the same course of Defendants's conduct. Additionally, Proposed Settlement Class Counsel have an extensive background in litigating complex litigation and consumer class actions, have been appointed class counsel in prior cases, and have the resources necessary to prosecute this action to its conclusion.  *See* HAZ Decl. ¶¶ 6-

21

13, 19, Ex. A (Resume of Tycko & Zavareei LLP).  Thus, the adequacy requirement of Rule 23(a)(4) is satisfied.

### B.  The Requirements of Rule 23(b)(3) are Satisfied

Rule 23(b)(3) authorizes class actions to proceed where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  "The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  *Id.*  "In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve the economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 92 (D. Mass. 2005) (citing *AmchemProds., Inc. v. Windsor*, 521 U.S. 619, 615 (1997)).  Where, as here, a court is deciding on the certification question in the context of a proposed settlement class, questions regarding the manageability of the case for trial purposes do not have to be considered.  *Amchem*, 521 U.S. at 619.  The remaining elements or Rule 23, however, continue to apply in settlement-only certification situations.  *Id.* at 619.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *In re Lupron*, 228 F.R.D. at 91 (*citing*

*Amchem*, 521 U.S. at 623).  "Rule 23(b)(3) does not require that *all* questions of law or fact be common; it only requires that the common questions *predominate* over individual questions." *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981) (emphasis added); s*ee generally* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §§ 4.21, 4.25 (1992).  As demonstrated *supra* at Section IV. A.2 when addressing commonality, several issues of law and fact common to all Settlement Class Members are present in this mater.  These common issues of law and fact predominate over any potential individual issues which may arise, as they could be resolved through the presentment of proof common to all Settlement Class Members.  Thus, the predominance requirement of Rule 23(b)(3) is satisfied.

Additionally, the superiority requirement of Fed. R. Civ. P. 23(b)(3) is satisfied.  Under this requirement, "maintaining the present action as a class action must be deemed by the court to be superior to other available methods of adjudication.  A case will often meet this standard when 'common questions of law or fact permit the court to consolidate otherwise identical actions into a single efficient unit.'"  *Bynum v. Dist. Of Columbia,* 217 F.R.D. 43, 49 (D.D.C. 2003) (citations omitted).  *See also Wells v. Allstate Ins. Co.,* 210 F.R.D. 1, 12 (D.D.C. 2002) ("Rule 23(b)(3) favors class actions where common questions of law or fact permit the court to 'consolidate otherwise identical actions into a single efficient unit.'").

A class action is not only the most desirable, efficient, and convenient mechanism to resolve the claims of the Settlement Class, but it is almost certainly the only fair and efficient means available to adjudicate such claims.  *See, e.g., Phillips Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("[c]lass actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [in such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available").  Individual Settlement Class Members likely would

be unable or unwilling to shoulder the great expense of litigating the claims at issue against Defendants given the comparatively small size of each individual Settlement Class Members' claims. Thus, it is desirable to adjudicate this matter as a class action.

## IV.  NOTICE

Pursuant to Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement . . . ."  Pursuant to Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances."  The purpose of notice is to "afford members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment."  *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173–74 (1974)).  Further, notice must fairly describe the litigation and the proposed settlement and its legal significance. *See, e.g., Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) ("[The notice] must also contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average absentee class member[.]"); *Bennett v. Behring Corp.*, 96 F.R.D. 343, 353 (S.D. Fla. 1982), *aff'd,* 737 F.2d 982 (11th Cir. 1984) ("It is not the function of the settlement notice to fully inform the class of all the details of the settlement, but merely to put class members on notice of the general parameters of the settlement and to inform them of where information as to specifics may be obtained").  Notice provided for in the Proposed Settlement satisfies the requirements of Rule 23 and all relevant Due Process concerns.  Settlement Agreement ¶¶ 14-19.

Federal Rule of Civil Procedure 23(c)(2) provides that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort."

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173, 94 S.Ct. 2140, 2150, 40 L.Ed.2d 732 (1974). The Settlement provides for such individual notice. Virtually all Settlement Class Members, whether current or former customers of National City, will receive a mailed Summary Notice and Claim Form. Settlement Agreement ¶¶ 15, 16. The envelopes containing the Summary Notice and Claim Form will contain a prominent "call out" to alert Settlement Class Members that the envelope includes important legal information. Settlement Agreement ¶ 17, 18.

In addition to the individual notice discussed above, and despite the fact that the vast majority of Settlement Class Members will receive notice by direct mail, notice will also include a publication element. Settlement Agreement ¶ 19 (a), (b). Published notice will also be effected in the form of single, daily insertion in the top circulation newspaper in 22 designated market areas that include 92% of National City branch locations and a joint press release in the form of a party-neutral, Court-approved statement issued to approximately 4,490 major press outlets throughout the United States. *Id.* Additionally, as noted above, a toll-free informational phone number will be made available to Settlement Class Members. Settlement Agreement, Exhibits 3, 4, 5.

