## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

RAMONA TROMBLEY, et. al.,
on behalf of herself and all others similarly
situated,

                        Plaintiffs,

      -v-

NATIONAL CITY BANK,

                        Defendant.

Civil Action No. 1:10-CV-00232

Judge John D. Bates

## OBJECTIONS OF ROBERT MATOS TO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

Robert Matos, the named plaintiff in *Matos v. National City Bank*, S.D. Fla. Case No. 10-cv-21771, an overlapping class action made part of Multidistrict Litigation Proceeding No. 2036, *In re Checking Account Overdraft Litigation*, assigned to the Hon. James Lawrence King (the "Overdraft MDL"), by and through his counsel, including Plaintiffs' Lead Counsel and the Plaintiffs' Executive Committee appointed by Judge King to represent the interests of National City customers in the Overdraft MDL, respectfully submits the following objections to the proposed Class Action Settlement Agreement (the "settlement") in this case.

## I.    <u>INTRODUCTION</u>

The proposed settlement is fundamentally flawed and the Court should reject it and deny Plaintiffs' request for preliminary approval.

First, the claims-made structure is unnecessary and unduly burdensome to class members. National City evidently has access to the records necessary to calculate each class member's share of damages.  Plaintiffs have not articulated any reason why, on the record here, a claims process is justified.

Second, far from ensuring fair compensation to the putative class, the proposed claims-made structure, if accepted, would guarantee an inequitable and irrational distribution of benefits.  The proposed allocation of settlement funds arbitrarily limits compensation to random two month periods, regardless of whether damages were actually suffered at other times.  Nevertheless, class members' claims would be released for an entire six year period.  The proposed allocation has no relation to, and fails to compensate for, class members' actual harm.

Third, because Plaintiffs failed to obtain discovery sufficient to perform an independent analysis of the damages resulting from the bank's conduct at issue, neither Plaintiffs nor the Court is capable of evaluating the adequacy of the relief in the proposed settlement.  In the absence of a factual record, Plaintiffs rely on nothing more than conjecture, attempting to "justify

by analogy" the amount of monetary relief in the proposed settlement.  While the consideration was clearly inadequate at the time this settlement was negotiated, it became even more suspect earlier this week when the Honorable William H. Alsup, on a full evidentiary record after a two week bench trial, awarded $203 million in restitution in *Gutierrez v. Wells Fargo Bank*, Case No. C07-05923 WHA (N.D. Cal.), a class action on behalf of Wells Fargo's California customers that raised claims based on the same operative facts as those asserted here.  In her preliminary approval papers, Plaintiffs asserts that the $12 million settlement consideration compares favorably to the expected outcome in *Gutierrez*.  In light of the recent decision by Judge Alsup, Plaintiffs' comparisons are not only faulty but completely surrender to the bank's defenses.

Finally, contrary to Plaintiffs' suggestion, the Eleventh Circuit's recent decision in *Cappuccitti v. DirecTV, Inc.*, -- F.3d --, 2010 WL 2803093 (11th Cir. July 19, 2010), even if it stands, provides no justification whatsoever for approving a settlement *in this case* that is neither fair, adequate, nor reasonable.

For these reasons, the proposed settlement cannot be found to be fair, reasonable, and adequate, even under the relatively low bar applied at the preliminary approval stage, and the Court should deny preliminary approval.

## II.   ARGUMENT

### A.   Since Plaintiffs Failed to Conduct Significant Pre-Settlement Discovery or Any Independent Damages Analysis, the Adequacy of the Proposed Settlement Cannot Be Properly Evaluated.

The slim record before the Court does not support a finding that the proposed settlement will provide adequate compensation to the customers of National City.  To the contrary, what little evidence there is demonstrates the settlement is inadequate.

"'In determining whether a proposed class action settlement is fair, adequate, and reasonable, courts consider whether counsel had sufficient information, through adequate

discovery, to reasonably assess the risks of litigation vis-à-vis the probability of success and range of recovery.'" *Radosti v. Envision EMI, LLC*, --- F.Supp.2d ----, 2010 WL 2292343, at *19 (D.D.C. Jun. 8, 2010) (quoting *Meijer, Inc. v. Warner Chilcott Holdings Co.*, 565 F. Supp. 2d 49, 57 (D.D.C. 2008)); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 35 (3d Cir. 2001) ("This factor captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating.") (citation omitted).

