# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

RAMONA TROMBLEY, et. al.,
on behalf of herself and all others similarly
situated,

  Plaintiffs,

 -v-

NATIONAL CITY BANK

  Defendant.

Civil Action No. 1:10-CV-00232

Judge John D. Bates

## SUPPLEMENTAL MEMORANDUM OF OBJECTOR ROBERT MATOS IN FURTHER SUPPORT OF OBJECTIONS TO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................... 1

II. ARGUMENT ................................................................................................... 4

    A.    *Cappuccitti* Does Not Divest The Court of Subject Matter
           Jurisdiction ............................................................................................ 4

    B.    Approval of the Proposed Settlement Here Would Have a
           Significant Adverse Impact on Pending and Future Claims Against
           National City and Other Banks, and on the Orderly Litigation of
           Claims in MDL 2036. ........................................................................... 7

           1.    The Proposed Settlement Would Extinguish Claims
                  Pending in MDL 2036 Against National City, to the
                  Detriment of Class Members. ...................................................... 7

           2.    The Proposed Settlement Would Also Release Claims
                  Pending in MDL 2036 Against PNC Bank, An Entity That
                  is Not Even Part of This Case. ..................................................... 8

           3.    The Proposed Settlement Disrupts the Orderly Prosecution
                  of the Claims Pending In MDL 2036 in a Manner That
                  Compromises the Best Interests of Consumers. ........................... 9

III. CONCLUSION .............................................................................................. 13

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bonime v. Avaya, Inc.*,
  547 F.3d 497 (2d Cir. 2008) ............................................................... 6

*Cappuccitti v. DirecTV, Inc.*,
  --- F.3d ---, 2010 WL 2803093 (11th Cir. Jul. 19, 2010) ................................. 1, 4, 5

*DiCarlo v. St. Mary Hosp.*,
  530 F.3d 255 (3d Cir. 2008) ............................................................... 6

*Evans v. Walter Industries, Inc.*,
  449 F.3d 1159 (11th Cir. 2006) ............................................................ 6

*Gutierrez v. Wells Fargo Bank, N.A,*
  --- F.Supp.2d ----, 2010 WL 3155934 (N.D. Cal. Aug. 10, 2010) ........................... 3, 6

*Miedema v. Maytag Corp.*,
  450 F.3d 1322 (11th Cir. 2006) ............................................................ 6

*Nat'l Consumers League v. General Mills, Inc.*,
  680 F.Supp.2d 132 (D.D.C. 2010) .......................................................... 6

*Pretka v. Kolter City Plaza II*,
  608 F.3d 744 (11th Cir. 2010) ............................................................. 6

*Radosti v. Envision EMI, LLC*,
  --- F.Supp.2d ----, 2010 WL 2292343 (D.D.C. Jun. 8, 2010) ............................... 6

*Savedoff v. Access Group, Inc.*,
  524 F.3d 754 (6th Cir. 2008) ............................................................. 6

*Thomas v. Bank of America Corp.*,
  570 F.3d 1280 (11th Cir. 2009) ............................................................ 6

*Wexler v. United Air Lines, Inc.*,
  496 F.Supp.2d 150 (D.D.C. 2007) .......................................................... 6

## STATUTES

28 U.S.C. § 1332(a) ........................................................................ 1

**TABLE OF AUTHORITIES**
(continued)

Page

28 U.S.C. § 1332(d)(2) ........................................................................... 4

28 U.S.C. § 1332(d)(6) ........................................................................... 4

28 U.S.C. § 1332(d)(11)(B)(i) ................................................................ 5

28 U.S.C. § 1453 .................................................................................... 5

28 U.S.C. §1446 ..................................................................................... 5

**OTHER AUTHORITIES**

151 Cong. Rec. H723-01, 2005 WL 387992 ........................................... 6

Pub. L. 109-2, 119 Stat. 4 ...................................................................... 4

S. Rep. 109-14, 109th Cong., 1st Sess. 2005, 2005 WL 627977............... 5

Pursuant to the Court's August 18, 2010 Order requesting further briefing (Dkt. No. 13), Objector Robert Matos submits this Supplemental Memorandum In Further Support Of Objections To Plaintiffs' Motion For Preliminary Approval Of Proposed Class Action Settlement.  In response to the Court's Order, Objector Matos states as follows:  (a) the Eleventh Circuit's decision in *Cappuccitti v. Direct TV*[1] does not divest this Court of subject matter jurisdiction; and (b) approval of the proposed Settlement here would release claims pending in MDL 2036 not only against National City Bank ("National City"), but also certain claims pending against PNC Bank, and would further disrupt the orderly prosecution of claims in, and undermine the purpose of, MDL 2036 to the detriment of consumers throughout the country.