Finally, an informational website will be established and will contain documents and other information regarding the Settlement. Settlement Agreement ¶ 19 (c). A link to this website will be placed on PNC.com. Settlement Agreement ¶ 19 (d). The website will also allow Settlement Class Members to fill-out and submit claim forms electronically, and to print claims forms. Settlement Agreement ¶ 19 (c).

## A.  Contents of Notice

The proposed Detailed Notice, Summary Notice, Claim Form, and Published Notice are attached to the Settlement Agreement, which is attached as Exhibit 1. The Notice includes a fair

summary of Settling Parties' respective litigation positions; the general terms of the settlement as set forth in the Settlement Agreement; instructions for how to opt-out of or object to the settlement; the process and instructions for making a claim; and the date, time, and place of the Final Fairness Hearing.  *Id.*

The content of the proposed notice is more than sufficient because it "fairly apprise[s] the ... members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings."  *See Maywalt v. Parker and Parsley Petroleum Co.,* 67 F.3d 1072, 1079 (2nd Cir. 1995) (internal quotations omitted).  The notice will provide class members with information on the class, the purpose and timing of the fairness hearing, opt-out procedures and deadlines, and the deadline and process for filing claims packages.  In addition, it will provide a telephone number that proposed Settlement Class Members may use to the extent they have any questions.  Settlement Agreement, Exhibits 3, 4, 5.

### 1.  Opting Out

The notice clearly explains that any member of the Settlement Class who wishes to opt out of the Settlement Class must individually sign and timely submit written notice ("notice of exclusion") clearly manifesting his or her intent to be excluded from the Settlement Class to the designated Post Office box established for such purpose.  *Id.*  To be effective, written notice must be postmarked at least twenty-one (21) days prior to the date as set by the Court in the Notice for the Final Fairness Hearing.  *Id.*

### 2.  Objecting

The notice will also clearly explain that any member of the Settlement Class who wishes to object to the settlement must timely file a written statement of objection with the Court.  *Id.*  Because the notice is to be mailed to all known class members with 100 days of this Court's

26

preliminary approval of the Settlement Agreement, Proposed Settlement Class Members are provided nearly six weeks before the fairness hearing and a month before the deadline for comments.   Proposed Settlement Class Members are provided with ample time to submit any objections.  *See Maywalt v. Parker and Parsley Petroleum Co.,* 67 F.3d at 1079; *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1374-75 (9th Cir. 1993), *cert. denied sub nom. Reilly v. Tucson Elec. Power Co.,* 512 U.S. 1220, 114 S. Ct. 2707, 129 L. Ed. 2d 834 (1994).

### B.  Scope of Notice

In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), the United States Supreme Court described the due process standard for notice as "[n]otice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314; *see also Shutts*, 472 U.S. at 812. The proposed notice is comprehensive and more than satisfies this standard, as it provides for written notice to be provided directly by First Class U.S. mail to the vast majority of Settlement Class Members.  It is beyond dispute that notice by first class mail – such as that contemplated in the Notice Plan – ordinarily satisfies Rule 23(c)(2)'s requirement that class members receive "the best notice practicable under the circumstances." *See, e.g., Eisen,* 417 U.S. at 173-75, 94 S.Ct. at 2150-51.

## V.   CONCLUSION

WHEREFORE, based on foregoing, Representative Consumer Plaintiffs respectfully request that the Court enter an Order:

(1) Preliminarily approving the settlement as set forth in the Settlement Agreement;

(2) Certifying the Settlement Class;

(3) Appointing Ramona Trombley, Jeff Doehner, and Brian Wells as Representative Plaintiffs;

(4) Appointing as Settlement Class Counsel Hassan A. Zavareei, Tycko & Zavareei LLP; and

(5) Scheduling a Final Fairness Hearing in this matter.

Dated: July 28, 2010

*Proposed Settlement Class Counsel*,

___/s/ Hassan Zavareei_____
Hassan A. Zavareei
Jonathan K. Tycko
Jeffrey D. Kaliel
**Tycko & Zavareei LLP**
Suite 808
2000 L Street, N.W.
Washington, D.C. 20036
(202) 973-0900

## <u>List of Exhibits</u>

Settlement Agreement ........................................................................................................... 1

Declaration of Hassan A. Zavareei .......................................................................................... 2

Proposed Order ..................................................................................................................... 3

## Certificate of Service by Electronic Means

I, Hassan A. Zavareei, one of the attorneys for Plaintiffs, hereby certify that the proceeding document was caused to be served electronically this 28th of July 2010, pursuant to ECF as to Filing users, and that I shall comply with LR 5.5 as to any party who is not a filing user or represented by a filing user.

/s/ Hassan Zavareei