Plaintiffs' preliminary approval papers reveal that she failed to conduct significant discovery prior to agreeing to the proposed settlement. Apparently, no documents were requested, produced or reviewed, and no depositions were taken. The only discovery Plaintiffs seem to have propounded were some interrogatories that were neither submitted with, nor described in any meaningful way in, Plaintiffs' preliminary approval papers. *See* Motion at 7, 9-10.[1]

The absence of discovery here necessarily made it impossible for Plaintiffs to properly evaluate the merits of their claims. It also made it impossible for Plaintiffs to perform any reliable, independent analysis of the potential class damages in this case and, indeed, no such analysis has been performed. Under these circumstances, the Court is without a sufficient basis to evaluate the adequacy of the proposed settlement, and approval is *not* appropriate. *See*

---

[1] Plaintiffs' failure to conduct *actual* discovery prior to settlement cannot be cured by some undefined "informal" exchange of information between the parties, which by definition is non-adversarial. Nor can it be cured by the brief, 30 day period of "confirmatory discovery" provided for in the proposed Settlement—much of which has already elapsed—which is cooperative in nature and intended solely to justify the Settlement. *See* Proposed Settlement, ¶ 41; *Moore v. Halliburton Co.*, 2004 WL 2092019, at *7 (N.D. Tex. Sept. 9, 2004) ("Confirmatory discovery, by its very nature, is not adversarial. In contrast pretrial negotiations and discovery must be sufficiently adversarial so that they are not designed to justify a settlement [but are] an aggressive effort to ferret out facts helpful to prosecution of the suit.") (citing *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)).

*Reynolds v. Beneficial Nat'l Bank*, 238 F.3d 277, 280-285 (7th Cir. 2002) (criticizing approval of class settlement where reliable damages estimate was lacking and warning of "the practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant."); *Reynolds v. Beneficial Nat'l Bank*, 260 F. Supp. 2d 680 (N.D. Ill. 2003) (declining to approve settlement on remand and disqualifying class counsel because they attempted to settle case without first undertaking sufficient discovery to estimate class damages); *In re Microsoft Antitrust Litig.*, 185 F. Supp. 2d 519, 526-527 (D. Md. 2002) (declining to grant preliminary approval to proposed class action settlement where the record contained insufficient "information by which to . . . reach a conclusion as to a reasonable range of value").

In lieu of an actual damages analysis, Plaintiffs' attempt to justify the amount of the monetary relief in the proposed settlement via comparison to two other cases relating to overdraft fees, *Gutierrez* and *Closson v. Bank of America*, Case No. CGC 04436877 (San Francisco Superior Court) ("*Closson*").  First, such an "adequacy by analogy" argument cannot substitute for the efforts Plaintiffs and their counsel were required to undertake to evaluate the potential range of recovery *in this case*.

Moreover, Plaintiffs' reliance on *Gutierrez* and *Closson* is entirely misplaced.  Even before Judge Alsup issued the $203 million restitution award in *Gutierrez*, the record in that case hardly supported the $12 million settlement amount here.  Indeed, after presiding over *Gutierrez* through summary judgment and issuing numerous opinions about the most significant legal issues presented in that case,[2] Judge Alsup *refused* to grant preliminary approval to a proposed

---

[2] *See Gutierrez v. Wells Fargo Bank, N.A.*, 2008 WL 4279550 (N.D. Cal. Sept. 11, 2008);

$16 million settlement (exclusive of attorneys' fees) for Wells Fargo's California customers only, finding that plaintiffs had a "strong claim"[3] and that $16 million was not even "in the ballpark [or] even close to a reasonable settlement."  *See* Heller Decl., Ex. B (Transcript of 5/13/09 Hearing) at 3:9-6:18.   In their preliminary approval papers, Plaintiffs represent that "National City's overdraft fee revenue is approximately 75% of Wells Fargo's during the respective class periods."  Thus, even assuming that by "Wells Fargo" Plaintiffs means "Wells Fargo in California" (which is unclear from Plaintiffs' papers), and even ignoring the fact that the proposed $12 million settlement amount includes attorneys' fees while the rejected $16 million settlement in *Gutierrez* did not, and even ignoring the fact that the claims prosecuted in *Gutierrez* were narrower than the claims here, the court in *Gutierrez rejected—at preliminary approval*—what is proportionately the same settlement as the parties are proposing here (*i.e.*, $12 million is 75 percent of $16 million).