## I.    **INTRODUCTION**

In response to Plaintiffs' pending motion for preliminary approval of the proposed class Settlement and the Objections of Robert Matos to Plaintiffs' Motion for Preliminary Approval of Proposed Class Action Settlement filed thereto (Dkt. No. 11) ("Matos Objection"), the Court asked for further briefing regarding two issues: (1) whether subject matter jurisdiction exists over Plaintiffs' claims in this case and, in particular, whether the amount in controversy requirement of 28 U.S.C. § 1332(a) applies under the Class Action Fairness Act ("CAFA"), and if so, whether one or more Plaintiffs have satisfied that requirement; and (2) the extent of the impact of the proposed Settlement here (if approved) on other class actions against National City and/or MDL 2036.

As to the first issue, the Court has subject matter jurisdiction over the claims here.  The Eleventh Circuit's stand-alone holding in *Cappuccitti* conflicts with the plain statutory language and legislative history of CAFA, is directly at odds with prior decisions by courts in this Circuit, the Eleventh Circuit, and elsewhere, and will likely be the subject of *en banc* proceedings in the

---

[1] *Cappuccitti v. DirecTV, Inc.*, --- F.3d ---, 2010 WL 2803093 (11th Cir. Jul. 19, 2010).

near future.

As to the second issue, the proposed Settlement here, if approved, would not only extinguish forever the class claims against National City in the currently pending *Matos* action in MDL 2036,[2] it would also, by its terms, release claims of PNC Bank customers that are pending in MDL 2036, even though PNC Bank is not a party in this case and no claims against PNC Bank have ever been alleged or litigated here.  This would significantly harm the many thousands of class members in these pending actions against National City and PNC Bank because, as discussed below, it would release their claims in exchange for insufficient relief and unreasonable settlement terms and conditions that were hastily agreed to by Plaintiffs' counsel here, Tycko & Zavareei LLP ("Tyco & Zavareei"), without having conducted any litigation, taken any meaningful discovery, or undertaken any independent analysis of the damages suffered by the class.

As set forth in the Matos Objection (Dkt. No. 11), the proposed Settlement is fundamentally flawed in numerous respects, including with respect to the low amount of monetary relief.  In their preliminary approval motion, Tycko & Zavareei attempt to justify the modest settlement amount—$12 million, inclusive of $3 million in attorneys' fees—by analogizing this case to *Gutierrez v. Wells Fargo Bank, N.A.*, N.D. Cal. Case No. C07-05923 WHA ("*Gutierrez*").  Their preliminary approval motion was filed in this case on July 28, 2010, about two weeks before the Honorable William H. Alsup issued his August 10, 2010 ruling after trial in *Gutierrez*.  In his ruling, Judge Alsup awarded $203 million in restitution to a class that is comparable in size to the proposed Settlement class here, based on conduct (*i.e.*, the re-sequencing of debit card transactions to increase the number of account overdrafts) that is

---

[2] *Matos v. National City Bank*, S.D. Fla. Case No. 10-cv-21771.

essentially the same as the conduct alleged here.[3]  Even before Judge Alsup's recent ruling, *Gutierrez* did not support the settlement amount here.  In fact, earlier in the *Gutierrez* case, Judge Alsup flatly rejected as "not even in the ballpark" a proposed settlement that was more favorable to the class than the proposed Settlement here.  The proposed Settlement here is structurally flawed as well.  The allocation of settlement funds would arbitrarily limit compensation to two month periods, regardless of whether damages were actually suffered at other times, while releasing class members' claims for damages suffered during a six year period.  Moreover, the claims-made structure for monetary relief is unduly burdensome to class members and is unnecessary here.