Plaintiffs' attempt to use the expert damages analyses in *Gutierrez* to support this proposed settlement is completely misguided.  Plaintiffs' damages expert in *Gutierrez*, Arthur Olsen, presented a series of damages analyses, each based on comparisons of the overdraft fees that Wells Fargo charged to what it would have charged under various alternative sequencing scenarios.  Wells Fargo made multiple, unsuccessful attempts to discredit and exclude Mr. Olsen's damages analyses, including through the competing testimony of its own damages

---

*Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 2009 WL 1246988 (N.D. Cal. May 5, 2009); *Gutierrez v. Wells Fargo & Co.*, 2009 WL 1246689 (N.D. Cal. May 5, 2009); *Gutierrez v. Wells Fargo & Co.*, 2009 WL 1247040 (N.D. Cal. May 5, 2009); *Gutierrez v. Wells Fargo & Co.*, 2010 WL 1233810 (N.D. Cal. Mar. 26, 2010).

[3] Judge King, who presides over the Overdraft MDL, similarly found that the various overdraft cases centralized in that proceeding have "legs," denying the defendant banks' omnibus motion to dismiss and, along with it, their principal legal defenses to liability.  *See* Declaration of Roger Heller, submitted herewith ("Heller Decl."), Ex. A (Order Ruling on Omnibus Motions to Dismiss).

expert.   Attempting to support their conclusion that the proposed $12 million settlement here "amounts to 17% to 24% of the best possible recovery" based on the damages analysis in *Gutierrez*, *see* Motion at 12, Plaintiffs disregard the vast majority of Mr. Olsen's damages models (*i.e.,* the ones that resulted in higher restitution amounts) and imply those damages models were somehow too far fetched even to consider.   In fact, one of the damages scenarios that Plaintiffs simply ignore is the very scenario that Judge Alsup used to calculate the $203 million in restitution to the class, after hearing extensive testimony from both parties' damages experts regarding Mr. Olsen's various damages models.   *See* Heller Decl., Ex. C (*Gutierrez* Findings After Trial), at 85-89.

In any event, the fact that the plaintiff class in *Gutierrez* prevailed on claims that are substantially similar to claims raised in this case, after a bench trial, and were awarded over $200 million in restitution, calls into serious doubt the adequacy of the $12 million proposed settlement here.   This is particularly so given that the restitution award in *Gutierrez* was limited to just one of the practices at issue in this case: the re-sequencing of debit card transactions.[4]

Plaintiffs' reliance on *Closson* and the settlement in that case is similarly misplaced.   Not only was the *Closson* settlement agreed to, and approved by the trial court, well before Judge Alsup's restitution award in *Gutierrez*, it also remains the subject of multiple, vigorously prosecuted appeals challenging its adequacy, which has not been established and may never be. *See* Heller Decl., Ex. D (Appellants' Opening Brief in *Closson*).   Moreover, unlike this case, the plaintiff in *Closson* did *not* challenge the legality of the bank's re-ordering of debit card

---

[4] *See* Heller Decl., Ex. C at 88 ("In his analysis, Expert Olsen calculated the differential between the number of overdraft fees that were *actually* assessed on customers during the class period and the number of overdraft fees that *would have been* assessed on customers [had they been sequenced chronologically].   Overdraft fees that would have been assessed on customers no matter what ordering was used by the bank were excluded from the differential.") (emphasis in original).

transactions; rather, *Closson* was a false advertising case that challenged the truth of some limited, discrete advertising describing the bank's posting practices.  *See id*.  By its nature, therefore, *Closson* was a far more limited case, and the amount of the settlement in that case is not a proper benchmark for determining what a fair settlement would be here.

In short, neither the Court, the parties, nor the putative class members deciding whether to exercise their opt-out rights can properly evaluate the adequacy of the proposed settlement here, and an "adequacy by analogy" exercise, if anything, suggests that the settlement amount proposed here is hopelessly inadequate.  Accordingly, the Court should deny preliminary approval.

**B.**     **The Proposed Allocation of Settlement Proceeds is Arbitrary and Inequitable.**

The "[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate."  *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) (citations and internal quotations omitted); *see also In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494 (D.D.C 1981).  "The court's principal obligation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund."  *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 964 (3d Cir. 1983).

Here, the proposed allocation of settlement funds is manifestly unfair and unreasonable. It allows class members to claim a refund *only* for overdraft charges assessed during two calendar months, while proposing to release their claims for over *six years* of overdraft charges. The proposed settlement provides in pertinent part:

> A Settlement Class Member shall be eligible to claim compensation for each Overdraft Fee that the Settlement Class Member incurred during any two calendar months during the Class Period [defined as July 1, 2004 to August 15, 2010].

When submitting a Claim Form, a Settlement Class Member may request that the Claims Administrator determine the two calendar months during the Class Period in which the Settlement Class Member incurred the larges number of Overdraft Fees.   The Claims Administrator shall be entitled to rely on the data provided by National City pursuant to paragraph 15 to make that determination.