Further, in addition to its direct impact on the claims pending against National City and PNC Bank in MDL 2036, the proposed Settlement is part of what appears to be a disturbing pattern of self-serving and deliberate conduct by Tycko & Zavareei, whereby they are attempting to quickly settle related actions against banks before they can reach MDL 2036.  The circumstances surrounding Tycko & Zavareei's conduct, which is ongoing, strongly support the conclusion that Tycko & Zavareei are essentially filing these cases to settle them, rather than to prosecute them.  Tycko & Zavareei's conduct threatens to significantly undermine the effective management of class actions pending against other banks in MDL 2036, as well as class actions brought against other banks which will be made part of MDL 2036 in the future, and threatens to leave millions of consumers throughout the country—including the class members here— inadequately compensated, while significantly enriching Tycko & Zavareei.

---

[3] Judge Alsup found that Wells Fargo's re-sequencing practices are "draconian" and motivated by "gouging and profiteering."  *See Gutierrez v. Wells Fargo Bank, N.A*, --- F.Supp.2d ----, 2010 WL 3155934 (N.D. Cal. Aug. 10, 2010).

II.   **ARGUMENT**

    A.    ***Cappuccitti* Does Not Divest The Court of Subject Matter Jurisdiction.**

      The Eleventh Circuit's recent decision in *Cappuccitti* does not divest the Court of subject matter jurisdiction here.  In *Cappucitti*, the court held that at least one plaintiff must allege damages of over $75,000 for original federal jurisdiction to exist in a class action with minimal diversity.  This stand-alone holding is not binding here, will likely be the subject of *en banc* proceedings in the Eleventh Circuit, and is clearly in error.

      The Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 ("CAFA"), provides that district courts sitting in diversity "shall have original jurisdiction of any class action" where the proposed class contains at least 100 members and the aggregate amount in controversy, excluding interest and costs, exceeds $5 million.  28 U.S.C. § 1332(d)(2) and (d)(6).  Effectively overriding this clear statutory grant, *Cappuccitti* would impose an additional, individual amount-in-controversy requirement that is nowhere to be found in the text of the statute, based on the erroneous and unsupported assumption that the separate provision granting original jurisdiction in ordinary civil actions—28 U.S.C. § 1332(a)—limits CAFA's grant of original jurisdiction in class actions.  *Cappuccitti*, *supra*, 2010 WL 2803093, at *3-4.

      *Cappuccitti*'s reasoning is fatally flawed because no provision connects the two positive grants of jurisdiction; nothing in the text or legislative history of CAFA suggests that the affirmative grant of jurisdiction in Section 1332(a) in any way limits the affirmative grant of jurisdiction in Section 1332(d).  To the contrary, Section 1332(d)'s grant of original jurisdiction over class actions is clear and unequivocal—and not limited by *any* individual amount-in-controversy requirement.  This Court need look no further.

      The legislative history, moreover, strongly confirms the statute's plain meaning.  The members of the Senate Judiciary Committee explained that Section 1332(d) responds to the pre-CAFA reality that large class actions "must usually be heard in state court (because each individual class member's claim is for less than $75,000). . . . [I]t will be much easier to

determine whether the amount in controversy presented by a purported class as a whole (that is, in the aggregate) exceeds $5 million[.]" S. Rep. 109-14, 109th Cong., 1st Sess. 2005, 2005 WL 627977, at *11, 70. Thus, contrary to *Cappucciti*, the framers of CAFA intended to alter what they deemed a "nonsensical" state of affairs, and authorize original federal jurisdiction where *each* individual class member's claim is for less than $75,000. *Id*. at *11.

The panel in *Cappuccitti* attempts to justify its novel holding by citing the provision in CAFA that defines a "mass action" as a civil action involving claims that can be removed to federal court if they are asserted by plaintiffs who allege individual injuries of more than $75,000, and if certain other requirements are met. *See Cappuccitti*, *supra*, 2010 WL 2803093 at *4 (citing 28 U.S.C. § 1332(d)(11)(B)(i)). The court ignores that CAFA's mass action provisions are separate and distinct from its class action provisions.[4] If Congress intended to impose an individual amount-in-controversy requirement when it extended original jurisdiction to class actions with more than $5 million in total alleged damages and minimal diversity, it would have done so—as it did with mass actions. While the court in *Cappuccitti* reasons that its holding might harmonize CAFA original jurisdiction with CAFA removal jurisdiction, in fact the holding introduces an enormous inconsistency in federal jurisdiction. Class actions that are *not* mass actions can be removed to federal court under 28 U.S.C. §§ 1453 and 1446 even if no plaintiff alleges harm exceeding $75,000. The erroneous import of *Cappuccitti* is that all class actions founded in diversity in which no plaintiff alleges over $75,000 in harm *must* be filed in state court.