Alternatively, when submitting a Claim Form, a Settlement Class Members may specify any two calendar months during the Class Period in which the Settlement Class Member incurred Overdraft Fees and the number of Overdraft Fees incurred during those specified months.

Each Settlement Class Member shall submit no more than one Claim Form, regardless of the number of Overdraft Fees such Settlement Class Member may have been charged during the Class Period as a result of the use of a National City Debit Card.  In the event that a Settlement Class Member files multiple Claim Forms, only the valid Claim Form claiming the highest amount of Overdraft Fees will be honored.

* * *

If the aggregate amount of submitted claims does not exceed the remainder of funds remitted from the Escrow Account, . . . [e]ach Settlement Class Member who submitted a valid Claim Form shall receive $36 for each Overdraft Fee determined by the Claims Administrator . . . or claimed by the Settlement Class Member on the Claim form. . . . If there are still funds remaining in the Escrow Account, the remainder shall be distributed on a pro rata basis with each Settlement Class member receiving up to . . . three times the amount [of their claim]. . . . If the aggregate value of submitted claims exceeds the remainder of funds remitted from the Escrow Account, the funds available to be distributed to Settlement Class Members shall be distributed to Settlement Class Members who submitted valid Claim Forms on a pro rata basis.

Proposed Settlement Agreement ¶¶ 1(d), 27, 30, 31.  Thus, under the proposed settlement, many class members would recover a small fraction of their damages, but would release any claims they have as to overdraft charges wrongfully assessed over the course of the entire six year class period.  The proposed "two calendar month" limitation for claiming a refund of overdraft fees is likewise manifestly unfair and inequitable.  Under this limitation, a class member who paid a

*larger* total amount of overdraft charges over the entire class period would receive less compensation than a class member who paid fewer total overdraft fees, but who incurred a larger portion of the fees during a particular two month period.  For example, a class member who incurred $1,000 in improper overdraft charges over the class period, but no more than $100 in improper overdraft charges during any two calendar months within that period, would be allocated a portion of the settlement fund based on only $100 (*i.e.*, 10 percent of their damages), while a class member who incurred $200 in improper overdraft charges over the class period, but incurred them all within two calendar months, would be allocated a portion of the settlement fund based on *twice* this amount ($200)—even though he sustained only *20 percent* of the other class member's damages.

This arbitrary misallocation of settlement funds is exacerbated by how the proposed settlement treats any funds remaining after the initial distribution.  Instead of using these excess funds or residue to reimburse class members for overdraft charges they incurred *outside* of the chosen two calendar months, the proposed settlement instead would use that money to pay up to treble damages to class members on charges that have already been fully refunded as part of the initial distribution.

Plaintiffs attempt to rationalize this proposed allocation with the conclusory assertion that it "comports with rational theories of the case."  Motion at 17.  Plaintiffs then theorize that "[a]t some point, it could be argued that customers likely did become aware of the Bank's overdraft policies, and had either actual or constructive knowledge of the policies.  National City could reasonably argue that it would be unfair to reward those customers who continually and chronically made overdraft transactions, even after notice."  This same argument was implicitly rejected in *Gutierrez*, where Judge Alsup declined to adopt Wells Fargo's expert's proposed

damage analysis that sought to discount damages by eliminating so-called "chronic overdrafters" from the recovery class, and rejected "constructive knowledge" or "actual knowledge" inferences that Wells Fargo attempted to draw with respect to one of the named plaintiffs.  Plaintiffs accept this highly speculative argument without any supporting evidence or legal analysis, and are willing to *severely* discount the relief for the class (producing clear inequities with respect to the proposed allocation of settlement funds) on the basis of this argument alone.

While courts on occasion have tolerated differences in the treatment of class members in distributing settlement funds, they have done so only "when real and cognizable differences exist" between the "likelihood of ultimate success" for different plaintiffs.  *In re Lucent Technologies, Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 649 (D.N.J. 2004).  Courts have approved this type of merit-based weighting only where certain class members have asserted additional claims or substantially different claims from other class members.  *In re PaineWebber LTD Partnerships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997) (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 220 (5th Cir. 1981).  No such differences exist here that would justify anything other than a straight *pro rata* allocation based on the damages sustained by each class member over the entire six year class period.  The plan of allocation embodied in the proposed settlement is arbitrary and inequitable, necessitating denial of preliminary approval.