Because very few class actions based on state-law claims ever involve individual injuries that exceed $75,000, *Cappuccitti* would shut the federal courthouse door to a wide range of class action plaintiffs. Requiring the vast majority of class actions to be filed in state court flatly contradicts not just the terms of the statute, but Congressional intent as well. "The bottom line is

---

[4] "Mass actions" (a term invented by Congress) are rarely filed. They tend to be mass torts cases involving serious physical injury, as opposed to the economic injury sustained by the class in a consumer protection case like this one.

that new section 1332(d) is intended to substantially expand Federal court jurisdiction over class actions, not to create loopholes.  This provision should be read broadly, with a strong preference that interstate class actions should be heard in a Federal court[.]"  151 Cong. Rec. H723-01, 2005 WL 387992, at *H730.

The courts in this Circuit have never grafted any individual amount-in-controversy requirement onto CAFA's express jurisdictional hurdles.  *See, e.g., Nat'l Consumers League v. General Mills, Inc.*, 680 F.Supp.2d 132, 136 (D.D.C. 2010) (listing the requirements for diversity jurisdiction under CAFA); *Wexler v. United Air Lines, Inc.*, 496 F.Supp.2d 150, 155 (D.D.C. 2007) (stating that CAFA requires minimal diversity of citizenship between the parties and $5,000,000 aggregate amount in controversy); *see also Radosti v. Envision EMI, LLC*, --- F.Supp.2d ----, 2010 WL 2292343, * 2, 8 (D.D.C. Jun. 8, 2010) (jurisdiction under CAFA where individual claims were significantly less than $75,000).  In fact, the panel's decision in *Cappuccitti* conflicts with numerous previous decisions by the Eleventh Circuit itself.[5] Likewise, courts in other Circuits have consistently found that CAFA does not include a separate, individual amount-in-controversy requirement.[6]

In the only post-*Cappuccitti* opinion that Objector can find that has considered this question, Judge William H. Alsup of the United States District Court for the Northern District of California rejected the holding in *Cappuccitti*, concluding that there is no individual amount-in-controversy requirement under CAFA.  *See Gutierrez*, *supra*, ---F.Supp.2d ---, 2010 WL

---

[5] *See, e.g., Pretka v. Kolter City Plaza II*, 608 F.3d 744, 772 (11th Cir. 2010) ("Under CAFA the claims of 'the individual class members shall be aggregated' for purposes of determining the amount in controversy." (quoting 28 U.S.C. § 1332(d)(6)); *Thomas v. Bank of America Corp.*, 570 F.3d 1280, 1283 (11th Cir. 2009); *Evans v. Walter Industries, Inc.*, 449 F.3d 1159, 1163-65 (11th Cir. 2006); *Miedema v. Maytag Corp.*, 450 F.3d 1322 (11th Cir. 2006).

[6] *See, e.g., Bonime v. Avaya, Inc.*, 547 F.3d 497, 499-500 (2d Cir. 2008); *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 261 (3d Cir. 2008); *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 760 n.5 (6th Cir. 2008); *Gutierrez*, *supra*, --- F.Supp.2d ----, 2010 WL 3155934, at * 56 (rejecting holding in *Cappuccitti*).

3155934 at * 56 ("Nowhere in Section 1332(d) are the jurisdictional requirements of Section 1332(a) cross-referenced, except for the removal of 'mass actions' from state court.").

The panel's decision in *Cappuccitti* will likely be subject to *en banc* proceedings in the near future.  Indeed, both plaintiffs and defendant in the case have filed petitions asking for *Cappuccitti* to be reversed *en banc*, and the United States Chamber of Commerce has filed an *amicus curiae* brief supporting the *en banc* reversal of the holding as well.  *See* Declaration of Robert C. Gilbert, filed herewith ("Gilbert Decl."), Exs. K-M (*en banc* petitions and *amicus curiae* brief).