### C.    The Claims Process is Unnecessary and Unduly Burdensome.

The proposed settlement requires class members to submit claims in order to recover from the settlement fund.  *See* Proposed Settlement ¶ 26.  The record in this case does not justify such a claims-made distribution.  It is evident from the proposed settlement that National City has all the information required to determine each class member's share of damages.  *See* Proposed Settlement ¶ 15.  A claims process here is unnecessary and unduly burdensome to class members, and could very well result in a significant amount of the settlement fund not being

distributed to class members at all. Indeed, a "claims-made" settlement of similar overdraft charge litigation against Wells Fargo resulted in the payment of only 104 claims at $20 each, out of a "claims-made" settlement fund of $3,000,000. *See* Heller Decl., Ex. E (Declaration of Daniel G. Lamb, Jr. re *Smith v. Wells Fargo Bank, N.A., et al.* Settlement) , ¶¶ 12(c), 19.

### D. The *Cappuccitti* Decision Does Not, and Cannot, Justify Approval of an Unfair Settlement

Plaintiffs assert that the Eleventh Circuit's recent decision in *Cappuccitti*, 2010 WL 2803093, "injected further uncertainty into the legal landscape surrounding overdraft fee litigation." Motion at 8. *Cappucitti* addressed the question of whether federal courts have original jurisdiction under the Class Action Fairness Act of 205 ("CAFA") to adjudicate certain class actions that allege only state law claims and do not involve a plaintiff with an individual claim of $75,000 or more. *See id.* Plaintiffs imply that this purported "further uncertainty" somehow should influence the Court's evaluation of the reasonableness of the proposed settlement here. The Eleventh Circuit's holding in *Cappuccitti*—that such original jurisdiction does not exist under CAFA—is not supported by the plain language or the legislative history of CAFA, and runs directly contrary to every other federal decision that has considered the issue. Heller Decl., Ex. F; *see also id.*, Ex. C at 82 (Judge Alsup rejected *Cappuccitti* and held that the Court had subject matter jurisdiction under CAFA). Two petitions for *en banc* review of the *Cappuccitti* decision are currently pending. *See* Heller Decl., Exs. F, G.

Even if *Cappuccitti* were to remain the law in the Eleventh Circuit, it is purely a jurisdictional holding and does not, in any way, affect the strength of the substantive claims at issue in this case or the numerous other overdraft-related cases against National City and the other banks. Nor does it eliminate consumers' rights to recover damages for the harm they suffered as a result of the conduct at issue in these cases. Moreover, it does not support approval

of a class action settlement, as here, that fails to satisfy basic, well-established standards for settlement approval. Instead, the issues raised in this case should be aggressively prosecuted on behalf of the class—whether in this case, in the *Matos* action in the Overdraft MDL, or in some other action against National City.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny preliminary approval of the proposed settlement.

Dated:  August 13, 2010.

Respectfully submitted,


_____*/s/  Eric B. Fastiff*_____
Eric B. Fastiff
District of Columbia Bar No. 453854
**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery Street, 29th Floor
San Francisco, CA  94111
(415) 956-1000

Bruce S. Rogow
Robert C. Gilbert
District of Columbia Bar No. 420950
**Alters Law Firm, P.A.**
4141 N.E. 2nd Avenue
Miami, FL  33137
(305) 571-8550

Michael W. Sobol
Roger Heller
**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery Street, 29th Floor
San Francisco, CA  94111
(415) 956-1000

Ruben Honik
**Golomb & Honik, P.C.**
1515 Market Street, Suite 1100
Philadelphia, PA  19102
(215) 985-9177

Robert C. Josefsberg
Victor M. Diaz, Jr.
Peter Prieto
John Gravante, III
**Podhurst Orseck, P. A.**
City National Bank Building
25 W Flagler Street, Suite 800
Miami, FL  33130-1780
(305) 358-2800

Ted E. Trief
Barbara E. Olk
**Trief & Olk**
150 E 58th Street, 34th Floor
New York, NY  10155
(212) 486-6060

E. Adam Webb
G. Franklin Lemond, Jr.
**Webb, Klase & Lemond, L.L.C.**
1900 The Exchange SE, Suite 480
Atlanta, GA 30339
(770) 444-9325

Russell W. Budd
Bruce W. Steckler
Melissa K. Hutts
Mazin Sbaiti
**Baron & Budd, P.C.**
3102 Oak Lawn Ave., Suite 1100
Dallas, TX  75219
(214) 521-3605

Plaintiffs' Lead Counsel and Plaintiffs' Executive Committee in *In re Checking Account Overdraft Litigation*, MDL No. 2036 (S. D. Fla.)

*Counsel for Objector Robert Matos*