Accordingly, *Cappuccitti* in no way divests this Court of subject matter jurisdiction over this case.[7]

> **B.      Approval of the Proposed Settlement Here Would Have a Significant Adverse Impact on Pending and Future Claims Against National City and Other Banks, and on the Orderly Litigation of Claims in MDL 2036.**
>
> **1.      The Proposed Settlement Would Extinguish Claims Pending in MDL 2036 Against National City, to the Detriment of Class Members.**

If approved, the proposed Settlement would forever release the class claims alleged in *Matos*, a nationwide class action against National City that is part MDL 2036.  This would harm the class in *Matos* because, as set forth in the Matos Objection filed in this case (Dkt. No. 11), the proposed Settlement provides insufficient consideration for the class and contains other

---

[7] Plaintiffs' suggestion in this case that *Cappuccitti* calls into question whether MDL 2036 will be able to proceed before Judge King, and thus justifies the hasty, inadequate settlement here, is completely misguided.  First, as discussed herein, the holding in *Cappuccitti* is clearly erroneous and will likely be the subject of *en banc* review in the Eleventh Circuit soon.  Moreover, even in the unlikely event that *Cappuccitti* were to remain the law in the Eleventh Circuit, it is purely a jurisdictional holding and does not, in any way, affect the strength of the substantive claims at issue in this case or the numerous other overdraft-related cases against National City and the other banks.  Nor does it eliminate consumers' rights to recover damages for the harm they suffered as a result of the conduct at issue in these cases.  Moreover, it does not support approval of a class settlement, such as the one proposed here, that fails to satisfy basic, well-established standards for settlement approval.  The claims against National City should be aggressively prosecuted on behalf of the consumers affected by the conduct at issue, and *Cappuccitti* does nothing to change that.

unreasonable terms and conditions.   Among other problems:

- The proposed Settlement was hastily agreed to (*just one day before* the Panel was scheduled to consider whether to make final its order transferring this action to MDL 2036) without the benefit of any meaningful discovery or independent analysis of the damages the class members suffered, making it impossible for the parties or the Court to properly evaluate whether the settlement is fair for the class members.  *See* Matos Objection at 2-7.

- Based on the available information, the proposed settlement amount here—$12 million, which *includes* a *$3 million* fee for Tycko & Zavareei—appears to be significantly unfair to the class, particularly in light of the $203 million restitution award ordered by Judge Alsup in *Gutierrez v. Wells Fargo*, a substantially similar case.  *See id.*[8]

- The proposed Settlement arbitrarily limits compensation to class members to two month periods, regardless of whether damages were actually suffered at other times, while releasing the class members' claims for damages suffered over a *six year period*.  This distribution plan would guarantee the inequitable and irrational distribution of settlement funds.  *See id.* at 7-10.

- The proposed Settlement includes an unduly burdensome claims process that is not justified on the record here.  *See id.* at 10-11.

> **2.** **The Proposed Settlement Would Also Release Claims Pending in MDL 2036 Against PNC Bank, An Entity That is Not Even Part of This Case.**

By its terms, the proposed Settlement would also adversely impact class claims in

multiple actions pending in MDL No. 2036 against PNC Bank, an entity that is not even part of

this action.  PNC Bank acquired National City in approximately November 2009.  *See* Gilbert

Decl., ¶ 29.  After PNC Bank acquired National City, the former National City customers

became PNC Bank customers, and were thereafter subject to PNC Bank's policies and practices.

---

[8] Plaintiffs' counsel's attempt, in their motion for preliminary approval, to use the expert damages analyses in *Gutierrez* to support the settlement amount here was wildly misguided even before Judge Alsup issued his $203 class restitution award.  Indeed, in order to make their argument, counsel simply disregarded the majority of the *Gutierrez* expert's damages scenarios (*i.e.,* the ones that generated larger damages), including the scenario that Judge Alsup ultimately adopted in calculating restitution for the class.  *See* Matos Objection at 5-6.

The complaint in this case raises claims only against National City, and makes allegations with respect to the conduct of National City only.  Accordingly, PNC Bank's practices, and the claims of PNC Bank's customers arising from conduct by PNC Bank, are not covered by this action. Nevertheless, the proposed Settlement includes a broad release that would settle and release the claims of some PNC Bank customers (*i.e.*, those who are former National City customers) against PNC Bank based on its conduct,[9] even though PNC is not a defendant in this action and even though those claims have never been alleged or litigated here.  In this regard, the proposed Settlement would improperly compromise—again, in exchange for unreasonable settlement terms and conditions—the claims of consumers whose claims have been pending against PNC Bank in MDL 2036 since February 2010.  Under the judicially-created organizational structure in MDL 2036, Tycko & Zavareei have absolutely no authority to negotiate on behalf of plaintiffs or absent class members in the actions pending against PNC Bank in MDL 2036.  *See* Gilbert Decl., ¶¶ 4-5, 29.

**3.**     **The Proposed Settlement Disrupts the Orderly Prosecution of the Claims Pending In MDL 2036 in a Manner That Compromises the Best Interests of Consumers.**

MDL 2036 was created to promote the efficient litigation of the growing number of lawsuits filed against various banks concerning essentially the same practices and involving essentially the same claims (*i.e.*, claims related to the re-sequencing of debit card transactions and related practices), and to ensure the consistent handing of such related claims and actions.

---

[9]  The release in the proposed Settlement encompasses any claims against the "Released Parties" "that was or could have been asserted based, in any way, upon the assessment of one or more Overdraft Fees associated with the use of a National City Debit Card."  Settlement, ¶ 37. "Released Parties" is defined to mean "National City and PNC."  Settlement, ¶ 1(w).  "National City Debit Card" is defined to include "a debit card, check card or any other bank card issued by PNC following National City's merger into PNC, to customers who were formerly customers of National City."  Settlement, ¶ 1(o).

To date, class actions against approximately 30 banks have been coordinated in MDL 2036 for

pre-trial proceedings, including class actions against both National City and PNC Bank. *See*

Gilbert Decl., ¶¶ 3, 7-9. The Honorable James Lawrence King (S.D. Fla.), appointed to preside

over MDL 2036, has instituted an organizational structure in MDL 2036 to help ensure the

efficient and orderly management of the litigation. *See id.*, ¶¶ 4-5.

The proposed Settlement here is part of what appears to be a disturbing and continuing

pattern of self-serving conduct by Plaintiffs' counsel, Tycko & Zavareei, that threatens to

undermine the organizational structure established by Judge King in MDL 2036, and, in turn, the

orderly prosecution of the numerous related claims in MDL 2036. Specifically, despite being

counsel of record in MDL 2036 and despite having made repeated representations that they

wanted to prosecute cases within the organizational structure of MDL 2036, Tycko & Zavareei

have embarked on a mission of filing related cases against banks and trying to avoid the

inclusion of such cases in the MDL 2036. *See* Gilbert Decl., ¶¶ 16-24, 27-39. They have

pursued this strategy by taking advantage of the procedural lag time—typically, around two to

three months—between the date when the United States Judicial Panel of Multidistrict Litigation

(the "Panel") is notified of a "Related Action" that should be transferred to MDL 2036 and the

date when final transfer of the action can be accomplished. Rather than work within the

organizational structure of MDL 2036, Tycko & Zavareei have endeavored to file related actions

and then negotiate (in their own words) "swift settlements" before the actions can be transferred

to MDL 2036. *See id*.

Thus, for example, Tycko & Zavareei filed this case on February 17, 2010, and it was

conditionally transferred to MDL 2036 on April 15, 2010. Tycko & Zavareei opposed transfer

of this action to MDL 2036. Then, while their opposition to transfer was pending, Tycko &

Zavareei agreed to the proposed Settlement at issue on July 28, 2010, *the day before* the Panel was to consider whether to finally transfer this case to MDL 2036, without having undertaken any significant discovery or independent damages analysis.  *See* Gilbert Decl., ¶¶ 16-23.

Similarly, Tycko & Zavareei filed an action in the Northern District of Illinois against Fifth Third Bank (*Schulte v. Fifth Third Bank*, N.D. Ill. Case No. 1:09-CV-06655), which was conditionally transferred to MDL 2036 on March 2, 2010.  Tycko & Zavareei and plaintiffs' counsel in another related action filed against Fifth Third Bank opposed transfer of their cases to MDL 2036.  As here, while their opposition to transfer was pending, they reached a class settlement agreement with the bank just before (indeed, *the very same day*) the Panel was scheduled to consider whether to make final the conditional transfer of their cases to MDL 2036. As here, no meaningful discovery or independent damages analysis were undertaken by plaintiffs' counsel.  As here, the settlement with Fifth Third provides insufficient monetary consideration for the class ($9.5 million, inclusive of attorneys' fees) and contains many of the same fundamental structural flaws, such as a distribution plan and claims process that are arbitrary and unfair.  *See* Gilbert Decl., ¶¶ 32-35.

These two settlements, if approved, would compromise absent class members' *bona fide* rights in exchange for insufficient consideration and other unreasonable settlement terms and conditions, while at the same time generating large fees for Tycko & Zavareei.

Tycko & Zavareei have continued their campaign, filing related actions against numerous banks in federal and state court in recent months, and actively opposing, or seeking to avoid, transfer of such cases to MDL 2036.  For example, on June 1, 2010, two months after a related federal action was filed against Commerce Bank, N.A., and weeks after such action was finally transferred to MDL 2036 without opposition from the bank, Tycko & Zavareei and co-counsel

filed their own, nearly identical action against Commerce Bank.  They filed their action in

Missouri state court, presumably with the hope that this would provide a further hurdle to

transferring the case to MDL 2036.  The bank thereafter removed the action to federal court and

notified the Panel of this related action.  The Panel conditionally transferred the action to MDL

2036.  Tycko & Zavareei and their co-counsel are currently opposing transfer of the action to

MDL 2036, and have brought a motion to remand their action to state court.  *See* Gilbert Decl., ¶

36.

The pattern, timing, and circumstances surrounding Tycko & Zavareei's conduct strongly

supports the conclusion that they are filing these actions to settle them, and without any intention

of dutifully prosecuting them.  Among other things: (a) they have undertaken no meaningful

discovery or litigation in any of these matters; (b) they apparently have not engaged any experts

in any of these matters; and (c) the two settlements that they have reached, against National City

and Fifth Third Bank, were hastily agreed to just before they would likely have been sent to

MDL 2036.

The adverse impact of Tycko & Zavareei's conduct is to circumvent the orderly and

efficient management of MDL 2036, and, indeed, to undermine the very purpose of MDL 2036.

Their conduct, if tolerated, will likely encourage similar future conduct by Tycko & Zavareei and

other lawyers who will likewise try to game the system by filing cases and attempting to

negotiate quick deals with banks—both those that are already part of MDL 2036 and those that

are not—that would naturally be inclined to agree to terms far more favorable from their

perspective (and, thus, far worse from the consumers' perspective) than what they would be able

negotiate once the actions reach MDL 2036.

The Court must, of course, exercise its obligation to protect the interests of the absent

class members. The Court should strongly consider conducting an appropriate inquiry into the nature of Tycko & Zavareei's conduct described herein, including as it relates to the proposed Settlement here. At the very least, the nature of Tycko & Zavareei's conduct, and the context and procedural posture in which these settlements were reached, require a particularly careful analysis of the adequacy of the settlements' terms and conditions to determine whether Tycko & Zavareei are acting in the best interests of the class or for their own short-term gain.

I.    **CONCLUSION**

For the foregoing reasons, and for the reasons set forth in the Matos Objection, the Court should deny preliminary approval of the proposed Settlement.

Dated:  September 8, 2010.

Respectfully submitted,

Roger M. Adelman (DC Bar No. 056358)
**Law Office of Roger M. Adelman**
1100 Connecticut Avenue, NW
Suite 730
Washington, DC  20036

Robert C. Gilbert *(pro hac vice motion forthcoming)*
**Alters Boldt Brown Rash & Culmo, P.A.**
4141 N.E. 2nd Avenue
Miami, FL  33137
(305) 571-8550

Michael W. Sobol *(pro hac vice motion forthcoming)*
Roger N. Heller *(pro hac vice motion forthcoming)*
**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery Street, 29th Floor
San Francisco, CA  94111
(415) 956-1000

Bonny E. Sweeney *(pro hac vice motion forthcoming)*
**Robbins Geller Rudman & Dowd LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058

Eric B. Fastiff (DC Bar No.  453854)
**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
(415) 956-1000

## CERTIFICATE OF SERVICE

I, Eric B. Fastiff, one of the attorneys for Objector Robert Matos, hereby certify that pursuant to Local Rule 5.4, the foregoing document was caused to be served, electronically via ECF as to filing users and via United States Mail as to the recipients listed below, on this 8th day of September, 2010.

**/s/ Eric B. Fastiff_____**

**Non-Filing User Recipients**

Darryl J. May
BALLARD SPAHR LLP
1735 Market Street
51st Floor
Philadelphia, PA 19103

Mariah E. Murphy
BALLARD SPAHR LLP
Woodland Falls Corporate Park
210 Lake Drive East
Cherry Hill, NJ 08002

891562.1