## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RAMONA TROMBLEY, et. al.,
on behalf of herself and all others similarly
situated,

                Plaintiffs,

     -v-

NATIONAL CITY BANK

                Defendant.

Civil Action No. 1:10-CV-00232

Judge John D. Bates

## DECLARATION OF ROBERT C. GILBERT IN SUPPORT OF SUPPLEMENTAL MEMORANDUM OF OBJECTOR ROBERT MATOS IN FURTHER SUPPORT OF OBJECTIONS TO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF <u>PROPOSED CLASS ACTION SETTLEMENT</u>

I, ROBERT C. GILBERT, declare and state:

1.      I am a member in good standing of The Florida Bar and the District of Colombia Bar.  I am also a member in good standing of the United States Supreme Court, the United States Courts of Appeal for the Eleventh Circuit and Ninth Circuit, the United States District Courts for the Southern District of Florida and the Middle District of Florida.  I have also been admitted *pro hac vice* in numerous federal and state courts around the country.

2.      I am competent to testify to the matters stated herein.  I submit this declaration in connection with Objector Robert Matos' response to this Court's Order dated August 18, 2010 (Dkt No. 13), in which the Court asked us to address: (1) whether subject matter jurisdiction exists over Plaintiffs' claims in this case and, in particular, whether the amount in controversy requirement of 28 U.S.C. § 1332(a) applies under CAFA, and if so, whether one or more Plaintiffs have satisfied the requirement here; and (2) the extent of the impact of the proposed Settlement here (if approved) on other class actions against National City Bank and/or MDL 2036.

### Overview of MDL 2036

3.      On June 10, 2009, the United States Judicial Panel on Multidistrict Litigation (the "Panel") established *In Re Checking Account Overdraft Litigation* (hereinafter "MDL 2036"), and appointed United States District Judge James Lawrence King of the Southern District of Florida to preside over this multidistrict litigation proceeding.  *See* 626 F. Supp. 2d 1333 (J.P.M.L. 2009).  A true and correct copy of the Panel's Order establishing MDL 2036 is attached hereto as **Exhibit A**.  At the time of its creation, MDL 2036 involved actions brought against three national banks.  Since June 2009, similar actions brought against approximately 30 additional banks have been transferred to MDL 2036 for coordinated pretrial proceedings before

Judge King.  All of these actions involve claims brought by current and/or former checking account customers of the banks seeking to recover, for themselves and all other customers similarly situated, wrongful overdraft fees assessed by the banks to the customers' checking accounts based on debit card transactions.  Each of the actions alleges a common nucleus of facts including, *inter alia*, a common practice by each bank to reorder or re-sequence debit card charges made by the customers from "largest to smallest" for the sole or primary purpose of maximizing overdraft fee revenue for the banks.  The operative complaints against these banks also include other alleged wrongdoings arising from each bank's policies and practices relating to overdraft fees.  All of the operative complaints assert claims based on legal theories of breach of contract and breach of the implied covenant of good faith and fair dealing, unconscionability, conversion, unjust enrichment, as well as violations of certain states' consumer protection statutes.  *See In re Checking Account Overdraft Litigation*, 694 F.Supp.2d 1302 (S.D. Fla. 2010) (March 11, 2010 Order Ruling On Motions to Dismiss), a true and correct copy of which is attached hereto as **Exhibit B**.

4.      On September 2, 2009, Judge King entered an order in MDL 2036 appointing my partner Bruce S. Rogow and our firm as Plaintiffs' Lead Counsel, together with a Plaintiffs' Executive Committee consisting of five other law firms, to conduct and coordinate this multidistrict litigation on behalf of all plaintiffs.  Judge King's Order provided that Plaintiffs' Lead Counsel shall be generally responsible for coordinating the activities of plaintiffs during pre-trial proceedings, including to:

      a)      determine (after consultation with members of PEC and other co-counsel as may be appropriate) and present . . . to the Court and opposing parties the position of the plaintiffs on all matters arising during pre-trial proceedings;

. . .

      d)      provide general coordination of the activities of plaintiffs' counsel and to delegate work responsibilities to selected counsel, or committees of plaintiffs' counsel, in a manner to ensure the orderly and efficient prosecution of this litigation and to avoid duplication or unproductive effort;

. . .

      i)      initiate and conduct any settlement negotiations with counsel for defendants;

A true and correct copy of Judge King's September 2, 2009 Order is attached hereto as **Exhibit C**.

5.      On September 14, 2009, Judge King entered Pretrial Order No. 1 which, in relevant part, governs the practice and procedure in those actions transferred to MDL 2036 by the Panel pursuant to its June 2009 Order, as well as all related and/or tag-along actions later filed in, removed to, or finally transferred to the Southern District of Florida as part of MDL 2036 ("Related Actions").  A true and correct copy of Judge King's Pretrial Order No. 1 is attached hereto as **Exhibit D**.

6.      Consistent with the purpose of MDL No. 2036, which envisioned that all Related Actions involving the same nucleus of common facts and claims would be coordinated and centralized before one federal court, we routinely notify the Panel of the pendency of Related Actions when we become aware of them, and request that the Panel transfer Related Actions to MDL No. 2036.

7.      At the current time, one or more Related Actions are pending against each of the banks identified below as part of MDL 2036:

Associated Banc-Corp.
Bank of America
Bank of the West
Branch Banking & Trust
Capital  One Financial Corp.
CitiBank
Citizens Financial Group
Comerica Incorporated
Commerce Bank, N.A.
Fifth Third Bank
Great Western Bank
Harris Bank
JPMorgan Chase Bank
KeyBank
M & I Marshall and Ilsley Bank
M & T Bank
National City Bank
PNC Bank
RBC Bank
RBS Citizens
Regions Bank
Sovereign Bank
SunTrust Bank
TD Bank
Union Bank
U.S. Bank
Wachovia
Wells Fargo Bank

8.     A number of the banks identified above, and in some cases plaintiffs in actions

brought against such banks, have opposed transfer of Related Actions to MDL 2036.  In all but

three instances, however, the Panel has overruled the objections of the parties in question and

transferred the Related Actions to MDL 2036.  *See*, *e.g.*, *In re Checking Account Overdraft*

*Litigation*, 2009 WL 3460951 (J.P.M.L. Oct. 13, 2009) (transferring case against BB&T to MDL

No. 2036 over bank's objections and transferring case against Bank of America to MDL 2036

over the plaintiff's objections); *In re: Checking Account Overdraft Litigation*, 2009 WL

3254021, at *1-2 (J.P.M.L. Oct. 7, 2009) (transferring five actions against Wells Fargo to MDL

No. 2036 over objection of plaintiffs and rejecting request to create a Wells Fargo-only MDL);

*In re: Checking Account Overdraft Litigation*, MDL-2036 Pleading No. 133 (J.P.M.L. Feb. 3, 2010) (order transferring cases against Regions Bank, M&T Bank, PNC Bank and BB&T to MDL No. 2036 over banks' objections); *In re: Checking Account Overdraft Litigation*, 659 F. Supp. 2d 1363, (J.P.M.L. 2009) (order transferring cases against SunTrust to MDL No. 2036).

9.      One of the banks that opposed transfer to MDL 2036 of a Related Action brought against it was PNC Bank.  Over PNC Bank's objections, the Panel transferred a Related Action brought against PNC Bank to MDL 2036 on February 3, 2010.  The inclusion of PNC Bank in MDL 2036 since February 2010 is noteworthy here because: (a) National City Bank was merged into PNC Bank on approximately November 6, 2009 and, from that date forward, National City Bank no longer exists as a separate banking entity; and (b) the proposed Settlement in this case purports to release claims of some PNC Bank customers against PNC Bank for its conduct, even though PNC Bank is not a party in this case and no claims have been alleged or litigated against it here.

**Tycko & Zavareei and MDL 2036**

10.     Tycko & Zavareei LLP ("Tycko & Zavareei") first became involved in MDL 2036 in January 2010, when one of its partners, Hassan Zavareei, contacted a member of Plaintiffs' Executive Committee and advised that Tycko & Zavareei was planning to file cases against seven banks which were not then part of MDL 2036.  Mr. Zavareei indicated at the time that he was anxious to litigate the cases in MDL 2036, pursuant to the organizational structure instituted by Judge King.

11.     In late January 2010, Mr. Zavareei notified Plaintiffs' Executive Committee that Tycko & Zavareei had recently filed cases against Citizens Financial Bank and TD Bank, and were planning to file an action against Fifth Third Bank soon thereafter.  At that time, Mr. Zavareei acknowledged that transfer of these actions to MDL 2036 was "inevitable."

12.     By mid-February 2010, Mr. Zavareei advised me that Tycko & Zavareei had already filed four overdraft cases and was planning to file more soon.

13.     I met Mr. Zavareei in person for the first time on February 25, 2010, when he attended a hearing before Judge King on the Motions to Dismiss filed by Bank of America, Citibank, JPMorgan Chase, Union Bank, U.S. Bank, Wachovia Bank and Wells Fargo Bank.

14.     Mr. Zavareei is counsel of record in MDL 2036, having been admitted *pro hac vice* in connection with the cases that he filed against Citizens Financial Bank and TD Bank which are now part of  MDL 2036.

15.     I and other members of Plaintiffs' Executive Committee have shared a variety of confidential and privileged matters and information with Mr. Zavareei based on his repeated assurances that he planned to litigate the cases he filed within MDL 2036.

*The Trombley Action*

16.     Tycko & Zavareei filed this action on February 17, 2010.  Upon learning of the filing, we promptly notified the Panel and requested that this Related Action be transferred to MDL 2036.

17.     On April 15, 2010, the Panel issued Conditional Transfer Order (CTO-16) which transferred this case to MDL No. 2036, subject to a 14-day stay to allow any party an opportunity to object to transfer.  A true and correct copy of CTO-16 is attached hereto as **Exhibit E**.  On April 30, 2010, the Panel lifted the stay of CTO-16, formerly transferring this case to MDL No. 2036, based on the lack of timely objections from any party.

18.     The parties to this action also recognized that it was likely to be transferred to MDL 2036.  They filed a Joint Motion to Extend Time in this case on April 23, 2010, which specifically referred to the likelihood that this case would be transferred to MDL 2036.  *See* Dkt No. 2.

19.     On May 3, 2010, the Panel reinstated the stay of CTO-16 based on a potential defect in the Panel's service of its original CTO-16, and afforded the parties an additional 14 days to oppose transfer.  A true and correct copy of that Order is attached hereto as **Exhibit F**.

20.     On May 17, 2010, Tycko & Zavareei filed a Notice of Opposition to the transfer of this case to MDL No. 2036.  On June 1, 2010, Tycko & Zavareei filed Plaintiffs' Motion to Vacate Conditional Transfer Order (CTO-16), and National City Bank filed its Motion to Vacate Conditional Transfer Order (CTO-16) the same day.  True and correct copies of Plaintiffs' and National City Bank's Motions are attached hereto as **Exhibits G and H**.

21.     On June 25, 2010, Plaintiffs' Lead Counsel and Plaintiffs' Executive Committee in MDL 2036 filed their Response in Opposition to Plaintiffs' and National City Bank's Motions to Vacate Conditional Transfer Order (CTO-16), explaining why the arguments advanced by Tycko & Zavareei and National City Bank failed to provide any basis to vacate CTO-16, and noting that National City Bank and PNC Bank were already defendants in MDL 2036.  A true and correct copy of the Response is attached hereto as **Exhibit I**.

22.     The Panel scheduled this matter for consideration on its July 29, 2010 non-argument calendar.

23.     On July 28, 2010, one day prior to the Panel's scheduled consideration of this matter, Plaintiffs and National City Bank entered into a Settlement Agreement in this case and requested that the Panel vacate CTO-16 to allow this Court to consider approval of the proposed Settlement.  Based on that submission, on August 9, 2010, the Panel issued an Order Vacating Conditional Transfer Order (CTO-16), in which it noted that '[i]n the event that the settlement is not approved or does not fully resolve *Trombley*, nothing in this order bars future transfer of the action to MDL 2036."  A true and correct copy of that Order is attached hereto as **Exhibit J**.

24.     On August 13, 2010, Objector Robert Matos, the named plaintiff in *Matos v. National City Bank*, which is part of MDL 2036, filed his Objections to Plaintiffs' Motion for Preliminary Approval of Proposed Class Action Settlement in this Court (the "Matos Objection").  *See* Dkt. No. 11.  In the interest of brevity, I incorporate herein by reference the matters raised in the Matos Objection.

25.     On August 18, 2010, the Court issued an Order, which directed the parties to address two matters.  First, the Court asked whether subject matter jurisdiction exists over plaintiffs' claims in this case and, in particular, whether the amount in controversy requirement of 28 U.S.C. § 1332(a) applies under CAFA, and if so, whether one or more plaintiffs have satisfied the requirement here.  Second, the Court asked us to address the extent of the impact of the proposed Settlement here (if approved) on other class actions against National City Bank and/or MDL 2036.

26.     With regard to the first issue, attached hereto as **Exhibits K, L, and M**, respectively, are true and correct copies of the petitions for rehearing *en banc* recently filed by plaintiffs and defendant, as well as the *amicus curiae* brief filed by the United States Chamber of Commerce, in *Cappuccitti v. DirectTV, Inc*, all of which ask for the panel's decision in *Cappuccitti* to be reversed.  As discussed in these filings, and in Objector Matos' supplemental brief filed herewith, it is clear that *Cappuccitti* was incorrectly decided because the decision conflicts with prior decisions within the Eleventh Circuit itself, decisions of courts in this District, and decisions of courts in virtually every other Circuit, as well as decisions of the United States Supreme Court.  In his Findings of Fact and Conclusions of Law After Bench Trial in *Gutierrez v. Wells Fargo Bank*, United States District Judge William Alsup explained why

*Cappuccitti* was wrongly decided.  *See Gutierrez v. Wells Fargo Bank, N.A.*, --- F.Supp.2d ----, 2010 WL 3155934, * 56 (N.D. Cal. Aug. 10, 2010).

27.     With regard to the second question posed by the Court, as discussed below and in the accompanying memorandum, the proposed Settlement (if approved) will adversely impact (a) the *Matos* class action lawsuit pending against National City Bank which is already part of MDL 2036; (b) class actions pending against PNC Bank which are already a part of MDL 2036; and (c) the orderly and efficient management of class actions pending against other banks which have previously been made part of MDL 2036, as well as class actions brought against other banks which will be made part of MDL 2036 in the future.

28.     The proposed Settlement here would adversely impact the *Matos* class action lawsuit pending against National City Bank, which is already part of MDL 2036.  If the proposed Settlement is approved by this Court, the claims of all members of the putative class represented in the *Matos* action will be forever released in exchange for insufficient consideration and other unreasonable settlement terms and conditions.  Again, I incorporate herein by reference the specific matters raised in the Matos Objection, which demonstrate why the proposed Settlement here does not warrant preliminary approval.

29.     The proposed Settlement here will also seriously adversely affect class action lawsuits pending against PNC Bank which have been part of MDL 2036 since February 2010. According to the proposed Settlement Agreement, National City Bank was merged into PNC Bank on approximately November 6, 2009, and from that date forward National City Bank no longer exists as a separate banking entity.  Under the proposed Settlement, because many National City customers became PNC Bank customers following that merger, the claims purportedly settled under the Settlement Agreement here encompass debit card transactions of all

National City Bank customers after they became PNC Bank customers, even though PNC Bank is not named as a defendant in this action.  Thus, under the proposed Settlement here, the proposed Settlement Class – including PNC Bank customers who are covered by the class action lawsuits pending against PNC Bank in MDL 2036 – will be releasing all claims against National City Bank as well as PNC Bank, an entity not even named in this action.  Under the judicially-created organizational structure established by Judge King in MDL 2036, Tycko & Zavareei have no authority to speak for the plaintiffs in Related Actions pending against PNC Bank which are part of MDL 2036 and/or to initiate or engage in settlement negotiations with that PNC Bank.

30.     Finally, the proposed Settlement here threatens to adversely affect the orderly and efficient management of class actions pending against other banks which were previously made part of MDL 2036, as well as class actions against other banks which will be made part of MDL 2036 in the future.  The manner in which Tycko & Zavareei obtained the proposed Settlement here – by circumventing MDL 2036 by intentionally delaying the transfer of this Related Action to MDL 2036 – establishes a troubling precedent which, if left undisturbed, will undoubtedly encourage future attempts by Tycko & Zavareei and others to do the same.  The evidence supporting this likely adverse impact has already begun to mount, as discussed below.

***Tycko & Zavareei's Other Efforts to Circumvent Inclusion in MDL 2036***

31.     Despite Mr. Zavareei's earlier expressions that he intended to litigate his related actions pursuant to the organizational structure established by Judge King in MDL 2036, over the past several months Tycko & Zavareei have repeatedly engaged in conduct that is wholly inconsistent with such representations.  The proposed Settlement in this case, and the circumstances surrounding it, represent but one example of this disturbing pattern of conduct.

32.     In February 2010, we notified the Panel of Tycko & Zavareei's filing of a Related Action against Fifth Third Bank, and requested that the Panel transfer that Related Action to

MDL 2036.  The Panel thereafter issued a Conditional Transfer Order (CTO-13), conditionally

transferring the Related Action brought by Tycko & Zavareei against Fifth Third Bank to MDL

2036.

33.     In mid-March 2010, after initially notifying me that they would not oppose

transfer of the Related Action Tycko & Zavareei filed against Fifth Third Bank to MDL 2036,

Mr. Zavareei called me back later the same day to say that they had been persuaded to change

their mind, and would now be opposing transfer of that Related Action to MDL 2036.

34.     Tycko & Zavareei, along with plaintiffs' counsel in another Related Action filed

against Fifth Third Bank and Fifth Third Bank itself, opposed the Panel's conditional transfer of

the two Related Actions brought against Fifth Third Bank to MDL 2036.  The Panel scheduled

oral argument on the matter for May 27, 2010 in Chicago.  I flew to Chicago to appear before the

Panel.  When the Panel called the matter for oral argument, Mr. Zavareei announced that the

parties to the Related Actions brought against Fifth Third Bank had signed a proposed class

action settlement agreement that very morning, and had already filed the proposed settlement

before U.S. District Judge Robert M. Dow, Jr., whose courtroom was located in the same

courthouse, for preliminary approval.  Based on that announcement, the Panel declined to

transfer the two Related Actions against Fifth Third Bank to MDL 2036 pending a determination

by Judge Dow as to whether or not to approve the proposed settlement.  A true and copy of the

Panel's Order is attached hereto as **Exhibit N**.

35.     On June 9, 2010, Plaintiffs' Lead Counsel and Plaintiffs' Executive Committee in

MDL 2036 filed an objection, on behalf of Michele Keyes, Amanda Ratliff and Verdel Ratliff, to

preliminary approval of the proposed settlement with Fifth Third Bank, which contains similar

fundamental flaws as the proposed Settlement here.  As of this date, that objection remains

pending before Judge Dow.  A true and correct copy of the Objection to Preliminary Approval (without exhibits) filed in the Related Action against Fifth Third is attached hereto as **Exhibit O**.

36.     Tycko & Zavareei have also filed a number of Related Actions against other banks where they are actively opposing or seeking to avoid transfer to MDL 2036.  For example, two months after a related federal action was filed against Commerce Bank, N.A. in federal court, and weeks after such action was finally transferred to MDL 2036 without opposition from the bank, Tycko & Zavareei and co-counsel filed a virtually identical action against Commerce Bank in Missouri state court.  The bank thereafter removed the action to federal court, and the Panel conditionally transferred the action to MDL 2036 (CTO-23).  A true and correct copy of the Panel's conditional transfer order is attached hereto as **Exhibit R.**  Tycko & Zavareei and their co-counsel are currently opposing final transfer of the action to MDL 2036.  True and correct copies of their brief in support of vacating the Panel's conditional transfer order, and the opposition filed thereto, are attached hereto as **Exhibits P and Q.**  In addition, Tycko & Zavareei and their co-counsel are trying to get this related action against Commerce Bank remanded to state court.  *See* **Exhibit P,** attached hereto, at 6.

37.     It has become clear that Tycko & Zavareei is attempting to game the system by trying to prevent transfer to MDL 2036 of the Related Actions they are filing, including by entering into settlement agreements with some of these banks which sacrifice the *bona fide* rights and interests of absent class members for their own immediate, short-term return.

38.     The adverse impact of Tycko & Zavareei's conduct in this action and the other actions described above is to circumvent the orderly and efficient management of MDL 2036.  It appears that Tycko & Zavareei have undertaken to file as many actions as possible in other federal and state courts, and are attempting to prevent such actions from being transferred to

MDL 2036.  They do this by actively opposing transfer of the newly filed actions and, while the opposition to transfer is pending, attempting to initiate settlement negotiations with interested defendant banks, which are often willing to quickly enter into class action settlements providing far less money and other consideration to the class members with more favorable terms and conditions to the banks than could otherwise be negotiated once the actions reach MDL 2036.

39.     Tycko & Zavareei's actions, as described herein, threaten to undermine the effective management of MDL 2036 by creating a situation where any lawyer – like Tycko & Zavareei here – could theoretically file an action in another district or state court against any bank which is already part of MDL 2036 and, while opposing transfer of that action to MDL 2036, enter into a self-serving settlement with a bank anxious to minimize its exposure in MDL 2036.


On this 8th day of September, 2010, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____ */s/ Robert C. Gilbert* _____
Robert C. Gilbert

## CERTIFICATE OF SERVICE

I, Eric B. Fastiff, one of the attorneys for Objector Robert Matos, hereby certify that the foregoing document was caused to be served, electronically via ECF as to filing users and via United States Mail as to the recipients listed below, on this 8th day of September, 2010.

**/s/ Eric B. Fastiff_____**

**Non-Filing User Recipients**

Darryl J. May
BALLARD SPAHR LLP
1735 Market Street
51st Floor
Philadelphia, PA 19103

Mariah E. Murphy
BALLARD SPAHR LLP
Woodland Falls Corporate Park
210 Lake Drive East
Cherry Hill, NJ 08002

888786.1

# EXHIBIT A

sonable arguments, we are persuaded that because the actions contain core factual questions concerning defendants' conduct with respect to ARS, resolution of *LSED* and the litigation taken as a whole will be aided by placing all related actions before the same judge.

In addition, plaintiff in the D. Massachusetts action requests that its claim under Section 12(a)(1) of the Securities Act regarding the sale of unregistered securities should not be centralized because it is capable of quick resolution. We are not convinced by their argument, given the factual overlap that the action shares with the other actions. However, should the circumstances regarding any action or claim in MDL No. 2030 develop such that the transferee judge determines that continued inclusion of a claim or action no longer remains advisable and, accordingly, the transferee judge deems Section 1407 remand of any claim or action appropriate, procedures are available whereby such remand may be accomplished with a minimum of delay following a suggestion of remand to the Panel by the transferee judge. *See* Rule 7.6, R.P.J.P.M.L., 199 F.R.D. 425, 436–38 (2001).

[3] We are persuaded that the Southern District of New York, where the first-filed action has been pending for over a year, is an appropriate transferee district. By centralizing this litigation before Judge Loretta A. Preska, we are assigning this docket to a seasoned jurist who has the experience necessary to steer this litigation on a prudent course.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on Schedule A and pending outside the Southern District of New York are transferred to the Southern District of New York and, with the consent of that court, assigned to the Honorable Loretta A. Preska for coordinated or consolidated pretrial proceedings with the action pending there and listed on Schedule A.

## SCHEDULE A

MDL No. 2030 — **IN RE: MERRILL LYNCH & CO., INC., AUCTION RATE SECURITIES (ARS) MARKETING LITIGATION**

*Eastern District of Kentucky*

*Community Trust Bank, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* C.A. No. 7:08–231

*Eastern District of Louisiana*

*Louisiana Stadium & Exposition District, et al. v. Financial Guaranty Insurance Co.,* et al., C.A. No. 2:09–235

*District of Massachusetts*

*The Cooperative Bank, et al. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* et al., C.A. No. 1:08–12042

*Southern District of New York*

*In re Merrill Lynch Auction Rate Securities Litigation,* C.A. No. 1:08–3037



## In re: CHECKING ACCOUNT OVERDRAFT LITIGATION.

### MDL No. 2036.

United States Judicial Panel on Multidistrict Litigation.

June 10, 2009.

**Background:** Motion was brought to centralize, for coordinated or consolidated pretrial proceedings, five actions and seven

potential tag-along action, pending in seven districts and arising out of banks' policies with regard to the imposition of overdraft fees.

**Holdings:** The Judicial Panel on Multidistrict Litigation, J. Frederick Motz, Acting Chairman, held that

(1)  centralization was warranted, and

(2)  Southern District of Florida was appropriate transferee district.

Transfers ordered.

---

**1. Federal Civil Procedure ⟺9**

Centralization for pretrial proceedings, of five actions and seven potential tag-along actions pending in multidistrict litigation relating to the imposition of overdraft fees by various bank defendants, was warranted; actions involved complex common questions of fact, centralization would serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation, and centralization was necessary to eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary. 28 U.S.C.A. § 1407.

**2. Federal Courts ⟺151**

Transfer of related actions in multidistrict litigation to a single district has the salutary effect of placing all related actions before one court which can formulate a pretrial program that (1) allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues, and (2) ensures that pretrial proceedings will be conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties. 28 U.S.C.A. § 1407.

**3. Federal Courts ⟺152.5**

Southern District of Florida was appropriate transferee district for centralized pretrial proceedings in five actions and seven potential tag-along actions, pending in multidistrict litigation, relating to the imposition of overdraft fees by various bank defendants; two of the actions were pending in that district, and district had the capacity to manage the proceeding. 28 U.S.C.A. § 1407(a).

---

Before J. FREDERICK MOTZ, Acting Chairman, JOHN G. HEYBURN II, Chairman *, ROBERT L. MILLER, JR., KATHRYN H. VRATIL, DAVID R. HANSEN, W. ROYAL FURGESON, JR. and FRANK C. DAMRELL, JR., Judges of the Panel.

### TRANSFER ORDER

J. FREDERICK MOTZ, Acting Chairman.

**Before the entire Panel \*:** Plaintiff in one Southern District of Florida action (*Tornes* ) has moved, pursuant to 28 U.S.C. § 1407, for centralization in the Southern District of Florida of three actions and any later-filed related actions for coordinated or consolidated pretrial proceedings. Plaintiff in the District of New Jersey action supports the motion. Defendants Wachovia Bank, N.A. (Wachovia) and Bank of America, N.A. (Bank of America) initially opposed centralization of actions involving different bank defendants in one MDL proceeding, but at the Panel's hearing session, Wachovia and Bank of America stated that they support the creation of one MDL docket encompassing all overdraft actions. Wachovia supports centralization of all actions in the Southern District of Florida. Bank of America prefers

---

\* Judge Heyburn took no part in the disposition        of this matter.

selection of the Western District of North Carolina, but alternatively supports selection of the Florida district as transferee forum. Plaintiffs in two Northern District of California actions as well as the Citibank[1] defendants in one of these actions oppose centralization of all overdraft actions in one MDL proceeding; if the Panel deems centralization appropriate, opponents suggest the Northern District of California as transferee district. Plaintiffs in several potential tag-along actions take a similar opposing position.

This litigation presently consists of five actions listed on Schedule A and pending in three districts as follows: two actions each in the Northern District of California and the Southern District of Florida and one action in the District of New Jersey.[2]

[1] On the basis of the papers filed and hearing session held, we find that the actions in this litigation involve common questions of fact, and that centralization under Section 1407 in the Southern District of Florida will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. All actions share factual questions relating to the imposition of overdraft fees by various bank defendants on their customer's checking accounts in a manner to maximize these fees. Centralization under Section 1407 will eliminate duplicative discovery; avoid inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary.

1. Citigroup, Inc., Citibank, N.A., and Citibank F.S.B.

2. While not included in the initial Section 1407 motion, the two Northern District of California actions are included in our decision, because all parties to these actions have stated their position on the matter before us in writing and at oral argument.

[2] Opponents of centralization of all overdraft actions in one MDL proceeding argue that unique questions of fact predominate in actions brought against different bank defendants over any common factual questions. While there will be some unique questions of fact from bank-to-bank, these actions share sufficient factual questions relating to industry-wide bank posting policies and procedures to warrant centralization of all actions in one MDL docket. Transfer to a single district under Section 1407 has the salutary effect of placing all related actions before one court which can formulate a pretrial program that: (1) allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues, *In re Multi–Piece Rim Products Liability Litigation*, 464 F.Supp. 969, 974 (J.P.M.L.1979); and (2) ensures that pretrial proceedings will be conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties. The MDL No. 2036 transferee court can employ any number of pretrial techniques—such as establishing separate discovery and/or motion tracks—to efficiently manage this litigation. Opponents' concerns regarding the manner and extent of coordination or consolidation of the pretrial proceedings can be presented to the transferee judge. The governing statute contemplates transfer for "coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). Accordingly, we leave the extent of coordination or consolidation

The Panel has been notified that seven potentially related actions are pending as follows: two actions in the Northern District of California and one action each in the District of Arizona, the District of Colorado, the Northern District of Georgia, the District of New Jersey and the District of Nevada. These actions will be treated as a potential tag-along actions. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435–36 (2001).

of these actions to the discretion of the transferee judge. *See In re The Bear Stearns Companies Inc. Securities, Derivative and Employee Retirement Income Security Act (ERISA) Litigation,* 572 F.Supp.2d 1377 (J.P.M.L.2008); *In re Mutual Funds Litigation,* 310 F.Supp.2d 1359 (J.P.M.L.2004); *In re Equity Funding Corp. of America Securities Litigation,* 375 F.Supp. 1378 (J.P.M.L.1973).

[3]   We are persuaded that the Southern District of Florida is an appropriate transferee district for this litigation, because (1) two of the involved actions before the Panel are pending there, and (2) this district has the capacity to manage this MDL proceeding.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on Schedule A and pending outside the Southern District of Florida are transferred to the Southern District of Florida and, with the consent of that court, assigned to the Honorable James Lawrence King for coordinated or consolidated pretrial proceedings with the actions pending there and listed on Schedule A.

### SCHEDULE A

### MDL No. 2036 — IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION

*Northern District of California*

*Celia Spears–Haymond v. Wachovia Corp.,* et al., C.A. No. 3:08–4610

*Mike Amrhein v. Citibank, Inc.,* et al., C.A. No. 4:08–5101

*Southern District of Florida*

*Melanie L. Garcia v. Wachovia Bank, N.A.,* C.A. No. 1:08–22463

*Ralph Tornes v. Bank of America, N.A.,* C.A. No. 1:08–23323

---

### SCHEDULE A—Continued

*District of New Jersey*

*Ryan Phillip Pena v. Wachovia Bank, N.A.,* C.A. No. 1:08–5263



### In re: HEARTLAND PAYMENT SYSTEMS, INC., CUSTOMER DATA SECURITY BREACH LITIGATION.

### MDL No. 2046.

United States Judicial Panel on Multidistrict Litigation.

June 10, 2009.

Before JOHN G. HEYBURN II, Chairman, J. FREDERICK MOTZ, ROBERT L. MILLER, JR., KATHRYN H. VRATIL, DAVID R. HANSEN, W. ROYAL FURGESON, JR. and FRANK C. DAMRELL, JR., Judges of the Panel.

### TRANSFER ORDER

JOHN G. HEYBURN II, Chairman.

**Before the entire Panel:**  Defendant Heartland Payments Systems, Inc. (Heartland) has moved, pursuant to 28 U.S.C. § 1407, for coordinated or consolidated pretrial proceedings of this litigation in the Southern District of Texas.  Plaintiffs in four actions support the motion.  Plaintiffs in two actions support centralization in the District of New Jersey, and some responding plaintiffs variously support centralization in the aforementioned districts, the District of Kansas, or the Southern District of Florida, in the alternative.

This litigation currently consists of nineteen actions [1] listed on Schedule A and

---

1.  The motion originally included twenty actions, but one action pending in the District of   New Jersey has been dismissed.

GZJ KDV'D''

ship . . . in relation to the ordinary incidents of prison life," so as to entitle him to due process.

In sum, where detainee Enriquez had access to an administrative grievance process to voice his complaint(s) regarding his confinement status, where he was advised of the reason he was initially placed on RR status, where he was advised why he was retained on RR status and what it would take for him to be released [modification of behavior that was disruptive and presented a security risk on the unit], and where his 24 day confinement on RR status was relatively short, it is apparent that he was not deprived of due process, either with respect to his initial or continued placement on RR [room restriction] status.

### III  CONCLUSION

It is therefore recommended that: 1) as to all defendants and all claims, the defendants' joint renewed motion for summary judgment (DE# 217) be GRANTED; and 2) this case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.



## In re CHECKING ACCOUNT OVERDRAFT LITIGATION, MDL No. 2036.

### Case No. 09MD02036JLK.

United States District Court, S.D. Florida. Miami Division.

March 11, 2010.

**Background:** Account holders brought putative class actions against banks, alleging excessive overdraft fees on debit card transactions. After actions were consolidat-ed into multidistrict litigation, banks moved for dismissal.

**Holdings:** The District Court, James Lawrence King, J., held that:

(1) contract and tort-based claims were not federally preempted;

(2) holders alleged contract-based claims;

(3) holders alleged procedural and substantive unconscionability;

(4) holders alleged unjust enrichment claims;

(5) holders alleged conversion claims;

(6) holders alleged claims under state consumer protection statutes; and

(7) banks' practices did not involve "goods" or "services."

Motion granted in part and denied in part.

### 1. Banks and Banking ⊗263
####    States ⊗18.19

Contract and tort-based claims brought under state law by account holders against banks, alleging excessive overdraft fees on debit card transactions, were not preempted by National Bank Act (NBA); claims did no more than incidentally affect exercise of national banks' deposit-taking powers, federal regulation in field was not so pervasive as to leave no room for states' supplementation, and state laws at issue were of general application and did not vitiate purposes of NBA.  12 U.S.C.A. § 24; 12 C.F.R. § 7.4007.

### 2. Banks and Banking ⊗150, 263

Account holders that sued banks, alleging excessive overdraft fees on debit card transactions, averred that banks did not carry out express contractual terms of deposit agreements in good faith, as required to state breach of contract claims; complaint alleged that banks' high-to-low ordering of debit transactions did not com-

IN RE CHECKING ACCOUNT OVERDRAFT LITIGATION          **1303**
Cite as 694 F.Supp.2d 1302 (S.D.Fla. 2010)

port with implied covenant of good faith and fair dealing.

**3. Banks and Banking ⇐119**

Under Texas law, special relationship must exist between bank and its customers for duty of good faith and fair dealing to apply to their contracts.

**4. Declaratory Judgment ⇐83, 112**

Most matters of defense can be raised affirmatively in declaratory judgment action, so long as there is actual controversy between parties.

**5. Contracts ⇐1**

"Procedural unconscionability" relates to manner in which contract is made, and involves consideration of issues such as bargaining power of parties and their ability to know and understand disputed contract terms.

 See publication Words and Phrases for other judicial constructions and definitions.

**6. Contracts ⇐1**

"Substantive unconscionability" requires assessment whether contract terms are so outrageously unfair as to shock judicial conscience.

 See publication Words and Phrases for other judicial constructions and definitions.

**7. Banks and Banking ⇐150, 263**

Account holders that sued banks, alleging excessive overdraft fees on debit card transactions, averred that account agreements providing for practices at issue were procedurally unconscionable; complaint alleged that, although holders were not coerced into accepting overdraft protection terms that resulted in excessive fees, high disparity in sophistication and bargaining power existed between holders and banks.

**8. Contracts ⇐1**

In assessing substantive unconscionability, courts should consider commercial reasonableness of contract terms, purpose

and effect of terms, allocation of risks between parties, and similar public policy concerns.

**9. Banks and Banking ⇐150, 263**

Account holders that sued banks, alleging excessive overdraft fees on debit card transactions, averred that account agreements providing for practices at issue were substantively unconscionable; complaints stated that deposit agreements contained terms as to overdraft protection that had purpose and effect of allowing banks to re-order posting of debit transactions to maximize number and amount of overdraft fees charged to holders.

**10. Implied and Constructive Contracts ⇐3**

Account holders that sued banks, alleging excessive overdraft fees on debit card transactions, averred that it would have been unjust for banks to retain benefits that they allegedly received from their practices, as required to state unjust enrichment claims; complaint stated that banks manipulated posting order of debit transactions in bad faith so as to maximize number of overdraft fees incurred by holders.

**11. Banks and Banking ⇐150, 263**

Account holders that sued banks, alleging excessive overdraft fees on debit card transactions, averred wrongful interference with funds in which they had possessory rights, as required to state conversion claims; complaint stated that banks' manipulation of debit transactions' posting order intentionally caused holders to incur overdraft fees that they otherwise would not have incurred.

**12. Federal Civil Procedure ⇐103.7**

In class action, issue of Article III standing must be resolved for each named plaintiff before issues of class certification

and representation are contemplated. U.S.C.A. Const. Art. 3, § 2, cl. 1.

### 13. Antitrust and Trade Regulation ⟺209

Account holders that sued banks, alleging excessive overdraft fees on debit card transactions, averred that banks' actions constituted "deceptive practices," as required to state claims under state consumer protection statutes; complaints stated that actions of banks, in manipulating and reordering holders' debit transactions, were deceptive and did not comply with terms of deposit contracts.

### 14. Antitrust and Trade Regulation ⟺209

Account holders that sued banks, alleging excessive overdraft fees on debit card transactions, averred that banks' actions constituted "unfair acts," as required to state claims under state consumer protection statutes; complaints stated that, since holders could not have known that terms of deposit contracts would be applied unfairly at time they opened checking accounts, they would have been unaware of need to reject contracts and take their business elsewhere.

### 15. Antitrust and Trade Regulation ⟺145

Account holders that sued banks, alleging excessive overdraft fees on debit card transactions, failed to aver that transactions at issue involved "goods" or "services," as required to state consumer protection claims under California and Oregon law, since banks' decisions to extend funds to cover clients' overdrafts did not qualify as services. West's Ann.Cal.Civ.Code §§ 1761, 1770.

See publication Words and Phrases for other judicial constructions and definitions.

_____

Robert Cecil, Miami, FL, for Checking Account Overdraft Litigation.

Jeremy William Alters, Kimberly Lynn Boldt, Alters, Boldt, Brown, Rash & Culmo, P.A., Miami, FL, Barry Rodney Davidson, Hunton & Williams, Miami, FL, William Charles Hearon, Miami, FL, for Milanie L. Garcia.

Bruce S. Rogow, Bruce S. Rogow PA, Fort Lauderdale, FL, Burton H. Finkelstein, Tracy D. Rezvani, Finkelstein Thompson LLP, Washington, DC, Rosemary M. Rivas, Finkelstein Thompson LLP, San Francisco, CA, Kimberly Lynn Boldt, Robert Cecil Gilbert, Alters, Boldt, Brown, Rash & Culmo, P.A., Miami, FL, Barry Rodney Davidson, Hunton & Williams, Miami, FL, William Charles Hearon, Miami, FL, for Ralph Rornes, April Speers, Estella A. Lopez, John C. Stone, Charles Reed, Jr., Linda McDaniel, and Andrea Luquetta.

Barry Himmelstein, Jordan Elias, Michael W. Sobol, Mikaela Berstein, Roger Norton Heller, Lieff Cabraser Heimann & Berstein, San Francisco, CA, Jae Kook Kim, Richard D. McCune, Jr., McCune Wright LLP, Redlands, CA, R. Scott Erlewine, Phillips & Erlewine & Given LLP, San Francisco, CA, for Celia Spears-Haymond, Mike Amrhein, Steve Yourke, Kristine Richards, Willyum Waters, Frank Smith, Faith Gordon, and Cynthia Larsen.

Edward Adam Webb, G. Franklin Lemond, Jr., Webb Law Group LLC, Atlanta, GA, for William W. Powell, Jr., Jeffrey Buffington, Jeanette Buffington, Lawrence D. Hough, and Pamela H. Hough.

John Matthew Geyman, John Wentworth Phillips, Phillips Law Group PLLC, Seattle, WA, Ari U. Brown, Hagens Berman Sobel Shapiro LLP, Seattle, WA, for Alex Zankich and William Rucker.

Denyse Clancy, Baron Budd LLP, Dallas, TX, for Vada Mitchell and Daisy Webb.

IN RE CHECKING ACCOUNT OVERDRAFT LITIGATION  **1305**
Cite as 694 F.Supp.2d 1302 (S.D.Fla. 2010)

Stephen P. Willison, Willison & Hellman PC, Grand Rapids, MI, Richard D. McCune, Jr., McCune Wright LLP, Redlands, CA, for Michelle Gulley.

Bonny E. Sweeney, Lerach Coughlin Stoia Geller Rudman & Robbins, San Diego, CA, for Donald Kimenker.

James Jason Hill, Jeffrey James Geraci, Cohelan Khoury & Singer, San Diego, CA, for John D. Kirkland.

Joshua L. Ross, Stoll Stoll Berne Lokting & Shlachter, Portland, OR, for Dolores Gutierrez.

Chaim S. Setareh, Law Office of Shaun Setareh APC, Beverly Hills, CA, Marcus J. Bradley, Marlin & Saltzman, Agoura Hills, CA, for Sandra Quarles.

Genessa A. Stout, Ari Y. Brown, Hagens Berman Sobol Shapiro LLP, Seattle, WA, for Marc Martinez.

Miriam Zakarin, TEVA North America, North Wales, PA, Norah Hart, Treuhaft & Zakarin, LLP, New York, NY, for Angela Walsh-Duffy, Brett Freeman.

Alan M. Mansfield, The Consumer Law Group, San Diego, CA, Howard Weil Rubenstein, Aspen, CO, Marian S. Rosen, Marian S. Rosen & Associates, Houston, TX, for Katherine Anne Williams.

Alisha A. Martin, James R. Patterson, Harrison Patterson & O'Connor, San Diego, CA, for Josh Naehu–Reyes.

David M. Given, Nicholas A. Carlin, Phillips & Erlewine & Given LLP, San Francisco, CA, for Maxine Aarons Given.

Steve W. Berman, Hagens Berman Sobol Shapiro LLP, Seattle, WA, Jeffrey F. Keller, Keller Grove LLP, San Francisco, CA, for George Burke, Robert Lowe, Lori Aldana, Shane Parins and Kara Parins.

Alexandria Rose Kachadoorian, Lisa M. Simonetti, Stroock & Stroock & Lavan, Los Angeles, CA, for Citibank FSB.

Barbara J. Dawson, Robert Matthew Kort, Snell & Wilmer LLP, Phoenix, AZ, Brian J. Meenaghan, Ronald E. Beard, Rudy Albert Englund, Tara N. Gillespie, Lane Powell PC, Seattle, WA, Bryanne J. Schmitt, David M. Jolley, Margaret G. May, Sonya Diane Winner, Steven Duane Sassaman, Covington & Burling LLP, San Francisco, CA, Dori Katrine Scott, Fox Rothschild LLP, West Palm Beach, FL, Emily Johnson Henn, Covington & Burling, Washington, DC, Jay Earl Smith, Smith Larsen & Wixom, Las Vegas, NV, Tracy L. Ashmore, Holme Roberts & Owen LLP, Denver, CO, for Wells Fargo Bank, N.A. and Wells Fargo & Company.

Ashley F. Cummings, Jason M. Beach, Lawrence J. Bracken, II, Hunton & Williams, Atlanta, GA, James R. McGuire, Morrison & Foerster, San Francisco, CA, Leda Dunn Wettre, Robinson Wttre & Miller LLC, Newark, NJ, Tracy Thomas Cottingham, III, Hunton & Williams, Charlotte, NC, for Wachovia Bank, N.A.

Aaron Schur, Sharon D. Mayo, Arnold & Porter LLP, San Francisco, CA, Barbara Viniegra, James Randolph Liebler, Liebler, Gonzalez & Portuondo, PA, Miami, FL, Christopher Scott Tarbell, Laurence J. Hutt, Arnold & Porter LLP, Los Angeles, CA, Sonya Diane Winner, Covington & Burling LLP, San Francisco, CA, Barry Rodney Davidson, Hunton & Williams, LLP, Miami, FL, for Bank of America, N.A., Bank of America Corporation and Bank of America, California.

Ann Marie Mortimer, Hunton & Williams, Los Angeles, CA, Barry Rodney Davidson, Hunton & Williams, LLP, Miami, FL, James R. McGuire, Morrison & Foerster, San Francisco, CA, Tracy Thomas Cottingham, III, Hunton & Williams, Charlotte, NC, for Wachovia Corporation, Wachovia Bank, N.A., Bank of America, N.A., and Bank of America Corporation.

A. Stephen Hut, Jr., Michelle Ognibene, Wilmer Cutler Pickering Hale & Dorr LLP, Washington, DC, Alan E. Schoen-

feld, Christopher R. Lipsett, David Sapir Lesser, Wilmer Cutler Pickering Hale & Dorr, New York, NY, Andrew Benjamin Grossman, Matthew D. Benedetto, Wilmer Cutler Pickering Hale & Dorr LLP, Los Angeles, CA, Mark D. Flanagan, Wilmer Cutler Pickering Hale & Dorr LLP, Palo Alto, CA, for J.P. Morgan Chase Bank, N.A. and J.P. Morgan Chase & Co.

Rita Lin, Morrison & Foerster, San Francisco, CA, for US Bank N.A. and US Bank Corp.

C. Marie Eckert, Cody J. Elliott, Miller Nash LLP, Portland, OR, Sylvia Rivera, Morrison & Foerster, Los Angeles, CA, Sonya Diane Winner, Covington & Burling, LLP, San Francisco, CA, Barry Rodney Davidson, Hunton & Williams, LLP, Miami, FL, James R. McGuire, Morrison & Foerster, San Francisco, CA, for U.S. Bank, N.A.

Constance Melissa Ewing, David B. Darden, Eric Jon Taylor, Nancy H. Baughan, William J. Holley, II, Parker Hudson Rainer & Dobbs, Atlanta, GA, for Branch Banking and Trust Company.

Jan T. Chilton, John B. Sullivan, Mark Douglas Lonergan, Peter H. Bales, Severson & Werson, San Francisco, CA, for Union Bank, N.A. d/b/a Unionbancal Corporation.

Alan S. Kaplinsky, Martin C. Bryce, Jr., Ballard Spahr Andrews & Ingersoll, Philadelphia, PA, Bruce W. Neckers, John M. Lichtenberg, Paul A. McCarthy, Rhoades McKee PC, Grand Rapids, MI, for Hunt-

ington Bancshares, Inc. and Huntington National Bank.

Lindsey Elisa Brown, Lynette Eaddy Smith, William N. Withrow, Jr., Troutman Sanders LLP, Atlanta, GA, for SunTrust Banks, Inc.

## *ORDER RULING ON OMNIBUS MOTION TO DISMISS*

JAMES LAWRENCE KING, District Judge.

The Defendant Banks [1] moved for dismissal or judgment on the pleadings of each of the fifteen Complaints pending in this multi-district litigation proceeding, pursuant to Fed.R.Civ.P. 12(b)(6) and 12(c), on December 22, 2009. Coordinated oral argument on all Motions to Dismiss were held February 25, 2010 (Oral Arg. Tr. pp. 1–167).

### I.  BACKGROUND

On June 10, 2009 the United States Judicial Panel on Multidistrict Litigation transferred five actions to this Court for coordinated pre-trial proceedings, establishing this multi-district litigation proceeding known as *In re Checking Account Overdraft Litigation*, MDL No. 2036. Actions against SunTrust Bank and Huntington National Bank were subsequently transferred to this Court and made part of this Multidistrict litigation proceeding. New actions continue to be filed against these, and other, Banks alleging basically the same cause of action. The transfer

---

**1.**  Bank of America, N.A. ("Bank of America"), Citibank, N.A. ("Citibank"), JPMorgan Chase Bank, N.A. ("Chase"), Union Bank, N.A. ("Union"), U.S. Bank, N.A. ("U.S. Bank"), Wachovia Bank, N.A. ("Wachovia"), and Wells Fargo Bank, N.A. ("Wells Fargo") filed an Omnibus Motion to Dismiss and/or for Judgment on the Pleadings (DE # 217). Defendants SunTrust Banks, Inc. ("SunTrust") and the Huntington National Bank ("Huntington Bank") joined in this Motion (DE

# 253, 254) on January 14, 2010 and January 19, 2010, respectively. Plaintiffs Responded (DE # 265) on February 5, 2010 and on February 19, 2010 Defendants Replied (DE # 291). Defendant Chase also filed Supplemental Motions to Dismiss the *Luquetta* and *Lopez* Complaints (D.E. # 222, 225) on December 22, 2009 and Citibank filed a Renewed Independent Motion to Dismiss (D.E. # 228) on the same date.

and consolidation of those actions to this Court by the Multidistrict Panel is anticipated.

Amended Complaints against Bank of America, Citibank, Chase, Union Bank, U.S. Bank, Wachovia and Wells Fargo were filed in October and November 2009.[2] Plaintiffs, are current or former checking account customers of the Defendant federally chartered banks who seek to recover (for themselves and all other customers similarly situated) alleged excessive overdraft fees for charges made to their accounts on debit card transactions. The alleged common nucleus of specific facts pled assert a common practice by Defendants, to enter charges debiting Plaintiffs' accounts from the "largest to the smallest" thus maximizing the overdraft fee revenue for themselves. In addition to the allegations about posting order, the Complaints set forth a number of other alleged agreements, policies and practices, contended by Plaintiffs to unlawfully damage them. Plaintiffs' asserted claims rely upon the legal theories of breach of contract and breach of a covenant of good faith and fair dealing, unconscionability, conversion, unjust enrichment, and violation of the consumer protection statutes of various states.

The Banks rely, as the legal basis for their omnibus motion to dismiss all claims: (1) the doctrine of federal preemption barring state regulation of the activities of national bank pursuant to the National Bank Act; (2) the contracts with the banks explicitly authorizing Defendants to post from "high to low" and overdraft fee assessment; (3) the legal argument that common law unconscionability claims are defenses only, not subject to affirmative causes of action for injury; (4) that conversion will not lie since the depositor does not have title to the money deposited; (5) that an adequate remedy at law exists for unjust enrichment; and (6) that state consumer protection laws are inapplicable.

Each of the fifteen Complaints in these lawsuits is filed against a single bank. Five of the fifteen Complaints were filed by California Plaintiffs seeking to represent classes of California customers.[3] Eight Complaints were filed by non-California Plaintiffs seeking to represent nationwide classes excluding California customers, but with (in some cases) subclasses limited to residents of particular states.[4] Finally, *Larsen v. Union Bank, N.A.*, No. 1:09–cv–23235–JLK ("*Larsen*") was filed by a California Plaintiff seeking to represent a nationwide class that includes California customers; and *Zankich v. Wells Fargo Bank, N.A.*, No. 1:09–cv–23186–JLK ("*Zankich*") was filed by Washington Plaintiffs seeking to represent a Washington class.

The operative Complaints in these cases vary somewhat in the causes of action asserted, but all of the Complaints allege

---

**2.** Plaintiffs did not amend (*Yourke, et al. v. Bank of America, N.A.* and *Zankich, et al. v. Wells Fargo Bank, N.A.*).

**3.** *Amrhein v. Citibank*, N.A., No. 1:09–cv–21681–JLK ("*Amrhein*"); *Luquetta v. JPMorgan Chase Bank*, N.A., No. 1:09–cv–23432–JLK ("*Luquetta*"); *Spears–Haymond v. Wachovia Bank*, N.A., No. 1:09–cv–21680–JLK ("*Spears–Haymond*"); *Waters v. U.S. Bank*, N.A., No. 1:09–cv–23034–JLK ("*Waters*"); and *Yourke v. Bank of America*, N.A., No. 1:09–cv–21963–JKL ("*Yourke*").

**4.** *Garcia v. Wachovia Bank, N.A.*, No. 1:08–cv–22463–JLK ("*Garcia*"); *Lopez v. JPMorgan Chase Bank, N.A.*, No. 1:09–cv–23127–JLK ("*Lopez*"); *Speers v. U.S. Bank, N.A.*, No. 1:09–23126–JLK ("*Speers*"); *Tornes v. Bank of America, N.A.*, No. 1:08–cv–23323–JLK ("*Tornes*"); *Dolores Gutierrez v. Wells Fargo Bank, N.A.*, No. 1:09–cv–23685–JLK ("*Dolores Gutierrez*"); *Martinez v. Wells Fargo Bank, N.A.*, 09–cv–23834–JLK ("*Martinez*"); *Gully v. Huntington Bancshares Inc.*, 09–cv–23514–JLK ("*Gully*"); and *Buffington v. SunTrust Banks, Inc.*, 09–cv–23632–JLK ("*Buffington*").

causes of action for breach of contract and/or breach of an implied covenant of good faith and fair dealing. Most cases also assert the common law causes of action for conversion, unconscionability, and/or unjust enrichment. Finally, each Complaint asserts one or more causes of action under the consumer protection laws of various states. Collectively, the Complaints involve individual Plaintiffs from fourteen states asserting claims under the law of twenty-one states.

## II. STANDARD OF REVIEW OF MOTIONS TO DISMISS UNDER FED.R.CIV.P. 12(b) & (c)

"For the purposes of a motion to dismiss, the court must view the allegations of the Complaint in the light most favorable to plaintiff, consider the allegations of the Complaint as true, and accept all reasonable inferences therefrom." *Omar ex rel. Cannon v. Lindsey,* 334 F.3d 1246, 1247 (11th Cir.2003). *See also Zinnia Chen v. Lester,* 364 Fed.Appx. 531, 2010 WL 339789, 2010 U.S.App. LEXIS 2203 (11th Cir. Feb. 1, 2010) ("The complaint is viewed in the light most favorable to the plaintiffs, and all of the plaintiffs' well-pleaded facts are accepted as true."). The complaint may be dismissed if the facts as pled do not state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). More simply, dismissal is appropriate if the plaintiff has not "nudged [its] claims across the line from conceivable to plausible." *Id.* Despite these admonitions, however, all parties have appeared to argue this motion as if it were one for summary judgment, asking this Court to rule on their claims as a matter of law. At this stage, the Court must accept all well-plead facts as true and only rule on the legal sufficiency of the Complaints. That is, the Court is only determining whether the Complaints adequately state a cause of action, not wheth-er those causes of action will ultimately succeed.

## III. DISCUSSION

Applying this standard to a consideration of the well-pled allegations made by Plaintiffs in the filed Complaints subject to the omnibus motion to dismiss, the Court finds Plaintiffs make the following assertions:

Over the past decade, Defendant Banks provided many of their checking account customers with debit cards, check cards or ATM cards. Through the use of debit cards, customers engage in transactions using funds from their accounts by engaging in "debit" or "point of sale" ("POS") transactions, or by withdrawing money from their accounts at automated teller machines ("ATMs"). Regardless of whether a debit card is used to execute POS transactions or to withdraw cash from ATM machines, the transaction is processed electronically, and the Banks are notified instantaneously when the card is physically passed ("swiped") through a receiving machine.

When a customer swipes a debit card, the bank is able to determine immediately whether there are sufficient funds in the customer's account to cover the attempted POS or ATM transaction. The Banks have the option to accept or decline the transaction at that time. They have the technological capability to decline debit card transactions (which they do if a pending transaction would exceed a pre-determined, overdraft tolerance limit for an account), or to notify customers that the particular transaction will result in an overdraft. Rather than routinely declining debit card transactions or warning their customers that completing the transaction would result in an overdraft fee, the Banks have adopted and implemented automatic, fee-based overdraft programs, processing

debit card transactions and then charging their customers overdraft fees.  The overdraft fee is typically $35 per overdraft.  Defendant Banks do not give customers the option to decline to complete the debit transactions or provide other forms of payment.  In addition, the Banks fail to adequately disclose to their customers that they can opt out of this overdraft policy, thereby avoiding all overdrafts and overdraft fees.

The Complaints further allege that Defendant Banks deploy advanced software to automate their overdraft systems to maximize the number of overdrafts and, thus, the amount of overdraft fees charged per customer.  These automated overdraft programs manipulate and alter customers' transaction records to deplete the funds in a customer's account as rapidly as possible, resulting in more overdraft fees charged for multiple, smaller transactions.  Overdrafts are likely to occur at times when, but for the Banks' manipulation and alteration, there would be sufficient funds in the account and many of these overdrafts would not occur at all.

Plaintiffs further state the most common way in which the Banks manipulate and alter customer accounts is by reordering debit transactions on a single day, or over multiple days, from largest to smallest amount, regardless of the actual chronological sequence in which the customer engaged in these transactions.  Almost without exception, reordering debit transactions from highest to lowest results in more overdrafts than if the transactions were processed chronologically.  For example, if a customer, whose account has a $50 balance at the time a bank processed several transactions, made four transactions of $10 and one subsequent transaction of $100 on the same day, the bank would reorder the debits from largest to smallest, imposing four overdraft fees on the customer.  Conversely, if the $100

transaction were debited last—consistent with the chronological order of the transactions, and with consumers' reasonable expectations—only one overdraft fee would be assessed.  By holding charges rather than posting them immediately to an account, the Banks are able to amass a number of charges on the account.  Subsequently, the Banks post all of the amassed charges on a single date, in order of largest to smallest, rather than in the order in which they were received or charged.  This delayed posting results in multiple overdraft fees that would not otherwise be imposed.

The delayed posting also prevents customers from determining accurate account balances.  In certain cases, customers are informed that they have a positive balance when, in reality, they have a negative balance, despite the Banks' actual knowledge of outstanding debits and transactions.  Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account.  For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available.  Even when the Banks have knowledge of outstanding transactions that have already created a negative balance in a customer's account, they approve, rather than decline, subsequent debit card purchases and other electronic transactions.  Further, the Banks assess overdraft fees at times when the actual funds in customer accounts are sufficient to cover all debits that have been submitted for payment.  The Banks do this by placing a "hold" on actual funds in customer accounts.

Specifically, Plaintiffs allege that they were personally injured by Defendant bank's practices.    Defendant    banks

charged each of the Plaintiffs multiple overdraft fees. Plaintiffs contend they were forced to pay overdraft fees as a consequence of the Banks' wrongful overdraft policies and practices, depriving them of significant funds, and causing them ascertainable monetary losses and damages. Plaintiffs assert claims against the Banks for breach of contract and breach of the covenant of good faith and fair dealing, unconscionability, conversion, unjust enrichment, and for violations of various states' consumer protection statutes.

On December 22, 2009, Bank of America, Citibank, Chase, Union Bank, U.S. Bank, Wachovia and Wells Fargo filed their omnibus motion to dismiss and/or for judgment on the pleadings. Chase also filed two Supplemental Motions to Dismiss and Citibank filed a Renewed, Independent Motion to Dismiss on the same day. SunTrust and Huntington subsequently joined in the omnibus motion. In this Order, the Court addresses whether: (A) all of Plaintiffs' claims are barred by federal preemption; (B) Plaintiffs' state common law claims fail as a matter of law; and (c) Plaintiffs' claims under various state consumer protection statutes also fail as a matter of law. The Court addresses each allegation in turn. For the following reasons, the Court finds Defendants' arguments on preemption and the common law claims, at this procedural state of the case, unpersuasive and would have denied the motion to dismiss on these grounds. Had this been the only basis for the bank's motion to dismiss, denial of these asserted grounds for dismissal would have had the procedural result of the case proceeding on the Complaints as presently filed. There would have been no need for the filing of further amended complaints by Plaintiffs. However, the Court's findings, in the following portions of this opinion regarding the state's statutory claims will require the filing of amended complaints to correct the deficiencies in the existing Complaints. Regarding the state statutory claims, the Court finds some, but not all, of Defendants' arguments persuasive and therefore grants in part the Motion. Finally, the Court grants in part Defendant Chase's Supplemental Motions to Dismiss the *Luquetta* and *Lopez* Complaints and denies Defendant Citibank's Renewed, Independent Motion to Dismiss.

## A. Federal Preemption

As the Eleventh Circuit explained in *Rine v. Imagitas, Inc.*, "[u]nder the Supremacy Clause, any state law that conflicts with federal law is preempted." 590 F.3d 1215, 1224 (11th Cir.2009) (quoting *Gibbons v. Ogden*, 22 U.S. 1, 9 Wheat. 1, 6 L.Ed. 23 (1824)). Defendants assert that the activities of national banks in conducting the "business of banking" are subject to exclusive federal regulation and any state law which attempts to regulate, limit, or condemn such activities is preempted. Defendants primarily rely on OCC Regulations § 7.4002 and § 7.4007 and OCC Interpretative Letter 997. All of Plaintiffs' allegations in this action rely upon state law claims. Defendants argue these allegations are preempted because they are in direct conflict with the Office of the Comptroller of the Currency's regulations and attempt to regulate the business of banking.

Plaintiffs respond that they are not trying to prevent banks from engaging in the business of banking, they are merely asking the banks to do so in good faith. Specifically, Plaintiffs claim they are not challenging the bank's right to charge overdraft fees. Instead, they are challenging the banks' practice of manipulating the overdraft fees "in order to maximize a benefit to them and to the great detriment of the parties who are their account holders." (Oral Arg. Tr. at 33.)

IN RE CHECKING ACCOUNT OVERDRAFT LITIGATION 1311
Cite as 694 F.Supp.2d 1302 (S.D.Fla. 2010)

Plaintiffs explain that the banks are not federally authorized to manipulate the transactions as alleged and therefore their claims are not preempted by federal law. *Id.* at 38. The Court agrees.

As Defendants point out, regulation of national banks is one of the few areas in which preemption of state law is presumed. *Barnett Bank of Marion County, N.A. v. Nelson,* 517 U.S. 25, 32, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996). National banks are chartered by the federal government pursuant to the National Bank Act ("NBA") and the NBA grants national banks "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24 (Seventh) (2006). To insure that national banks can carry out the business of banking without the impairment of inconsistent or intrusive state laws, courts have "repeatedly made clear that federal control shields national banking from unduly burdensome and duplicative state regulation." *Watters v. Wachovia Bank,* 550 U.S. 1, 11, 127 S.Ct. 1559, 167 L.Ed.2d 389 (2007).

The United States Supreme Court has upheld the doctrine of federal preemption to shield the banking activities of national banks from the application of state law. *See e.g., Barnett Bank of Marion County,* 517 U.S. 25, 116 S.Ct. 1103; *Franklin Nat. Bank of Franklin Square v. New York,* 347 U.S. 373, 74 S.Ct. 550, 98 L.Ed. 767 (1954). In *Barnett Bank* the Supreme Court determined that a federal law allowing national banks to "act as the agent for any fire, life, or other insurance company" preempted a state law outlawing financial institutions from engaging in insurance agency activities. 517 U.S. at 26, 116 S.Ct. 1103. The *Barnett Bank* Court explained that to determine preemption the Court must look at whether the federal and state statutes are in *irreconcilable conflict. Id.* at 32, 116 S.Ct. 1103. In other words, whether compliance with both statutes is a physical impossibility, or whether the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Id.* Similarly, the Court in *Franklin National Bank* held that federal statutes which authorize national banks to receive savings deposits conflicted with New York state legislation that prohibited national banks from using the word 'saving' or 'savings' in their advertising or business. 347 U.S. at 376–79, 74 S.Ct. 550. The Court found the statutes incompatible; finding that since advertising is a natural part of the business of banking, the government cannot allow the banks to receive savings deposits without allowing them to advertise the same. *Id.*

Further, the Court in *Watters* held that an operating subsidy of a national bank cannot be subject to state mortgage lending requirements such as registration, inspection and enforcement regimes. 550 U.S. 1, 127 S.Ct. 1559. The Court explained that "[s]tates are permitted to regulate the activities of national banks where doing so does not prevent or significantly interfere with the national bank's or the national bank regulator's exercise of its powers. But when state prescriptions significantly impair the exercise of authority, enumerated or incidental under the NBA, the State's regulations must give way." *Id.* at 12, 127 S.Ct. 1559.

Nevertheless, as Plaintiffs argue, the aforementioned cases all address state laws specifically targeted at national banks. State laws of general applicability, however, have been found not to be preempted. *See e.g. Baldanzi v. WFC Holdings Corp.,* 2008 WL 4924987 (S.D.N.Y.2008) ("In contrast to findings of federal preemption in cases involving specific state regulations that conflict with the NBA, causes of action sounding in contract, consumer protection statutes and

tort have repeatedly been found by federal courts not to be preempted."). In fact, the Supreme Court held in *Watters* that "federally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or general purpose of the NBA." *Watters,* 550 U.S. at 12, 127 S.Ct. 1559.

Looking specifically at whether federal law preempts general state law claims addressing overdraft fees, the court in *Gutierrez v. Wells Fargo Bank N.A.* found that the state law claims were not preempted. 622 F.Supp.2d 946 (N.D.Cal. 2009). Explaining that "preemption would likely apply if a customer were challenging a bank's fundamental right to employ an overdraft fee at all," the court held that there was no preemption in *Gutierrez* because "the issue is whether Wells Fargo has been manipulating—indeed downright altering—customers' transaction records so as to maximize overdraft penalties imposed on customers." *Id.* at 950. Addressing the same issue in *White v. Wachovia Bank, N.A.,* the court held that "while the lawsuit may incidentally implicate Wachovia's largest-to-smallest transaction posting policy, it, more importantly, claims that Wachovia's policy allows the routine imposition of an overdraft fee for transactions that do not result in an actual overdraft. This allegation which forms the basis for all of its claims is not of a regulatory nature that would subject it to federal preemption." 563 F.Supp.2d 1358, 1367 (N.D.Ga.2008).

In their oral argument, Defendants relied heavily on the Sixth Circuit case, *Monroe Retail Inc. v. RBS Citizens,* 589 F.3d 274 (6th Cir.2009). In *Monroe Retail,* the court found that the NBA's grant of authority to charge fees includes the authority to determine service fees for the garnishment process. The court found that Ohio's state conversion claim which

would require the bank to freeze accounts immediately upon receipt of a garnishment order was preempted. Notably, the court agreed with the aforementioned cases and found that state laws of general applicability that do not target banks are "exempted from preemption 'to the extent that they only incidentally affect the exercise of national banks' deposit taking powers." *Id.* at 282. The court then went on to find that " 'when state laws significantly impair the exercise of authority, enumerated or incidental under the NBA', the state laws 'must give way.' " *Id.* at 283 (quoting *Watters,* 550 U.S. at 12, 127 S.Ct. 1559).

Here, the federally authorized powers have been enumerated by the Office of the Comptroller of the Currency ("OCC"). The OCC, the regulatory agency charged with implementing the NBA, has promulgated a binding regulation confirming that the federally authorized "powers" of national banks include the power to impose non-interest fees such as overdraft fees. 12 C.F.R. § 7.4002(a) ("Authority to impose charges and fees. A national bank may charge its customers non-interest charges and fees, including deposit account service charges."). Further, the OCC sets out the factors a national bank is supposed to use to establish those fees, their amounts and the method of calculating them. 12 C.F.R. § 7.4002(b)(2). Namely, a national bank should establish non-interest fees, "in its discretion, according to sound banking judgment and safe and sound banking principles." *Id.* Further, when asked if the process followed by the Banks in deciding to use a high-to-low order of check posting is consistent with the safety and soundness considerations of 12 C.F.R. § 7.4002(b) the OCC held, in Interpretive Letter No. 997, that "we agree that the Banks' decision to set fees based on a given order of check posting falls within the Banks' authority to set fees pursuant to section 4 (Seventh) and section 7.4002.

We further agree that the process the Banks used in deciding to adopt the order of check posting described in your submissions is consistent with section 7.4002." 70 FR 9127–01.

The OCC also addresses federal preemption of regulations on deposit-taking activities. In Section 7.4007(b)(2) the OCC states "[a] national bank may exercise its deposit-taking powers without regard to state law limitations concerning: . . . ii) Checking accounts; iii) Disclosure requirements; iv) Funds Availability . . ." 12 C.F.R. § 7.4007(b)(2). The OCC goes on to clarify "state laws that are not preempted" in Section (c): "State laws on the following subjects are not inconsistent with the deposit-taking powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' deposit-taking powers: 1) Contracts; 2) Torts; 3) Criminal History . . ." 12 C.F.R. § 7.4007(c).

**[1]** The state law claims before this Court are contracts and tort claims; thus this Court's inquiry is limited to whether Plaintiffs' claims, as alleged, more than "incidentally affect the exercise of national banks' deposit taking powers." The Court finds that they do not and are therefore not preempted.

Defendants assert that the language of the OCC expressly preempts any state law regulations on overdraft fees, but this is not the case. Section 7.4002 gives Defendant banks the right to charge overdraft fees, but it does not authorize banks to ignore general contract or tort law. Further, the OCC's interpretative letter does not authorize debit card postings in a high to low order to increase fees, it merely states that doing so does not *violate* the OCC's requirement that banks set fees using sound banking judgment. A bank could follow both the requirements of sound banking judgment outlined in Section 7.4007 and good faith; these principals

are not in irreconcilable conflict. In fact, as cited by the *Gutierrez* court, the OCC itself advised a California bank that it must act in good faith when reordering checks for overdraft fees. *Gutierrez*, 622 F.Supp.2d at 952 ("The only restraint on the discretion given to the payor under subsection (b) is that the bank act in good faith."). Thus, the OCC did not expressly manifest its intent to preempt these state law claims in the language of the regulation.

Similarly, federal regulation in this field is not so pervasive that we can reasonably infer that Congress left no room for the states to supplement it. "States . . . have always enforced their general laws against national banks—and have enforced their banking—related laws against national banks for at least 85 years . . ." *Cuomo v. Clearing House Ass'n*, —— U.S. ——, 129 S.Ct. 2710, 2720, 174 L.Ed.2d 464 (2009). Moreover, Section 7.4007(c) explicitly reserves general areas of law to the states such as contracts, torts, criminal law and rights to collect debts, if the laws only incidentally affect the exercise of a national bank's deposit taking power.

Finally, these are state laws of general application that do not vitiate the purposes of the NBA, and banks could comply with both the NBA, OCC regulations and state laws if they refrained from engaging in the criticized posting procedures. Again, the Court's only inquiry at this stage is whether the state law claims, as alleged, more than incidentally affect the exercise of the banks' deposit taking power. The Plaintiffs alleged claims are *not* that banks lack the right to charge overdraft fees as part of their deposit-taking powers. Instead, Plaintiffs attack the allegedly unlawful manner in which the banks operate their overdraft programs to maximize fees at the expense of consumers. At this stage, these allegations do no more than inciden-

tally affect the banks' exercise of their deposit taking power and are therefore not preempted.

## B.   Common Law Claims

In this section, the Court will turn to Plaintiffs' common law claims.   Specifically, the Court will address (i) choice of law, (ii) breach of contract, (iii) unconscionability, (iv) unjust enrichment, and (v) conversion.

### i.   Choice of Law

Before addressing the common law claims, it is necessary for the Court to briefly address the issue of choice of law. The Plaintiffs in the fifteen Complaints that are the subject of this motion to dismiss reside in several different states. The common law claims asserted are, of course, claims that are defined and construed by the courts of the several states. The Court realizes that it may be necessary in the future to apply a particular state's law to a particular Plaintiff.   Without conducting an extensive choice of law analysis, it appears that, for purposes of this motion, there are no relevant differences in how each state interprets these various causes of action.   Indeed, Defendants do not argue that particular Plaintiffs should be dismissed because the courts of that Plaintiff's state impose additional requirements that are not satisfied here.[5]   Rather, Defendants generally acknowledge that the elements of the common law claims asserted are the same in every state.   There is, therefore, no need

for the Court to analyze the common law issues on a plaintiff-by-plaintiff or state-by-state basis at this early procedural (Motion to Dismiss) stage of the proceedings. The case authorities from various states cited by the Court are merely demonstrative of what the common law appears to be in each state involved in this action.[6]   Any arguments regarding specific Plaintiffs or specific states may be raised at a later stage upon Court consideration of class certification, summary judgment, or trial.

### ii.   Breach of Contract based on the Implied Covenant of Good Faith and Fair Dealing

The Defendant banks make two arguments for the dismissal of the breach of contract claims, based on the implied covenants of good faith and fair dealing.[7] First, Defendants argue that the conduct complained of is in accord with the express terms of the agreements between the bank and the Plaintiff customer and that the implied covenant of good faith and fair dealing cannot vary express contractual terms.   "As a general principle, there can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract."   23 Williston on Contracts   § 63:22   (4th   ed.);   *see, e.g., Burger King Corp. v. C.R. Weaver,* 169 F.3d 1310, 1316 (11th Cir.1999) ("[T]he implied obligation of good faith cannot be

---

**5.**   The one exception to this is that Defendants argue that Texas law imposes additional requirements to assert a claim for breach of the implied covenant of good faith and fair dealing.

**6.**   This paragraph applies only to choice of law with respect to the common law claims. Choice of law issues regarding statutory claims will be addressed in a later section.

**7.**   In Huntington's Joinder Motion to Dismiss, Huntington also asserts that neither Ohio nor Michigan law permit an independent claim for breach of the duty of good faith and fair dealing.   The Court however finds that Michigan and Ohio law both expressly support a claim for breach of the implied covenant, as part of a claim for breach of contract.   The fact that the *Gulley* Complaint enumerates the claim as a separate cause of action is not a basis for dismissal.

used to vary the terms of an express contract") (citations omitted); *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir.1990) ("Good faith is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting"); *Tolbert v. First Nat'l Bank*, 312 Or. 485, 495, 823 P.2d 965 (1991) (holding that as a matter of law there is no breach of the implied covenant of good faith and fair dealing where the contract provides for unilateral exercise of discretion and that discretion is exercised in accordance with the express terms of the contract).

**[2]** Plaintiffs counter, and the Court agrees, that they do not seek to vary the language of the contract, but rather to have the express contractual terms carried out in good faith. Plaintiffs do not ask the Court to tell the banks *how* to order transactions, but simply that the ordering must be carried out as contemplated by the covenant of good faith and fair dealing. There are a number of cases supporting the proposition that when one party is given discretion to act under a contract, said discretion must be exercised in good faith. *See Alexander Mfg., Inc. Employee Stock Ownership & Trust v. Ill. Union Ins. Co.*, 666 F.Supp.2d 1185, 1206 (D.Or. 2009) ("Good faith requires that each party perform its obligations under the contract, including exercising any discretion that the contract provides, in a way that will effectuate the objectively reasonable contractual expectations of the parties"); *Amoco Prod. Co. v. Heimann*, 904 F.2d 1405, 1411–12 (10th Cir.1990) (where discretion exists in one of two parties to a contract,

that discretion must be exercised in good faith); *Bybee Farms L.L.C. v. Snake River Sugar Co.*, 2008 WL 4454054, at *12 (E.D.Wash. Sept. 29, 2008) (finding that an agreement which confers discretion means that there is "an implied duty to exercise its authority in good faith"). Therefore, the Court will not dismiss the breach of contract claim on this basis.

Second, Defendants argue that the practice of posting high-to-low is permitted by the applicable law. The Uniform Commercial Code (UCC) generally endorses high-to-low posting of checks in UCC Section 4–303(b).[8] Defendants suggest the Court should read that general endorsement of high-to-low posting as applicable to debit card transactions. While conceding that the relevant UCC provisions upon which they rely do not apply to debit card transactions (only to checks) Defendants argue that the principles underlying the UCC's reasoning apply to electronic transfers as well as to the check transactions.[9] According to Defendants, if the UCC, as a matter of legislative determination holds that banks have discretion to order transactions from high-to-low, it cannot therefore be bad faith or a violation of the common law to do so. Defendants contend this is a reasonable interpretation because of the impossibility of stating a rule that would be fair in all cases, bearing in mind the infinite number of combinations of large and small checks and debit purchases, in relation to the available balance on hand.

In support of their position, Defendants cite several cases which have found in favor of a bank's discretion to post trans-

---

**8.** "(b) Subject to subsection (a), *items* may be accepted, paid certified, or charged to the indicated *account* of its *customer* in any order."

**9.** The banks rely on 4–303(b) of the UCC to support their position that high-to-low posting

does not violate the covenant of good faith and fair dealing. The UCC drafters however did not include transactions initiated by means of a credit card or debit cards in its endorsement of high-to-low posting.

actions high-to-low. *See e.g., Hassler v. Sovereign Bank,* 644 F.Supp.2d 509 (D.N.J.2009) (the court rejected a claim that the implied covenant required banks to post customers' debit transactions in the order in which the transactions occurred); *Hill v. St. Paul Fed. Bank for Sav.,* 329 Ill.App.3d 705, 263 Ill.Dec. 562, 768 N.E.2d 322 (2002) (holding that there can be no lack of good faith in acting as authorized by the UCC); *Fetter v. Wells Fargo Bank Tex., N.A.,* 110 S.W.3d 683 (Tex.App.2003) (adopting the holding in *Hill,* the court recognized that the legislature authorized Wells Fargo's practice of high to low posting); *Daniels v. PNC Bank, N.A.,* 137 Ohio App.3d 247, 738 N.E.2d 447 (2000) (holding that the plaintiff had the insurmountable task of persuading the court that a statutorily authorized procedure constitutes an act of bad faith and unfair dealing); *Smith v. First Union Nat'l Bank,* 958 S.W.2d 113 (Tenn.Ct.App.1997) (holding that in light of the UCC, the bank had discretion to pay items in a manner convenient to it and the court could not substitute its judgment for the bank's because doing so would be undermining the fundamental purposes of the statute).

Plaintiffs respond that decisions involving paper check transactions are inapposite. They argue that there is a fundamental difference between check and electronic transactions, and that the UCC's endorsement of high-to-low posting for checks should not be extended to cover debit card transactions. Plaintiffs submit that the instantaneous nature of debit card transactions, carries with it much less risk to the merchant than the risk involved when accepting a check, where there is usually a few days gap in between when the check is issued and when the check is presented to the bank for payment. With the faster debit card transaction, the risk to the merchant is much less significant since the bank can choose to decline the purchase before the buyer leaves the store with the goods. Defendants' suggested analysis of applying the UCC's endorsement of high-to-low posting in check transactions to debit card transactions does not logically follow. If they were the same, there would be one body of law addressing both. The UCC's generally accepted principles when dealing with checks cannot be broadly applied to debit card transactions. To do so would be to ignore the fundamental differences between the two.

The Court notes that two cases have found the system employed by the banks, to reorder debit card transactions to impose excessive overdraft fees, was an abuse of the bank's discretion. *See Gutierrez,* 622 F.Supp.2d 946; *White,* 563 F.Supp.2d 1358. In *Gutierrez,* the court held that Wells Fargo abused its discretion in adopting a policy of maximizing the number of returned checks for the sole purpose of maximizing overdraft charges. *Id.* at 954. The court in *Gutierrez* further held that even if the contract confers discretion on the bank to determine the sequence of honoring presentments, the bank must exercise that discretion fairly and cannot exercise it to enrich itself by gouging the consumer. *Id.*

Moreover, in *White v. Wachovia,* the court found that good faith was a question of fact to be developed on discovery. 563 F.Supp.2d at 1364. The court held that, although discovery may make clear that Wachovia complied with its duties fairly, plaintiffs sufficiently alleged otherwise. *Id.* The court declined to find that the Deposit Agreements' statement that Wachovia "may" post items "in any order" expressly gives Wachovia the right to manipulate transactions, delay posting indefinitely, or maximize overdraft fees in the ways the Complaint alleges. *Id.* Based upon the pleadings before it, the court found that plaintiffs alleged sufficient facts

to show a lack of good faith in Wachovia's exercise of its discretion in charging six overdraft fees for six transactions over a period during which, even if the six transactions were posted in order from largest to smallest, at most three overdraft fees should have been imposed. *Id.*

Thus, if there is any question about the facts, or how the banks operate, these are matters to be developed through discovery. Factual issues must not be resolved on Motion to Dismiss by the simple expedient of selecting facts asserted by one side over the other as true. After carefully considering the pleadings, reviewing the case law and listening to all parties at extensive oral argument, the Court finds that it cannot resolve this issue at this procedural stage in the litigation. Although discovery may make clear that the banks complied with its obligations in good faith, Plaintiffs have sufficiently alleged otherwise. The Court takes all well pled facts as true. Plaintiffs' allegations state a plausible claim for breach of contract, based on the implied covenant of good faith. At this stage in the proceedings the Court determines that whether the banks are acting in good faith is a question of fact which should be deferred until discovery is taken and the facts before the Court further developed. Therefore, the Court must deny Defendants' Motion to Dismiss on this issue.

However, the Court reaches a different conclusion on the breach of the implied covenant based on Texas law. Defendants argue that the implied covenant only exists in exceptional circumstances under Texas law. *See Subaru v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 225 (Tex.2002) ("A common-law duty of good faith and fair dealing ... arises only when a contract creates or governs a special relationship between the parties.").

**[3]** In response, Plaintiffs concede that the law in Texas is generally unfavorable to a claim for breach of the implied covenant, but Texas courts have found a duty of good faith and fair dealing based on the special relationship between a bank and its customers. *Plaza National Bank v. Walker,* 767 S.W.2d 276, 277–78 (Tex.Ct.App. 1989). In *Plaza,* the court found that a special relationship existed between a bank and its depositors and therefore the implied covenant applied. *Id.* Plaintiffs also rely on *FDIC v. Perry Bros., Inc.,* which held that the imposition of the duty of good faith and fair dealing may arise by: (1) agreement; (2) a longstanding special relationship of confidence; or (3) when an imbalance of bargaining power exists, at least when defendant has been the cause of the imbalance. 854 F.Supp. 1248, 1259–60 (E.D.Tex.1994).

The Court finds *Wil–Roye Invest. Co. II v. Wash. Mut. Bank, F.A.,* 142 S.W.3d 393, 410 n. 4 (Tex.Ct.App.2004) to be particularly instructive. In *Wil–Roye,* the court declined to follow the court's ruling in *Plaza,* finding that the court did not engage in an analysis as to why a special relationship exists between a bank and a depositor. The *Wil–Roye* court held that in order to find a special relationship exists, there must be evidence that the customers had substantial deposits in the bank and that the customers were shareholders who sought the bank's advice on various matters. *Id.* at 410. Here, the Court finds that while in certain instances Texas law supports a claim for breach of contract based on the implied covenant, the facts before the Court do not satisfy the additional requirements imposed by Texas law to raise a claim based on the implied covenant. Therefore, Defendants' Motion to Dismiss Plaintiffs' breach of the implied covenant claims based on Texas law only, is granted without prejudice to amend.

### iii.  Unconscionability

All Complaints include a count for Unconscionability. That is, Plaintiffs seek a

declaration that certain terms of Plaintiffs' contracts with Defendants (and Defendants' performance of those terms) are unconscionable, and damages that have resulted from Defendants' enforcement of the allegedly unconscionable terms. Those terms and practices include: (1) Reordering the debit postings in bad faith so as to maximize the number of overdrafts incurred by Plaintiffs, (2) charging excessive overdraft fees that do not reasonably relate to the costs or risks associated with providing overdraft protection, (3) failing to disclose that customers have the option to opt out of the overdraft protection, and (4) failing to obtain Plaintiffs' consent before overdrawing their accounts.

[4] Defendants make two arguments attacking Plaintiffs' unconscionability count in this Motion. First, Defendants argue that unconscionability is not an affirmative cause of action, but merely a defense to the enforcement of a contract. *See Cowin Equip. Co., Inc. v. Gen. Motors Corp.*, 734 F.2d 1581, 1582 (11th Cir.1984) ("[T]he equitable theory of unconscionability has never been utilized to allow for the affirmative recovery of money damages. The Court finds that neither the common law of Florida, nor that of any other state, empowers a court addressing allegations of unconscionability to do more than refuse enforcement of the unconscionable section or sections of the contract so as to avoid an unconscionable result."). Plaintiffs respond by asserting that the Court can utilize its equitable powers to issue a declaratory decree that the contractual terms and practices are unconscionable. "As a general proposition, most matters of defense can be raised affirmatively in a declaratory judgment action, so long as there is an actual controversy between the parties." *Eva v. Midwest Nat'l Mortg. Banc, Inc.*, 143 F.Supp.2d 862, 895 (N.D.Ohio 2001). Moreover, Plaintiffs argue that, if the Court finds the terms or practices to be unconscionable, the Court has the power to award damages for the banks' past enforcement of the terms. *Id.* at 896 ("Under either scenario, once the plaintiff obtains either a declaration that the contract or some of its terms are invalid, or has the contract reformed to eliminate the unconscionable terms, the plaintiff can further request damages to the extent that the unconscionable terms have been enforced in the past.").

The Court finds Plaintiffs' argument more persuasive. If the overdraft fee provisions are found to be unconscionable, the Court retains the authority and discretion to fashion appropriate equitable relief. Moreover, a declaration of unconscionability may affect the legal status of the contractual terms that Defendants seek to enforce, which may, in turn, affect the analysis of the other causes of action that Plaintiffs assert. Finally, Defendants appear to be correct in their assertion that, ordinarily, unconscionability is properly asserted as a defense to a contract rather than an affirmative cause of action. But this is not the ordinary case. An ordinary case in this factual context would be one in which the customer allegedly overdraws his or her account, the bank provides the overdraft service, and then the bank demands payment of the overdraft fee from the customer. Then, when the customer refuses to pay, the bank sues the customer for breach of contract, and the customer at that time can raise an unconscionability defense to the enforcement of the contract. In the instant case, however, the bank is never required to file suit because it is already in possession of the customer's money, and simply collects the fee by debiting the customer's account. Thus, the customer never has the opportunity to raise unconscionability as a defense for nonpayment. The only opportunity to do so is through a lawsuit filed by the customer, after payment has been made. Hence, the facts of the instant case weigh in favor

of permitting Plaintiffs to pursue an unconscionability claim.

Defendants' second argument asserts that the challenged contractual terms and practices are not unconscionable. Unconscionability has two aspects: procedural and substantive. The Court will address procedural unconscionability first.

**[5, 6]** "Procedural unconscionability relates to the manner in which a contract is made and involves consideration of issues such as the bargaining power of the parties and their ability to know and understand the disputed contract terms. Substantive unconscionability, on the other hand, requires an assessment of whether the contract terms are so outrageously unfair as to shock the judicial conscience." *Bland v. Health Care & Ret. Corp. of Am.*, 927 So.2d 252, 256 (Fla. 2d DCA 2006) (quotations and citations omitted). Regarding the procedural aspect, Defendants argue that, although the contractual terms were part of boilerplate language contained in a multi-page contract, Plaintiffs were not forced to sign the agreements, they were not tricked into signing the agreement, and the terms were not hidden from them. *See Best v. United States Nat'l Bank*, 303 Or. 557, 739 P.2d 554, 556 (1987) (bank's overdraft fees not procedurally unconscionable, even though they were in a "take it or leave it" contract, where customers could close their accounts at any time and for any reason, customers were of ordinary intelligence and experience, and there was no evidence that the bank obtained the contract through deception or any other improper means); *Saunders v. Michigan Ave. Nat'l Bank*, 278 Ill.App.3d 307, 214 Ill.Dec. 1036, 662 N.E.2d 602, 611 (1st Dist.1996) (bank's overdraft fees not unconscionable where bank disclosed fees, plaintiff was not intimidated or coerced into accepting the terms, and plaintiff could have chosen another bank). Plaintiffs respond by pointing out the tremendous disparity in sophistication and bargaining power between Plaintiffs and Defendants. They also argue that these were contracts of adhesion-that is, they were presented with no option to negotiate the terms and those terms were set out in voluminous boilerplate language. Plaintiffs further claim that they were denied any meaningful opportunity to opt out of the overdraft protection program. *See Perdue v. Crocker Nat'l Bank*, 38 Cal.3d 913, 216 Cal.Rptr. 345, 702 P.2d 503, 514 (1985) (procedural unconscionability present where contract terms laying out the bank's overdraft policies were presented on a "take it or leave it" basis in one-sided boilerplate terms); *Powertel, Inc. v. Bexley*, 743 So.2d 570, 575 (Fla. 1st DCA 1999) (arbitration clause procedurally unconscionable because parties had no meaningful choice in accepting or rejecting the contract).

**[7]** The Court finds that Plaintiffs have sufficiently pled procedural unconscionability. Although Plaintiffs do not allege they were coerced into accepting the overdraft protection terms, the disparity in sophistication and bargaining power between Plaintiffs and Defendants is obvious. The terms at issue were contained in voluminous boilerplate language drafted by the bank. If Plaintiffs did disagree with the terms, there was no meaningful opportunity to negotiate with the bank; rather, the bank would simply refuse to open an account for the customer as Defendants' counsel orally argued: ("That's why these terms are nonnegotiable, because it's automated."). (*See* Oral Arg. Trans. 76:14–15.) Moreover, Plaintiffs have alleged that they were not notified they had the option to decline the overdraft protection service (in which case the bank would simply decline to pay the merchant who presented the item for payment, rather that paying and charging the customer an overdraft fee),

when in fact they did have that option. Thus, the Court concludes the Plaintiffs have sufficiently alleged procedural unconscionability.

[8]   The standard for substantive unconscionability has been articulated in slightly different ways, but one representative formulation is the following: A term is substantively unconscionable if it is so "outrageously unfair as to shock the judicial conscience," or it is one that "no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Bland*, 927 So.2d at 256 (quotations and citations omitted). To make that determination, courts should consider "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 876 (11th Cir.2005) (quotations and citations omitted). Defendants argue that the high-to-low posting practice cannot be substantively unconscionable because it is a standard industry practice that is expressly endorsed by the UCC. *See White*, 563 F.Supp.2d at 1370 (high to low posting practice not substantively unconscionable because the practice is consistent with the UCC); *Daniels v. PNC Bank, N.A.*, 137 Ohio App.3d 247, 738 N.E.2d 447, 451 (2000) ("[B]ecause the practice of high-low posting is allowed by [the UCC], it cannot be said to be itself unconscionable."). In response, Plaintiffs argue that no reasonable person would have agreed to allow the banks to post debits in a manner designed solely to maximize the number of overdraft fees. They also argue that the amount of overdraft fees is unconscionably excessive because the fees are not reasonably related to the costs or risks associated with providing overdraft protection. *See Maxwell v. Fidelity Fin. Servs.*, 184 Ariz. 82, 907 P.2d 51, 58 (1995) ("Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity."). Finally, Plaintiffs argue that this analysis is highly fact dependent and cannot be resolved on a motion to dismiss.

[9]   The Court finds that Plaintiffs have sufficiently pled substantive unconscionability. The Complaints state that deposit agreements contained contractual terms regarding overdraft protection that had the purpose and effect of allowing Defendants to re-order the posting of debit transactions to maximize the number and amount of overdraft fees charged to Plaintiffs, and that the fees bear no reasonable commercial relationship to the costs or risks associated with providing the overdraft service. Moreover, Defendants are not entirely correct when they state that high-to-low posting is expressly condoned by the UCC. As discussed in the above section, the provision they rely on, section 4–303(b), applies only to paper checks, not the electronic debits that are the subject of this lawsuit. Although the Court recognizes that the UCC commentary suggests that courts may apply the UCC provisions by analogy, this is the exact set of circumstances in which the analogy breaks down. With paper checks, the customer gives a check to the merchant and leaves with the merchandise. The merchant then, at some unspecified time in the future, takes the check to his or her bank, which then presents the check to the customer's bank for payment. This guaranteed time lapse increases the risk to the bank, the merchant, and the customer that, in the intervening time period, there will not be sufficient funds in the account to cover the check. Thus, banks are far more justified in adopting a specific check posting order,

providing overdraft services, and charging the customer an overdraft fee to account for the risk of insufficient funds. With electronic debit cards, however, the banks can know, at least in many circumstances, instantly whether there are sufficient funds and can decline the transaction immediately, decreasing the risk to all parties and obviating the need to "hold" the debit transactions for a period of time and then post them in a specific order. Thus, Defendants' reliance on UCC section 4–303(b) to defeat substantive unconscionability is misplaced.

Therefore, having found that Plaintiffs have sufficiently alleged both the procedural and substantive aspects, the Court concludes that Plaintiffs have stated a claim for unconscionability.[10]

### iv. Unjust Enrichment

Thirteen of the fifteen Complaints contain a count for unjust enrichment, and Defendants make two arguments for the dismissal of this count. The first argument is that there can be no claim for unjust enrichment when an express contract exists. That is, Defendants contend that, because the practices that are the subject of Plaintiffs' Complaints are governed by a written contract, Plaintiffs may only bring a claim under the contract and are barred from seeking relief on an unjust enrichment theory. *See White*, 563 F.Supp.2d at 1372 (applying Georgia law and dismissing an unjust enrichment claim); *Hassler*, 644 F.Supp.2d at 519 ("[T]he enrichment of one party at the expense of the other is not unjust where it is permissible under the terms of an express contract.") (quotations and citations omitted). In response, Plaintiffs concede that they will not be permitted to recover damages under both claims, but argue that

dismissal of the unjust enrichment claim would be premature at this stage.

The Court agrees with Plaintiffs' position. Federal Rule of Civil Procedure 8(d) allows pleading in the alternative, even if the theories are inconsistent. Defendants have not conceded that Plaintiffs are entitled to recovery under the contract, and it is possible that if their contractual claim fails, Plaintiffs may still be entitled to recovery under an unjust enrichment theory. *See Tracfone Wireless, Inc. v. Access Telecom, Inc.*, 642 F.Supp.2d 1354, 1366 (S.D.Fla.2009) ("Although plaintiff has alleged a breach of contract claim which I have concluded can proceed, it would be premature to dismiss plaintiff's count for unjust enrichment in this case."); *Mancini Enters. v. Am. Express Co.*, 236 F.R.D. 695, 699 (S.D.Fla.2006) ("[T]he court finds that plaintiff should be permitted to plead alternative equitable claims for relief as the existence of express contracts between the Parties has yet to be proven."); *Mobil Oil Corp. v. Dade County Esoil Mgmt. Co.*, 982 F.Supp. 873, 880 (S.D.Fla.1997) ("Until an express contract is proven, a motion to dismiss a claim for promissory estoppel or unjust enrichment on these grounds is premature."). Hence, while the law does not permit a party to simultaneously prevail on an unjust enrichment theory and a contractual theory, it does not require the dismissal (at the motion to dismiss stage) of an unjust enrichment claim merely because an express contract exists that arguably governs the conduct complained of. That argument may be properly raised at a later stage in this litigation, such as summary judgment.

**[10]** Defendants' second argument is that Plaintiffs fail to allege circumstances under which it would be unjust for Defen-

---

**10.** To be clear, the Court has not concluded that the challenged terms and practices are unconscionable. The Court has merely found

that Plaintiffs have alleged sufficient facts to proceed with this claim.

dants to retain the benefit that they have allegedly received, chiefly because the overdraft fees are specifically provided for in the contracts. The Court disagrees. Plaintiffs have alleged sufficient facts—that, among other things, Defendants manipulated the posting order of debit transactions in bad faith so as to maximize the number of overdraft fees incurred—which could lead a reasonable fact-finder to conclude that it would be unjust to retain the benefit of those fees. Thus, the Court cannot dismiss the unjust enrichment count on this ground.

**v. Conversion**

Thirteen of the fifteen Complaints contain a count for Conversion, and Defendants make two arguments for the dismissal of this claim. First, Defendants argue that the tort of Conversion requires Plaintiffs to plead ownership of some specific property, and that Plaintiffs have not and cannot do so as matter of law. That is, Defendants contend that Plaintiffs do not "own" the funds in their accounts—they merely own a contractual right to demand those funds from the bank, and any failure to comply by the bank gives rise to a contractual claim, not a tort. *See Gutierrez*, 622 F.Supp.2d at 956 ("A bank may not be sued for conversion of funds deposited with the bank."); *Maurello v. Broadway Bank & Trust Co.*, 114 N.J.L. 167, 176 A. 391, 394 (N.J.1935) ("[W]here a general deposit is made, the title to the moneys passes from the depositor to the bank."); *Lawrence v. Bank of Am.*, 163 Cal.App.3d 431, 437, 209 Cal.Rptr. 541 (1st Dist.1985) (stating in dictum that "[i]t is well settled, however, that money on deposit with a bank may not be the subject of conversion.").

In response, Plaintiffs argue that this element of conversion can be met by pleading a right to possession, rather than ownership, and that, even if title to the funds passes to the banks when the funds are

deposited, Plaintiffs still retain a right to possess those funds at any time. *See Bank Brussels Lambert v. Credit Lyonnais*, 2000 WL 174955, at *6 (S.D.N.Y. 2000) ("[P]laintiffs, to sustain a conversion claim, need not establish legal ownership of the funds in question: it is sufficient if they establish an immediate right of possession."); *Pierpoint v. Hoyt*, 260 N.Y. 26, 29, 182 N.E. 235 (1932) ("It is elementary that the law of conversion is concerned with possession, not with title."); *Star Fruit Co. v. Eagle Lake Growers, Inc.*, 160 Fla. 130, 33 So.2d 858, 860 (1948) ("A conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion."); *In re Marriage of Langham*, 153 Wash.2d 553, 106 P.3d 212, 219 (2005) ("We hold that some property interest in the allegedly converted goods is all that is needed to support an action in conversion."); *Cruthis v. Firstar Bank, N.A.*, 354 Ill.App.3d 1122, 290 Ill.Dec. 869, 822 N.E.2d 454, 463–64 (5th Dist.2004) ("Conversion is an unauthorized act that deprives a person of his property permanently or for an indefinite time. . . . The plaintiffs had a right to the funds in their bank account, had the absolute and unconditional right to the immediate possession of the funds in their account, and made a demand for possession, and the defendant wrongfully and without authorization assumed control, dominion, or ownership over the plaintiffs' property. . . . The evidence supported the plaintiffs' conversion cause of action against the defendant, thereby establishing an independent tort for which punitive damages may be awarded."); *Seibel v. Society Lease*, 969 F.Supp. 713, 718–19 (M.D.Fla. 1997) ("Conversion has been defined as: An act of willful interference with the personal property of another which is incon-

sistent with the rights of the person entitled to the use, possession or ownership of the property.") (quotations and citations omitted); *Decatur Auto Ctr., Inc. v. Wachovia Bank, N.A.,* 276 Ga. 817, 821, 583 S.E.2d 6 (2003) ("Conversion is also available for ... overdrafts charged by a bank on existing accounts."); *First Union Nat'l Bank v. Davies–Elliott, Inc.,* 215 Ga.App. 498, 452 S.E.2d 132, 140 (1994) (upholding a jury verdict finding that the wrongful imposition of an overdraft fee constituted conversion).

[11] After consideration of all the relevant cases, the Court agrees with Plaintiffs' position. Although the caselaw is not particularly clear in delineating whether conversion requires interference with ownership or merely a right to possession, it is clear that it requires interference with a property interest. Here, Plaintiffs unquestionably had the right to possess the funds in their bank accounts upon demand to the bank, and they have alleged that Defendants wrongfully took funds from their accounts so that Plaintiffs were unable to possess and use those funds. This interference with Plaintiffs' property interest in the funds in their accounts constitutes a cause of action for conversion. Moreover, as the above cases demonstrate, a conversion action is available for a bank's wrongful debiting of funds from a customer's account. *See, e.g., White,* 563 F.Supp.2d at 1371.

Defendants' second argument is that, assuming Plaintiffs have a sufficient property interest in the funds that were taken, Plaintiffs have failed to plead that the taking was wrongful because the overdraft fees were authorized by the deposit agreements. This argument fails for several

reasons. First, if the terms of the deposit agreement are subsequently declared to be unconscionable, Defendants may be barred from relying on them. Second, Plaintiffs have pled enough facts to show that, even if the deposit agreements gave Defendants discretion to re-order the debit postings, Defendants exercised that discretion in bad faith by intentionally causing Plaintiffs to incur overdrafts that they would not have otherwise incurred. These allegations could lead a reasonable factfinder to conclude that Defendants acted wrongfully in charging some of the overdraft fees, thereby converting Plaintiffs' funds. Thus, the Court cannot dismiss Plaintiffs' claim for conversion.

## C.  State Statutory Claims

Defendants assert that the state consumer protection statutes invoked should be dismissed. Defendants argue that Plaintiffs do not have standing to bring claims under state laws in which no Plaintiffs reside and where none of the wrongs were alleged to have occurred. Defendants further argue that Plaintiffs' state statutory claims fail as a matter of law because: (a) Defendants' conduct is specifically permitted under state and/or federal law; (b) Plaintiffs fail to allege "deceptive conduct"; (c) Plaintiffs fail to allege "unfair conduct"; (d) Plaintiffs fail to allege "unconscionable conduct"; (e) Defendants' alleged conduct does not involve goods or services; (f) Plaintiffs failed to comply with pre-lawsuit notice requirements; and (g) Plaintiffs failed to allege Defendants violated one or more of the specifically enumerated predicate violations.[11]

---

**11.** Defendants also claim that the express terms of the Montana Unfair Trade Practices and Consumer Protection Act ("MUTPA") bar Plaintiffs from maintaining a class action and that the Ohio Consumer Sales Practices Act

("CSPA") and Wisconsin statute § 100.20 exempt banking transactions or transactions involving only money. Plaintiffs concede these points and the claims based on those three statutes are therefore dismissed.

### i. Whether Plaintiffs Have Standing to Assert Statutory Claims

Defendants argue that Plaintiffs do not have standing to invoke a claim under the statute of a state in which no Plaintiff resides. That is, the fifteen Complaints that are the subject of this motion involve multiple plaintiffs from different states and assert violations of consumer protection statutes in a number of different states. In certain instances a plaintiff from one state asserts a consumer protection statute from another state; in which that plaintiff does not reside. Defendants contend that any statutory claim should be dismissed if no named plaintiff in that Complaint resides in that state.[12] Plaintiffs argue that the Court should defer ruling on these issues until class certification, when the makeup of each class and their representatives will be known.

[12] The Court agrees with Defendants' argument. The issue of Article III standing must be resolved for each named plaintiff before issues of class certification and representation are contemplated. "Thus, the threshold question is whether the named plaintiffs have individual standing, in the constitutional sense, to raise certain issues.... Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others." *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir.1987). The court in *Griffin* explained that in a class action, this means that each named plaintiff must have standing for his or herself, and not merely assert that the plaintiff will represent a future class member who will have standing. *Id.* at 1483 ("Thus, a plaintiff cannot include class action allegations in a complaint and expect to be relieved of personally meeting the requirements of constitutional standing, 'even if the persons described in the class definition would have standing themselves to sue.' A named plaintiff in a class action who cannot establish the requisite case or controversy between himself and the defendants simply cannot seek relief for anyone—not for himself, and not for any other member of the class." (citations omitted)). Moreover, the standing requirement must be met for every claim asserted in the Complaint. *Id.* ("[E]ach claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim."). Thus, *Griffin* appears to squarely control this issue.

Plaintiffs attempt to distinguish *Griffin* by arguing that its holding only applies to situations in which the named plaintiff did not suffer from the factual circumstances that would be required to assert a particular claim. Plaintiffs note that, in the instant case, the individual plaintiffs all suffered the same harm, only their *legal* claims are different. This argument is unpersuasive, as it does nothing to rebut the assertion that there must be a named plaintiff with constitutional standing to assert each particular claim. Moreover, this argument has been considered and rejected in nearly identical circumstances. *In re Terazosin Hydrochloride Antitrust Litigation*, 160 F.Supp.2d 1365, 1371–72 (S.D.Fla.2001). In *Terazosin*, the plaintiffs asserted that they all suffered the same harm (paying more for certain prescription drugs), but attempted to assert

---

**12.** The Court will assume for purposes of this motion that the applicable law is the law of the state in which each Plaintiff resides.

claims from states in which they did not reside. *Id.* They argued that they had standing to assert these claims in a representative capacity even though they did not personally have standing. *Id.* Judge Seitz, following *Griffin*, rejected this argument, holding that each claim must be supported by a named plaintiff with standing to assert that claim. *Id.*

Thus, the Court finds that Plaintiffs may only assert a state statutory claim if a named plaintiff resides in that state.[13] The Court notes that this does not resolve the issue of class certification or representation; whether Plaintiffs have named proper class representatives will be considered at a later date. For now, the Court merely announces the same rule that applies in every case: each claim must have a named plaintiff with constitutional standing to assert it. Therefore, all state statutory claims where no named plaintiff resides in the state from which the claim is asserted are hereby dismissed without prejudice.

### ii. Whether Plaintiffs Properly Alleged the State Statutory Claims
### a. Whether Defendants' Conduct is Specifically Permitted Under State and/or Federal Law

Defendants assert that the conduct that Plaintiffs complain of is authorized by state and federal law and that the consumer protection statutes of California, Connecticut, Illinois, Kansas, Massachusetts, New Mexico, New York, Ohio, and Washington do not permit claims that are otherwise authorized by law. Because this Court has already determined that neither federal nor state law expressly permit the bank's alleged practices, the Court cannot dismiss the statutory claims on this basis.

### b. Statutes that Require Deceptive Practices

[13] Defendants assert that the statutes of Minnesota, New York, Oregon and West Virginia require a "deceptive practice" to succeed on a claim for unfair practices. Defendants claim that Plaintiffs do not sufficiently allege any deceptive or fraudulent acts as required by Rule 9(b)'s heightened pleading standard. Further, Defendants claim that even if Plaintiffs did adequately plead misrepresentations, those misrepresentations could not be deceptive or misleading because they complied with the terms of the contract.

As discussed above, at the motion to dismiss stage the Court must accept all of Plaintiffs' allegations as true. Plaintiffs are alleging that the actions of Defendant banks, in manipulating and reordering Plaintiffs' debit transactions, are deceptive and do *not* comply with the terms of the contract. Plaintiffs therefore sufficiently allege a "deceptive practice."

### c. Statutes that Require Unfair Acts

[14] Defendants next assert that even in those states that do not require a deceptive act, (California, Connecticut, Illinois, Massachusetts, Montana, North Carolina, Ohio, and Washington), Plaintiffs' claims fail because they require unfair acts. First, Defendants reiterate that because the challenged conduct was fully disclosed and expressly authorized in the parties' contracts, it cannot be deemed unfair. Defendants also claim that, if Plaintiffs found the terms of the contract unfair, they could have opened a checking account with a different institution. Finally, Defendants claim that Plaintiffs have not, as required by the statutes of Connecticut, Illinois, Massachusetts, Montana, and North Car-

---

**13.** Moreover, this requirement must be met *for each Complaint.* That is, it is insufficient for Plaintiffs to assert that a certain state statutory claim in one Complaint should remain because a named plaintiff in another Complaint resides in that state.

olina, alleged that high-to-low posting violates a legislatively declared policy or is contrary to the spirit of a separate law.

The Court has already held that Defendants' alleged conduct was not expressly authorized by the contract. At this stage, the Court must take as true Plaintiffs' allegations that the Defendants' *application* of the contract was unfair. Since Plaintiffs could not have known that the terms of the contract would be applied unfairly at the time they opened a checking account, they would have been unaware of the need to reject the contract and take their business elsewhere.

Plaintiffs have also adequately alleged Defendants' practices to be contrary to the spirit of separate state laws. Namely, Plaintiffs have alleged Defendants breached their duty of good faith and fair dealing and violated the doctrine of unconscionability. In sum, Plaintiffs sufficiently allege unfair acts.

### d.  Statutes that Require Unconscionable Acts

California, Kansas, New Jersey, New Mexico, and Ohio all recognize a cause of action for practices found to be unconscionable. Defendants allege Plaintiffs have not pled facts sufficient to demonstrate that Defendants engaged in acts that shock the conscience, involve deceptive bargaining conduct, or take advantage of a customer's lack of knowledge to a grossly unfair degree.

Plaintiffs do, however, allege that Defendants engaged in unconscionable practices. These allegations are sufficient to state a cause of action at this time.

### e.  Statutes that Require Transactions Involving Goods or Services

Defendants contend that the California CLRA and Oregon statute relied upon by Plaintiffs only create a cause of action (for a plaintiff) on transactions involving *goods and services*. These transactions involve money. Therefore, Plaintiffs' reliance on the California CLRA and Oregon statute are misplaced and these claims should be dismissed. Defendants rely on *Berry v. Am. Express Publ'g, Inc.*, 147 Cal.App.4th 224, 54 Cal.Rptr.3d 91 (2007), a California appellate court decision which held that the California CLRA does not cover activities pertaining solely to the provision of money and credit. The *Berry* court explained that while early drafts of the Act included the terms "money" and "credit" under the definition of what the statute applied to, the Legislature removed those references before the Act was enacted. *Id.* at 230, 54 Cal.Rptr.3d 91. The court found that a statute should not be construed as encompassing a provision that the legislature affirmatively chose to reject and held that "neither the express text of the California CLRA nor its legislative history supports the notion that credit transactions separate and apart from any sale or lease of goods or services are covered under the act." *Id.* at 233, 54 Cal.Rptr.3d 91. Relying on *Berry,* the court in *Gutierrez* found that overdrafts and overdraft fees do not fall within the California CLRA's definition of a "good" or "service". *Gutierrez,* 622 F.Supp.2d at 957. The court held that while "plaintiffs likely bought goods and services in many instances with the money extended because of overdrafts" the overdrafts themselves were not goods or services covered by the California CLRA. *Id.*

[15]  Plaintiffs respond that Defendants themselves refer to their payment of overdrafts as "overdraft services" and that the Banks cannot on the one hand charge for a service, and on the other hand escape statutory liability by claiming that they are not providing a service. Plaintiffs fail to provide the Court with any case law to support this contention. The Court rejects Plaintiffs' characterization of a bank's

decision to extend funds to cover a client's overdraft as a service. Therefore, Plaintiffs cannot file suit under California's CLRA or Oregon's OUTPA and Defendants' Motion to Dismiss these specific claims is granted.

### f.  Statutes that Have Pre–Lawsuit Notice Requirements

Defendants assert that Plaintiffs failed to comply with the Massachusetts, West Virginia and California CLRA notice prerequisites.[14]  Defendants contend that failure to allege compliance with these prerequisites compels the dismissal of claims under those statutes. Plaintiffs counter that, to the extent notice is required in one or more of the cases, courts have usually granted plaintiffs the right to cure any defects by amending the operative Complaint. As such, dismissal should neither be required, nor called for.

The only Complaint that alleges a claim based on Massachusetts law is *Tornes*. Careful review of the *Tornes* Complaint shows that Plaintiffs did not allege *any* statement indicating compliance with the Massachusetts Regulation of Business Practices for Consumers Protection Act ("RBPCPA") pre-suit notice requirements. *See* M.G.L.A. 93A § 9(3). Plaintiffs' response regurgitates Massachusetts law, but it does not contain an affirmative statement that Plaintiffs have in fact complied with any notification requirements.

Thus, Plaintiffs cannot rely upon the Massachusetts RBPCPA as a claim for relief. Defendants' Motion to Dismiss these specific claims is granted.

### g.  Statutes that Require a Showing of One or More Specifically Enumerated Predicate Violations

Defendants assert Plaintiffs have pled only conclusory allegations and do not adequately identify the specific predicate conduct required to prove the violation of a statute. Defendants contend this is particularly problematic for those causes of action pled under Minnesota, Oregon, Montana, West Virginia, and Wisconsin law, which require allegations of an enumerated predicate act.[15]  Defendants assert that the failure to allege all elements of the statutes is fatal to Plaintiffs' claims. Plaintiffs have not responded to this defense.

New Mexico's Unfair Practices Act ("UPA") specifically enumerates what conduct qualifies as "unfair or deceptive trade practice" under Section 57–12–3. *See* N.M.S.A. § 57–12–2 (2009). Yet, Plaintiff's claim under New Mexico's UPA in *Martinez* does not allege which enumerated deceptive or unfair practice Defendants are in violation of. Instead, in paragraph 136 of the Complaint, Plaintiff claims Defendant employed "unfair or deceptive practices" by engaging in a laundry list of alleged bad acts not outlined in Section 57–12–2(D). (*Martinez* Compl. at 34.) Accordingly, Defendant's motion to dismiss

---

**14.**  This Court has found that Plaintiffs lack Article III standing to bring claims under the state consumer protection laws of West Virginia and that overdraft protection and fees does not qualify as a "good or service" under the California CLRA. Therefore, the Court will not address whether Plaintiffs complied with the West Virginia or California CLRA's pre-suit notice requirements.

**15.**  This Court has found that Plaintiffs lack Article III standing to bring claims under the

state consumer protection laws of Minnesota, Montana, Wisconsin and West Virginia. The Court also found that overdraft fees are not covered under the Oregon OUTPA. The Court therefore only addresses Plaintiffs' claims under New Mexico state law. Moreover, the Court does not address the state statutory claims under New Mexico law in *Tornes* because Plaintiffs do not have standing to assert New Mexico state law claims.

*Martinez*'s claim under New Mexico's UPA is granted and the claim is dismissed without prejudice.

### D.  Additional Motions to Dismiss

Lastly, the Court addresses (i) Defendant Chase's Supplemental Motions to Dismiss the *Luquetta* and *Lopez* Complaints; and (ii) Defendant Citibank's Renewed, Independent Motion to Dismiss the *Amrhein* Complaint.

#### i.  Chase's Supplemental Motions to Dismiss the *Luquetta* and *Lopez* Complaints

Plaintiffs in the *Luquetta* and *Lopez* Complaints were account holders at Washington Mutual Bank, FA ("WaMu") before the bank failed.  After WaMu's failure, the bank was placed in receivership by federal banking regulators and Chase purchased its banking operations from the FDIC. The new entity was opened for business as a Chase bank on September 26, 2008.  In this Motion, Chase asserts that the Court should dismiss all of Plaintiffs' claims against Chase regarding conduct done by WaMu.

Defendant correctly argues that the Complaints do not allege that WaMu specifically engaged in any improper conduct or the times and place of any such acts. All of the re-ordering and ensuing overdraft fees specifically alleged were done by Chase when Plaintiffs were Chase (not WaMu) customers.  Plaintiffs allege that WaMu engaged in wrongdoing in general conclusory terms.  For example, Plaintiffs specifically allege that Chase reordered the debit transactions "to generate the largest possible number of overdrafts and the greatest possible amount of overdraft fees" and laid out the specific transactions and overdraft fees that ensued, but Plaintiffs made no similarly specific allegations against WaMu. (*Luquetta* Am. Compl. at 5.)  Instead, Plaintiffs state that "plaintiff . . . has been damaged by Chase and/or

Washington Mutual's misconduct in that she incurred and/or will continue to incur unfair and unconscionable overdraft charges." *Id.* It is unclear from the Complaints which, if any, overdraft fees were charged by WaMu. Plaintiffs' claims against Chase regarding conduct by WaMu are not pled with the requisite specificity and they are therefore dismissed without prejudice to amend.

Defendant Chase also asks the Court to dismiss Plaintiffs' claims against Chase regarding conduct by Chase. Defendant's grounds for dismissal on Chase's conduct are fact oriented. Defendant's request is therefore denied without prejudice to reassert at summary judgment.

#### ii.  Citibank's Renewed, Independent Motion to Dismiss

Defendant Citibank asks this Court to dismiss the *Amrhein* Complaint for lack of standing. Defendant contends that Plaintiff's alleged harm, the imposition of overdraft fees in connection with three gasoline purchases, was caused by third-party gasoline merchants, not Citibank. Specifically, Citibank claims that the third-party gasoline merchants first charged Amrhein $1.00 hold amounts and only later charged him for the full amounts of the transactions. Defendant asserts that it was these holds, and not any action by Citibank, that caused the overdrafts and ensuing fees.

These are not, however, valid grounds for dismissal at this stage in the proceeding. Whether Plaintiff's damages are attributable to Citibank or to a third-party is a factual dispute that cannot be decided on a motion to dismiss. Defendant Citibank's Renewed, Independent Motion to Dismiss is therefore denied without prejudice to renew at a later date in the case.

## IV.  CONCLUSION

After careful consideration and being fully advised by the briefs, memoranda and oral argument of counsel, it is

**ORDERED, ADJUDGED, and DE-CREED** that the Omnibus Motion (D.E. # 217, 253, 254) filed by Defendants to Dismiss the pending fifteen (15) Complaints in their entirety, and/or parts of various claims for relief relied upon by Plaintiffs in their respective Complaints, be, and the same is hereby **GRANTED in part and DENIED in part**, as follows:

1. The portion of the Omnibus Motion to Dismiss directed to all statutory claims relying upon the laws of individual states in which none of the Plaintiffs are alleged to reside is **GRANTED, WITHOUT PREJUDICE** to the right of the parties to file amended complaints directed to this issue.

2. The portion of the Omnibus Motion to Dismiss directed to any claim based upon the Massachusetts (RBPCPA) or New Mexico (UPA) be, and the same is hereby **GRANTED, WITHOUT PREJUDICE** to the right of the parties to file amended complaints directed to this issue.

3. The portion of the Omnibus Motion to Dismiss directed to any claim based upon the California (CLRA), Oregon (OUTPA), Montana (MUTPA), Ohio (CSPA), or Wisconsin Statute § 100.20, *et seq.*, be, and the same is hereby **GRANTED, WITH PREJUDICE**.

4. The portion of the Omnibus Motion to Dismiss directed to claims for breach of the implied covenant of good faith and fair dealing based upon the law of Texas is hereby **GRANTED, WITHOUT PREJUDICE** to the right of the parties to file amended complaints directed to this issue.

5. The portion of the Omnibus Motion to Dismiss directed to all other portions of the respective Complaints or portions or claims asserted therein and addressed by the briefs, memoranda and oral argument of counsel for the defense be, and the same are hereby **DENIED, WITHOUT PREJUDICE** (where noted in the foregoing opinion) for Defendants to reassert at the conclusion of all discovery, on motions for summary judgment, or at trial.

It is **FURTHER ORDERED** that the Supplemental Motions to Dismiss filed by J.P. Morgan Chase Bank directed to those portions of the *Lopez* and *Luquetta* Complaints (D.E. # 222 & 225), insofar as they seek to dismiss any acts allegedly committed by Washington Mutual be, and they are hereby **GRANTED, WITHOUT PREJUDICE** to the right of the parties to amend those portions of the Complaints directed to this issue.

It is **FURTHER ORDERED** that the Independent Motion to Dismiss filed by Citibank (D.E. # 228) be, and the same is hereby **DENIED, WITHOUT PREJUDICE** to reassert at the conclusion of discovery or at other appropriate time during the future pendency of these proceedings.

It is **FURTHER ORDERED** that Plaintiffs shall within thirty (30) days hereof, consistent with the rulings set forth in this Order, file such amended complaints as they may be advised.



# EXHIBIT C

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:09-MD-02036-JLK

| | |
|---|---|
| IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION MDL No. 2036 | ) ) ) ) ) ) |

## ORDER ON AUGUST 26, 2009 STATUS CONFERENCE

Having considered the written submissions and comments of the parties at the Status Conference on August 26, 2009, the Court ORDERS and ADJUDGES as follows:

1. **ORGANIZATION OF COUNSEL.** It is the Court's intent to appoint Plaintiffs' Lead Counsel ("Lead Counsel") and Plaintiffs' Executive Committee ("PEC"), to conduct and coordinate this litigation on behalf of the plaintiffs, as well as a Liaison Counsel for Defendants, with whom the Court may communicate directly on behalf of all Defendants. The Court has received motions for appointment of Lead Counsel and/or PEC. Based on the Court's review of the motions, and its independent knowledge of the qualifications and character of many of the plaintiffs' counsel, the Court appoints Bruce S. Rogow and Alters Boldt Brown Rash & Culmo as Lead Counsel. In addition, the Court appoints the following law firms to the PEC to assist Lead Counsel in facilitating the efficient and orderly prosecution of this litigation on behalf of plaintiffs and the proposed class(es): Golomb & Honik, P.C.; Podhurst Orseck, P.A.; Trief & Olk; Webb, Klase & Lemond, LLC; and Lieff, Cabraser, Heimann & Bernstein, LLP. Lead

Counsel shall be generally responsible for coordinating the activities of plaintiffs during pretrial proceedings, including to:

     a.    determine (after consultation with members of PEC and other co-counsel as may be appropriate) and present (in motions, memoranda, oral argument, or such other fashion as may be appropriate, personally or by a designee) to the Court and opposing parties the position of the plaintiffs on all matters arising during pretrial proceedings;

     b.    direct, coordinate and conduct discovery on behalf of plaintiffs, including written discovery and the examination of witnesses in depositions;

     c.    consult with and employ experts;

     d.    provide general coordination of the activities of plaintiffs' counsel and to delegate work responsibilities to selected counsel, or committees of plaintiffs' counsel, in a manner to ensure the orderly and efficient prosecution of this litigation and to avoid duplication or unproductive effort;

     e.    call and chair meetings of plaintiffs' counsel as appropriate or necessary from time to time;

     f.    act as spokesperson for plaintiffs at pretrial conferences;

     g.    receive and review periodic time and expense reports of all attorneys on behalf of plaintiffs, to determine if the time and expenses are being spent appropriately and for the benefit of the plaintiffs and, if called for, to determine and distribute plaintiffs' attorneys' fees and expenses;

     h.    enter into stipulations with opposing counsel as necessary for the conduct of the litigation;

i.    initiate and conduct any settlement negotiations with counsel for defendants; and

j.    perform such other duties as may be expressly authorized by further order of this Court.

To facilitate the orderly and efficient management of this action, the Court appoints Barry R. Davidson, Esq. of Hunton & Williams, LLP, as Temporary Liaison Counsel for Defendants, with whom the Court may communicate directly on matters affecting all Defendants.

2.    **PRETRIAL ORDER NO. 1 AND MASTER SCHEDULING ORDERS.** Plaintiffs' Lead Counsel and Counsel for Defendants shall meet and confer regarding the remaining provisions of Plaintiffs' Proposed Pretrial Order No. 1 and Plaintiffs' Proposed Master Scheduling Orders attached as exhibits to Plaintiffs' Memorandum Re August 26, 2009 Status Conference, and shall report the final outcome of such meet and confer, including agreements, proposals and objections, by the close of business on Friday, September 11, 2009.

DONE AND ORDERED at the James Lawrence King United States Courthouse in Miami, Florida this ___2nd___ day of September 2009.

Honorable James Lawrence King
United States District Judge

Copies furnished to:
Counsel of Record

3

**GZJ KDKV'F "**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:09-MD-02036-JLK

| | |
|---|---|
| | ) |
| **IN RE: CHECKING ACCOUNT** | ) |
| **OVERDRAFT LITIGATION** | ) |
| **MDL No. 2036** | ) |
| | ) |
| | ) |

### PRETRIAL ORDER NO. 1

Having considered the written submissions and comments of the parties at the Status Conference on August 26, 2009, the Court ORDERS and ADJUDGES as follows:

1. **INTRODUCTION.** The civil actions which were and will be transferred to this Court by the Judicial Panel on Multi District Litigation pursuant to its Order of June 10, 2009, merit special attention as complex litigation.

2. **APPLICABILITY OF ORDER.** This Order shall govern the practice and procedure in those actions transferred to this Court by the Judicial Panel on Multi District Litigation pursuant to its Order of June 10, 2009 (the "Transferred Actions") and, subject to the rights of parties not yet before the Court, all related and/or tag-along actions later filed in, removed to, or finally transferred to this Court as part of this multidistrict litigation (the "Related Actions").

3. **PRETRIAL CONSOLIDATION AND COORDINATION.** All Transferred Actions and all Related Actions brought against each named Defendant are hereby consolidated for pretrial purposes against the named Defendant only. All Transferred Actions and all Related Actions brought against all named Defendants are hereby coordinated for pretrial purposes

against all named Defendants. This consolidation, however, does not constitute a determination that the actions should or may be consolidated for trial, nor does it have the effect of making any entity a party to any action in which he, she or it has not been named, served or added in accordance with the Federal Rules of Civil Procedure.

4. **MASTER DOCKET AND FILE.** The Clerk will maintain a master docket and case file under the style "**In re CHECKING ACCOUNT OVERDRAFT LITIGATION, Case No. 09-MD-02036-JLK.**" All orders, pleadings, motions, and other documents will, when filed and docketed in the master case file, be deemed filed and docketed in each individual case to the extent applicable. The Clerk shall file all pleadings in the master file and note such filings on the master docket. An original of this Order shall be filed by the Clerk in the master file. All further pleadings, motions and other papers filed in this action shall bear the foregoing caption.

The Court requests the assistance of counsel in calling to the attention of the Clerk the filing or transfer of any case that might properly be consolidated or coordinated as part of the action. When a case that arises out of the same subject matter of this action is hereinafter filed in this Court or transferred from another Court, the Clerk shall:

a. File a copy of this Order in the separate file for such action;

b. Transmit a copy of this Order to the attorneys for the plaintiff(s) in the newly-filed or transferred case and to any new defendant(s) in the newly-filed case; and

c. Make the appropriate entry in the master docket for the action.

2

5. **CAPTIONS; SEPARATE FILING.** All further orders, pleadings, motions, and other documents filed in this action shall bear the caption set forth above. If generally applicable to all consolidated actions against a specific Defendant, they shall include in their caption the notation that they relate to "ALL CASES AGAINST -------------------" and be filed and docketed only in the master file. If generally applicable to all coordinated actions against all named Defendants, they shall include in their caption the notation that they relate to "ALL CASES" and be filed and docketed only in the master file. Documents intended to apply only to particular cases will indicate in their caption the case number of the case(s) to which they apply.

6. **CONDUCT OF COUNSEL.** It is not yet known how many attorneys will eventually join this litigation, but we can assume it will be a large number. As attorneys involved in a multi-district case, you will probably be laboring together for some time in the future, with work progressively becoming more complicated and exacting. This Court places a premium on professionalism and requires counsel to fulfill their obligations as advocates in a manner that will foster and sustain good working relations among fellow counsel and the Court. The Court expects that professionalism and courteous cooperation permeate this proceeding from now until this litigation is concluded. Because of the high level of competence and experience of attorneys who are generally involved in multi-district litigation, this Court is confident that this objective will be achieved without judicial intervention.

7. **STATUS CONFERENCES.** The Court will convene regular status conferences in this litigation.

3

CASE NO. 1:09-MD-02036-JLK

8. **SCHEDULING ORDER**. The Court will enter a separate Scheduling Order regarding the pretrial dates and deadlines for the Transferred Actions, and will enter separate Scheduling Orders as Related Actions involving additional Defendants are transferred to this Court.

9. **PRESERVATION OF EVIDENCE.** All parties and their counsel are reminded of their duty to preserve evidence that may be relevant to this action.

DONE AND ORDERED at the James Lawrence King United States Courthouse in Miami, Florida this ____14____ day of September 2009.

Honorable James Lawrence King
United States District Judge

Copies furnished to:
Counsel of Record

4

# EXHIBIT E

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

Apr 15, 2010

FILED
CLERK'S OFFICE

# MDL-2036

### UNITED STATES JUDICIAL PANEL
#### on
#### MULTIDISTRICT LITIGATION

**IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION**

| | | |
|---|---|---|
| Ramona Trombley, et al. v. National City Bank, | ) | |
| D. District of Columbia, C.A. No. 1:10-232 | ) | MDL No. 2036 |

### CONDITIONAL TRANSFER ORDER (CTO-16)

On June 10, 2009, the Panel transferred three civil actions to the United States District Court for the Southern District of Florida for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* 626 F.Supp.2d 1333 (J.P.M.L. 2009). Since that time, 40 additional actions have been transferred to the Southern District of Florida. With the consent of that court, all such actions have been assigned to the Honorable James Lawrence King.

It appears that the action on this conditional transfer order involves questions of fact that are common to the actions previously transferred to the Southern District of Florida and assigned to Judge King.

Pursuant to Rule 7.4 of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation</u>, 199 F.R.D. 425, 435-36 (2001), this action is transferred under 28 U.S.C. § 1407 to the Southern District of Florida for the reasons stated in the order of June 10, 2009, and, with the consent of that court, assigned to the Honorable James Lawrence King.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Southern District of Florida. The transmittal of this order to said Clerk shall be stayed 14 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 14-day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

## OFFICIAL FILE COPY

Pleading No. 174

IMAGED  Apr 15 2010

GZJ KDKV'H'

# MDL-2036

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

May 03, 2010

FILED
CLERK'S OFFICE

**UNITED STATES JUDICIAL PANEL**
**on**
**MULTIDISTRICT LITIGATION**

**IN RE: CHECKING ACCOUNT**
**OVERDRAFT LITIGATION**

| | | |
|---|---|---|
| Ramona Trombley, et al. v. National City Bank, | ) | |
| D. District of Columbia, C.A. No. 1:10-232 | ) | MDL No. 2036 |

**ORDER REINSTATING STAY OF CONDITIONAL TRANSFER ORDER**

A conditional transfer order was filed in this action (*Trombley*) on April 15, 2010.  In the absence of any known opposition to the proposed transfer, the stay of transmittal with regard to *Trombley* was lifted on April 30, 2010, and the action was transferred to the Southern District of Florida.  The Panel has now learned of a potential defect in service of its April 15, 2010, order upon the parties.  Accordingly, the Panel will reinstate the conditional transfer order in *Trombley* in order to permit the parties to pursue any opposition to transfer.

IT IS THEREFORE ORDERED that the stay of the Panel's conditional transfer order designated as "CTO-16" filed on April 15, 2010, is REINSTATED insofar as it relates to this action. In accordance with Rule 7.4, any party opposing transfer shall file a notice of opposition on or before May 17, 2010.

FOR THE PANEL:

*Jeffery Luthi*

Jeffery N. Lüthi
Clerk of the Panel

Pleading No. 191

# OFFICIAL FILE COPY

IMAGED  May 03 2010

# EXHIBIT G

# MDL-2036

**UNITED STATES JUDICIAL PANEL**

**ON MULTIDISTRICT LITIGATION**

**Jun 02, 2010**

FILED
CLERK'S OFFICE

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

| | | |
|---|---|---|
| Ramona Trombley, et al. v. National City Bank, | ) | |
| D. District of Columbia, C.A. No. 1:10-232 | ) | MDL No. 2036 |

**Pleading No. 230**

### PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER ("CTO - 16") AND BRIEF IN SUPPORT THEREOF

Plaintiffs Ramona Trombley, Brian Wells and Jeff Doehner ("Plaintiffs") respectfully submit this Motion to Vacate CTO-16 and their Brief in Support Thereof:

### <u>MOTION TO VACATE CONDITIONAL TRANSFER ORDER</u>

Plaintiffs respectfully move this Panel, pursuant to Rule 7.4(d) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, for an order vacating its April 15 conditional transfer order, and remanding this case to the United States District Court for the District of Columbia.

As discussed more fully in Plaintiff's Brief in Support of Motion to Vacate Conditional Transfer Order, the Panel should vacate its prior order conditionally transferring the case to the MDL because the case involves different parties and fundamentally different questions of law and fact than the other cases in the Checking Account Overdraft Litigation MDL.  Transfer will not conserve the resources of the parties, their counsel, or the judiciary because, unlike the other MDL cases, the *Trombley* case is not mainly a case concerning the posting order of checking account transactions.  The *Trombley* case involves fundamentally different causes of action and allegations, which will not be amenable to the same legal arguments and discovery processes as the other MDL cases.

# OFFICIAL FILE COPY

WHEREFORE Plaintiffs respectfully requests that the Panel vacate its April 15, 2010

order conditionally transferring to this MDL the *Trombley* case, number 1:10-232, and request

that this case be remanded to the United States District Court for the District of Columbia.


Dated:  June 1, 2010                    TYCKO & ZAVAREEI LLP
                                        2000 L St. NW, Suite 808
                                        Washington, DC  20036


                                   By: _____

                                        Hassan A. Zavareei
                                        *Attorney for Plaintiffs Trombley, Wells and*
                                        *Doehner*

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

## UNITED STATES JUDICIAL PANEL

## ON MULTIDISTRICT LITIGATION

**Jun 02, 2010**

FILED
CLERK'S OFFICE

**IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION**

Ramona Trombley, et al. v. National City Bank,    )
    D. District of Columbia, C.A. No. 1:10-232    )    MDL No. 2036

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER ("CTO - 16")

Plaintiffs Ramona Trombley, Brian Wells and Jeff Doehner ("Plaintiffs") respectfully

submit this Brief in Support of their Motion to Vacate Conditional Transfer Order ("CTO -16")

pursuant to Rule 7.4(d) of the Rules of Procedure of the Judicial Panel on Multidistrict

Litigation. Plaintiffs request an order vacating the Panel's April 15, 2010 order, and remanding

this case to the United States District Court for the District of Columbia.

## I.

## BACKGROUND

This matter was originally filed by Plaintiffs in the District of the District of Columbia on

February 17, 2010, as a class action. Plaintiffs alleged the improper charging of overdraft fees.

Plaintiff asserted seven causes of action:  breach of contract; breach of the covenant of good faith

and fair dealing; conversion; unjust enrichment; unconscionability; violation of the Electronic

Funds Transfer Act and Regulation E; and violations of state unfair trade practices laws.

Plaintiff's complaint alleges that Defendant improperly charged overdraft fees, using various

schemes and policies that were illegal, in violation of the contractual agreement purported to

exist between the parties, and that were improperly disclosed.

Consolidation is inappropriate as there are substantial factual differences between the present case and the MDL cases. Plaintiff's factual allegations and legal theories differ significantly from those in the MDL cases. As a result, discovery in the MDL will have little or nothing in common with discovery in the instant case.

## II.

## LAW AND ARGUMENT

There are three statutory prerequisites for transfer and consolidation of cases under 28 U.S.C. §1407(a). First and foremost, the actions to be transferred and consolidated must involve common issues of fact. Section 1407(a) provides for consolidation of actions "involving one or more common questions of fact." Second, consolidation of the actions must benefit the convenience of the parties and witnesses. *Id.* Third, consolidation must "promote the just and efficient conduct of the action." *Id.* The Jurisdictional Panel on Multidistrict Litigation has the authority to separate any claim, cross-claim, counter-claim, or third-party claim from the others. *Id.* The Panel may vacate its CTO when any party shows good cause for it to do so. *In re Multidistrict Commodity Credit Corp. Litig. Involving Grain Shipments*, 319 F. Supp. 533, 534 (J.P.M.L. 1970). A party shows good cause to vacate when the cases do not share sufficient questions of law or fact. *In re Tri-State Water Rights Litig.*, 481 F.Supp.2d 1351, 1353 (J.P.M.L. 2007).

## A. THERE ARE NOT SUFFICIENT COMMON QUESTIONS OF LAW AND FACT TO SUPPORT CONSOLIDATION OF THIS ACTION WITH THE PREVIOUS MDL ACTIONS

A Panel ordering consolidation of actions must find common questions of law and fact to support its decision. Few common questions of fact exist between Plaintiffs' case and the other MDL actions. In its original Transfer Order, this Panel found that the MDL and present case

4

both involved common questions of fact regarding "the imposition of overdraft fees by various bank defendants on their customer's checking accounts in a manner to maximize these fees." The Panel further stated that "while there will be some unique questions of fact from bank-to-bank, these actions share sufficient factual questions relating to industry-wide bank posting policies and procedures to warrant centralization of all actions in one MDL docket."

In actuality, commonality of facts ends with the phrase "overdraft fee." Each bank uses its own exceedingly complicated formulae for determining the assessment of overdraft fees. Each bank makes very different disclosures in its account agreements, making each breach of contract and/or breach of the covenant of good faith and fair dealing claim unique to that bank. Plaintiff alleges that National City Bank in particular uses policies and practices in its assessment of overdraft fees that are not shared with other banks represented in the MDL and are nowhere else plead in the MDL cases. Specifically, National City's use of various timing policies with respect to transaction posting may differ significantly from other banks. Moreover, its account agreement makes certain misleading disclosures, and makes certain other omissions, which are not shared by any other bank. In short, the facts surrounding each case's allegations differ enough that discovery will need to be specific to each case and will prove to be of little or no benefit to the parties of another case.

Further, the questions of law in the present case and in the MDL cases differ significantly. Plaintiffs make federal law claims regarding the Electronic Funds Transfer Act. The MDL cases do not make federal law claims. These distinct *federal law issues*, nowhere else pled in the MDL, make consolidation inappropriate. As the issues of law and fact are uncommon between Plaintiffs' case, on the one hand, and the MDL cases, on the other, there is no benefit to consolidation. The differing causes of action require unique discovery and legal analysis.

Further, the causes of action interact in unique ways; a breach of contract claim in one case takes another hue when plead alongside a federal improper disclosure claim, for example.  In the instant case, the claims and theories tell a story of bank behavior entirely different than the complaints so far consolidated in the MDL.  Failure to vacate the CTO could actually hamper the litigation of all cases involved.

**B.      THE CORE FACTUAL QUESTIONS MUST BE DEVELOPED SEPARATELY**

The present case and the MDL cases concern fundamentally unique issues of fact which require separate development.  Despite a surface-level factual similarity in the two lines of cases, the similarities run no deeper and warrant independence.  See *In re Airline "Age of Employee" Employment Practices Litigation*, 283 F.Supp. 814, 816-7 (J.P.M.L. 1980) (refusing to transfer where allegations and defenses are essentially similar but principal factual issues will be different to each).

The MDL cases all center around the issue of posting order.  Specifically, those cases are concerned with the posting of transactions in "high-to-low" order.  While the Plaintiffs' case includes this theory, it develops and relies much more heavily on several other theories nowhere else developed in the MDL cases, including instances of "theoretical overdrafts."  The claims regarding the Electronic Funds Transfer Act and Regulation E will be resolved around factual issues regarding the content and frequency of National City Bank's notices, which will be examined in no other MDL cases.  As a result, the present case would not benefit or conserve resources by consolidation.  Further, the present case requires an examination into particular state consumer fraud laws and unique damages.

**C.      TRANSFER AND CONSOLIDATION WILL PROMOTE NEITHER THE JUST AND EFFICIENT CONDUCT OF THESE ACTIONS NOR THE CONVENIENCE OF THE PARTIES AND WITNESSES**

In analyzing whether a consolidation and transfer would serve the just and efficient conduct of actions under § 1407, the Panel must consider whether transfer and consolidation will avoid duplicative discovery and serve the convenience of the parties and witnesses. *In re TMJ Implants Products Liability Litig.*, 844 F.Supp. 1553, 1554 (J.P.M.L. 1994). Numerous pre-trial issues make this proposed consolidation highly detrimental and inconvenient to the parties. First, with little or no common discovery among the parties, there can be no common pre-trial defense motions like summary judgment because the factual issues will be unique to each case's set of plaintiffs and corresponding defendants.

Consolidation will not decrease the discovery burden on the parties and witnesses. The cost of discovery will not be reduced because the present case requires witnesses, experts and discovery unique to it and different from the MDL cases. The parties and witnesses involved in the present action are spread throughout the country, which again increases costs exponentially. With no common issues of fact among the cases, the consolidation will not ease the burden of discovery. In fact, consolidation with make discovery more difficult for both Plaintiffs and Defendant, since it will be delayed by the discovery that will be undertaken in earlier-consolidated actions and since any discovery will be governed by the decisions of the Plaintiffs' Executive Committee, the latter which may choose to ignore legal and factual issues unique to the instant case.

## D.    CONSOLIDATION WILL NOT PROMOTE SUBSTANTIAL CONSISTENCY OR ECONOMY OF THE JUDICIAL SYSTEM

Third, § 1407(a) requires that consolidation serves the just and efficient conduct of the action. *In re Air Crash at the Washington D.C. on January 13, 1982*, 533 F.Supp. 1350 (J.P.M.L. 1982). This section specifically encourages the prevention of duplicative discovery

and the conservation of party, counsel, and judicial resources.  The Court in *Board of Trustees v. Worldcom* stated:

> "When remand motions in cases potentially subject to MDL consolidation raise unique issues of law or fact, channeling the decisions to a single court would result in little or no savings of judicial resources.  The threat of inconsistent judgments in either case is de minimis."  *Board of Trustees v. Worldcom*, 244 F.Supp. 2d 900, 903 (N.D. Ill. 2002):

The consideration of the above requirements for consolidation shows that no efficiencies are to be gained by transferring the present action to MDL No. 2036.  As discussed above, the Plaintiffs' case relies on legal theories nowhere else developed in the MDL cases, including instances of "theoretical overdrafts."  Further, the claims regarding the Electronic Funds Transfer Act and Regulation E will be resolved around factual issues regarding the content and frequency of National City Bank's notices, which will be examined in no other MDL cases.  In fact consolidation will cause the expenditure of more resources than necessary, as Plaintiffs' and Defendant's counsel will not have the benefit of narrowing and refining arguments and facts that a properly tailored discovery process would provide.  Because the MDL cases and the instant case share no common issues of fact, and require individualized discovery, witnesses, and pre-trial rulings, consolidation is improper.

Multiple factors are relevant to determining whether inclusion of a particular tag-along action in an ongoing multidistrict litigation is appropriate.  *See In re "East of the Rockies" Concrete Pipe Antitrust Cases*, 302 F.Supp.244, 255 (J.P.M.L. 1969) (concurring opinion) (hereinafter "*Concrete Pipe*").  Relevant *Concrete Pipe* factors include: whether pre-trial proceedings are already far along in any one or more of the cases; whether transfer will hasten or delay progress in the cases; and whether transfer will make for complexity or for simplification of class actions.  *Id.*  Consolidation of this action will negatively impact all three of the above factors.

## III.

## CONCLUSION

Plaintiffs respectfully submit that there exists sufficient cause for this Panel to vacate its Conditional Transfer Order. First, the policy of multidistrict litigation is to reduce and simplify tasks of the court, parties, and witnesses. This consolidation furthers none of those policies and instead, complicates the litigation for all parties involved. Furthermore, the requirements for consolidation under 28 USC § 1407(a) are not met. There exist no common questions of facts, no joint discoverable issues that would benefit the convenience of the parties or witnesses, and no improvement upon the economy of the judicial system would occur as a result of the consolidation.

WHEREFORE, Plaintiffs respectfully prays that this Panel vacate its Conditional Transfer Order and allow this matter to proceed in the venue where it originated.

DATED this 1st day of June, 2010.

Hassan A. Zavareei
TYCKO & ZAVAREEI LLP
2000 L Street, N.W., Suite 808
Washington, D.C. 20036
*Attorney for Plaintiffs Trombley,
Wells and Doehner*

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

Jun 02, 2010

FILED
CLERK'S OFFICE

**IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION**

MDL No. 2036

I hereby certify that a copy of the foregoing Notice of Opposition and Appearance and this
Certificate of Service was served by First Class Mail on June 1, 2010 to the Panel Service List
(CTO – 16):

Barry R. Davidson
HUNTON & WILLIAMS LLP
Mellon Financial Center
1111 Brickell Avenue
Suite 2500
Miami, FL 33131-3136
**bdavidson@hunton.com**

Robert C. Gilbert
ALTERS BOLDT BROWN RASH & CULMO PA
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
**bobby@abbrclaw.com**

Laurence J. Hutt
ARNOLD & PORTER LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017-2513
**laurence.hutt@aporter.com**

Richard D. McCune, Jr.
MCCUNEWRIGHT LLP
2068 Orange Tree Lane
Suite 216
Redlands, CA 92374
**rdm@mccunewright.com**

Lisa Marie Simonetti
STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Suite 1600
Los Angeles, CA 90067-3086
**lsimonetti@stroock.com**

Hassan A. Zavareei

Jeffrey Kaliel
TYCKO & ZAVAREEI LLP
2000 L Street, NW
Suite 808
Washington, DC 20036
**hzavareei@tzlegal.com**
**jkaliel@tzlegal.com**

Darryl J. May
Gary C. Tepper
Ballard Spahr LLP
1735 Market St., 51st Floor
Philadelphia, PA  19103
**may@ballardspahr.com**
**tepperg@ballardspahr.com**

Dated:  June 1, 2010

TYCKO & ZAVAREEI LLP
2000 L St. NW, Suite 808
Washington, DC  20036

By: _____

Hassan A. Zavareei
*Attorney for Plaintiffs Trombley, Wells and*
*Doehner*

GZJ KDKV'J ''

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

Jun 02, 2010

FILED
CLERK'S OFFICE

**MDL-2036**

**Pleading No. 227**

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION | : : : | MDL 09-2036 |
| _____ | : | |
| **This Motion relates to** | : | |
| | : | |
| ***Ramona Trombley, et al. v.*** | : | |
| ***National City Bank,*** | : | |
| D. District of Columbia, | : | |
| C.A. No. 1:10-232 | : | |

### DEFENDANT, NATIONAL CITY BANK'S
### MOTION TO VACATE CONDITIONAL TRANSFER ORDER NO. 16

Defendant, National City Bank ("National City"), through its counsel and pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, moves to vacate Conditional Transfer Order No. 16 ("CTO-16") as to the civil action captioned *Ramona Trombley, Brian Wells, and Jeff Doehner, individually and on behalf of themselves and all others similarly situated v. National City Bank* ("*Trombley*"), which is pending in the United States District Court for the District of Columbia at Civil Action No. 10-0232.

National City joins in and incorporates by reference the Motion to vacate CTO-16 submitted by the plaintiffs in this action, Ramona Trombley, Brian Wells and Jeff Doehner

# OFFICIAL FILE COPY

IMAGED  Jun 02 2010

("Plaintiffs").  In support of its Motion, National City submits the accompanying brief, which

joins in and incorporates by reference the brief submitted by Plaintiffs.

       **WHEREFORE**, National City respectfully requests that this Panel vacate CTO-

16 as to the *Trombley* action.

                            /s/ Darryl J. May
                            Darryl J. May
                            BALLARD SPAHR LLP
                            1735 Market Street
                            Philadelphia, PA  19103
                            Tel.:  (215) 665-8500
                            Fax:  (215) 864-8999

                            and

                            Mariah Murphy
                            BALLARD SPAHR LLP
                            Plaza 1000 Suite 500 Main Street
                            Voorhees, New Jersey 08043
                            Tel.:  (856) 873-5503
                            Fax:  (856) 873-9077

                            Counsel for National City Bank

Dated:  June 1, 2010

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

Jun 02, 2010

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| **IN RE: CHECKING ACCOUNT** | : | |
| **OVERDRAFT LITIGATION** | : | **MDL 09-2036** |
| _____ | : | |
| **This Motion relates to** | : | |
| | : | |
| ***Ramona Trombley, et al. v.*** | : | |
| ***National City Bank,*** | : | |
| D. District of Columbia, | : | |
| C.A. No. 1:10-232 | : | |

### BRIEF OF DEFENDANT, NATIONAL CITY BANK IN SUPPORT OF ITS MOTION TO VACATE CONDITIONAL TRANSFER ORDER NO. 16

   Defendant, National City Bank ("National City"), through counsel and pursuant to

Rule 7.4 of the JPML Rules of Procedure, submits this brief in support of its motion to vacate

Conditional Transfer Order No. 16 ("CTO-16") as to the action *Ramona Trombley, et al v.*

*National City Bank.* National City joins in the motion to vacate CTO-16 and brief in support

filed by the Plaintiffs. For the reasons set forth in the Motion and Brief submitted by the

Plaintiffs, incorporated herein by reference, National City respectfully requests that the Panel

vacate CTO-16 as to the *Trombley* action.

        /s/ Darryl J. May
        Darryl J. May
        BALLARD SPAHR LLP
        1735 Market Street
        Philadelphia, PA  19103
        Tel.:  (215) 665-8500
        Fax:  (215) 864-8999

and

Mariah Murphy
BALLARD SPAHR LLP
Plaza 1000 Suite 500 Main Street
Voorhees, New Jersey 08043
Tel.:  (856) 873-5503
Fax:  (856) 873-9077

Counsel for National City Bank

Dated:  June 1, 2010

DMEAST #12482096 v2

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**Jun 02, 2010**

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| **IN RE: CHECKING ACCOUNT** | : | |
| **OVERDRAFT LITIGATION** | : | **MDL 09-2036** |
| _____ | : | |
| **This Motion relates to** | : | |
| | : | |
| ***Ramona Trombley, et al. v.*** | : | |
| ***National City Bank,*** | : | |
| D. District of Columbia, | : | |
| C.A. No. 1:10-232 | : | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true and correct copy of National City Bank's

Motion to Vacate CTO-16 and Brief in Support of Motion to Vacate CTO-16 to be filed with the

Judicial Panel on Multidistrict Litigation, by email.  I further certify that I caused a true and

correct copy of these documents to be served via electronic mail and via regular mail on the

attached counsel list.


/s/    Mariah Murphy_____
Mariah Murphy

Dated:  June 1, 2010

IN RE:  CHECKING ACCOUNT                                      MDL 09 - 2036
OVERDRAFT LITIGATION

**INVOLVED COUNSEL LIST (CTO-16)**

Hassan A. Zavareei                          Laurence J. Hutt
TYCKO & ZAVAREEI LLP                        ARNOLD & PORTER LLP
2000 L Street, NW                           777 South Figueroa Street
Suite 808                                   44th Floor
Washington, DC 20036                        Los Angeles, CA  90017-2513
hzavareei@tzlegal.com                       laurence.hutt@aporter.com


Barry R. Davidson                           Richard D. McCune, Jr.
HUNTON & WILLIAMS LLP                        MCCUNE WRIGHT LLP
Mellon Financial Center                     2068 Orange Tree Lane
1111 Brickell Avenue                        Suite 216
Suite 2500                                  Redlands, CA  92374
Miami, FL  33131-3136                       rdm@mccunewright.com
bdavidson@hunton.com

Robert C. Gilbert                           Lisa Marie Simonetti
ALTERS BOLDT BROWN RASH &                   STROOCK & STROOCK & LAVAN LLP
CULMO PA                                    2029 Century Park East
4141 N.E. 2nd Avenue                      Suite 1600
Suite 201                                   Los Angeles, CA  90067-3086
Miami, FL  33137                            lacalendar@stroock.com
bobby@abbrclaw.com

# EXHIBIT I

**MDL-2036**

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**Jun 28, 2010**

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

Pleading No. 258

| | |
|---|---|
| IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION<br><br>    Trombley, et al. v. National City Bank<br>    D. District of Columbia Case No. 1:10-cv-232 | MDL Docket No. 2036 |

**RESPONSE IN OPPOSITION TO PLAINTIFFS' AND DEFENDANT'S
MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-16)**

Plaintiffs' Lead Counsel and Plaintiffs' Executive Committee in *In re Checking Account Overdraft Litigation* (MDL No. 2036), pursuant to Panel Rule 7.2(c), oppose the Motions to Vacate Conditional Transfer Order (CTO-16) filed by Plaintiffs Ramona Trombley, Brian Wells and Jeff Doehner and Defendant National City Bank ("National City").[1]  Neither Plaintiffs nor National City have shown good cause as to why the Panel should vacate CTO-16.  The arguments raised by Plaintiffs and National City regarding the existence of different facts and

---

[1] National City did not file its own motion to vacate, but rather filed a short motion to join in the motion filed by the Trombley plaintiffs with certain reservations.

1

**OFFICIAL FILE COPY**

IMAGED  Jun 28 2010

legal theories are the very same arguments previously considered and rejected by the Panel in connection with the initial motion for transfer and consolidation and several subsequent motions to vacate. Therefore, Plaintiffs' Lead Counsel and Executive Committee respectfully urge the Panel to deny the motions to vacate CTO-16 and hold that these cases are properly included in MDL No. 2036.

## RELEVANT PROCEDURAL HISTORY

On June 10, 2009, the Panel created *In re Checking Account Overdraft Litigation*, MDL No. 2036. *See* 626 F. Supp. 2d 1333 (J.P.M.L. 2009), based on a finding that five actions against Wachovia Bank, Bank of America, and Citibank share common factual and legal issues relating to the imposition of overdraft fees. 626 F. Supp. 2d at 1335. Since the initial transfer, the Panel has transferred a number of additional related cases against other banks to MDL No. 2036, including cases where the parties, like Plaintiffs and National City, filed motions to vacate. *E.g., In re: Checking Account Overdraft Litigation*, MDL-2036 Pleading No. 133 (J.P.M.L. Feb. 3, 2010) (order transferring cases against Regions Bank, M&T Bank, PNC Bank and BB&T to MDL No. 2036 over banks' objections); *In re: Checking Account Overdraft Litigation*, 659 F. Supp. 2d 1363, (J.P.M.L. 2009) (order transferring cases against SunTrust to MDL No. 2036); *In re Checking Account Overdraft Litigation*, 2009 WL 3460951 (J.P.M.L. Oct. 13, 2009) (order transferring case against BB&T to MDL No. 2036 over bank's objections and

2

transferring case against Bank of America to MDL over the plaintiff's objections); *In re: Checking Account Overdraft Litigation*, 2009 WL 3254021, at *1-2 (J.P.M.L. Oct. 7, 2009) (transferring five actions against Wells Fargo to MDL No. 2036 over objection of plaintiffs and rejecting request to create a Wells Fargo-only MDL).

On February 17, 2010, Ramona Trombley, Brian Wells and Jeff Doehner, filed a putative class action complaint against National City Bank in the United States District Court for the District of Columbia. Plaintiffs in *Trombley* allege, *inter alia,* that National City improperly assessed overdraft charges against customer checking accounts. On April 15, 2010, the Panel issued CTO-16, which conditionally transferred *Trombley* to MDL No. 2036. After filing a notice of objection, Plaintiffs filed their motion to vacate on or about June 2, 2010.

Of particular import to the Panel's consideration of this motion is the fact that National City is already a defendant before Judge King in MDL No. 2036. On June 1, 2010, a case styled *Matos v. National City Bank*, No. 1:10-cv-21771-JLK, was filed in the Southern District of Florida. Simultaneously with the filing of the complaint in *Matos*, a notice pursuant to S.D. Fla. L.R. 3.8, was filed with the Court that established that the action was related to pending multidistrict litigation before Judge King entitled In Re: Checking Account Overdraft Litigation, Case No. 1:09-MD-02036-JLK. *See* DE # 4 in Case No. 1:10-cv-21771-JLK (S.D. Fla.).

3

Subsequently, on June 14, 2010, in accordance with S.D. Fla. L.R. 3.8 and Rule 7.5 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, *Matos* was transferred into MDL No. 2036. *See* DE # 5 in Case No. 1:10-cv-21771-JLK (S.D. Fla.).

The inclusion of National City in MDL No. 2036 is also warranted in light of the fact that National City has been acquired by PNC Bank. Indeed, the charter for National City Bank was merged into PNC Bank, N.A. in November 2009. As the Panel may recall, a pending case against PNC Bank, *Casayuran v. PNC Bank*, No. 09-5155 (D.N.J.), was previously transferred to MDL No. 2036 on February 3, 2010.

## ARGUMENT AND CITATION OF AUTHORITY

Plaintiffs and National City advance several arguments seeking to vacate CTO-16, none of which provide any basis to vacate. The *Trombley* case deals with the same or very similar issues of law and fact as the cases already transferred. As such, the purposes of the MDL will be well served by transfer in this instance.

Rather than attempting to meet the "showing of good cause" standard, which Plaintiffs and National City acknowledge applies in this instance, these parties advance arguments that have previously been *considered* and *rejected* by this Panel. On five previous occasions, this Panel rejected arguments by other plaintiffs and banks who sought to vacate conditional transfer orders in MDL No.

4

2036.  The *Trombley* case is no different.  Therefore, their objections to inclusion into MDL No. 2036 should be overruled.

## I.  Any Argument That The Questions Of Law And Facts In *Trombley* Differ From Other MDL Cases Is Greatly Exaggerated.

One of the central arguments asserted in the Motion is that questions of law and fact in this case differ from those in the other MDL cases.  *See, e.g.*, Brief of Plaintiffs, pp. 4-6.  Not only are the claimed differences grossly exaggerated, but claims regarding the purported differences between banks have previously been presented and rejected by the Panel.

Notably, Plaintiffs' concede there are factual allegations that are shared by this case and the other MDL cases, namely the assessment of overdraft fees by the defendant banks and the fact that the defendant banks post transactions to a consumer's account in a fashion other than the order in which they are received.  *See* Brief of Plaintiffs, p. 6.  In light of the fact that the Panel previously found that "[a]ll actions share factual questions relating to the imposition of overdraft fees by various bank defendants on their customer's checking accounts in a manner to maximize these fees," the admission that National City engages in this same practice is more than sufficient to warrant its inclusion in MDL No. 2036.[2]  Furthermore, Plaintiffs' argument that National City utilizes a slightly different

---

[2] 626 F. Supp. 2d at 1335.

method of maximizing overdraft fees than Wachovia, Citigroup, or other banks currently in MDL No. 2036 is insufficient, in and of itself, to vacate CTO-16.

Indeed, at the inception of this MDL, the Panel noted "[w]hile there will be some unique questions of fact from bank-to-bank, these actions share sufficient factual questions relating to industry-wide bank posting policies and procedures to warrant centralization of all actions in one MDL docket." 626 F. Supp. 2d at 1335. Moreover, as noted previously, Plaintiffs' arguments on this point are completely undermined by the fact that the *Matos* case is already a part of MDL No. 2036. Thus, Plaintiffs' arguments regarding there being no overlapping discovery or any unique characteristics with respect to National City completely miss the mark. Minute factual differences between bank policies do not provide good cause for the Panel to grant Plaintiffs' motions.

Furthermore, this same argument was unsuccessfully raised by Citibank in its opposition to the creation of MDL No. 2036. *See* Memorandum of Law of Citigroup, Inc. and Citibank, N.A. in Opposition to Motion to Transfer, pp. 1-2 (arguing that the *Amrhein* case involved "Citibank's own, and undoubtedly unique, debit card processing practices and disclosures").

Following the Panel's rejection of Citibank's argument, BB&T raised the very same argument when it opposed the CTO in the *Gordon* case, only to have the Panel reject that argument a second time. *See* 2009 WL 3460951, at *1 ("while

6

there are some unique questions of fact from bank-to-bank, all actions share sufficient factual questions relating to industry-wide bank posting policies and procedures to warrant centralization of all actions in one MDL docket"). Plaintiffs' regurgitation of this spurious argument is without merit and should suffer the same fate as it has in the past.

The central factual question emphasized by the Panel in its initial Transfer Order – the imposition of overdraft fees by banks in a manner to maximize these fees – lies at the heart of the complaint in *Trombley*. *See* Trombley Complaint, ¶¶ 14-16 (alleging that National City "improperly charges Overdraft Fees and violates state and federal law" in over ten different ways). Therefore, the benefits of centralization emphasized by the Panel are equally applicable to *Trombley*.

## II.   The Suggestion That The Pursuit Of Additional Legal Claims Warrants Exclusion From MDL No. 2036 Is Simply A Red Herring.

Plaintiffs also contend that the existence of common legal issues does not support centralization here because there are different state and federal law claims being asserted in *Trombley* than in other cases. *See* Brief of Plaintiffs, pp. 7-8. This argument also provides no basis to vacate CTO-16. A cursory review of the complaints in *Matos* and *Trombley* reveal that the complaints share identical claims for breach of contract, breach of the duty of good faith and fair dealing, conversion, unjust enrichment, and unconscionability. *Compare* Matos Complaint (DE # 1 in Case No. 1:10-cv-21771-JLK (S.D. Fla.), *with* Trombley Complaint

7

(DE # 1 in Case No. 1:10-cv-0232-JDB (D.D.C.).  In addition, each case asserts causes of action under the state consumer protection statutes for their named plaintiffs. *Id.* That *Trombley* asserts additional federal law claims is irrelevant.

Under 28 U.S.C. § 1407(a), consolidation in an MDL is appropriate "[w]hen civil actions involving one or more common questions of fact are pending in different districts."  Section 1407 does not establish a requirement that all actions necessarily share identical legal claims or defenses, and Plaintiffs do not provide citation to any authority to support such an inference.  In fact, the Panel has consistently found that the presence of different legal theories is no barrier to consolidation where, as here, there are common questions of fact.  *E.g.*, *In re Aircraft Accident at Barrow, Alaska, on Oct. 13, 1978*, 474 F. Supp. 996, 999 (J.P.M.L. 1979); *In re Oil Spill by "Amoco Cadiz" off Coast of France on March 16, 1978*, 471 F. Supp. 473, 476 (J.P.M.L. 1979) ("The presence of differing legal theories in some of the actions does not negate the existence of common questions of fact regarding the shipwreck and the attendant circumstances"); *In re Air Crash Disaster in Ionian Sea on Sept. 8, 1974*, 438 F. Supp. 932, 934 (J.P.M.L. 1977) ("the presence of differing legal theories in some of the actions with regard to the alleged liability of TWA, Boeing and the four individual defendants does not negate the existence of common questions of fact").  The arguments raised by Plaintiffs regarding differing legal issues provides no basis to vacate CTO-16.

8

III. **Arguments   Regarding   Inefficiency   And   Inconvenience   Are Unpersuasive.**

Plaintiffs also argue that the transfer of this case to MDL 2036 increases the burdens on the parties and the Panel. See Brief of Plaintiffs, pp. 6-7. This argument is without merit for two reasons. First, since the Panel has recognized a central factual question regarding the overdraft practices of the defendant banks and the industry as a whole, the risk of conflicting rulings on discovery, class certification and dispositive motions should not be viewed on an individual bank basis.

Furthermore, as noted previously, National City is currently defending a case filed within the Southern District of Florida, namely, *Matos*. Pursuant to JPML Rule 7.5 and Local Rule 3.8 of the Southern District of Florida, this case has been transferred to Judge King. Thus, the Southern District of Florida is a convenient jurisdiction for the bank. In addition, PNC Bank, which recently acquired National City is also already a participant in MDL No. 2036. Thus, excluding *Trombley* from MDL No. 2036, would actually result in a greater inconvenience for the banks under these circumstances.

Likewise, the Panel has already addressed such concerns regarding the applicability or necessity of certain discovery issues in previous orders. As the Panel held previously:

9

> [t]he MDL No. 2036 transferee court can employ any number of pretrial techniques – such as establishing separate discovery and/or motion tracks – to efficiently manage this litigation. Opponents' concerns regarding the manner and extent of coordination or consolidation of the pretrial proceedings can be presented to the transferee judge.

626 F. Supp. 2d at 1335. Any concerns Plaintiffs have regarding duplication or overlap of effort can be raised before Judge King in the Southern District of Florida.

Moreover, there are mechanisms in place to alleviate any potential inconvenience to the Plaintiffs in *Trombley*. As the Panel noted in *In re Investors Funding Corp. of New York Securities Litigation*, 437 F. Supp. 1199, 1203 (J.P.M.L. 1977):

> we note that transfer of an action under Section 1407 does not mean that all discovery must take place in the transferee district. For example, depositions of witnesses may still occur where they reside, see Fed.R.Civ.P. 45(d)(2), and of course any party may request an order from the transferee court that its documents be inspected at its offices or at another convenient location in or near the city in which it is located, *see* Manual for Complex Litigation, Part I, § 2.50 (rev. ed. 1973).

*See also In re Stirling Homex Corp. Securities Litigation*, 442 F. Supp. 547, 549 (J.P.M.L. 1977) (same). Thus, any concerns regarding the convenience of witnesses and the location of documents provide no basis for excluding *Trombley* from MDL No. 2036.

10

## CONCLUSION

Plaintiffs have not provided this Court with any meritorious reasons to vacate CTO-16 issued in *Trombley*. Plaintiffs' arguments regarding factual differences have previously been considered and rejected by the Panel. Furthermore, any minor factual differences that may exist between National City and the other banks are undermined by the fact that National City is already a part of MDL No. 2036 through *Matos* and indirectly through the PNC case. Therefore, Plaintiffs' Lead Counsel and Executive Committee respectfully request that the motion to vacate CTO-16 be denied.

DATED:  June 25, 2010.

Respectfully submitted,

*Robert C. Gilbert* w/ *express permission* (RCG)

Bruce S. Rogow, Esquire
Florida Bar No. 067999
bruce@abbrclaw.com
Robert C. Gilbert, Esquire
Florida Bar No. 561861
bobby@abbrclaw.com
ALTERS BOLDT BROWN
  RASH & CULMO, P.A.
4141 N.E. 2nd Avenue
Miami, Florida 33137
Tel:  (305) 571-8550
Fax:  (305) 571-8558

*Lead Counsel for Plaintiffs in MDL 2036*

Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
GOLUMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

Barry R. Himmelstein, Esquire
California Bar No. 157736
bhimmelstein@lchb.com
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
Mikaela Bernstein, Esquire
California Bar No. 261301
mbernstein@lchb.com
LIEFF CABRASER HEIMANN &
 BERNSTEIN LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Tel: 415-956-1000
Fax: 415-956-1008

Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Victor M. Diaz, Jr., Esquire
Florida Bar No. 503800
vdiaz@podhurst.com
PODHURST ORSECK, P. A.
City National Bank Building
25 W Flagler Street
Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E 58th street
34th Floor
New york, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

Edward Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, LLC
1900 The Exchange, SE
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Melissa K. Hutts, Esquire
Texas Bar No. 0188015
mhutts@baronbudd.com
Renee M. Melancon, Esquire
Texas Bar No. 2403573
rmelancon@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

*Plaintiffs' Executive Committee in MDL 2036*

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**Jun 28, 2010**

FILED
CLERK'S OFFICE

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2010 I served a copy of the foregoing upon

all parties of record by electronic mail to the interested parties as listed below and

on the Panel Service List for CTO-16:

Barry R. Davidson, Esq.
Hunton & Williams, LLC
1111 Brickell Avenue, Suite 2500
Miami, FL 33131-3136

Lawrence J. Hutt, Esq.
Arnold & Porter LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-2513

Hassan A. Zavareei, Esq.
Jeffrey D. Kaliel, Esq.
Tycko & Zavareei LLP
2000 L. Street, NW, Suite 808
Washington, DC 20036

Richard D. McCune, Jr., Esq.
McCune & Wright LLP
2068 Orange Tree Lane, Suite 216
Redlands, CA 92374

Lisa M. Simonetti, Esq.
Stroock, Stroock & Lavan LLP
2029 Century Park East, Suite 1600
Los Angeles, CA 90067-3086

Darryl J. May, Esq.
Ballard Spahr, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

13

_Robert C. Gilbert_ w/ express permission (GLG)

Robert C. Gilbert
On Behalf of the Plaintiffs' Lead Counsel
and Plaintiffs' Executive Committee in
MDL 2036

14

GZJ KDKV'L''

# MDL-2036

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**UNITED STATES JUDICIAL PANEL**
on
**MULTIDISTRICT LITIGATION**

**Aug 09, 2010**

**FILED**
**CLERK'S OFFICE**

**IN RE: CHECKING ACCOUNT**
**OVERDRAFT LITIGATION**

| | | |
|---|---|---|
| Ramona Trombley, et al. v. National City Bank, | ) | MDL No. 2036 |
| D. District of Columbia, C.A. No. 1:10-232 | ) | |

**Pleading No. 289**

### ORDER VACATING CONDITIONAL TRANSFER ORDER

**Before the entire Panel**[*]: Plaintiffs and defendant National City Bank in an action pending in the District of the District of Columbia (*Trombley*) have separately moved, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), to vacate the Panel's order conditionally transferring the action to MDL No. 2036.  Plaintiffs' Lead Counsel and Plaintiffs' Executive Committee in the MDL oppose the two motions.

After considering all argument of counsel, we will grant the motions to vacate.  The moving parties have informed the Panel that they have reached a settlement that, if approved, will fully resolve *Trombley*.  In light of this development, we conclude that transfer of the action to MDL No. 2036 is not presently warranted.[1]

IT IS FURTHER ORDERED that the Panel's conditional transfer order designated as "CTO-16" in MDL No. 2036 is vacated.

PANEL ON MULTIDISTRICT LITIGATION

_____
Robert L. Miller, Jr.
Acting Chairman

| | |
|---|---|
| John G. Heyburn II, Chairman[*] | Kathryn H. Vratil |
| David R. Hansen | W. Royal Furgeson, Jr. |
| Frank C. Damrell, Jr. | Barbara S. Jones |

_____

[*]   Judge Heyburn took no part in the disposition of this matter.

[1]   In the event that the settlement is not approved or does not fully resolve *Trombley*, nothing in this order bars future transfer of the action to MDL No. 2036.

**OFFICIAL FILE COPY**   IMAGED  Aug 09 2010

# EXHIBIT K

Case No. 09-14107-BB

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

RENATO CAPPUCCITTI AND DAVID WARD,
ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs-Appellees,*

v.

DIRECTV, INC.,

*Defendant-Appellant.*

---

On Appeal from the United States District Court
For The Northern District Of Georgia, Atlanta Division
District Court Case No. 1:09-cv-627-CAP
Hon. Charles A. Pannell, Jr., District Judge

---

### PLAINTIFFS-APPELLEES' PETITION FOR REHEARING *EN BANC*

---

Carlos A. González (GBN 300330)
VAUGHAN & EVANS, LLC
117 North Erwin Street
Cartersville, Georgia 30120

William M. Sweetnam (IBN 6226203)
SWEETNAM LLC
5 Revere Drive, Suite 200
Northbrook, Illinois  60062

Charles S. Siegel (TBN 18341875)
WATERS & KRAUS, LLP
3219 McKinney Avenue
Dallas, Texas 75204

Elizabeth J. Cabraser (CBN 083151)
LIEFF, CABRASER, HEIMANN
& BERNSTEIN, LLP *(of counsel)*
275 Battery Street, 29th Floor
San Francisco, California 94111

*Attorneys for Plaintiffs-Appellees*

## <u>CERTIFICATE OF INTERESTED PERSONS AND<br>CORPORATE DISCLOSURE STATEMENT</u>

1. The undersigned certifies that the following is a complete list of

all named Appellees in this case:

  a. Renato Cappuccitti, a resident of Fulton County,

Georgia; and

  b. David Ward, a resident of Houston County, Georgia.

2. The undersigned certifies that the following is a complete list of

all counsel of record for the Appellees:

> Carlos A. González (Georgia Bar No. 300330)
> Donald C. Evans, Jr. (Georgia Bar No. 251755)
> Tracy L. Rhodes (Georgia Bar No. 153079)
> VAUGHAN & EVANS, LLC
> 117 North Erwin Street
> Post Office Box 534
> Cartersville, Georgia 30120
> Telephone: (770) 382-4374
> Facsimile: (770) 386-4185
>
> Michael D. Lieder (DC Bar No. 444573)
> SPRENGER + LANG PLLC
> 1400 Eye Street, N.W., Suite 500
> Washington, D.C.  20005
> Telephone: (202) 772-1159
> Facsimile: (202) 332-6652

William M. Sweetnam (Illinois Bar No. 6226203)
SWEETNAM LLC
5  Revere Drive, Suite 200
Northbrook, Illinois  60062
Telephone:  (847) 498-7500
Facsimile:   (847) 919-4399

Joshua G. Konecky (California Bar No. 182897)
SCHNEIDER WALLACE COTTRELL BRAYTON
KONECKY, LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Telephone:  (415) 421-7100
Facsimile:   (415) 421-7105

Garrett W. Wotkyns (Arizona Bar No. 25887)
SCHNEIDER WALLACE COTTRELL BRAYTON
KONECKY, LLP
7702 E. Doubletree Ranch Road, Suite 300
Scottsdale, Arizona 85258
Telephone:  (480) 607-4368
Facsimile:   (480) 607-4366

Ingrid Evans (California Bar No. 179094)
WATERS & KRAUS, LLP
601 Van Ness, Suite 2080
San Francisco, California  94102
Telephone:  (214) 357-6244

Charles S. Siegel (Texas Bar No. 18341875)
WATERS & KRAUS, LLP
3219 McKinney Avenue
Dallas, Texas 75204
Telephone:  (214) 357-6244
Facsimile:   (214) 357-7252

Elizabeth J. Cabraser (California Bar No. 083151)
Jonathan D. Selbin (New York Bar No. JS 3097)
Kristen Law Sagafi (California Bar No. 222249)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
*(of counsel)*
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

3.      The statements contained in ¶¶ 1, 3, and 4 of DIRECTV, Inc.'s

Certificate of Interested Persons and Corporate Disclosure Statement dated

August 21, 2009 are adopted.

Dated:  August 9, 2010

Carlos A. González
VAUGHAN & EVANS, LLC
*Attorneys for Plaintiffs-Appellees*

## BASIS FOR REHEARING *EN BANC*

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decision(s) of the Supreme Court of the United States or the precedents of this circuit and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court:  *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 163 (1997); *Pretka v. Kolter City Plaza II*, 608 F.3d 744, 772 (11th Cir. 2010); *Thomas v. Bank of America Corp.*, 570 F.3d 1280, 1283 (11th Cir. 2009); *Dial v. Healthspring of Ala., Inc.*, 541 F.3d 1044 (11th Cir. 2008); *West Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 Fed. Appx. 81 (11th Cir. 2008) (unpublished); *Miedema v. Maytag Corp.*, 450 F.3d 1322 (11th Cir. 2006); *Evans v. Walter Industries, Inc.*, 449 F.3d 1159 (11th Cir. 2006); *University of S. Ala. v. American Tobacco Co.*, 168 F.3d 405 (11th Cir. 1999).

The panel decision also conflicts with authoritative decisions of the following other circuits:  *Bonime v. Avaya, Inc.*, 547 F.3d 497 (2d Cir. 2008); *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255 (3d Cir. 2008); *Savedoff v. Access Group, Inc.*, 524 F.3d 754 (6th Cir. 2008); *Blockbuster, Inc. v. Galeno*, 472 F.3d 53 (2d Cir. 2006); and *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006).

886646.4

I further express a belief, based on a reasoned and studied professional judgment, that this appeal involves one or more questions of exceptional importance: (1) whether CAFA class action jurisdiction requires any assertion of an individual amount in controversy when bringing a case in federal court, and (2) whether CAFA allows different rules for jurisdiction over cases depending on whether the case was originally filed in federal court or removed to federal court from state court.

Dated:  August 9, 2010

Carlos A. González
VAUGHAN & EVANS, LLC
*Attorneys for Plaintiffs-Appellees*

886646.4

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND
  CORPORATE DISCLOSURE STATEMENT..............................................I

BASIS FOR REHEARING *EN BANC* ................................................ IV

I.   STATEMENT OF ISSUES MERITING *EN BANC*
     CONSIDERATION.................................................................1

II.  PROCEDURAL BACKGROUND AND DISPOSITION OF
     THE CASE ..........................................................................2

III. ARGUMENT ........................................................................3

     A.   CAFA's Text And History Establish That There Is No
          Individual $75,000 Amount-In-Controversy
          Requirement. ...............................................................3

          1.   The Plain Text Of Section 1332 Extends Federal
               Jurisdiction To Class Actions Regardless Of
               Whether They Satisfy An Individual Amount In
               Controversy.................................................................3

               a.   The Structure Of Section 1332 Reveals That
                    Traditional Diversity Jurisdiction Is
                    Different From CAFA Jurisdiction, And
                    That There Are Two Types Of CAFA
                    Jurisdiction. ............................................................4

               b.   Four Aspects Of The Text And Structure Of
                    Section 1332 Show That CAFA Class
                    Action Jurisdiction Includes No Individual
                    Amount In Controversy.........................................5

               c.   The Opinion Incorrectly Conflates Class
                    Actions With Mass Actions....................................6

          2.   The Opinion's Creation Of A $75,000
               Requirement Defies Congress' Intent And
               Conflicts With The Well-Established Law Of This
               And Other Circuits.........................................................8

     B.   Removal Jurisdiction Is Not Distinct From Original
          Jurisdiction. ...............................................................11

# TABLE OF CONTENTS
## (continued)

**Page**

C.   A New Rule Denying Federal Jurisdiction For Class Actions Such As These Would Result In Confusion And Inefficiency. ...........................................................................13

IV.   CONCLUSION ...................................................................................15

886646.4

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abrego Abrego v. The Dow Chem. Co.*,
   443 F.3d 676 (9th Cir. 2006) ........................................................................7

*Blockbuster, Inc. v. Galeno*,
   472 F.3d 53 (2d Cir. 2006) ........................................................................11

*Bonime v. Avaya, Inc.*,
   547 F.3d 497 (2d Cir. 2008) ......................................................................10

*City of Chicago v. Int'l College of Surgeons*,
   522 U.S. 156 (1997) ...................................................................................11

*Dial v. Healthspring of Ala., Inc.*,
   541 F.3d 1044 (11th Cir. 2008) .................................................................11

*DiCarlo v. St. Mary Hosp.*,
   530 F.3d 255 (3d Cir. 2008) ......................................................................10

*Evans v. Walter Indus., Inc.*,
   449 F.3d 1159 (11th Cir. 2006) ..............................................................8, 10

*Lowery v. Ala. Power Co.*,
   483 F.3d 1184 (11th Cir. 2007) ...................................................................5

*Miedema v. Maytag Corp.*,
   450 F.3d 1322 (11th Cir. 2006) ......................................................10, 13, 14

*Pretka v. Kolter City Plaza II*,
   608 F.3d 744 (11th Cir. 2010) ...................................................................10

*Savedoff v. Access Group, Inc.*,
   524 F.3d 754 (6th Cir. 2008) .....................................................................10

*Thomas v. Bank of America Corp.*,
   570 F.3d 1280 (11th Cir. 2009) .................................................................10

*University of S. Ala. v. American Tobacco Co.*,
   168 F.3d 405 (11th Cir. 1999) ...................................................................12

*West Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*,
   287 Fed. Appx. 81 (11th Cir. 2008) ........................................................9, 10

## STATUTES

28 U.S.C. § 1332 ..............................................................................................4

28 U.S.C. § 1332(a) .......................................................................................1, 4

28 U.S.C. § 1332(d) .......................................................................................1, 4

28 U.S.C. § 1332(d)(1)(B) .................................................................................6

28 U.S.C. § 1332(d)(2) .........................................................................1, 4, 5, 10

28 U.S.C. § 1332(d)(2)-(10) ......................................................................3, 4, 6

28 U.S.C. § 1332(d)(6) ......................................................................................6

# TABLE OF AUTHORITIES
## (continued)

**Page**

28 U.S.C. § 1332(d)(11) ............................................................ *passim*

28 U.S.C. § 1332(d)(11)(B)(i) .......................................................7

28 U.S.C. § 1441(a) ....................................................................12

Class Action Fairness Act of 2005,
  Pub. L. 109-2, 119 Stat. 4 ................................................. *passim*

## OTHER AUTHORITIES

11th Cir. L.R. 36-2 .......................................................................9

Emery G. Lee III & Thomas E. Willging, *The Impact of the Class
  Action Fairness Act on the Federal Courts:  An Empirical Analysis
  of Filings and Removals*,
  156 U. Pa. L. Rev. 1723 (2007-08)...............................................11

S. Rep. No. 109-14 (2005) ...............................................7, 9, 12

## RULES

Federal Rules of Appellate Procedure
  Rule 35(b)(1)...........................................................................2

## TREATISES

15 James Wm. Moore, *et al., Moore's Fed. Prac.* (Matthew Bender 3d
  ed.)........................................................................................8, 9

16 James Wm. Moore, *et al.*, *Moore's Fed. Prac.* (Matthew Bender 3d
  ed.)........................................................................................7, 12

17A James Wm. Moore, *et al., Moore's Fed. Prac.* (Matthew Bender
  3d ed.) .....................................................................................12

7 Wright, *et. al., Fed. Prac. & Proc.* ...........................................7

7A Wright, *et. al., Fed. Prac. & Proc.* ......................................7, 8

14B Wright, *et al.*, *Fed. Prac. & Proc.*...................................12

14C Wright, *et al.*, *Fed. Prac. & Proc.*...................................13

886646.4

## I.   STATEMENT OF ISSUES MERITING *EN BANC* CONSIDERATION

Plaintiffs respectfully request rehearing *en banc* of this Court's decision of July 19, 2010 (the "Opinion").[1]  The Opinion held that in a CAFA[2] class action originally filed in federal court, at least one plaintiff must satisfy the individual $75,000 amount-in-controversy requirement of 28 U.S.C. § 1332(a), among other requirements, for a federal court to have subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  *Id.* at \*3.  The Opinion incorrectly reasoned that "there is no evidence of congressional intent in § 1332(d) to obviate § 1332(a)'s $75,000 requirement as to at least one plaintiff."  *Id.* at \*4.  It also erred in stating that "the $75,000 requirement expressly applies in actions removed under CAFA, 28 U.S.C. § 1332(d)(11)(B)(i)," citing language regarding CAFA mass action jurisdiction, despite the fact that that subsection (d)(11) does not apply here, because this case is a class action, not a mass action.  *Id.*

Plaintiffs respectfully submit that the Opinion is erroneous in two respects. First, the Opinion misreads Section 1332(d), misapprehending Congress' intent in passing CAFA.  The error appears to stem from a conflation of "class actions" and "mass actions," which are different procedural devices treated differently by CAFA and by the Federal Rules of Civil Procedure.  Second, the Opinion

---

[1] Citations to the Opinion herein are to pages in 2010 WL 2803093.  Plaintiffs respectfully request both rehearing *en banc* and rehearing before the original Panel.

[2] "CAFA" is the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4.

886646.4

misconstrues the nature of removal jurisdiction, which is generally premised on

federal courts' original jurisdiction.  By suggesting that jurisdiction depends on

whether a case is the product of removal or original filing, the Opinion introduces

an asymmetry that contradicts a century of removal jurisprudence.  In both

respects, the Opinion conflicts with holdings of the United States Supreme Court,

this Court, and other Circuits.  The issuance of the Opinion three weeks ago has

already led to an uproar among commentators in both the plaintiffs' and defense

bars and confusion among district courts throughout the nation.

Rehearing *en banc* is appropriate because (A) the Opinion conflicts with this

Court's other decisions, and consideration by the full Court is therefore necessary

to secure and maintain uniformity of decisions, and (B) clarification of the bounds

of CAFA diversity jurisdiction is of exceptional importance, because the Opinion

conflicts with the settled law of other Circuits.[3]  Fed. R. App. P. 35(b)(1).

## II.    PROCEDURAL BACKGROUND AND DISPOSITION OF THE CASE

In this action, Plaintiffs challenge DirecTV, Inc.'s ("DTV") practice of

charging cancellation penalties without notice or permission.  On March 6, 2009,

Plaintiff Cappuccitti filed this case in the Northern District of Georgia,[4] asserting

---

[3] The conflicting law of other Circuits listed below at 7, 10 n. 11, & 11 n.12.

[4] Plaintiff pled jurisdiction under CAFA to comply with Congress' intent to shift adjudication of large interstate class cases like this one to federal court. Appellants' ER at 10.

consumer claims of approximately $175-480 per class member against DTV.

Opinion at *4; Appellants' ER at 8-22.  DTV moved to compel arbitration.  The

district court denied the motion, finding the arbitration clause unconscionable and

unenforceable.  *Id.* at 46-54.  DTV timely appealed.  The parties briefed the

arbitration issues to this Court.  At oral argument, the Court asked whether the

district court had subject matter jurisdiction under CAFA, though the parties had

not briefed or argued the question at any stage of the litigation.  The parties agreed

that jurisdiction was proper.  The Court issued the Opinion on July 19, 2010.

Plaintiffs seek a rehearing *en banc* and an opportunity to brief the new

question of jurisdiction.

## III.   ARGUMENT

### A.   CAFA's Text And History Establish That There Is No Individual $75,000 Amount-In-Controversy Requirement.

#### 1.   The Plain Text Of Section 1332 Extends Federal Jurisdiction To Class Actions Regardless Of Whether They Satisfy An Individual Amount In Controversy.

The only portion of Section 1332 applicable here – § 1332(d)(2)-(10) –

exhaustively sets forth the requirements for federal jurisdiction in class actions like

the one at bar.  This portion of the statute is distinct from subsection (a) (the

traditional basis for diversity jurisdiction, which preceded CAFA and continues to

exist), and from subsection (d)(11) (the other new type of federal jurisdiction

established by CAFA – mass action jurisdiction).

a.     **The Structure Of Section 1332 Reveals That Traditional Diversity Jurisdiction Is Different From CAFA Jurisdiction, And That There Are Two Types Of CAFA Jurisdiction.**

The plain language of 28 U.S.C. § 1332, which sets forth the sole basis for diversity jurisdiction, confirms that there is no individual amount-in-controversy requirement for class actions that satisfy certain other basic requirements of CAFA.  Significantly, the two types of diversity jurisdiction under Section 1332 are defined in two separate subsections:  subsection (a) defines traditional diversity jurisdiction, and subsection (d) defines CAFA jurisdiction.  Section 1332(a) sets forth what can be called "traditional diversity jurisdiction":  district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000" and satisfies one of four enumerated diversity requirements.  Section 1332(d), created by Congress' passage of CAFA in 2005, sets forth a new, additional basis for diversity jurisdiction ("CAFA jurisdiction").

CAFA jurisdiction exists in two discrete, non-overlapping varieties:  one for class actions (in § 1332(d)(2)-(10)) and another for mass actions (in § 1332(d)(11)).  Under § 1332(d)(2), "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000" and satisfies one of three enumerated diversity requirements (hereinafter, "CAFA class action jurisdiction").  Subsections (2) through (10) set forth certain exceptions and clarifications to subsection (d)(2).  Subsection (11)

- 4 -

sets forth the other type of CAFA jurisdiction, which is limited to mass actions

("CAFA mass action jurisdiction"). *Lowery v. Ala. Power Co.*, 483 F.3d 1184,

1202-03 (11th Cir. 2007); *see generally* Exhibit A (diagram of § 1332).

> **b.** **Four Aspects Of The Text And Structure Of Section 1332 Show That CAFA Class Action Jurisdiction Includes No Individual Amount In Controversy.**

It is evident from four aspects of CAFA's revision to the structure and

language of the diversity jurisdiction statute that CAFA class action jurisdiction

includes no individual amount-in-controversy requirement.  District courts

therefore have CAFA class action jurisdiction over cases like this one, regardless

of whether they are filed originally in federal court or removed from state court.

First, subsection (d)(2) plainly enumerates sufficient conditions for "original

[federal] jurisdiction":  (a) the aggregate $5,000,000 amount in controversy, (b)

class action status (as defined in subsequent subsections), and (c) diversity (as

defined in the subsection).  It lists no individual amount in controversy.

Second, the statutory language creating CAFA jurisdiction (subsection

(d)(2)) is identical to the statutory language creating traditional diversity

jurisdiction (subsection (a)), except that it substitutes the aggregate "$5,000,000"

for the individual "$75,000" and makes two other changes not relevant here.  In

short, Congress chose to replace the $75,000 individual amount-in-controversy

requirement with an aggregate $5,000,000 one.

Third, the statute eschews an individual approach to the amount in controversy in favor of an explicit aggregate approach:  subsection (d)(6) explains that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000."  The subsection does not mention any individual amount-in-controversy requirement.

Fourth, subsection (d)(11), which defines CAFA mass action jurisdiction (and which does *not* apply to class actions), is the only place in the CAFA portion of the statute where an individual amount in controversy is mentioned.  28 U.S.C. § 1332(d)(11) (limiting federal jurisdiction in mass actions (as distinct from class actions) to "only . . . those plaintiffs whose claims . . . satisfy the [$75,000] jurisdictional amount requirements under subsection (a)").  Congress' decision to include the individual $75,000 threshold for mass actions highlights the fact that it could have done so – but chose not to – for *class actions*.

> c.  **The Opinion Incorrectly Conflates Class Actions With Mass Actions.**

Class actions and mass actions are different in many respects, including for purposes of the amount-in-controversy analysis.  CAFA recognizes this by addressing them separately – class actions in subsections (d)(2)-(10) and mass actions in (d)(11).  They are governed by different requirements.  Class actions must comply with Fed. R. Civ. P. 23 or a similar rule.  28 U.S.C. § 1332(d)(1)(B).  By contrast, mass actions need not; they are not representative suits, because each

886646.4

plaintiff is named.  S. Rep. No. 109-14, at 46 (2005) ("[M]ass actions [are] suits

. . . brought on behalf of numerous named plaintiffs. . . .").

"An important difference between class actions and mass actions under

CAFA is the applicable amount in controversy.  A class action is removable only if

the aggregated claims of the class exceed $5,000,000.  With respect to mass

actions, each plaintiff's claims must exceed $75,000."  16 James Wm. Moore *et

al.*, *Moore's Fed. Prac.*, § 107.15[13][b][iv][A] at 107-152.12 (Matthew Bender 3d

ed.) ("*Moore's*").[5]  For example, in *Abrego Abrego v. The Dow Chem. Co.*, 443

F.3d 676 (9th Cir. 2006), the Ninth Circuit analyzed a mass action under

subsection (d)(11), including the $75,000 and $5,000,000 requirements, and

distinguished class actions from mass actions.  *Id.* at 686-90.

The Opinion errs by conflating the two types of actions.[6]  The Opinion states

that "the $75,000 requirement expressly applies in actions removed under CAFA,"

citing subsection (d)(11)(B)(i)'s *mass action* standard.  Opinion at *4.  That section

has no bearing on *class actions*.  The Opinion misperceives Congress' distinction

---

[5] *Compare* 7A Wright, Miller & Kane, *Fed. Prac. & Proc.* § 1756.2 at 103
("*FPP*") *with* 7 *FPP* § 1659 at 66 (2010 Supp.) (discussing class action and mass
action jurisdiction under CAFA in different volumes).

[6] Paragraph (11)(A)'s directive that "a mass action shall be deemed to be a class
action removable . . ." confirms this distinction:  mass actions, though not the same
as class actions, are *treated* as class actions for jurisdictional purposes if they
satisfy certain additional prerequisites (listed in ¶ 11).  That treatment does not
affect the prerequisites for jurisdiction over actual class actions (listed in ¶¶ 2-10).

between class actions and mass actions as a distinction between removal

jurisdiction and original jurisdiction.  *See* Section III.B., below.

2.     **The Opinion's Creation Of A $75,000 Requirement Defies Congress' Intent And Conflicts With The Well-Established Law Of This And Other Circuits.**

This Court has recognized that CAFA shifted large interstate class actions

typically aggregating small damages claims from state courts to federal courts by

broadening federal jurisdiction.  "Congress contemplated broad federal court

jurisdiction, *see e.g.*, Pub.L. No. 109-2, § 2(b)(2), 119 Stat. 4 ('providing for

Federal court consideration of interstate cases of national importance under

diversity jurisdiction'), with only narrow exceptions.  These notions are fully

confirmed in the legislative history."  *Evans v. Walter Indus., Inc.*, 449 F.3d 1159,

1164 (11th Cir. 2006); 7A *FPP* § 1756.2 at 105; 15 *Moore's* § 102.26[1][a][i] at

102-66.4 (observing that CAFA "raise[s] the amount in controversy" and "requires

. . . aggregat[ion]," which "greatly increases the possibility that a federal court will

have subject matter jurisdiction over large class actions involving a number of

small monetary claims").[7]

Congress accomplished this jurisdictional expansion in part by replacing the

traditional $75,000 individual requirement with a $5,000,000 aggregate damages

---

[7] Of course, if Congress had simply added the $5,000,000 requirement while maintaining the individual $75,000 requirement, as the Opinion holds, the possibility of a federal court having jurisdiction would be *decreased*, not increased.

threshold for class actions.  7A *FPP* § 1756.2 at 103-04; 15 *Moore's*

§ 102.26[1][c][ii] at 102-66.11 to 102-66.12 (CAFA's "aggregation requirement"

is "a major departure from" the old regime, in which at least one class member had

to meet the $75,000 threshold).  Congress intended CAFA to federalize class

actions asserting many *small-value* (well under $75,000 per person) claims.[8]  S.

Rep. No. 109-14, at 10 ("[R]equiring each plaintiff to reach the $75,000 mark

makes little sense in the class action context."); *id.* at 33 (noting that CAFA is

intended to cover class actions where each plaintiff "only [has] a small financial

stake in the litigation").  Congress criticized as "nonsensical" the pre-CAFA

regime that would allow a multi-billion-dollar class action with average damages

of $600 per individual to "be heard in state court (because each individual class

member's claim is for less than $75,000)."  *Id.* at 11; *see also id.* at 69-70 (CAFA

simplifies calculations by focusing on aggregate, not individual, damages).

This Court has repeatedly held that CAFA includes no $75,000 individual

threshold.  In *West Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*,

287 Fed. Appx. 81 (11th Cir. 2008) (unpublished),[9] this Court held that "28 U.S.C.

§ 1332(d) . . . confers diversity jurisdiction in a class action when a member of the

---

[8] This legislative preference belies the Opinion's concern about federal courts becoming "small claims courts."  *Id.* at *3.  In the sense feared by the Opinion, they already have.  For better or worse, that was Congress' expressed intent.

[9] That decision is persuasive but not binding.  11th Cir. L.R. 36-2.

class has citizenship diverse from that of defendant and the amount in controversy exceeds $5,000,000" in a case filed originally in federal court. *Id.* at 91. Likewise, in *Miedema v. Maytag Corp.*, 450 F.3d 1322 (11th Cir. 2006), this Court carefully assessed whether class claims worth at most an average of $881.55 each, and $5,931,971 in aggregate, satisfied CAFA's amount-in-controversy requirement. *Id.* at 1324-26. Although those claims, individually, plainly fell well below $75,000, and the Court could easily have disposed of the matter on that basis (were that the correct standard), the Court spent pages addressing whether the claims met the $5,000,000 requirement. *Id.* at 1330-32; *see also Pretka v. Kolter City Plaza II*, 608 F.3d 744, 772 (11th Cir. 2010); *Thomas v. Bank of America Corp.*, 570 F.3d 1280, 1283 (11th Cir. 2009);[10] *Evans v. Walter Industries, Inc.*, 449 F.3d 1159, 1163-65 (11th Cir. 2006) (all using $5,000,000 – not $75,000 – requirement).

At least three other Circuits have held the same in non-removal cases.[11] All addressed the $5,000,000 aggregate threshold; none mentioned a $75,000

---

[10] Although the Court incorrectly stated that the defendant invoked "mass action" jurisdiction, its removal notice and appellate briefing asserted *class action* jurisdiction, citing subsection (d)(2) and not mentioning mass actions or (d)(11). *Thomas*, 570 F.3d at 1282 (*per curiam*) (citing *Lowery* (a mass action case)).

[11] *See Bonime v. Avaya, Inc.*, 547 F.3d 497, 499-500 (2d Cir. 2008); *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 261 (3d Cir. 2008); *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 760 n.5 (6th Cir. 2008).

individual threshold.  Other cases hold the same in the removal context.[12]

## B.    Removal Jurisdiction Is Not Distinct From Original Jurisdiction.

The Opinion relies on a false distinction between removal jurisdiction and

original jurisdiction.  The Opinion reasons that "we face a situation different from

that in the cases cited above . . ., because Cappuccitti initiated this case in federal

court; it was not removed from state court."[13]  *Id.* at *2.  This distinction

contradicts a century of caselaw linking removability to original jurisdiction.

It is well established that "[t]he propriety of removal . . . depends on whether

the case originally could have been filed in federal court."  *City of Chicago v. Int'l

College of Surgeons*, 522 U.S. 156, 163 (1997); *Dial v. Healthspring of Ala., Inc.*,

541 F.3d 1044 (11th Cir. 2008) (holding that cases may be removed only when

district courts have original jurisdiction over them); *University of S. Ala. v.*

---

[12] *See, e.g.*, *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57-58 (2d Cir. 2006)
("Unlike the general diversity statute which requires at least one claim to meet the
amount-in-controversy minimum of $75,000, CAFA explicitly provides for
aggregation of each class member's claims in determining whether the amount of
controversy is at least $5,000,000.") (citations omitted).

[13] The Opinion hypothesized that CAFA class actions filed, like this one, originally
in federal court (as opposed to reaching federal court through removal) "are
relatively rare."  Opinion at *2.  In fact, the data refute this statement.
"[P]laintiffs' attorneys in a large number of cases were choosing, post-CAFA, to
file class actions raising state-law causes of action in the federal courts, a marked
departure from the pre-CAFA period."  Emery G. Lee III & Thomas E. Willging,
*The Impact of the Class Action Fairness Act on the Federal Courts:  An Empirical
Analysis of Filings and Removals*, 156 U. Pa. L. Rev. 1723, 1753 (2007-08); *see
also id.* at 1752 (observing that post-CAFA, original filings of diversity class
actions increased by 192%, while removals increased by 43%).

*American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("[O]ur removal

jurisdiction is no exception to a federal court's obligation to inquire into its own

jurisdiction. . . .   If there is jurisdiction, then removal is appropriate and the court

may proceed to the merits of the case.").

> [R]emoval is not a kind of jurisdiction—analogous to federal question
> jurisdiction and diversity of citizenship jurisdiction.  Rather, it is a
> means of bringing cases within federal courts' original jurisdiction
> into those courts, as is commencement of a suit in federal court. . . .
> In general, and of cardinal importance, an action is removable only if
> it originally might have been brought in a federal court.  This
> requirement that all of the conditions for original jurisdiction must be
> satisfied has been enforced in innumerable cases, decided by courts at
> all levels of the federal judiciary. . . .   [T]he principles governing . . .
> the jurisdictional amount-in-controversy requirement[] therefore apply
> to cases seeking entry into the federal court system by removal.

14B *FPP* § 3721 at 27, 7, & 16; 16 *Moore's* § 107.04 at 107-25 ("[R]emoval is

keyed to original jurisdiction over cases filed in federal court . . .[;] removal juris-

diction requires that the case originally could have been filed in federal court.").[14]

The authors of CAFA acknowledged this tradition, explicitly equating

removal and original jurisdiction.  S. Rep. No. 109-14, at 9 ("The general removal

statute, 28 U.S.C. § 1441(a), provides that any civil action brought in a state court

may be removed . . . to federal court if the claim could have originally been

brought in federal court.  In other words, so long as a federal district court could

---

[14] There are some exceptions, but CAFA is not one.  17A *Moore's* § 120.12[3][a]
at 120-34; 14B *FPP* § 3721 at 19-20.

exercise original jurisdiction over a claim, a defendant may remove the case to federal court.").  Congress provided that "[t]he general removal provisions currently contained in Chapter 89 of Title 28 would continue to apply to class actions, except where they are inconsistent with the provisions of the Act."  *Id.* at 48.  Commentators agree.  *See, e.g.*, 14C *FPP* § 3725 at 1-2.[15]

In short, nothing in CAFA implies that Congress intended to disturb the coextensive nature of removal jurisdiction and original jurisdiction.  The Opinion's suggestion to the contrary misapprehends the nature of "removal jurisdiction."

### C.   A New Rule Denying Federal Jurisdiction For Class Actions Such As These Would Result In Confusion And Inefficiency.

By conflicting with other opinions of this Circuit and introducing a novel, unsupported asymmetry between removed cases and originally filed ones, the Opinion is leading to confusion and unnecessary work for lower courts.[16]

---

[15] This Court "presume[s] that Congress legislates against the backdrop of established principles of state and federal common law, and that when it wishes to deviate from deeply rooted principles, it will say so."  *Miedema*, 450 F.3d at 1329 (internal quotations and citations omitted).  Since Congress did not state an intention to alter the linkage between removal and original jurisdiction when passing CAFA, that linkage remains in effect.

[16] It has already generated significant speculation among practitioners and commentators.  *See, e.g.*, http://tinyurl.com/cafa001 (arguing that the Opinion conflicts with *Pretka* and other Eleventh Circuit cases and is therefore not binding, and "there is a significant chance that the full Eleventh Circuit or the Supreme Court will clean up the decision"); http://tinyurl.com/cafa002 ("[B]ecause this new threshold in *Cappuccitti* could rarely be met, . . . CAFA cases as we now know them might all but cease to exist."); http://tinyurl.com/cafa003 ("The court's

To the extent that the Opinion is limited to originally filed cases (and not removed ones), it leads to a highly counterintuitive and inefficient result:  plaintiffs who have attempted to comply with Congress' mandate by filing directly in federal court must see their cases dismissed, only to refile and be removed back to federal court (likely before the same judge).  Surely Congress did not intend to create such a Rube Goldberg dismiss-refile-remove mechanism.

In addition, such a rule would be unfair to plaintiffs.  Normally, plaintiffs, as masters of the complaint, can choose to file in state or federal court.  Under CAFA, this remains true, though defendants are given the removal option.  But the Opinion strips plaintiffs' choice, forcing them to state court, while preserving defendants' choice.  There is no evidence that Congress intended to create that imbalance.  To the contrary, CAFA's standard rationales make no distinction based on whether plaintiffs or defendants invoke its jurisdiction.[17]

A separate danger is that district courts may interpret the Opinion's logic

---

holding is very hard to square with CAFA's text and purpose.");
http://tinyurl.com/cafa004 ("[F]or now, the Eleventh Circuit effectively is a de-CAFA-nated circuit.") (all websites last visited August 4, 2010).

[17] "In fact, Section 2(b) of CAFA describes its purposes as follows: (1) '[to] assure fair and prompt recoveries for class members with legitimate claims; (2) [to] restore the intent of the framers of the United States Constitution by providing for . . . interstate cases of national importance under diversity jurisdiction; and (3) [to] benefit society by encouraging innovation and lowering consumer prices.'" *Miedema*, 450 F.3d at 1330, n.6.  None of those express purposes squares with or is served by removal-only access to federal court.

and its dicta that "the $75,000 requirement expressly applies in actions removed under CAFA" to require remand of removed cases.  Opinion at *4 (citing 28 U.S.C. § 1332(d)(11)(B)(i)).  Although that statement is silent as to whether it addresses class actions or mass actions, lower courts may interpret it to address class actions, since *Cappuccitti* is a class action and the paragraph discusses class actions (although the cited portion of CAFA addresses mass actions only).  Such an interpretation would eviscerate CAFA by reestablishing the $75,000 requirement CAFA sought to override.

In short, the opinion undoes Congress' effort to move large interstate class actions addressing small-value claims to federal court, based on a misunderstanding of the distinction between class actions and mass actions and an erroneous decoupling of removal and original jurisdiction.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court rehear the case *en banc* after allowing the parties an opportunity to brief the question of whether the district court had subject matter jurisdiction under CAFA.

Dated:  August 9, 2010

Carlos A. González
VAUGHAN & EVANS, LLC
*Attorneys for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE VIA U.S. MAIL

I hereby certify that a true and accurate copy of the foregoing

PLAINTIFFS-APPELLEES' PETITION FOR REHEARING *EN BANC* has

been furnished by First Class U.S. Mail, this 9th day of August 2010, to the

following counsel of record:

Matthew D. Richardson
Alston & Bird, LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

Melissa D. Ingalls
Kirkland & Ellis, LLP
777 South Figueroa Street
Los Angeles, California 90017

Garrett W. Wotkyns
Schneider Wallace Cottrell Brayton
Konecky, LLP
7702 E. Doubletree Ranch Road, Ste 300
Scottsdale, Arizona 85258

Joshua G. Konecky
Schneider Wallace Cottrell Brayton
Konecky, LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104

Charles S. Siegel
Waters & Kraus, LLP
3219 McKinney Avenue
Dallas, Texas 75204

Ingrid Evans
Waters & Kraus, LLP
601 Van Ness, Suite 2080
San Francisco, California 94102

William M. Sweetnam
Sweetnam, LLC
5 Revere Drive, Suite 200
Northbrook, Illinois 60062

Elizabeth J. Cabraser
Lief, Cabraser, Heimann &
Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111

Carlos A. González
VAUGHAN & EVANS, LLC
*Attorneys for Plaintiffs-Appellees*

886646.4

# EXHIBIT A

## Exhibit A

### Diagram Of The Types Of Diversity Jurisdiction
### 28 U.S.C. § 1332



# EXHIBIT B

Westlaw.

--- F.3d ----, 2010 WL 2803093 (C.A.11 (Ga.))
**(Cite as: 2010 WL 2803093 (C.A.11 (Ga.)))**

Only the Westlaw citation is currently available.

United States Court of Appeals,
Eleventh Circuit.
Renato CAPPUCCITTI, on behalf of himself and all
others similarly situated, Plaintiff-Appellee,
v.
DIRECTV, INC., a California Corporation, Defen-
dant-Appellant.
**No. 09-14107.**

July 19, 2010.

**Background:** Subscribers brought action under the
Class Action Fairness Act (CAFA) against cable
television provider, seeking damages and declaratory
and injunctive relief, and alleging that provider im-
properly charged its subscribers for canceling their
subscriptions prior to subscriptions' expiration. The
United States District Court for the Northern District
of Georgia, Charles A. Pannell, Jr., J., Doc. No. 09-
00627-CV-CAP-1, denied provider's motion to com-
pel arbitration, and dismissed subscribers' claims for
damages. Provider appealed denial of its motion to
compel arbitration.

**Holding:** The Court of Appeals, Tjoflat, Circuit
Judge, held that as matter of apparent first impres-
sion, District Court lacked jurisdiction over original
CAFA action since subscribers failed to allege indi-
vidual amount in controversy over $75,000 for at
least one class member.

Vacated and remanded with instruction.

West Headnotes

**[1] Alternative Dispute Resolution 25T ☞213(5)**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(D) Performance, Breach, Enforcement,
and Contest
            25Tk204 Remedies and Proceedings for
Enforcement in General
                25Tk213 Review
                    25Tk213(5) k. Scope and Standards

of Review. Most Cited Cases
The Court of Appeals reviews de novo a district
court's denial of a motion to compel arbitration.

**[2] Federal Courts 170B ☞288**

170B Federal Courts
    170BIV Citizenship, Residence or Character of
Parties, Jurisdiction Dependent on
        170BIV(B) Controversies Between Citizens
of Different States
            170Bk286 Coplaintiffs and Codefendants
                170Bk288 k. Class and Derivative Ac-
tions; Interpleader. Most Cited Cases

**Federal Courts 170B ☞346**

170B Federal Courts
    170BV Amount or Value in Controversy Affect-
ing Jurisdiction
        170Bk344 Aggregation or Joinder of Claims
or Demands
            170Bk346 k. Representative or Class Ac-
tions. Most Cited Cases
The Class Action Fairness Act (CAFA) provides fed-
eral courts with original jurisdiction over class ac-
tions in which the amount in controversy exceeds
$5,000,000 and there is minimal diversity, i.e., at
least one plaintiff and one defendant are from differ-
ent states. 28 U.S.C.A. § 1332(d).

**[3] Removal of Cases 334 ☞2**

334 Removal of Cases
    334I Power to Remove and Right of Removal in
General
        334k2 k. Constitutional and Statutory Provi-
sions. Most Cited Cases
The Class Action Fairness Act (CAFA) simplifies the
removal of state court class actions to federal court
by establishing only minimal requirements for re-
moval while preserving the traditional rule that the
party seeking to remove the case to federal court
bears the burden of establishing federal jurisdiction.
28 U.S.C.A. § 1332(d)(11).

**[4] Federal Courts 170B ☞356**

--- F.3d ----, 2010 WL 2803093 (C.A.11 (Ga.))
**(Cite as: 2010 WL 2803093 (C.A.11 (Ga.)))**

170B Federal Courts
   170BV Amount or Value in Controversy Affecting Jurisdiction
      170Bk355 Sufficiency of Allegations
        170Bk356 k. Particular Cases. Most Cited Cases
In a Class Action Fairness Act (CAFA) action originally filed in federal court, at least one of the plaintiffs must allege an amount in controversy that satisfies the current congressional requirement for diversity jurisdiction. 28 U.S.C.A. §§ 1332(a), 1332(d)(2).

**[5] Federal Courts 170B ☞5**

170B Federal Courts
   170BI Jurisdiction and Powers in General
      170BI(A) In General
        170Bk3 Jurisdiction in General; Nature and Source
          170Bk5 k. Limited Jurisdiction; Dependent on Constitution or Statutes. Most Cited Cases
Federal courts are tribunals of limited jurisdiction whose power to hear cases must be authorized by the Constitution and by Congress.

**[6] Federal Courts 170B ☞313**

170B Federal Courts
   170BIV Citizenship, Residence or Character of Parties, Jurisdiction Dependent on
      170BIV(C) Pleading
        170Bk312 Sufficiency of Allegations
          170Bk313 k. Particular Cases. Most Cited Cases
Although named plaintiff did not specifically allege that class of cable television subscribers consisted of more than 100 plaintiffs, as required to bring action in federal court under Class Action Fairness Act (CAFA), such was the necessary implication from range of individual damages he alleged, $175 to $480 in early cancellation fees per plaintiff, and alleged amount in controversy of $5,000,000. 28 U.S.C.A. § 1332(d)(2).

**[7] Federal Courts 170B ☞356**

170B Federal Courts
   170BV Amount or Value in Controversy Affect-

ing Jurisdiction
      170Bk355 Sufficiency of Allegations
        170Bk356 k. Particular Cases. Most Cited Cases
District court lacked jurisdiction over Class Action Fairness Act (CAFA) action brought by cable television subscribers as original action in federal court, where subscribers failed to allege an individual amount in controversy over $75,000 for at least one class member, and instead alleged that maximum penalty suffered by any individual plaintiff for early cancellation of subscription was $480. 28 U.S.C.A. § 1332(a), (d)(2).

Matthew Dexter, Richardson, Alston & Bird, Atlnata, GA, Melissa D. Ingalls, Robyn E. Bladow, Kirkland & Ellis, LLP, Los Angeles, CA, for Defendant-Appellant.

Carlos A. Gonzalez, Vaughan & Evans, LLC, Cartersville, GA, Deanna D. Dailey, Sprenger & Lang, PLLC, Charles Stein Siegel, Waters and Kraus, LLP, Dallas, TX, Kristen E. Law, Lieff Cabraser Heimann Bernstein, San Francisco, CA, for Plaintiff-Appellee.

Appeal from the United States District Court for the Northern District of Georgia.

Before TJOFLAT, WILSON and EBEL,[FN*] Circuit Judges.

TJOFLAT, Circuit Judge:

I.

**\*1** This is a class action brought under the provisions of the Class Action Fairness Act of 2005 ("CAFA"), Pub.L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.).[FN1] Renato Cappuccitti and David Ward (together "Cappuccitti"), citizens of Georgia, have sued DirecTV, Inc., a California corporation ("DirecTV"), seeking the recovery, on behalf of themselves and similarly situated DirecTV subscribers in Georgia, of the fees DirecTV charged its subscribers for cancelling their subscriptions prior to the subscriptions' expiration. The fees ranged from $175 to $480. Cappuccitti asserts that the fees are proscribed by Georgia common law and seeks damages for himself and the class in excess of $5,000,000.[FN2]

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2010 WL 2803093 (C.A.11 (Ga.))
**(Cite as: 2010 WL 2803093 (C.A.11 (Ga.)))**

The subscriber agreements between Cappuccitti and the members of his class and DirecTV contain arbitration and class action waiver provisions. In responding to Cappuccitti's complaint, DirecTV moved the district court to compel Cappuccitti to submit to arbitration and, alternatively, to dismiss his claims for damages under Federal Rule of Civil Procedure 12(b)(6). The court denied the motion to compel arbitration,[FN3] but granted the motion to dismiss Cappuccitti's claims for damages for failure to state a claim.[FN4] DirecTV now appeals the district court's denial of its motion to compel arbitration.[FN5] We hold that the district court lacked jurisdiction to entertain the complaint, vacate its order, and remand with instructions to dismiss the case.

II.

[1] We review *de novo* a district court's denial of a motion to compel arbitration. *Becker v. Davis,* 491 F.3d 1292, 1297 (11th Cir.2007). We begin, as we always must, by considering whether the district court possessed subject matter jurisdiction over the action. *See, e.g., Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 93-95, 118 S.Ct. 1003, 1012-13, 140 L.Ed.2d 210 (1998) (explaining "[t]he requirement that jurisdiction be established as a threshold matter"). In doing so, we conclude that subject matter jurisdiction under CAFA was absent from the moment Cappuccitti brought this case.

III.

Congress enacted CAFA in 2005 with an eye toward curbing "abuses of the class action device that have (A) harmed class members with legitimate claims and defendants that have acted responsibly; (B) adversely affected interstate commerce; and (C) undermined public respect for our judicial system." Pub.L. No. 109-2, § 2(a)(2), 119 Stat. 4, 4 (2005). In particular, Congress perceived that state courts were overly friendly toward class certification, provided insufficient notice to class members, and favored some plaintiffs over others in making class awards. *Id.,* 119 Stat. at 4-5. To remedy these abuses, Congress amended existing sections of the portion of the United States Code governing federal court jurisdiction to situate more class actions in federal court *ab initio* and to make it easier for defendants in a state court class action to remove the action to federal court. *See id.* § 2(b)(2), 119 Stat. at 5 (stating that

CAFA's purposes include "providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction").

[2][3] CAFA effectuated Congress's goals largely by adding a new subsection to the diversity jurisdiction statute: 28 U.S.C. § 1332(d).[FN6] This subsection provides federal courts with original jurisdiction "over class actions in which the amount in controversy exceeds $5,000,000 and there is minimal diversity (at least one plaintiff and one defendant are from different states)." *Evans v. Walter Indus., Inc.,* 449 F.3d 1159, 1163 (11th Cir.2006). The subsection defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). The new subsection also simplifies the removal of state court class actions to federal court by establishing only minimal requirements for removal, 28 U.S.C. § 1332(d)(11), while preserving "the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction." *Evans,* 449 F.3d at 1164; *see also Miedema v. Maytag Corp.,* 450 F.3d 1322, 1329 (11th Cir.2006) ("[T]he text of CAFA plainly expands federal jurisdiction over class actions and facilitates their removal.").

*2 This court has extensively interpreted CAFA's jurisdictional requirements in the removal context. *Lowery v. Ala. Power Co.,* 483 F.3d 1184 (11th Cir.2007). In *Lowery,* nine named Alabama plaintiffs brought an action in state court, on behalf of a class, against a group of corporations and fictitious entities, alleging that the defendants had polluted the air and ground water. The defendants removed the case under the "mass action" provision of CAFA, 28 U.S.C. § 1332(d)(11), asserting that § 1332(d)(11)'s jurisdictional requirements had been met. *Id.* at 1187-88. The plaintiffs moved to remand the case to state court, arguing that the defendants had not met their burden of establishing federal jurisdiction by providing evidence of the specific amount of damages the plaintiffs claimed. *Id.* at 1189. The district court ordered the case remanded, agreeing with the plaintiffs that the removing defendants bore the burden of establishing the jurisdictional amount by a preponderance of the evidence, and that the defendants did not prove that the jurisdictional mounts had been satisfied. *Id.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2010 WL 2803093 (C.A.11 (Ga.))
**(Cite as: 2010 WL 2803093 (C.A.11 (Ga.)))**

at 1192.

Reviewing the district court's decision required this court to wade through the "opaque, baroque maze of interlocking cross-references" in CAFA. *Id.* at 1198. That examination concluded that "mass actions" removable under CAFA are class actions that meet the requirements of § 1332(d)(2) through (10), the provisions of which "cover a variety of terrain": authorizing district courts to decline jurisdiction over cases with primarily intrastate impact, excepting states and state officials from jurisdiction, and providing guidance on how to treat citizenship for CAFA's purposes. *Id.* at 1199-1200. Mass actions also include several requirements applicable to class actions invoking CAFA jurisdiction, such as a $5,000,000 aggregate amount in controversy, 28 U.S.C. § 1332(d)(2), (6), and minimal diversity, *id.* § 1332(d)(2). *Lowery,* 483 F.3d at 1201. *Lowery* also concluded that a mass action requires 100 or more plaintiffs, common questions of law or fact, and that it cannot be a class action certified under Federal Rule of Civil Procedure 23. *Id.* at 1202-03.[FN7]

In this case, we face a situation different from that in the cases cited above- *Lowery, Miedema,* and *Evans*-as well as from the mine run of CAFA cases heard in federal court, because Cappuccitti initiated this case in federal court; it was not removed from state court. Such cases are relatively rare, which is not surprising given Congress's goals in enacting CAFA-to place more class actions in federal court by lifting barriers to their removal (which would result in most published CAFA cases being heard in a removal posture). We therefore now consider what jurisdictional requirements CAFA imposes on a putative class action originally filed in federal court (an "original CAFA action").[FN8]

**\*3** Two jurisdictional requirements for original CAFA actions are clear from the face of CAFA, which provides that

[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which-

(A) any member of a class of plaintiffs is a citizen of a State different from any defendant;

(B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or

(C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

28 U.S.C. § 1332(d)(2). Thus, § 1332(d)(2) provides two of the requirements for original CAFA jurisdiction: an amount in controversy over $5,000,000 (obtained by aggregating the claims of the individual class members, *id.* § 1332(d)(6)), and minimal diversity. In addition, the preceding subsection adds a third requirement, which differs from the removable mass action requirement: the class action must have been filed under Federal Rule of Civil Procedure 23.[FN9] *Id.* § 1332(d)(1)(B). Fourth and finally, since "[p]aragraphs (2) through (4) shall not apply to any class action in which ... the number of members of all proposed plaintiff classes in the aggregate is less than 100," *id.* § 1332(d)(5), a plaintiff bringing an action under CAFA must allege that there are 100 or more plaintiffs within the proposed class(es).

Thus, many of the requirements for an original CAFA action resemble those for a mass action removable under CAFA. But what of the individual class members in an original CAFA action-does at least one of them have to meet a minimum amount in controversy to maintain the action? CAFA did not alter the general diversity statute's requirement that the district court have original jurisdiction "of all civil actions where the matter in controversy exceeds the sum or value of $75,000" and is between citizens of different States. *Id.* § 1332(a). No court of appeals case of which we are aware has expressly held that at least one plaintiff must meet the § 1332(a) amount in controversy requirement to maintain an original CAFA action, and *Lowery* expressly reserved the question.[FN10] 483 F.3d at 1206 ("[W]e need not decide today whether the $75,000 provision might yet create an additional threshold requirement that the party bearing the burden of establishing the court's jurisdiction must establish at the outset, i.e., that the claims of at least one of the plaintiffs exceed $75,000."). We address this question now.

[4][5] We hold that in a CAFA action originally filed in federal court, at least one of the plaintiffs must

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2010 WL 2803093 (C.A.11 (Ga.))
**(Cite as: 2010 WL 2803093 (C.A.11 (Ga.)))**

allege an amount in controversy that satisfies the current congressional requirement for diversity jurisdiction provided in 28 U.S.C. § 1332(a). Such a conclusion is compelled by the language of § 1332 as well as the general principle that federal courts are tribunals of limited jurisdiction whose power to hear cases must be authorized by the Constitution and by Congress. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). If we held that § 1332(a)'s $75,000 requirement for an individual defendant did not apply to § 1332(d)(2) cases, we would be expanding federal court jurisdiction beyond Congress's authorization. We would essentially transform federal courts hearing originally-filed CAFA cases into small claims courts, where plaintiffs could bring five-dollar claims by alleging gargantuan class sizes to meet the $5,000,000 aggregate amount requirement. While Congress intended to expand federal jurisdiction over class actions when it enacted CAFA, surely this could not have been the result it intended.

**\*4** Nor does it require analytical acrobatics to apply § 1332(a)'s jurisdictional requirement in the CAFA class action context. While § 1332(d) may have altered § 1332(a) to require only minimal diversity in CAFA actions, *Lowery,* 483 F.3d at 1193 n. 24, there is no evidence of congressional intent in § 1332(d) to obviate § 1332(a)'s $75,000 requirement as to at least one plaintiff.[FN11] Moreover, the $75,000 requirement expressly applies in actions removed under CAFA, 28 U.S.C. § 1332(d)(11)(B)(i),[FN12] and we can think of no reason why Congress would have intended the requirement in the context of CAFA removal jurisdiction but not CAFA original jurisdiction. Holding otherwise would cause a nonsensical result: a case in which a plaintiff claimed less than $75,000 in controversy in state court could not enter federal court by removal (defeating Congress's purposes in enacting CAFA), but could, if the plaintiff chose, be brought in federal court under CAFA original jurisdiction (assuming the case met all of CAFA's other requirements). Again, we highly doubt that Congress intended this result.

[6] In this case, Cappuccitti has alleged that the matter in controversy exceeds $5,000,000, that it is a Rule 23 class action, and that more than two-thirds of the members of the proposed class are citizens of a state different from DirecTV. There is no dispute over diversity, be it minimal or complete, as DirecTV

is incorporated and its principal place of business is in California, and Cappuccitti is a Georgia resident asserting claims on behalf of a putative class of other Georgia residents. Though Cappuccitti does not specifically allege that the class consists of more than 100 plaintiffs, such is the necessary implication from the range of individual damages he alleges-$175 to $480 in early cancellation fees per plaintiff. If Cappuccitti is correct about his $5,000,000 aggregate amount in controversy allegation, there must be between 10,417 and 28,572 plaintiffs in the class.[FN13] Thus, Cappuccitti's claim satisfies most of the requirements for bringing an action under CAFA's provisions in federal court.

[7] Where Cappuccitti's claim falls short, however, is the requirement that at least one plaintiff allege an individual amount in controversy over $75,000. Nowhere in his complaint does Cappuccitti make such an allegation. Nor could he-he alleges that the maximum early cancellation penalty suffered by any individual plaintiff was $480. There is simply nothing in the complaint to satisfy this essential requirement of CAFA actions filed originally in federal court.

**\*5** Cappuccitti's complaint is not saved by the Supreme Court's decision in *Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005). In *Allapattah,* the Supreme Court considered whether the supplemental jurisdiction statute, 28 U.S.C. § 1367, enabled federal courts to exert jurisdiction over plaintiff class members who did not individually meet § 1332(a)'s amount in controversy requirement. The Supreme Court answered in the affirmative, holding that

> where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in [§ 1332(a)].

*Id.* at 549, 125 S.Ct. at 2615. This means that "[w]hen the well-pleaded complaint contains at least one claim that satisfies the amount-in-controversy requirement, and there are no other relevant jurisdictional defects, the district court, beyond all question, has original jurisdiction over that claim." *Id.* at 559,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2010 WL 2803093 (C.A.11 (Ga.))
(Cite as: 2010 WL 2803093 (C.A.11 (Ga.)))

125 S.Ct. at 2620. Here, however, Cappuccitti has not alleged even one claim that, on an individual basis, approaches the current $75,000 amount in controversy requirement. Instead, he has alleged that any given member of the proposed class suffered an early cancellation penalty of, at most, $480. There exists no basis, therefore, for exerting supplemental jurisdiction over Cappuccitti's claims under Allapattah.

Having determined that Cappuccitti lacked a basis for invoking the federal courts' subject matter jurisdiction under CAFA, our disposition of the district court's order becomes clear. Since the district court lacked subject matter jurisdiction over this case, it lacked the power to consider DirecTV's motion to compel arbitration, and the case should be dismissed. Count III, however, is still pending before the district court because it denied the motion to compel arbitration and did not dispose of that count. Accordingly, we vacate the district court's order and remand the case with the instruction that the district court dismiss it for lack of subject matter jurisdiction.

SO ORDERED.

FN* Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

FN1. The plaintiffs invoked the district court's subject matter jurisdiction under 28 U.S.C. § 1332(d)(2), which incorporates CAFA's provisions.

FN2. Cappuccitti's amended complaint (which we refer to as the complaint) claims these damages in two counts, under theories of money had and received (Count I) and unjust enrichment (Count II). The complaint also contains, in Count III, a claim for declaratory and injunctive relief, on the theory that the early cancellation fee constitutes an unenforceable penalty.

FN3. In refusing to compel arbitration, the district court reasoned that although the Federal Arbitration Act favors a policy of arbitration by making arbitration clauses enforceable in federal court, Dale v. Comcast Corp., 498 F.3d 1216, 1219 (11th Cir.2007), the arbitration clause and class action waiver

in the subscription agreements were unconscionable (and hence unenforceable) because Cappuccitti's total possible recovery was far lower than the costs he would have to pay to prevail against DirecTV, id. at 1223-24, and under Cappuccitti's Counts I and II claims, if Cappuccitti were the prevailing party, he could not recover attorney's fees.

FN4. DirecTV did not move the district court to dismiss Cappuccitti's Count III for declaratory and injunctive relief. That claim was therefore still pending when DirecTV took this appeal. In light of our determination that the district court lacked subject matter jurisdiction to entertain Cappuccitti's complaint, however, we will instruct the court to dismiss Count III following receipt of our mandate.

FN5. We have jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(B).

FN6. CAFA redesignated the then-current § 1332(d) as § 1332(e).

FN7. Lowery affirmed the district court's decision remanding the action to state court, albeit on different grounds-namely, that the removing defendants did not "meet their burden of establishing the requirements for federal jurisdiction over a mass action." 483 F.3d at 1221.

FN8. In this case, the burden rests with Cappuccitti to establish these jurisdictional requirements by a preponderance of the evidence, as he is the party seeking federal court jurisdiction.

FN9. Certification under Rule 23, or a state equivalent thereof, distinguishes a class action from a mass action removable under § 1332(d)(11). Lowery, 483 F.3d at 1202 (citing 28 U.S.C. § 1332(d)(11)(B)(i)).

FN10. We note, however, that one of our sister circuits has held that at least one plaintiff must meet the $75,000 amount in con-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2010 WL 2803093 (C.A.11 (Ga.))
**(Cite as: 2010 WL 2803093 (C.A.11 (Ga.)))**

troversy requirement in the CAFA removal context. *Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 689 (9th Cir.2006), cited in Lowery, 483 F.3d at 1206 n. 51.*

FN11. Congress's primary concern in this regard was that some courts of appeals were interpreting *Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973),* to require *each* plaintiff in a class action to demonstrate the current statutory jurisdiction requirement in diversity class actions. *See* S.Rep. No. 109-14, at 10 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 11 ("The Committee believes that requiring each plaintiff to reach the $75,000 mark makes little sense in the class action context."); *see also Allapattah Servs. v. Exxon Corp., 362 F.3d 739, 746-47 (11th Cir.2004)* (Tjoflat, J., dissenting from denial of rehearing en banc) (pointing out, prior to CAFA's enactment, the "deep and abiding" split in the federal courts of appeals over whether the supplemental jurisdiction statute, 28 U.S.C. § 1367, allowed for jurisdiction over unnamed plaintiffs who did not satisfy § 1332(a)'s amount in controversy requirement). This requirement is different in kind, however, from requiring at least one plaintiff to meet § 1332(a)'s jurisdictional minimum.

FN12. This subsection reads:

As used in subparagraph (A), the term "mass action" means any civil action (except a civil action within the scope of section 1711(2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, *except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).*

28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added). In turn, CAFA defines a "mass action" as a "class action removable under paragraphs (2) through (10) [of § 1332(d)]

if it otherwise meets the provisions of those paragraphs." *Id.* § 1332(d)(11)(A).

FN13. $480 x 10,417 = $5,000,160; $175 x 28,572 = $5,000,100.

C.A.11 (Ga.),2010.
Cappuccitti v. DirecTV, Inc.
--- F.3d ----, 2010 WL 2803093 (C.A.11 (Ga.))

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

GZJ KDKV'N''



No. 09-14107-BB

United States Court of Appeals
for the Eleventh Circuit

RENATO CAPPUCCITTI, ON BEHALF OF HIMSELF
AND ALL OTHERS SIMILARLY SITUATED

Plaintiff/Appellee,

v.

DIRECTV, INC.

Defendant/Appellant.

On Appeal From The United States District Court
For Northern District of Georgia, Atlanta Division
(Charles A. Pannell, Jr.)
Case No. 1:09-cv-00627-CAP

## PETITION FOR PANEL REHEARING OR REHEARING *EN BANC*

Matthew D. Richardson (GBN 604081)   Melissa D. Ingalls (*admitted pro hac vice*)
ALSTON & BIRD LLP   Robyn E. Bladow (*admitted pro hac vice*)
One Atlantic Center   KIRKLAND & ELLIS LLP
1201 West Peachtree Street   333 South Hope Street
Atlanta, GA 30309   Los Angeles, CA 90071
Telephone: (404) 881-4478   Telephone: (213) 680-8400
Facsimile: (404) 881-7777   Facsimile: (213) 680-8500

Attorneys for Defendant/Appellant
DIRECTV, Inc.

## CERTIFICATE OF INTERESTED PERSONS AND

## CORPORATE DISCLOSURE STATEMENT

1.     The undersigned, counsel of record for Defendant DIRECTV, Inc.,

certifies that the following is a full and complete list of all parties in this action,

including any parent corporation and any publicly held corporation that owns 10%

or more of the stock of a party:

A.     Defendant DIRECTV, Inc.;

B.     DIRECTV Enterprises, LLC is the direct parent company and

100% owner of Defendant DIRECTV, Inc.

C.     DIRECTV Holdings LLC is the direct parent company and

100% owner of DIRECTV Enterprises, LLC.

D.     The DIRECTV Group, Inc. is the direct parent company and

100% owner of DIRECTV Holdings LLC.

E.     DIRECTV, a publicly traded company and the ultimate parent

company of DIRECTV, Inc., is the direct parent company and

100% owner of The DIRECTV Group, Inc.

F.     Plaintiff Renato Cappuccitti

2.     The undersigned further certifies that the following is a full and

complete list of all other persons, associations, firms, partnerships, or corporations

having either a financial interest in or other interest which could be substantially

affected by the outcome of this particular case:

None, other than those listed in No. 1, above.

3.    The undersigned further certifies that the following is a full and complete list of all trial judges in this proceeding:

Honorable Charles A. Pannell, Jr., United States District Judge

4.    The undersigned further certifies that the following is a full and complete list of all persons serving as attorneys for DIRECTV, Inc. in this proceeding:

Matthew D. Richardson (Georgia Bar No. 604081)
ALSTON & BIRD LLP
1201 West Peachtree St.
Atlanta, GA 30309-3424
Telephone: (404) 881-4478
Facsimile: (404) 881-7777

Melissa D. Ingalls (Cal. Bar No. 174861)
Robyn E. Bladow (Cal. Bar No. 205189)
Shaun Paisley (Cal. Bar No. 244377)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

5.    The undersigned further certifies that the following is a full and complete list of all persons serving as attorneys for Cappuccitti in this proceeding:

Garrett W. Wotkyns
Joshua G. Konecky
Schneider Wallace Cottrell Brayton Konecky, LLP
180 Montgomery St., Suite 2000

San Francisco, CA 94104-4207
Telephone:  (415) 421-7100
gwotkyns@schneiderwallace.com

Kristen E. Law
Lieff Cabraser Heimann Bernstein
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
klaw@lchb.com

Charles Stein Siegel
Waters and Kraus, LLP
3219 McKinney Ave.
Dallas, TX 75204-2472
Telephone:  (214) 357-6244
siegel@waterskraus.com

Carlos A. Gonzalez
Donald C. Evans, Jr.
Tracy L. Rhodes
Vaughan & Evans, LLC
117 North Erwin Street, P.O. Box 534
Cartersville, GA 30120
Telephone:  (770) 382-4374
cag@gonzalez-law.com

William M. Sweetnam
Sweetnam LLC
5 Revere Dr., Suite 200
Northbrook, IL 60062-8000
Telephone:  (847) 498-7500
wms@sweetnamllc

Dated:  August 9, 2010

By: _Matthew D. Richardson_ with express permission
     Matthew D. Richardson

Attorneys for DIRECTV, Inc.

## RULE 35 STATEMENT

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decisions of the Supreme Court of the United States or the precedents of this circuit and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court: *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1436-37 (2010); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1263 n.3 (11th Cir. 2009); *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1327 (11th Cir. 2006); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006).

I also express a belief, based on a reasoned and studied professional judgment, that this appeal involves a question of exceptional importance: whether the panel erred when it disregarded both the express language and legislative intent of the Class Action Fairness Act ("CAFA") and grafted onto CAFA's "class action" provisions a new requirement that at least one of the class action plaintiffs have more than $75,000 at stake individually.

Dated: August 9, 2010

By: Matthew D. Richardson ~ with express permission
Matthew D. Richardson

Attorney for DIRECTV, Inc.

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF ISSUES MERITING REHEARING ........................................... 1

STATEMENT OF FACTS AND THE COURSE OF PROCEEDINGS ................. 3

ARGUMENT ....................................................................................................... 3

I.   THE PANEL MISREAD CAFA. ................................................................ 4

II.  THE PANEL IGNORED LEGISLATIVE HISTORY THAT
     REFUTES ITS INTERPRETATION OF THE STATUTE. ......................... 8

III. THE PANEL'S DECISION CONFLICTS WITH PRECEDENT
     FROM THE UNITED STATES SUPREME COURT, ITS OWN
     CIRCUIT, AND EVERY OTHER CIRCUIT. ............................................ 11

IV.  THE PANEL'S MISINTERPRETATION OF CAFA WILL CREATE
     MASS CONFUSION IN THE ELEVENTH CIRCUIT AND
     BEYOND. ............................................................................................... 13

CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Abrego Abrego v. Dow Chem. Co.,*
  443 F.3d 676 (9th Cir. 2006)........................................................................ 6

*Amoche v. Guarantee Trust Life Ins. Co.,*
  556 F.3d 41 (1st Cir. 2009)......................................................................... 13

*Birdsong v. Apple, Inc.,*
  590 F.3d 955 (9th Cir. 2009)....................................................................... 13

*Blockbuster, Inc. v. Galeno,*
  472 F.3d 53 (2d Cir. 2006)......................................................................... 13

*Brill v. Countrywide Home Loans, Inc.,*
  427 F.3d 446 (7th Cir. 2005)....................................................................... 13

*Dean v. United States,*
  129 S. Ct. 1849 (2009).............................................................................. 8

*Evans v. Walter Indus., Inc.,*
  449 F.3d 1159 (11th Cir. 2006).................................................................. 12

*Exxon Mobil Corp. v. Allapattah Servs., Inc.,*
  545 U.S. 546, 125 S. Ct. 2611 (2005)..................................................... 2, 14

*Gene & Gene LLC v. BioPay LLC,*
  541 F.3d 318 (5th Cir. 2008)....................................................................... 13

*Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.,*
  589 F.3d 917 (8th Cir. 2009)....................................................................... 13

*Kaneff v. Delaware Title Loans, Inc.,*
  587 F.3d 616 (3d Cir. 2009)....................................................................... 13

*Lowery v. Ala. Power Co.,*
  483 F.3d 1184 (11th Cir. 2007)................................................................ 6, 7

*Miedema v. Maytag Corp.,*
  450 F.3d 1322 (11th Cir. 2006).................................................................. 12

*Pretka v. Kolter City Plaza II, Inc.,*
  608 F.3d 744 (11th Cir. 2010)...................................................................... 5

*Savedoff v. Access Group, Inc.,*
  524 F.3d 754 (6th Cir. 2008)....................................................................... 13

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
  130 S. Ct. 1431 (2010) ......................................................................... 11, 12

*Shaw v. Marriott Int'l, Inc.,*
    605 F.3d 1039 (D.C. Cir. 2010) ...................................................... 13

*Strawn v. AT & T Mobility LLC,*
    530 F.3d 293 (4th Cir. 2008) ........................................................ 13

*US Fax Law Ctr., Inc. v. iHire, Inc.,*
    476 F.3d 1112 (10th Cir. 2007) ..................................................... 13

*Vega v. T-Mobile USA, Inc.,*
    564 F.3d 1256 (11th Cir. 2009) ..................................................... 12

**STATUTES**

28 U.S.C. § 1331 ................................................................................... 4

28 U.S.C. § 1332 ........................................................................... passim

28 U.S.C. § 1441(a) .............................................................................. 8

28 U.S.C. § 1711(2) .............................................................................. 6

**OTHER AUTHORITIES**

151 Cong. Rec. H723-01 (daily ed. Feb. 17, 2005) ............................... 10

Charles A. Wright & Arthur Miller,
    *Federal Practice & Procedure* § 3704 (2010) .................................... 5

Federal Judicial Center,
    *The Impact of the Class Action Fairness Act of 2005 on the*
    *Federal Courts* (Apr. 2008) ............................................................ 14

S. Rep. No. 109-14 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3 ................ 9

## STATEMENT OF ISSUES MERITING REHEARING

Under the guise of interpreting the Class Action Fairness Act ("CAFA"), codified in 28 U.S.C. § 1332(d), the panel decision in this case effectively repeals it. The decision eliminates CAFA jurisdiction over class actions unless an individual plaintiff has a claim worth more than $75,000, even if the aggregate amount in controversy exceeds CAFA's $5 million threshold. Not only does this decision invent a new jurisdictional requirement that does not exist in the statute, but it also contradicts how courts around the country—including the United States Supreme Court—have interpreted CAFA since its enactment.

The whole point of CAFA was to expand federal jurisdiction over class actions (like this one) that threaten defendants with substantial liability—*i.e.*, liability in excess of $5 million. Because CAFA defined federal jurisdiction in terms of a defendant's *aggregate* liability to a class, the size of any particular class member's claim is immaterial. Under the plain language of CAFA, a federal court has jurisdiction over a putative class action in which "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs" and there is at least minimal diversity of citizenship between the parties, § 1332(d)(2), regardless of whether the case is in federal court in the first instance or removed from state court. Contrary to the panel's conclusion, CAFA's jurisdictional provision for class actions (set forth in § 1332(d)(2)) does *not* incorporate the

-1-

general amount-in-controversy requirement for diversity jurisdiction (set forth in

§ 1332(a)).  If it did, then CAFA would largely be a nullity, since federal courts

could exercise jurisdiction under the general diversity statute over an individual

claim worth more than $75,000, and then exercise supplemental jurisdiction over

claims worth less than that amount.  *See Exxon Mobil Corp. v. Allapattah Servs.,

Inc.*, 545 U.S. 546, 549, 125 S. Ct. 2611, 2615 (2005).

The panel's mistake stemmed primarily from its focus on the distinct CAFA

jurisdictional section for *mass* actions (§ 1332(d)(11)), which—unlike the CAFA

jurisdictional provision for *class* actions (§ 1332(d)(2))—*does* incorporate the

amount-in-controversy requirement of § 1332(a).  *See* 28 U.S.C.

§ 1332(d)(11)(B)(i).  A mass action, however, is not the same thing as a class

action.  To the contrary, a "mass action" under CAFA is an action that is not filed

or certified as a class action, but "in which monetary relief claims of 100 or more

persons are proposed to be tried jointly."  28 U.S.C. §§ 1332(d)(11)(B), (C).

The upshot of this Court's ruling is that this Circuit is now the only Circuit

in the Nation in which a class action that otherwise meets CAFA's requirements

must be remanded to state court or dismissed if no individual plaintiff has a claim

worth more than $75,000.  Because the panel clearly erred on an important issue of

federal law, this Court should grant rehearing.

## STATEMENT OF FACTS AND THE COURSE OF PROCEEDINGS

This is a putative class action challenging DIRECTV's assessment of early cancellation fees when customers choose to cancel service before the end of an agreed-upon programming term.  The named plaintiff, Renato Cappuccitti, filed this lawsuit in the U.S. District Court for the Northern District of Georgia, alleging federal jurisdiction under CAFA because Cappuccitti is a Georgia citizen asserting claims on behalf of a putative class of more than 100 other Georgia citizens, and the amount in controversy exceeds $5 million in the aggregate.

DIRECTV did not dispute federal jurisdiction under CAFA, but responded to the complaint by moving to compel arbitration under its agreement with Cappuccitti.  The district court (Pannell, J.) denied the motion on the ground that the arbitration clause was unconscionable.  DIRECTV appealed that decision.

The panel, however, did not reach the merits of DIRECTV's appeal.  Rather, without requesting briefing or argument from the parties, the panel *sua sponte* decided that "subject matter jurisdiction under CAFA was absent from the moment Cappuccitti brought this case."  Panel Op. 4.  This petition follows.

## ARGUMENT

The panel decision all but eliminates CAFA jurisdiction over class actions in this Circuit by reading a new requirement into CAFA that does not exist.  According to the panel, a district court cannot exercise jurisdiction over a class

action under CAFA unless an individual plaintiff has a claim worth more than $75,000, regardless of whether the aggregate amount in controversy exceeds CAFA's $5 million threshold. That requirement is simply not in the statute.

The panel here made two critical errors. First, the panel confused CAFA's *class* action provisions, which contain no $75,000 requirement, with CAFA's distinct *mass* action provisions, which do contain such a requirement. Second, the panel declared that Congress "surely" could not have intended to confer federal jurisdiction over an aggregation of small claims amounting to more than $5 million. The panel erred on both grounds, and rehearing is warranted to correct that manifest and far-reaching error.

## I.    THE PANEL MISREAD CAFA.

The statute on its face resolves the question presented here. Just as federal courts "shall" have jurisdiction over federal question cases under 28 U.S.C. § 1331 and "shall" have jurisdiction over regular diversity cases under § 1332(a), CAFA provides that courts "shall" have jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which [there is minimal diversity]." 28 U.S.C. § 1332(d)(2). In addition, for a court to exercise CAFA jurisdiction, the putative class must include at least 100 members. *See id.* § 1332(d)(5)(B). To determine whether the $5,000,000 amount in controversy is met, "the claims of the individual

class members *shall be aggregated . . . .*" *Id.* § 1332(d)(6) (emphasis added).

CAFA creates no minimum amount in controversy for any individual claim, and

does not incorporate or cross-reference the individual amount-in-controversy

requirement set forth in § 1332(a). *See* Charles A. Wright & Arthur Miller,

*Federal Practice & Procedure* § 3704 (2010) (CAFA "extends federal subject

matter jurisdiction to class actions when there is minimal diversity and the total

amount in controversy exceeds $5,000,000, exclusive of interest and costs, and

provides for aggregation *even if no individual class member asserts a claim that

exceeds $75,000*") (emphasis added).

The panel did not dispute that CAFA's jurisdictional requirements were

satisfied here, but proceeded to pose what it perceived to be an unresolved

question: "But what of the individual class members in an original CAFA action—

does at least one of them have to meet a minimum amount in controversy to

maintain the action?" Panel Op. 9. Ignoring this Court's admonition against

reading language into statutory provisions "where it does not exist," and against

trying to "cut and paste language from one part of [a statute] into another part,"

*Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 763 (11th Cir. 2010), the panel

did just that. With no $75,000 requirement for CAFA jurisdiction over class

actions on the face of the statute, the panel plucked the $75,000 individual amount-

in-controversy requirement from § 1332(a) and plopped it into § 1332(d)(2). *See*

Panel Op. 9-10.

At the root of the panel's erroneous decision is a failure to recognize the statute's distinction between "class actions" and "mass actions". Sections 1332(d)(2) through (10) are specific to *class* actions, meaning "civil action[s] filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule . . . ." 28 U.S.C. § 1332(d)(1)(B). Section 1332(d)(11), in sharp contrast, addresses *mass* actions, which are defined as "civil action[s] (except a civil action within the scope of section 1711(2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." *Id.* § 1332(d)(11)(B)(i). The "civil action[s] within the scope of Section 1711(2)" that are excepted from the mass action provisions are Rule 23 class actions. *See id.* § 1711(2). Subsection (d)(11) imposes additional requirements for jurisdiction over mass actions that do not apply to class actions, including that "jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements [$75,000] under subsection (a)." *Id.* § 1332(d)(11)(B)(i).

As the panel acknowledged, this case was filed as a putative *class* action. *See* Panel Op. 2 n.1; *cf. Lowery v. Ala. Power Co.*, 483 F.3d 1184 (11th Cir. 2007) (analyzing removal of *mass* action lawsuit under subsection (d)(11)); *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006) (same). Accordingly,

-6-

subsection (d)(11), which relates only to mass actions, does not apply.

Nevertheless, the panel proceeded to rely heavily on this mass action-only

subsection, apparently believing that class actions and mass actions are

interchangeable terms. *See, e.g.,* Panel Op. 5 (citing *mass action* provisions of

subsection (d)(11) for the proposition that CAFA "simplifies the removal of state

court *class actions* to federal court") (emphasis added). Laboring under this

misapprehension, the panel misconstrued subsection (d)(2) as dealing only with

original, not removal, jurisdiction over class actions, and viewed (d)(11) as its

corollary, addressing removal jurisdiction. The panel then cited subsection (d)(11)

for the proposition that "the $75,000 requirement expressly applies in actions

removed under CAFA." Panel Op. 10-11. From that faulty premise, the panel

reasoned that because the $75,000 requirement applies to CAFA removal, it only

makes sense that a $75,000 requirement should also apply where a plaintiff

originally invokes CAFA jurisdiction over a class action. *Id.* at 11.[1]

The panel headed down this rabbit hole based on a fundamental

---

[1] Incidentally, the Panel's reliance on the mass action provision fails on its own terms. Subsection (d)(11) provides the court with jurisdiction *only* over those plaintiffs in a mass action with $75,000 at stake; it does not provide for jurisdiction over *all* plaintiffs on the basis that *at least one* plaintiff has more than $75,000 at stake. *See Lowery,* 483 F.3d at 1206. The Panel's "interpretation" that at least one plaintiff have $75,000 in controversy (rather than all plaintiffs or all class members) for the court to exercise jurisdiction over a class action is thus completely unmoored from any statutory language.

misunderstanding of subsections (d)(2) and (d)(11).  Subsection (d)(2) covers *both*

original *and* removal jurisdiction over class actions under CAFA.  *See* 28 U.S.C.

§ 1332(d)(2) (providing for original jurisdiction over class actions); *id.* § 1441(a)

(providing that defendant may remove "any civil action brought in a State court of

which the district courts of the United States have original jurisdiction").  If the

distinct mass-action jurisdictional provision, § 1332(d)(11), has any relevance at

all to the analysis, it is only to prove that an individual $75,000 amount-in-

controversy requirement *cannot* properly be read into subsection (d)(2).  The fact

that Section 1332(a)'s $75,000 threshold is *not* included in the class action

provisions of Section 1332(d)(2), but *is* expressly incorporated in the mass action

provisions of 1332(d)(11), only underscores that no individual $75,000

requirement exists for class action jurisdiction under CAFA.  *See Dean v. United*

*States*, 129 S. Ct. 1849, 1854 (2009) ("Where Congress includes particular

language in one section of a statute but omits it in another section of the same Act,

it is generally presumed that Congress acts intentionally and purposely in the

disparate inclusion or exclusion.") (citation and internal quotation omitted); *but cf.*

Panel Op. 10 (there is "no evidence of congressional intent in § 1332(d) to obviate

§ 1332(a)'s $75,000 requirement as to at least one plaintiff").

## II.    THE PANEL IGNORED LEGISLATIVE HISTORY THAT REFUTES ITS INTERPRETATION OF THE STATUTE.

The legislative history only buttresses CAFA's plain language.  Indeed, the

legislative history flatly contradicts the panel's assertion that applying § 1332(d)(2) as written would "expand[] federal court jurisdiction beyond Congress's authorization," and "essentially transform federal courts hearing originally-filed CAFA cases into small claims courts, where plaintiffs could bring five-dollar claims by alleging gargantuan class sizes to meet the $5,000,000 aggregate amount requirement." Panel Op. 10; *see also id.* ("While Congress intended to expand federal jurisdiction over class actions when it enacted CAFA, surely this could not have been the result it intended.").

Had the panel examined the legislative history, it would have seen that Congress intended *exactly* this result when it enacted CAFA. Congress concluded that "the federal courts are the appropriate forum to decide most interstate class actions because these cases usually involve large amounts of money and many plaintiffs, and have significant implications for interstate commerce and national policy." S. Rep. No. 109-14, at 26-27 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 27. In relaxing the requirements for federal jurisdiction over class actions, Congress understood that it was opening the door to the adjudication of actions where, when viewed from an individual plaintiff's perspective, small amounts were at stake. *See id.* at 33 (discussing the class action abuses CAFA was intended to cure and recognizing that "these suits often involve numerous plaintiffs, each of whom has only a small financial stake in the litigation"). But given the overall

-9-

high stakes of a "gargantuan" class action of five-dollar claims, Congress

determined that such disputes were at least as worthy of federal court jurisdiction

as a number of cases that made it into federal court under then-existing rules:

> [C]lass action complaints often include a provision stating that no
> class member will seek more than $75,000 in relief . . . . This leads to
> the nonsensical result under which a citizen can bring a 'federal case'
> by claiming $75,001 in damages for a simple slip-and-fall case against
> a party from another state, while a class action involving 25 million
> people living in all fifty states and alleging claims against a
> manufacturer that are collectively worth $15 billion must usually be
> heard in state court (because each individual class member's claim is
> for less than $75,000).

*Id.* at 12. Indeed, in discussing the infrequency with which class actions ended up

in federal court before CAFA under Section 1332(a) diversity jurisdiction, the

Senate Committee Report noted that some Circuits had permitted courts to exercise

diversity jurisdiction over class actions so long as one or more named plaintiffs in

a class action had claims exceeding $75,000. *Id.* at 10 n.29. That is the very same

amount-in-controversy standard that the panel read into CAFA here. Making clear

that the panel's reading is not what Congress intended, the Senate Committee

explained that, under that old rule, "relatively few class actions find their way into

federal court because plaintiffs offer named plaintiffs who do not have $75,000

claims." *Id.*; *see also* 151 Cong. Rec. H723-01, 729 (daily ed. Feb. 17, 2005)

(statement of Rep. Sensenbrenner, sponsor of CAFA) (stating that whereas, pre-

CAFA, federal courts refused jurisdiction over class actions where injunctive relief

sought would provide "substantially less value [than $75,000] to each plaintiff",

CAFA's aggregation rules made that concern "no longer relevant").

## III.   THE PANEL'S DECISION CONFLICTS WITH PRECEDENT FROM THE UNITED STATES SUPREME COURT, ITS OWN CIRCUIT, AND EVERY OTHER CIRCUIT.

The panel acknowledged that "[n]o court of appeals case of which we are

aware has expressly held that at least one plaintiff must meet the § 1332(a) amount

in controversy requirement to maintain an original CAFA action." Panel Op. 9.

That should have been a red flag, given that CAFA has been on the books for five

years. But rather than pausing at the absence of precedent for its position, the

panel suggested that the issue remains an open one. *See id.* That is true only if one

assumes that all courts and litigants have somehow missed this fundamental issue

since the day CAFA was enacted.

Earlier this year, for example, the U.S. Supreme Court took jurisdiction over

a CAFA case filed originally in federal court in which the individual claim

amounted to roughly $500, but the aggregate claims exceeded $5 million. *See*

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1436-

37 (2010). Under the panel's ruling, *Shady Grove* should have been dismissed for

lack of subject-matter jurisdiction. The Supreme Court, however, exercised

jurisdiction over the appeal, and in doing so described CAFA as "relax[ing], for

class actions seeking at least $5 million, the rule against aggregating separate

claims for calculation of the amount in controversy." *Id.* at 1437 n.3; *see also id.* at 1473 (Ginsburg, J., dissenting) ("In CAFA, Congress opened federal-court doors to state-law-based class actions so long as there is minimal diversity, at least 100 class members, and at least $5,000,000 in controversy.").

In addition, at least three decisions of this Court have described the requirements of CAFA jurisdiction over class actions differently than the panel did here. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1263 n.3 (11th Cir. 2009) ("The CAFA provides original federal jurisdiction over any civil class action in which:  (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) the putative class includes at least 100 members; and (3) any member of the putative class of plaintiffs is a citizen of a state different from any defendant."); *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1327 (11th Cir. 2006) (providing that federal courts have original jurisdiction over class actions where the amount in controversy exceeds $5,000,000, there is minimal diversity, and the putative class consists of at least 100 members); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006) (describing CAFA's "basic requirements for removal to federal court" that the "controversy exceed[] $5,000,000 and at least one plaintiff and one defendant are from different states (the minimal diversity requirement)").

The Panel's decision to graft on the additional $75,000 amount-in-

controversy requirement conflicts with prior United States Supreme Court and

Eleventh Circuit cases, and rehearing should be granted to resolve the conflict.[2]

## IV.    THE PANEL'S MISINTERPRETATION OF CAFA WILL CREATE MASS CONFUSION IN THE ELEVENTH CIRCUIT AND BEYOND.

The panel's decision, if it stands, would in effect render CAFA a nullity in

the Eleventh Circuit.  On its face, the panel's ruling applies only to what the panel

labeled the "relatively rare" action originally filed under CAFA in federal court.

*See* Panel Op. 7.  But first, the assertion that these cases are relatively rare is

---

[2] Before the panel's decision, the federal Courts of Appeals were unanimous that only minimal diversity, a $5,000,000 amount in controversy, and a class of at least 100 members are required for the exercise of CAFA jurisdiction over class actions. Even in cases where far less than $75,000 was at stake for individual plaintiffs, no court has mentioned a separate, individual amount-in-controversy requirement. *See Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 42-43 (1st Cir. 2009) (noting CAFA's $5 million aggregate amount-in-controversy requirement, but no individual amount-in-controversy requirement, with about $200 at stake individually); *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1041 (D.C. Cir. 2010) (same, with $65 at stake individually); *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006) (same, with Blockbuster late fees at stake individually); *Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009) (same, with hundreds of dollars at stake individually); *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 298 (4th Cir. 2008) (same, with $200 at stake individually); *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 324 (5th Cir. 2008) (same, with $1,500 at stake individually); *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 759 n.5 (6th Cir. 2008) (same, with interest charged on $650 at stake individually); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 447 (7th Cir. 2005) (same, with $1,500 at stake individually); *Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 920 (8th Cir. 2009) (same, with interest on payday loans at stake individually); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 957 n.1 (9th Cir. 2009) (same, with purchase price of iPods at stake individually); *US Fax Law Ctr., Inc. v. iHire, Inc.*, 476 F.3d 1112, 1116-17 (10th Cir. 2007) (concluding that $1,500 individual statutory claims can be filed in federal court under CAFA).

And the impact of the panel's decision will extend beyond the Eleventh Circuit. Courts across the country will be faced with arguments that the panel's ruling provides a basis for reconsidering their jurisdiction. Indeed, that concern is already real. In the two-year-old California-based multidistrict litigation of which *Cappuccitti* is a part, the California district court just issued an order requesting briefing on whether the panel's ruling affects that court's jurisdiction. *See In re DIRECTV Early Cancellation Fee Mktg. & Sales Practices Litig.*, Case No. SA09-ML-2093 AG, Dkt. No. 90.

After five years in which federal courts have had a unified understanding of the elements required for CAFA jurisdiction over class actions, the panel's ruling disturbs that settled law. Because the panel's decision is plainly wrong and its effects are far-reaching, rehearing is warranted to correct the panel's error.

## CONCLUSION

For the foregoing reasons, DIRECTV respectfully requests that this Court grant panel rehearing or rehearing *en banc*.

Dated: August 9, 2010

Respectfully submitted,

By: ~~Matthew D. Richardson~~ *with express permission*
Matthew D. Richardson

Melissa D. Ingalls (*pro hac vice*)
Robyn E. Bladow (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Matthew D. Richardson
(GA Bar No. 604081)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

-15-

# CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2010, a copy of the forgoing Opening
Brief of Appellant was mailed via United States First Class Mail to the following
counsel of record:

Garrett W. Wotkyns
Joshua G. Konecky
Schneider Wallace Cottrell Brayton
Konecky, LLP
180 Montgomery St., Suite 2000
San Francisco, CA 94104-4207
Telephone: (415) 421-7100
gwotkyns@schneiderwallace.com

Kristen E. Law
Lieff Cabraser Heimann Bernstein
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
klaw@lchb.com

Charles Stein Siegel
Waters and Kraus, LLP
3219 McKinney Ave.
Dallas, TX 75204-2472
Telephone: (214) 357-6244
siegel@waterskraus.com

Carlos A. Gonzalez
Donald C. Evans, Jr.
Tracy L. Rhodes
Vaughan & Evans, LLC
117 North Erwin Street, P.O. Box 534
Cartersville, GA 30120
Telephone: (770) 382-4374
cag@gonzalez-law.com

William M. Sweetnam
Sweetnam LLC
5 Revere Dr., Suite 200
Northbrook, IL 60062-8000
Telephone: (847) 498-7500
wms@sweetnamllc

By: _Matthew D. Richardson_  *with express permission*
Matthew D. Richardson
(GA Bar No. 604081)
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-4478
Facsimile: (404) 881-7777

Attorney for Defendant DIRECTV, Inc.

# EXHIBIT A

[PUBLISH]

## IN THE UNITED STATES COURT OF APPEALS

### FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 19, 2010
JOHN LEY
CLERK

No. 09-14107

D. C. Docket No. 09-00627-CV-CAP-1

RENATO CAPPUCCITTI,
on behalf of himself and all
others similarly situated,

Plaintiff-Appellee,

versus

DIRECTV, INC.,
a California Corporation,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Georgia

(July 19, 2010)

Before TJOFLAT, WILSON and EBEL,[*] Circuit Judges.

TJOFLAT, Circuit Judge:

---

[*] Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

I.

This is a class action brought under the provisions of the Class Action

Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in

scattered sections of 28 U.S.C.).[1] Renato Cappuccitti and David Ward (together

"Cappuccitti"), citizens of Georgia, have sued DirecTV, Inc., a California

corporation ("DirecTV"), seeking the recovery, on behalf of themselves and

similarly situated DirecTV subscribers in Georgia, of the fees DirecTV charged its

subscribers for cancelling their subscriptions prior to the subscriptions' expiration.

The fees ranged from $175 to $480. Cappuccitti asserts that the fees are proscribed

by Georgia common law and seeks damages for himself and the class in excess of

$5,000,000.[2]

The subscriber agreements between Cappuccitti and the members of his

class and DirecTV contain arbitration and class action waiver provisions. In

responding to Cappuccitti's complaint, DirecTV moved the district court to compel

Cappuccitti to submit to arbitration and, alternatively, to dismiss his claims for

---

[1] The plaintiffs invoked the district court's subject matter jurisdiction under 28 U.S.C. § 1332(d)(2), which incorporates CAFA's provisions.

[2] Cappuccitti's amended complaint (which we refer to as the complaint) claims these damages in two counts, under theories of money had and received (Count I) and unjust enrichment (Count II). The complaint also contains, in Count III, a claim for declaratory and injunctive relief, on the theory that the early cancellation fee constitutes an unenforceable penalty.

damages under Federal Rule of Civil Procedure 12(b)(6).  The court denied the

motion to compel arbitration,[3] but granted the motion to dismiss Cappuccitti's

claims for damages for failure to state a claim.[4]  DirecTV now appeals the district

court's denial of its motion to compel arbitration.[5]  We hold that the district court

lacked jurisdiction to entertain the complaint, vacate its order, and remand with

instructions to dismiss the case.

<div align="center">II.</div>

We review <u>de novo</u> a district court's denial of a motion to compel

arbitration.  <u>Becker v. Davis</u>, 491 F.3d 1292, 1297 (11th Cir. 2007).  We begin, as

we always must, by considering whether the district court possessed subject matter

jurisdiction over the action.  <u>See, e.g.</u>, <u>Steel Co. v. Citizens for a Better Env't</u>, 523

U.S. 83, 93–95, 118 S. Ct. 1003, 1012–13 (1998) (explaining "[t]he requirement

---

[3] In refusing to compel arbitration, the district court reasoned that although the Federal Arbitration Act favors a policy of arbitration by making arbitration clauses enforceable in federal court, <u>Dale v. Comcast Corp.</u>, 498 F.3d 1216, 1219 (11th Cir. 2007), the arbitration clause and class action waiver in the subscription agreements were unconscionable (and hence unenforceable) because Cappuccitti's total possible recovery was far lower than the costs he would have to pay to prevail against DirecTV, <u>id.</u> at 1223–24, and under Cappuccitti's Counts I and II claims, if Cappuccitti were the prevailing party, he could not recover attorney's fees.

[4] DirecTV did not move the district court to dismiss Cappuccitti's Count III for declaratory and injunctive relief.  That claim was therefore still pending when DirecTV took this appeal.  In light of our determination that the district court lacked subject matter jurisdiction to entertain Cappuccitti's complaint, however, we will instruct the court to dismiss Count III following receipt of our mandate.

[5] We have jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(B).

<div align="center">3</div>

that jurisdiction be established as a threshold matter"). In doing so, we conclude that subject matter jurisdiction under CAFA was absent from the moment Cappuccitti brought this case.

## III.

Congress enacted CAFA in 2005 with an eye toward curbing "abuses of the class action device that have (A) harmed class members with legitimate claims and defendants that have acted responsibly; (B) adversely affected interstate commerce; and (C) undermined public respect for our judicial system." Pub. L. No. 109-2, § 2(a)(2), 119 Stat. 4, 4 (2005). In particular, Congress perceived that state courts were overly friendly toward class certification, provided insufficient notice to class members, and favored some plaintiffs over others in making class awards. Id., 119 Stat. at 4–5. To remedy these abuses, Congress amended existing sections of the portion of the United States Code governing federal court jurisdiction to situate more class actions in federal court ab initio and to make it easier for defendants in a state court class action to remove the action to federal court. See id. § 2(b)(2), 119 Stat. at 5 (stating that CAFA's purposes include "providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction").

CAFA effectuated Congress's goals largely by adding a new subsection to

4

the diversity jurisdiction statute: 28 U.S.C. § 1332(d).[6] This subsection provides

federal courts with original jurisdiction "over class actions in which the amount in

controversy exceeds $5,000,000 and there is minimal diversity (at least one

plaintiff and one defendant are from different states)." Evans v. Walter Indus.,

Inc., 449 F.3d 1159, 1163 (11th Cir. 2006). The subsection defines a "class

action" as "any civil action filed under rule 23 of the Federal Rules of Civil

Procedure or similar State statute or rule of judicial procedure authorizing an action

to be brought by 1 or more representative persons as a class action." 28 U.S.C. §

1332(d)(1)(B). The new subsection also simplifies the removal of state court class

actions to federal court by establishing only minimal requirements for removal, 28

U.S.C. § 1332(d)(11), while preserving "the traditional rule that the party seeking

to remove the case to federal court bears the burden of establishing federal

jurisdiction." Evans, 449 F.3d at 1164; see also Miedema v. Maytag Corp., 450

F.3d 1322, 1329 (11th Cir. 2006) ("[T]he text of CAFA plainly expands federal

jurisdiction over class actions and facilitates their removal.").

This court has extensively interpreted CAFA's jurisdictional requirements in

the removal context. Lowery v. Ala. Power Co., 483 F.3d 1184 (11th Cir. 2007).

In Lowery, nine named Alabama plaintiffs brought an action in state court, on

---

[6] CAFA redesignated the then-current § 1332(d) as § 1332(e).

behalf of a class, against a group of corporations and fictitious entities, alleging

that the defendants had polluted the air and ground water. The defendants removed

the case under the "mass action" provision of CAFA, 28 U.S.C. § 1332(d)(11),

asserting that § 1332(d)(11)'s jurisdictional requirements had been met. Id. at

1187–88. The plaintiffs moved to remand the case to state court, arguing that the

defendants had not met their burden of establishing federal jurisdiction by

providing evidence of the specific amount of damages the plaintiffs claimed. Id. at

1189. The district court ordered the case remanded, agreeing with the plaintiffs

that the removing defendants bore the burden of establishing the jurisdictional

amount by a preponderance of the evidence, and that the defendants did not prove

that the jurisdictional mounts had been satisfied. Id. at 1192.

Reviewing the district court's decision required this court to wade through

the "opaque, baroque maze of interlocking cross-references" in CAFA. Id. at

1198. That examination concluded that "mass actions" removable under CAFA

are class actions that meet the requirements of § 1332(d)(2) through (10), the

provisions of which "cover a variety of terrain": authorizing district courts to

decline jurisdiction over cases with primarily intrastate impact, excepting states

and state officials from jurisdiction, and providing guidance on how to treat

citizenship for CAFA's purposes. Id. at 1199–1200. Mass actions also include

6

several requirements applicable to class actions invoking CAFA jurisdiction, such as a $5,000,000 aggregate amount in controversy, 28 U.S.C. § 1332(d)(2), (6), and minimal diversity, id. § 1332(d)(2).  Lowery, 483 F.3d at 1201.  Lowery also concluded that a mass action requires 100 or more plaintiffs, common questions of law or fact, and that it cannot be a class action certified under Federal Rule of Civil Procedure 23.  Id. at 1202–03.[7]

In this case, we face a situation different from that in the cases cited above—Lowery, Miedema, and Evans—as well as from the mine run of CAFA cases heard in federal court, because Cappuccitti initiated this case in federal court; it was not removed from state court.  Such cases are relatively rare, which is not surprising given Congress's goals in enacting CAFA—to place more class actions in federal court by lifting barriers to their removal (which would result in most published CAFA cases being heard in a removal posture).  We therefore now consider what jurisdictional requirements CAFA imposes on a putative class action originally filed in federal court (an "original CAFA action").[8]

Two jurisdictional requirements for original CAFA actions are clear from

---

[7] Lowery affirmed the district court's decision remanding the action to state court, albeit on different grounds—namely, that the removing defendants did not "meet their burden of establishing the requirements for federal jurisdiction over a mass action."  483 F.3d at 1221.

[8] In this case, the burden rests with Cappuccitti to establish these jurisdictional requirements by a preponderance of the evidence, as he is the party seeking federal court jurisdiction.

7

the face of CAFA, which provides that

> [t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—
>
>> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant;
>>
>> (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or
>>
>> (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

28 U.S.C. § 1332(d)(2). Thus, § 1332(d)(2) provides two of the requirements for original CAFA jurisdiction: an amount in controversy over $5,000,000 (obtained by aggregating the claims of the individual class members, id. § 1332(d)(6)), and minimal diversity. In addition, the preceding subsection adds a third requirement, which differs from the removable mass action requirement: the class action must have been filed under Federal Rule of Civil Procedure 23.[9] Id. § 1332(d)(1)(B). Fourth and finally, since "[p]aragraphs (2) through (4) shall not apply to any class action in which . . . the number of members of all proposed plaintiff classes in the aggregate is less than 100," id. § 1332(d)(5), a plaintiff bringing an action under CAFA must allege that there are 100 or more plaintiffs within the proposed

---

[9] Certification under Rule 23, or a state equivalent thereof, distinguishes a class action from a mass action removable under § 1332(d)(11). Lowery, 483 F.3d at 1202 (citing 28 U.S.C. § 1332(d)(11)(B)(i)).

8

class(es).

Thus, many of the requirements for an original CAFA action resemble those for a mass action removable under CAFA. But what of the individual class members in an original CAFA action—does at least one of them have to meet a minimum amount in controversy to maintain the action? CAFA did not alter the general diversity statute's requirement that the district court have original jurisdiction "of all civil actions where the matter in controversy exceeds the sum or value of $75,000" and is between citizens of different States. Id. § 1332(a). No court of appeals case of which we are aware has expressly held that at least one plaintiff must meet the § 1332(a) amount in controversy requirement to maintain an original CAFA action, and Lowery expressly reserved the question.[10] 483 F.3d at 1206 ("[W]e need not decide today whether the $75,000 provision might yet create an additional threshold requirement that the party bearing the burden of establishing the court's jurisdiction must establish at the outset, i.e., that the claims of at least one of the plaintiffs exceed $75,000."). We address this question now.

We hold that in a CAFA action originally filed in federal court, at least one of the plaintiffs must allege an amount in controversy that satisfies the current

---

[10] We note, however, that one of our sister circuits has held that at least one plaintiff must meet the $75,000 amount in controversy requirement in the CAFA removal context. Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 689 (9th Cir. 2006), cited in Lowery, 483 F.3d at 1206 n.51.

congressional requirement for diversity jurisdiction provided in 28 U.S.C. §

1332(a). Such a conclusion is compelled by the language of § 1332 as well as the

general principle that federal courts are tribunals of limited jurisdiction whose

power to hear cases must be authorized by the Constitution and by Congress. See,

e.g., Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S. Ct.

1673, 1675 (1994). If we held that § 1332(a)'s $75,000 requirement for an

individual defendant did not apply to § 1332(d)(2) cases, we would be expanding

federal court jurisdiction beyond Congress's authorization. We would essentially

transform federal courts hearing originally-filed CAFA cases into small claims

courts, where plaintiffs could bring five-dollar claims by alleging gargantuan class

sizes to meet the $5,000,000 aggregate amount requirement. While Congress

intended to expand federal jurisdiction over class actions when it enacted CAFA,

surely this could not have been the result it intended.

Nor does it require analytical acrobatics to apply § 1332(a)'s jurisdictional

requirement in the CAFA class action context. While § 1332(d) may have altered

§ 1332(a) to require only minimal diversity in CAFA actions, Lowery, 483 F.3d at

1193 n.24, there is no evidence of congressional intent in § 1332(d) to obviate §

1332(a)'s $75,000 requirement as to at least one plaintiff.[11]  Moreover, the $75,000

---

[11]  Congress's primary concern in this regard was that some courts of appeals were
interpreting Zahn v. International Paper Co., 414 U.S. 291, 94 S. Ct. 505 (1973), to require each

requirement expressly applies in actions removed under CAFA, 28 U.S.C. § 1332(d)(11)(B)(i),[12] and we can think of no reason why Congress would have intended the requirement in the context of CAFA removal jurisdiction but not CAFA original jurisdiction.  Holding otherwise would cause a nonsensical result: a case in which a plaintiff claimed less than $75,000 in controversy in state court could not enter federal court by removal (defeating Congress's purposes in enacting CAFA), but could, if the plaintiff chose, be brought in federal court under CAFA original jurisdiction (assuming the case met all of CAFA's other requirements).  Again, we highly doubt that Congress intended this result.

---

plaintiff in a class action to demonstrate the current statutory jurisdiction requirement in diversity class actions.  See S. Rep. No. 109-14, at 10 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 11 ("The Committee believes that requiring each plaintiff to reach the $75,000 mark makes little sense in the class action context."); see also Allapattah Servs. v. Exxon Corp., 362 F.3d 739, 746-47 (11th Cir. 2004) (Tjoflat, J., dissenting from denial of rehearing en banc) (pointing out, prior to CAFA's enactment, the "deep and abiding" split in the federal courts of appeals over whether the supplemental jurisdiction statute, 28 U.S.C. § 1367, allowed for jurisdiction over unnamed plaintiffs who did not satisfy § 1332(a)'s amount in controversy requirement).  This requirement is different in kind, however, from requiring at least one plaintiff to meet § 1332(a)'s jurisdictional minimum.

[12]  This subsection reads:

> As used in subparagraph (A), the term "mass action" means any civil action (except a civil action within the scope of section 1711(2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).

28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added).  In turn, CAFA defines a "mass action" as a "class action removable under paragraphs (2) through (10) [of § 1332(d)] if it otherwise meets the provisions of those paragraphs."  Id. § 1332(d)(11)(A).

In this case, Cappuccitti has alleged that the matter in controversy exceeds

$5,000,000, that it is a Rule 23 class action, and that more than two-thirds of the

members of the proposed class are citizens of a state different from DirecTV.

There is no dispute over diversity, be it minimal or complete, as DirecTV is

incorporated and its principal place of business is in California, and Cappuccitti is

a Georgia resident asserting claims on behalf of a putative class of other Georgia

residents.  Though Cappuccitti does not specifically allege that the class consists of

more than 100 plaintiffs, such is the necessary implication from the range of

individual damages he alleges—$175 to $480 in early cancellation fees per

plaintiff.  If Cappuccitti is correct about his $5,000,000 aggregate amount in

controversy allegation, there must be between 10,417 and 28,572 plaintiffs in the

class.[13]  Thus, Cappuccitti's claim satisfies most of the requirements for bringing

an action under CAFA's provisions in federal court.

Where Cappuccitti's claim falls short, however, is the requirement that at

least one plaintiff allege an individual amount in controversy over $75,000.

Nowhere in his complaint does Cappuccitti make such an allegation.  Nor could

he—he alleges that the maximum early cancellation penalty suffered by any

individual plaintiff was $480.  There is simply nothing in the complaint to satisfy

---

[13] $480 x 10,417 = $5,000,160; $175 x 28,572 = $5,000,100.

12

this essential requirement of CAFA actions filed originally in federal court.

Cappuccitti's complaint is not saved by the Supreme Court's decision in

Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 125 S. Ct. 2611

(2005). In Allapattah, the Supreme Court considered whether the supplemental

jurisdiction statute, 28 U.S.C. § 1367, enabled federal courts to exert jurisdiction

over plaintiff class members who did not individually meet § 1332(a)'s amount in

controversy requirement. The Supreme Court answered in the affirmative, holding

that

> where the other elements of jurisdiction are present and at least one
> named plaintiff in the action satisfies the amount-in-controversy
> requirement, § 1367 does authorize supplemental jurisdiction over the
> claims of other plaintiffs in the same Article III case or controversy,
> even if those claims are for less than the jurisdictional amount
> specified in [§ 1332(a)].

Id. at 549, 125 S. Ct. at 2615. This means that "[w]hen the well-pleaded complaint

contains at least one claim that satisfies the amount-in-controversy requirement,

and there are no other relevant jurisdictional defects, the district court, beyond all

question, has original jurisdiction over that claim." Id. at 559, 125 S. Ct. at 2620.

Here, however, Cappuccitti has not alleged even one claim that, on an individual

basis, approaches the current $75,000 amount in controversy requirement. Instead,

he has alleged that any given member of the proposed class suffered an early

cancellation penalty of, at most, $480. There exists no basis, therefore, for exerting

supplemental jurisdiction over Cappuccitti's claims under <u>Allapattah</u>.

Having determined that Cappuccitti lacked a basis for invoking the federal courts' subject matter jurisdiction under CAFA, our disposition of the district court's order becomes clear. Since the district court lacked subject matter jurisdiction over this case, it lacked the power to consider DirecTV's motion to compel arbitration, and the case should be dismissed. Count III, however, is still pending before the district court because it denied the motion to compel arbitration and did not dispose of that count. Accordingly, we vacate the district court's order and remand the case with the instruction that the district court dismiss it for lack of subject matter jurisdiction.

SO ORDERED.

# EXHIBIT M

No. 09-14107-BB

## United States Court of Appeals
## For the Eleventh Circuit

RENATO CAPPUCCITTI, on behalf of himself and all others similarly situated,

*Plaintiff-Appellee*,

v.

DIRECTV, INC.,

*Defendant-Appellant*.

Appeal from the United States District Court for the Northern
District of Georgia, Atlanta Division, No. 1:09-cv-00627-CAP,
Hon. Charles A. Pannell, Jr., United States District Judge

## BRIEF OF THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AND CTIA—THE WIRELESS ASSOCIATION® AS *AMICI CURIAE* IN SUPPORT OF PETITION FOR REHEARING AND REHEARING EN BANC

Robin S. Conrad
Amar D. Sarwal
NATIONAL CHAMBER LITIGATION
    CENTER, INC.
1615 H Street, N.W.
Washington, D.C. 20062
(202) 463-5337

Michael F. Altschul
CTIA—THE WIRELESS ASSOCIATION®
1400 16th Street, N.W.
Washington, DC 20036
(202) 785-0081

Archis A. Parasharami
Kevin Ranlett
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
(202) 263-3000

Donald M. Falk
MAYER BROWN LLP
Two Palo Alto Square
3000 El Camino Real, Suite 300
Palo Alto, CA 94306
(650) 331-2000

*Attorneys for Amici Curiae*

*Cappuccitti v. DirecTV, Inc.*, No. 09-14107-BB

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to F.R.A.P. 26.1 and Eleventh Circuit Rule 26.1-1, set forth below is a list of the trial court judges, all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held corporation that owns 10% or more of a party's stock, and other identifiable legal entities related to a party, to the best of my knowledge:

Alston & Bird LLP

Altschul, Michael F.

Bladow, Robyn E.

Cappuccitti, Renato (plaintiff-appellee)

The Chamber of Commerce of the United States of America (*amicus curiae*)

Conrad, Robin S.

CTIA—The Wireless Association®(*amicus curiae*)

DIRECTV, Inc. (defendant-appellant)

DIRECTV Enterprises, LLC, which is the 100% owner of Defendant DIRECTV, Inc.

DIRECTV Holdings LLC, which is the 100% owner of DIRECTV Enterprises, LLC

*Cappuccitti v. DirecTV, Inc.*, No. 09-14107-BB

The DIRECTV Group, Inc., which is the 100% owner of DIRECTV Holdings LLC

DIRECTV, which is a publicly traded company (Ticker: DTV) and the 100% owner of The DIRECTV Group, Inc.

Evans, Jr., Donald C.

Falk, Donald M.

Gonzalez, Carlos A.

Ingalls, Melissa D.

Kirkland & Ellis LLP

Konecky, Joshua G.

Law, Kristen E.

Lieff Cabraser Heimann Bernstein

Mayer Brown LLP

Hon. Panell, Jr., Charles A. (N.D. Ga.)

Paisley, Shaun

Parasharami, Archis A.

Ranlett, Kevin

Richardson, Matthew D.

Rhodes, Tracy L.

Sarwal, Amar D.

*Cappuccitti v. DirecTV, Inc.*, No. 09-14107-BB

> Schneider Wallace Cottrell Brayton Konecky LLP
>
> Siegel, Charles Stein
>
> Sweetnam, William M.
>
> Sweetnam LLC
>
> Vaughan & Evans, LLC
>
> Waters and Kraus, LLP
>
> Wotkyns, Garrett W.

<div style="text-align:center">

_____

Archis A. Parasharami

</div>

Dated:  August 18, 2010

# RULE 35.5 STATEMENT

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following precedents of this circuit and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court: *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744 (11th Cir. 2010); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009); *Miedema v. Maytag Corp.*, 450 F.3d 1322 (11th Cir. 2006); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159 (11th Cir. 2006).

I also express a belief, based on a reasoned and studied professional judgment, that this appeal involves a question of exceptional importance:   whether 28 U.S.C. § 1332(d)'s grant of jurisdiction is limited to class actions in which at least one plaintiff's individual claim is for $75,000 or more.

_____

Archis A. Parasharami

Attorney for *Amici Curiae* The Chamber of Commerce of the United States of America and CTIA—The Wireless Association[®]

Dated:  August 18, 2010

i

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ...............................................................C-1

RULE 35.5 STATEMENT ................................................................... i

TABLE OF AUTHORITIES ............................................................... iii

STATEMENT OF ISSUES MERITING REHEARING EN BANC .......................1

INTEREST OF THE *AMICI CURIAE* ...................................................1

SUMMARY OF ARGUMENT ..............................................................2

ARGUMENT ...................................................................................4

I.    THE PANEL DECISION MISREADS THE CLASS ACTION
      FAIRNESS ACT AND CREATES INTRA- AND INTER-CIRCUIT
      CONFLICTS. ..........................................................................4

II.   REHEARING IS WARRANTED BECAUSE THE PANEL
      DECISION WOULD UNSETTLE MANY PENDING AND
      RESOLVED CLASS ACTIONS AND LEAD TO A FLOOD OF
      ABUSIVE AND DUPLICATIVE LITIGATION IN STATE
      COURTS. .............................................................................10

CONCLUSION ..............................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abrego Abrego v. Dow Chem. Co.*,
443 F.3d 676 (9th Cir. 2006)................................................................7

*Evans v. Walter Indus., Inc.*,
449 F.3d 1159 (11th Cir. 2006)..........................................................4

*Hoffman v. BancBoston Mortgage Corp.*,
No. CV 91-1880 (Ala. Cir. Ct., Mobile Cty.) ..................................10

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982)..........................................................................14

*Kircher v. Putnam Funds Trust*,
547 U.S. 633 (2006)..........................................................................12

*Miedema v. Maytag Corp.*,
450 F.3d 1322 (11th Cir. 2006)..........................................................4

*Pretka v. Kolter City Plaza II, Inc.*,
608 F.3d 744 (11th Cir. 2010)............................................................4

*Vega v. T-Mobile USA, Inc.*,
564 F.3d 1256 (11th Cir. 2009)..........................................................4

*Williams v. Brooks*,
996 F.2d 728 (5th Cir. 1993)............................................................12

## STATUTES AND RULES

28 U.S.C. § 1332...................................................................................5

28 U.S.C. § 1332(a) .....................................................................5, 6, 7

28 U.S.C. § 1332(d) .........................................................................5, 6

28 U.S.C. § 1332(d)(1) ........................................................................6

28 U.S.C. § 1332(d)(2) ................................................................5, 6, 7

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

28 U.S.C. § 1332(d)(3) ...............................................................................6

28 U.S.C. § 1332(d)(4) ...............................................................................6

28 U.S.C. § 1332(d)(5) ...............................................................................6

28 U.S.C. § 1332(d)(6) ...............................................................................6

28 U.S.C. § 1332(d)(7) ...............................................................................6

28 U.S.C. § 1332(d)(8) ...............................................................................6

28 U.S.C. § 1332(d)(9) ...............................................................................6

28 U.S.C. § 1332(d)(10) .............................................................................6

28 U.S.C. § 1332(d)(11) ..........................................................................6, 7

28 U.S.C. § 1332(d)(11)(B)(i)....................................................................6

28 U.S.C. § 1441(a) ....................................................................................7

28 U.S.C. § 1453(b)....................................................................................7

The Class Action Fairness Act of 2005,
    PUB. L. NO. 109-2, 119 STAT. 4 (Feb. 18, 2005)..................................*passim*

Fed. R. App. P. 29(a) .................................................................................1

Fed. R. Civ. P. 23(e) ................................................................................13

Fed. R. Civ. P. 60(b)(4).............................................................................12

**OTHER AUTHORITIES**

151 CONG. REC. E136 (daily ed. Feb. 2, 2005).........................................8

Jessie K. Kamens, *Breaking Appellate Ranks, Eleventh Circuit Requires
    $75,000 Amount in Controversy*, BNA Class Action Litigation Report,
    http://news.bna.com/clsn/CLSNWB/split_display.adp?fedfid=
    17619116&vname=clasnotallissues&fn=17619116&jd=a0c3x0w3f9
    &split=0 (last visited Aug. 17, 2010) ...............................................................4

## TABLE OF AUTHORITIES (continued)

Page(s)

Susan P. Koniak & George M. Cohen, *Under Cloak of Settlement*,
    82 VA. L. REV. 1051 (1996) ............................................................10

Emery G. Lee III & Thomas E. Willging, *The Impact of the Class Action
    Fairness Act of 2005 on the Federal Courts*, Federal Judicial Center, Apr.
    2008, http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/
    Fourth%20Interim%20Report%20Class%20Action.pdf ..................11

Victor E. Schwartz *et al.*, *Federal Courts Should Decide Interstate Class Ac-
    tions: A Call for Federal Class Action Diversity Jurisdiction Reform*, 37
    HARV. J. ON LEGIS. 483 (2000) .........................................................8

RESTATEMENT (SECOND) OF JUDGMENTS (1982) ...................................13

S. REP. NO. 109-14 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3.....................8, 9, 10

McGlinchey Stafford, *Seismic Alert: 11th Circuit Upends Existing
    Landscape of CAFA Subject Matter Jurisdiction*, CAFA Law Blog, July
    22, 2010, http://www.cafalawblog.com/-case-summaries-seismic-alert-
    11th-circuit-upends-existing-landscape-of-cafa-subject-matter-
    jurisdiction.html ................................................................................4

Adam Steinman, *Commentary on Recent CAFA Decision (Cappuccitti v.
    DirecTV)*, Civil Procedure & Federal Courts Blog, July 26, 2010, http://
    lawprofessors.typepad.com/civpro/2010/07/commentary-on-recent-cafa-
    decision-cappuccitti-v-directv.html ...................................................4

11 CHARLES ALAN WRIGHT *ET AL.*, FEDERAL PRACTICE AND PROCEDURE
    (2d ed. Supp. 2010) ...........................................................................12

14AA CHARLES ALAN WRIGHT *ET AL.*, FEDERAL PRACTICE AND PROCEDURE
    (3d ed. Supp. 2010) .............................................................................5

## STATEMENT OF ISSUES MERITING REHEARING EN BANC

Whether jurisdiction under the Class Action Fairness Act is limited to cases in which at least one plaintiff's individual claim exceeds $75,000.

## INTEREST OF THE *AMICI CURIAE*[1]

The Chamber of Commerce of the United States of America is the world's largest business federation.  It has 300,000 direct members and indirectly represents the interests of more than 3,000,000 businesses and organizations of every size and in every sector of the economy.  CTIA—THE WIRELESS ASSO-CIATION® represents all sectors of the wireless communications industry.  Its members include service providers, manufacturers, and wireless data and Internet companies.

The Chamber's and CTIA's members have an acute interest in this case because they have been or may be named as defendants in class-action lawsuits filed in state or federal courts within this Circuit.  Many such lawsuits assert state-law claims that involve far less than $75,000 in alleged damages per putative class member but that in the aggregate exceed $5 million.  As Congress recognized in enacting the Class Action Fairness Act of 2005 ("CAFA"), PUB. L. NO. 109-2, 119 STAT. 4 (Feb. 18, 2005), such class actions are prone to abuses, and those abuses have been especially pronounced in certain state courts that were "magnets" for

---

[1]     Pursuant to Fed. R. App. P. 29(a), both parties have consented to the filing of this brief.

class-action litigation.  As a partial remedy to that problem, Congress made a federal forum available to increase the likelihood that class-action litigation will proceed in a fair and appropriate manner.  Many defendants, including many Chamber and CTIA members, have removed cases to federal court in reliance on the jurisdictional provisions of CAFA.

The panel's decision casts that reliance into doubt.  The panel appears to have misconstrued CAFA as withholding federal subject matter jurisdiction in virtually all consumer class actions (and many other class actions involving state-law claims).  If rehearing is not granted, those class actions may have to be dismissed or remanded and potentially relitigated from scratch in state court.  In addition, the panel decision may prompt a torrent of abusive class actions in state courts within this Circuit—including duplicates of class actions that were resolved long ago.  Because that result is contrary to well-established law and would have grave consequences for the Chamber's and CTIA's members, the Chamber and CTIA respectfully submits this brief as *amici curiae* in support of rehearing.

## SUMMARY OF ARGUMENT

Rehearing is warranted because the panel decision appears to rest on an inadvertent misreading of CAFA's provisions that would limit federal jurisdiction to those class actions in which at least one plaintiff's state-law claims are worth more than $75,000.  The panel's interpretation of CAFA conflicts with four prior decisions of this Court and decisions of every other court of appeals.

2

Moreover, the consequences of the panel decision would be far-reaching and dire.  ***First***, a substantial majority of class actions pending in this Circuit may have to be dismissed or remanded to state court.  Each case then could be completely relitigated, as any rulings by the federal court would be void and subject to second-guessing by some of the very state courts whose lax class-action practices led Congress to enact CAFA in the first place.

***Second***, the panel decision may spawn a new breed of shakedown lawsuit.  Because many earlier judgments resolved class actions that surely cannot satisfy the panel's new amount-in-controversy requirement, opportunistic plaintiffs' lawyers could seek to resurrect these cases by filing them anew in state courts within this Circuit.  Although hundreds or thousands of these cases have been laid to rest—almost always by dismissals on the merits or settlement agreements approved by federal courts—businesses may be sued again by plaintiffs' lawyers (whether the same or different) seeking to extract a new settlement.  Although these "do over" class actions should not succeed, businesses nonetheless may be forced to expend considerable resources to defend them.

***Third***, because most consumer class actions (and many other lawsuits) would not be removable under the panel's new limitation on CAFA, state courts within this Circuit will become magnet jurisdictions for nationwide class actions.  Indeed, very few multi-state class actions filed in those courts would be remova-

3

ble—the opposite from what Congress intended.  And the very abuses that CAFA

was enacted to prevent would gain a new lease on life.

## ARGUMENT

Commentators have described the panel decision as a "bombshell" of "seis-

mic" importance that "has the class action bar reeling" and is "very hard to square

with CAFA's text and purpose."[2]  This startled reaction is justified; if allowed to

stand, the panel decision would have a catastrophic impact on class-action litiga-

tion nationwide.

## I. THE PANEL DECISION MISREADS THE CLASS ACTION FAIR-NESS ACT AND CREATES INTRA- AND INTER-CIRCUIT CON-FLICTS.

As the Petition explained, the panel decision misreads CAFA and departs

from decisions of every other Circuit and four decisions of this Court.[3]

---

[2]   Jessie K. Kamens, *Breaking Appellate Ranks, Eleventh Circuit Requires $75,000 Amount in Controversy*, BNA Class Action Litigation Report, http://news.bna.com/clsn/CLSNWB/split_display.adp?fedfid=17619116&vname= clasnotallissues&fn=17619116&jd=a0c3x0w3f9&split=0 (last visited Aug. 17, 2010); McGlinchey Stafford, *Seismic Alert: 11th Circuit Upends Existing Landscape of CAFA Subject Matter Jurisdiction*, CAFA Law Blog, July 22, 2010, http://www.cafalawblog.com/-case-summaries-seismic-alert-11th-circuit-upends-existing-landscape-of-cafa-subject-matter-jurisdiction.html;   Adam   Steinman, *Commentary on Recent CAFA Decision (Cappuccitti v. DirecTV)*, Civil Procedure & Federal Courts Blog, July 26, 2010, http://lawprofessors.typepad.com/civpro/ 2010/07/commentary-on-recent-cafa-decision-cappuccitti-v-directv.html.

[3]   *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744 (11th Cir. 2010); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009); *Miedema v. Maytag Corp.*, 450 F.3d 1322 (11th Cir. 2006); and *Evans v. Walter Indus., Inc.*, 449 F.3d 1159 (11th Cir. 2006); *see also* Pet. 13 n.2 (citing conflicting cases).

The panel appears to have inadvertently misread 28 U.S.C. § 1332, which-governs diversity jurisdiction in the federal courts.  Section 1332(a), which existed long before CAFA and governs diversity jurisdiction in ordinary civil actions, pro-vides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and there is complete diversity of citizenship of the parties. Contrary to the panel's holding, however, Section 1332(d), which was enacted as part of CAFA and confers jurisdiction over certain class actions, ***does not*** incorpo-rate Section 1332(a).  Rather, Section 1332(d) provides that "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controver-sy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which" minimal diversity exists.  28 U.S.C. § 1332(d)(2).  As the leading treatise puts it, Section 1332(d) "extends federal subject matter jurisdiction to class actions when there is minimal diversity and the total amount in controversy exceeds $5,000,000, exclusive of interest and costs, and provides for aggregation ***even if no individual class member asserts a claim that exceeds $75,000*.**"  14AA CHARLES ALAN WRIGHT *ET AL.*, FEDERAL PRACTICE AND PROCEDURE § 3704 (3d ed. Supp. 2010) (emphasis added).

The panel nonetheless concluded that "there is no evidence of congressional intent in § 1332(d) to obviate § 1332(a)'s $75,000 requirement as to at least one

plaintiff" when a class action in federal court under CAFA.  Panel Op. 10.  But Congress intended to do (and did) just that:  The general diversity provision (Section 1332(a)) and CAFA's provision governing class actions (Section 1332(d)) are independent grants of jurisdiction.  If Congress intended to limit federal jurisdiction to class actions in which at least one claim exceeds Section 1332(a)'s $75,000 threshold, Congress would have said so when listing the jurisdictional requirements for class actions in Sections 1332(d)(1)-(10).[4]  But it did not.

In fact, the only place in CAFA that mentions the $75,000 threshold is the provision addressing "mass actions," which CAFA defines as "civil action[s] * * * in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact."  28 U.S.C. § 1332(d)(11)(B)(i).  These mass actions can also be removed under CAFA, "except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a) [*i.e.*, § 1332(a)]."  *Id.*  Section 1332(d)(11) therefore imposes an additional limitation on jurisdiction over mass actions that does not apply to class actions (covered in Section 1332(d)(1)-(10)).  If Section 1332(a)'s "jurisdictional

---

[4]     Sections 1332(d)(1)-(10) define the number of putative class members required; explain when minimum diversity exists; specify that CAFA's $5 million amount-in-controversy threshold should be calculated by aggregating the claims of individual class members; carve out limited exceptions, such as for class actions involving local controversies or particular kinds of securities, or when the primary defendants are state governmental entities.

amount requirements" applied to all actions removable under CAFA, it would have been unnecessary for Congress to repeat that limitation in the mass-action provision.

The panel also reasoned that its interpretation of CAFA was necessary to treat cases under "CAFA original jurisdiction" in the same way as cases under "CAFA removal jurisdiction." Panel Op. 11.  But the panel's assumption that Section 1332(a)'s $75,000 requirement applies to CAFA removals is mistaken.  The panel apparently believed that the sole authority for CAFA removals is Section 1332(d)(11), which as noted above does indeed refer to the $75,000 "jurisdictional amount requirement" of Section 1332(a).  But Section 1332(d)(11) applies only to removal of "mass actions" and explicitly limits jurisdiction over them.  By contrast, class actions over which a federal court otherwise would have original jurisdiction under Section 1332(d)(2) may be removed under Section 1441(a), which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed" to district court. 28 U.S.C. § 1441(a); *see also id.* § 1453(b) ("A class action may be removed to a district court of the United States * * *.").[5]

Finally, the panel expressed concern that failing to limit jurisdiction under

---

[5]    The panel (Op. 9 n.10) cited *Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676 (9th Cir. 2006), for the proposition "that at least one plaintiff must meet the $75,000 amount in controversy requirement in the CAFA removal context."  But *Abrego* involved removal of a " 'mass action'," not a class action. *Id.* at 686.

CAFA to class actions in which at least one plaintiff's claims exceed $75,000 "would essentially transform federal courts hearing originally-filed CAFA cases into small claims courts, where plaintiffs could bring five-dollar claims by alleging gargantuan class sizes." Panel Op. 10. But contrary to the panel's belief, that is exactly "the result [that Congress] intended." *Id.*

Indeed, Congress enacted CAFA in response to state courts that were rubber-stamping class certifications of dubious nationwide classes. For example, before CAFA, a single "state court in rural Alabama certified almost as many class actions (thirty-five cases) as all 900 federal district courts did in a year (thirty-eight cases)." Victor E. Schwartz *et al.*, *Federal Courts Should Decide Interstate Class Actions: A Call for Federal Class Action Diversity Jurisdiction Reform*, 37 HARV. J. ON LEGIS. 483, 499 (2000). These state courts' bias against business defendants (especially out-of-state defendants) gave "class attorney[s] unbounded leverage" to force businesses "to pay ransom to class attorneys by settling—rather than litigating—frivolous lawsuits." S. REP. NO. 109-14, at 20 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 21.[6]

---

[6]    *See also* S. REP. NO. 109-14, at 3, *reprinted in* 2005 U.S.C.C.A.N. 3, 5-6 (before CAFA, "current law enables lawyers to 'game' the procedural rules and keep nationwide or multi-state class actions in state courts whose judges have reputations for readily certifying classes and approving settlements without regard to class member interests"); 151 CONG. REC. E136 (daily ed. Feb. 2, 2005) (remarks of Rep. Goodlatte) (CAFA was necessary because "some state courts routinely certify classes before the defendant is even served with a complaint and giv-

These questionable state-court class actions often involved small-dollar claims.  For example, the Senate Judiciary Committee's Report described the prototypical class action for which CAFA was intended to provide a federal forum as one "involving 25 million people living in all fifty states and alleging claims * * * that are collectively worth $15 billion."  S. REP. NO. 109-14, at 11, *reprinted at* 2005 U.S.C.C.A.N. at 12.  Yet because the average claim per class member comes out to only $600, that exemplar class action would flunk the Panel's new amount-in-controversy requirement for federal jurisdiction under CAFA.

Moreover, many of the actual cases that led to the passage of CAFA were consumer class actions in which each plaintiff's claims would have been worth far less than $75,000.  For example, car manufacturers were targeted by "a spate of class actions * * * alleging that the paint on 20-year-old vehicles was discoloring or peeling."  *Id.* at 22, *reprinted in* 2005 U.S.C.C.A.N. at 23.  Insurance companies were forced to settle class actions alleging that the practice of rounding premiums up to the nearest dollar—although required by state regulators—nevertheless violated state law.  *Id.* at 21, *reprinted in* 2005 U.S.C.C.A.N. at 22.  And in one case from a State in this Circuit that powerfully demonstrated the need for reform— because class members actually ***lost*** money from the settlement when money to pay class counsel was deducted from individual class members' accounts—the

---

en a chance to defend itself," with others "employ[ing] very lax class certification criteria, rendering virtually any controversy subject to class action treatment").

plaintiffs' claims were each worth less than $10. *Id.* at 15, *reprinted in* 2005 U.S.C.C.A.N. at 11 (discussing *Hoffman v. BancBoston Mortgage Corp.*, No. CV 91-1880 (Ala. Cir. Ct., Mobile Cty.)); *see also* Susan P. Koniak & George M. Cohen, *Under Cloak of Settlement*, 82 VA. L. REV. 1051, 1057-68 (1996) (same). Under the panel's decision, however, each of these actions would once again be mired in state court.

Rehearing is warranted because the panel decision—which is at odds with prior decisions of this Court and other circuits—would frustrate Congress's objective to provide a federal forum to class actions involving "numerous plaintiffs, each of whom has only a small financial stake in the litigation." S. REP. NO. 109-14, at 33, *reprinted in* 2005 U.S.C.C.A.N. at 32.

## II. REHEARING IS WARRANTED BECAUSE THE PANEL DECISION WOULD UNSETTLE MANY PENDING AND RESOLVED CLASS ACTIONS AND LEAD TO A FLOOD OF ABUSIVE AND DUPLICATIVE LITIGATION IN STATE COURTS.

If not withdrawn, the panel decision would have sweeping adverse effects on class-action litigation in this Circuit and may spawn a new breed of abusive lawsuit—the "do over" class action. The ripple effect of these lawsuits will be felt throughout the national economy.

To begin with, the panel decision may well result in the mass dismissal of class actions pending in district courts in this Circuit. Virtually all consumer class actions—and many other class actions, such as wage-and-hour employment class

actions—seek to aggregate state-law claims that individually are for less than $75,000.  Accordingly, they would all flunk the panel's new jurisdictional amount-in-controversy prerequisite.

The number of affected cases is staggering.  Since CAFA was enacted just over five years ago, tens of thousands of class actions have been filed in or removed to federal court.  A Federal Judicial Center study analyzing data through June 2007 put the annual number of new class actions in federal courts at between 4,000 and 5,000.  *See* Emery G. Lee III & Thomas E. Willging, *The Impact of the Class Action Fairness Act of 2005 on the Federal Courts*, Federal Judicial Center, Apr. 2008, App. B fig. 1, http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/Fourth%20Interim%20Report%20Class%20Action.pdf.   More than two-thirds of these new filings and removals were consumer and employment class actions.  *See id.*   The experience of Chamber and CTIA members suggest that the pace of new class action filings has only quickened since 2007—and consumer and employment cases are an even greater share of the total.  Moreover, the Eleventh Circuit gets a disproportionate number of these cases.   In fact, during the 26 months after CAFA was enacted, courts within this Circuit saw their class-action dockets balloon, with the third-highest increase in new cases among all circuits.  *See id.*, App. B fig. 2.

If these cases are dismissed or remanded, plaintiffs will almost certainly pur-

11

sue them in state court, refiling them if necessary. Once there, these cases would likely have to be relitigated from scratch, as plaintiffs predictably will argue that any adverse rulings made by the federal court—whether a denial of class certification or the dismissal of claims—are void because that court lacked subject-matter jurisdiction. *See Kircher v. Putnam Funds Trust*, 547 U.S. 633, 647 (2006) (noting that a state court to which a case has been remanded for lack of subject matter jurisdiction "is perfectly free to reject the remanding court's reasoning"). The suddenly multiplied expense of defending these actions may force many businesses simply to surrender and settle. And that is so even for claims that a federal court has declared to be meritless or ineligible for class certification, as there is a risk that a state court may rule differently.

Yet the risks flowing from the panel's decision are not confined only to pending cases. Even class actions that already have achieved closure—whether by settlement, dismissal, or otherwise—may be used as the vehicle to resurrect the dispute in a state-court class action. If the federal class action would not have satisfied the panel's new jurisdictional rule, plaintiffs might seek to reopen the judgment as "void" under Federal Rule of Civil Procedure 60(b)(4).[7] Enterprising

---

[7]    *See, e.g., Williams v. Brooks*, 996 F.2d 728, 730 (5th Cir. 1993) ("A party who fails to appeal a dismissal within the thirty-day period may nevertheless have the case reinstated on the ground that the judgment dismissing the case was void for lack of jurisdiction by filing a motion pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure."); 11 CHARLES ALAN WRIGHT *ET AL.*, FEDERAL PRACTICE

plaintiffs' lawyers might take an even more aggressive approach by attempting to refile previously dismissed or settled class actions in state court and contending that the prior judgments lacked *res judicata* effect because they were rendered by courts that lacked subject-matter jurisdiction.  *See* RESTATEMENT (SECOND) OF JUDGMENTS §§ 1, 17 (1982).  Still bolder plaintiffs' lawyers may seek to refile class actions that had been resolved in federal courts in other Circuits, arguing that those courts too lacked jurisdiction under this Court's reading of CAFA.

It would be extraordinarily unfair—and would lead to chaos—to allow the filing of state-court class actions that duplicate previously resolved federal class actions.  In some cases, businesses have paid the full amount of actual and perhaps even punitive damages, in accordance with a jury's verdict or federal court's final judgment.  More commonly, businesses have yielded to the hydraulic pressure to settle even meritless claims that comes from the use of the class-action device, paying millions of dollars under settlement agreements that federal courts have approved as fair to the class.  *See* Fed. R. Civ. P. 23(e).

These prior judgments should still bar duplicative class actions filed in state court.  As the Supreme Court has observed, "[a] party that has had an opportunity to litigate the question of subject-matter jurisdiction may not * * * reopen that

---

AND PROCEDURE § 2862 (2d ed. Supp. 2010) ("There is no time limit [under Rule 60(b)(4)] on an attack on a judgment as void," as when the "the court that rendered [the judgment] lacked jurisdiction of the subject matter.").

question in a collateral attack upon an adverse judgment." *Ins. Corp. of Ireland,*

*Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982).  But be-

cause the state courts' resolution of the issue is uncertain, businesses nonetheless

likely will be required to expend considerable resources in defending against these

suits.  And if these prior judgments are deemed to lack preclusive effect, they will

offer no practical defense to repeat class actions brought in state court; plaintiffs'

lawyers seeking a windfall payout—who may not have represented the plaintiffs in

the original case—will reason that a business that was forced to pay once can be

coerced to pay again, particularly if the new lawsuit is filed on more favorable turf.

In addition, the panel decision also invites a tidal wave of nationwide con-

sumer and employment class-action litigation in state courts within this Circuit.  If

even nationwide class actions against defendants from around the country cannot

be removed to federal courts in this Circuit—as would be true for most consumer

and employment class actions under the Panel's decision—the plaintiffs' bar can

be expected to flock to those jurisdictions.

The businesses targeted by these abusive lawsuits will not be the only vic-

tims, as the shock waves from these cases will be felt throughout the economy.

The potential cost to businesses of having to relitigate virtually every consumer

class action—and many others—filed or removed in this Circuit since 2005 will be

gargantuan.  And the cost of litigating and settling the new flood of nationwide

14

class actions that will be filed in state courts within this Circuit likewise will be immense.  But those burdens will not be borne by the defendant businesses alone: Instead, those expenses will likely be passed along to their customers and employees in the form of higher prices and lower wages and benefits.

In sum, rehearing is warranted because the panel's decision would have a disastrous impact on class-action litigation and give rise to a new kind of abusive lawsuit that will exact a huge toll on the national economy.

## CONCLUSION

The petition for rehearing or rehearing en banc should be granted.

Dated:  August 18, 2010                    Respectfully submitted,

_____

Robin S. Conrad                          Archis A. Parasharami
Amar D. Sarwal                           Kevin Ranlett
NATIONAL CHAMBER LITIGATION              MAYER BROWN LLP
   CENTER, INC.                          1999 K Street, N.W.
1615 H Street, N.W.                      Washington, D.C. 20006
Washington, D.C. 20062                   (202) 263-3000
(202) 463-5337
                                         Donald M. Falk
Michael F. Altschul                      MAYER BROWN LLP
CTIA—THE WIRELESS                        Two Palo Alto Square
   ASSOCIATION®                          3000 El Camino Real,
1400 16th Street, N.W.                      Suite 300
Washington, DC 20036                     Palo Alto, CA 94306
(202) 785-0081                           (650) 331-2000

*Attorneys for Amici Curiae*

15

## CERTIFICATE OF SERVICE

I hereby certify that, on August 18, 2010, I served one copy of the foregoing Brief of the Chamber of Commerce of the United States of America and CTIA—The Wireless Association® as *Amici Curiae* in Support of Petition for Rehearing and Rehearing En Banc by First Class Mail, postage prepaid, on each of the following:

Matthew D. Richardson
Alston & Bird LLP
One Atlantic Center
1201 Peachtree Street
Atlanta, GA 30309

Garret W. Wotkyns
Joshua G. Konecky
Schneider Wallace Cottrell Brayton Knoecky, LLP
180 Montgomery Street, Suite 2000
San Francisco, CA 94104-4207

Kristen E. Law
Lieff Cabraser Heimann Bernstein
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339

Charles Stein Siegel
Waters and Kraus, LLP
3219 McKinney Avenue
Dallas, TX 75204-6244

Melissa D. Ingalls
Robyn E. Bladow
Kirkland & Ellis LLP
333 South Hope Street
Los Angeles, CA 90071

Carlos A. Gonzalez
Donald C. Evans, Jr.
Tracy L. Rhodes
Vaughan & Evans, LLC
117 North Erwin Street
P.O. Box 534
Cartersville, GA 30120

William M. Sweetnam
Sweetnam LLC
5 Revere Drive, Suite 200
Northbrook, IL 60062-8000

_____
Archis A. Parasharami

Attorney for *Amici Curiae* The Chamber of Commerce of the United States of America and CTIA—The Wireless Association®

**GZJ KDKV'P "**

**MDL-2036**

**UNITED STATES JUDICIAL PANEL**
on
**MULTIDISTRICT LITIGATION**

FILED
CLERK'S OFFICE

**IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION**                                                        MDL No. 2036

**IN RE: FIFTH THIRD BANK CHECKING ACCOUNT
OVERDRAFT LITIGATION**                                                        MDL No. 2166

**ORDER**

Pleading No. 233

    **Before the entire Panel**:  Plaintiffs in the two actions listed on Schedule A, one pending in the Northern District of Illinois (*Schulte*) and the other in the Northern District of Georgia (*Willard*), move, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), to vacate the portions of the Panel's order conditionally transferring the actions to MDL No. 2036.  Fifth Third Bank, the sole defendant in *Schulte*, and Fifth Third Bancorp, the sole defendant in *Willard*, separately move for the same relief.  In addition, Fifth Third Bank moves, pursuant to 28 U.S.C. § 1407, for separate centralization (as MDL No. 2166) of *Schulte* and *Willard* in the Northern District of Illinois.

    Plaintiffs' Lead Counsel and Plaintiffs' Executive Committee in MDL No. 2036, as well as plaintiff in a Southern District of Florida action against Fifth Third Bank, oppose both the motions to vacate and Fifth Third Bank's motion for separate centralization (in other words, they believe *Schulte* and *Willard* should be transferred to MDL No. 2036).  The *Schulte* and *Willard* plaintiffs, however, support Fifth Third Bank's motion for separate centralization.

    After considering all argument of counsel, we will deny Fifth Third Bank's motion for centralization and grant the motions to vacate.  At oral argument, counsel for the *Willard* plaintiff informed the Panel that his client and the *Schulte* plaintiff had reached a settlement with Fifth Third Bank, and that the *Schulte* plaintiff had, that very day, filed with the Northern District of Illinois court a motion seeking preliminary approval of the class action settlement, publication of notice, and the setting of a final fairness hearing.  According to counsel for the *Willard* plaintiff and counsel for Fifth Third Bank, the settlement, if approved, will fully resolve the two actions currently before the Panel.  In light of these developments, we conclude that neither creation of a separate MDL nor, in the alternative, transfer of *Schulte* and *Willard* to MDL No. 2036 is presently warranted.[1]

---

[1]    In the event that the settlement is not approved or does not fully resolve these actions, nothing in this order bars either creation of such an MDL or future transfer of the actions to MDL No. 2036.

**OFFICIAL FILE COPY**

IMAGED  JUNE 3 2010

- 2 -

IT IS THEREFORE ORDERED that the motion, pursuant to 28 U.S.C. § 1407, for centralization of the two actions listed on Schedule A is denied.

IT IS FURTHER ORDERED that the Panel's conditional transfer order designated as "CTO-13" in MDL No. 2036 is vacated insofar as it relates to these actions.

PANEL ON MULTIDISTRICT LITIGATION

_____
John G. Heyburn II
Chairman

| | |
|---|---|
| Robert L. Miller, Jr. | Kathryn H. Vratil |
| David R. Hansen | W. Royal Furgeson, Jr. |
| Frank C. Damrell, Jr. | Barbara S. Jones |

**IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION**                                    MDL No. 2036

**IN RE: FIFTH THIRD BANK CHECKING ACCOUNT
OVERDRAFT LITIGATION**                                    MDL No. 2166

## SCHEDULE A

<u>Northern District of Georgia</u>

Marlene Willard v. Fifth Third Bancorp, C.A. No. 1:10-271

<u>Northern District of Illinois</u>

Shannon Schulte v. Fifth Third Bank, C.A. No. 1:09-6655

# EXHIBIT O

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SHANNON SCHULTE, on behalf of herself
and all others similarly situated,

               Plaintiff,

   -v-

FIFTH THIRD BANK,

               Defendant.

Case No. 1:09-cv-06655

The Honorable Robert M. Dow, Jr.

**OBJECTIONS OF MICHELLE KEYES, AMANDA RATLIFF, AND VERDEL RATLIFF
TO PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT**

Michelle Keyes, the named plaintiff in *Keyes v. Fifth Third Bank*, S.D. Fla. Case No. 10-cv-21283, an overlapping class action made part of Multidistrict Litigation Proceeding No. 2036, *In re Checking Account Overdraft Litigation*, assigned to the Hon. James Lawrence King (the "MDL,") as well as Amanda and Verdel Ratliff, members of the proposed settlement class, by and through their counsel, including Plaintiffs' Lead Counsel and Plaintiffs' Executive Committee appointed by Judge King to represent the interests of Fifth Third class members in the MDL, respectfully submit the following objections to the proposed settlement.

## I.    INTRODUCTION

The proposed settlement is fundamentally flawed and should not be granted preliminary approval. The Court cannot determine whether the proposed settlement is adequate, because the parties have not presented any estimate of class member damages. The proposed plan of allocation is inequitable and unfair, in that it would give many class members a windfall while leaving others undercompensated. The settlement was negotiated with insufficient discovery to enable Plaintiffs' counsel to determine the settlement value of the class' claims. Finally, the proposed claims process is unnecessary, and unduly burdensome to class members. For all these reasons, the proposed settlement is not deserving of preliminary approval, which should be denied.

## II.    NEITHER THE COURT NOR CLASS MEMBERS CAN DETERMINE THE ADEQUACY OF THE SETTLEMENT WITHOUT A RELIABLE ESTIMATE OF CLASS MEMBER DAMAGES, BUT NO SUCH ESTIMATE HAS BEEN PRESENTED

In *Reynolds v. Beneficial Nat. Bank*, 288 F. 3d 277 (7th Cir. 2002), the Seventh Circuit criticized the district court for approving a class action settlement as adequate without first requiring a reliable estimate of class member damages, which is the only yardstick against which the adequacy of a settlement can be measured:

We do not know whether the $25 million settlement that the district judge approved is a reasonable amount given the risk and likely return to the class of continued litigation; we do not have sufficient information to make a judgment on that question. What we do know is that, as in such cases as *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1124 (7th Cir.1979); *Ficalora v. Lockheed California Co.*, 751 F.2d 995, 997 (9th Cir.1985) (per curiam); *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1150-51 (11th Cir.1983), and *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1214, 1218-19 (5th Cir.1978), the judge did not give the issue of the settlement's adequacy the care that it deserved.

In finding that $25 million was an adequate settlement, the judge relied in part on an unsworn report by James Adler, an accountant who purported to estimate the damages caused by the defendants' alleged violations of law. He was not deposed or subjected to cross-examination and the judge did not discuss the adequacy of his methodology. Adler came up with a figure of $60 million, but it is unclear whether this was intended to be an estimate of the entire damages that the class might hope to recover if the case was tried and went to judgment and what legal assumptions underpinned the estimates.

\* \* \*

Although there is no proof that the settlement was actually collusive in the reverse-auction sense, the circumstances demanded closer scrutiny than the district judge gave it. He painted with too broad a brush, substituting intuition for the evidence and careful analysis that a case of this magnitude, and a settlement proposal of such questionable antecedents and circumstances, required.

\* \* \*

[T]he judge should have made a greater effort (he made none) to quantify the net expected value of continued litigation to the class, since a settlement for less than that value would not be adequate. Determining that value would require estimating the range of possible outcomes and ascribing a probability to each point on the range . . . .

A high degree of precision cannot be expected in valuing a litigation, especially regarding the estimation of the probability of particular outcomes. Still, much more could have been done here without (what is obviously to be avoided) turning the fairness hearing into a trial of the merits. For example, the judge could have

- 2 -

> insisted that the parties present evidence that would enable four
> possible outcomes to be estimated: call them high, medium, low,
> and zero. . . . Some approximate range of percentages, reflecting
> the probability of obtaining each of these outcomes in a trial (more
> likely a series of trials), might be estimated, and so a ballpark
> valuation derived.

*Id*. at 280, 282-85 (citations omitted). *See also Reynolds v. Beneficial Nat. Bank*, 260 F. Supp.

2d 680 (N.D. Ill. 2003) (opinion after remand; declining to approve settlement and disqualifying

class counsel due to attempt to settle case without first undertaking sufficient discovery to

estimate class damages); *In re Microsoft Antitrust Litig*., 185 F. Supp., 2d 519, 526-27 (D. Md.

2002) (declining to grant preliminary approval to proposed class action settlement where, as

here, the record contained insufficient "information by which to . . . reach a conclusion as to a

reasonable range of value").

In lieu of providing an estimate of the damages sustained by Fifth Third customers, the

settlement proponents argue that the amount offered in settlement is greater, on the basis of the

bank's relative assets, than a settlement of similar claims against Bank of America approved by a

California state court in *Closson v. Bank of America N.A*., Cal. Super. Ct. No. CGC 04436877.

*See* Pltfs' Mem., at 17. This "adequacy by analogy" argument is no substitute for the "effort . . .

to quantify the net expected value of continued litigation to the class" required by the Seventh

Circuit. As the *Microsoft* Court explained:

> Assessment of the adequacy of a proposed settlement requires
> evaluation both of the value of the settlement and the value of the
> claims being settled. . . . [T]he record contains sufficient
> information by which to evaluate the parties' respective
> contentions and reach a conclusion as to a reasonable range of
> value. However, as to the second factor in the equation, the parties
> have widely divergent views which, on the present record, are
> largely theoretical and have not been sufficiently tested.

185 F. Supp. 2d at 526.

Even if such an "adequacy by analogy" argument *was* legally cognizable (it is not), it

would fall apart here for the simple reason that the *Closson* settlement remains the subject of multiple, vigorously prosecuted appeals challenging its adequacy, which has not been established, and may never be.[1]  *See* Declaration of Barry Himmelstein in Support of Objections ("Himmelstein Decl."), Exh. A (copy of Appellants' Opening Brief in *Closson* appeal).

After presiding over similar litigation against Wells Fargo through summary judgment, and after issuing numerous opinions about the most significant legal issues presented by the case,[2] the Hon. Wm. H. Alsup of the Northern District of California refused to grant preliminary approval to a proposed settlement of $16 million for Wells Fargo's *California accountholders alone*, finding that "16 million is very low for a case where your expert said the damages were 200 million;" that plaintiffs had "a strong claim, not a weak claim;" that the proposed settlement was not "in the ballpark and even close to a reasonable settlement," calling it "a nonstarter in my judgment," and strongly indicating that he would not consider approving any settlement that provided class members with a recovery of less than fifty cents on the dollar.  *See* Transcript of Proceedings (May 13, 2009) (Himmelstein Decl., Exh. B) at 3:9-6:18.  Judge King, who presides over the *In re Checking Account Overdraft Litigation*, MDL No. 2036 (S.D. Fla.), similarly found that these cases have "legs," denying the bank defendants' omnibus motions to dismiss, and along with it, their principal legal defenses to liability.  *See* Order Ruling on Omnibus Motions to Dismiss (Himmelstein Decl., Exh. C).

Because this Court, not to mention class members deciding whether to exercise their opt-out rights, cannot tell whether this is a "good" or "bad" deal for the class, a grant of preliminary

---

[1] In addition, the *Schulte* plaintiffs make a false comparison in likening their case to the *Closson* case.  *Closson* was *not* a case challenging the legality of the re-ordering of debit card transactions, but rather was a false advertising case which challenged the truth of some limited, discrete advertising describing the bank's posting practices.  Thus, by its nature, *Closson* was a far more limited case.  *See* Himmelstein Decl., Exh. A.

[2] *See Gutierrez v. Wells Fargo Bank, N.A.*, 2008 WL 4279550 (N.D. Cal. Sept. 11, 2008); *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 2009 WL 1246988 (N.D. Cal. May 5, 2009); *Gutierrez v. Wells Fargo & Co.*, 2009 WL 1246689 (N.D. Cal. May 5, 2009); *Gutierrez v. Wells Fargo & Co.*, 2009 WL 1247040 (N.D. Cal. May 5, 2009); *Gutierrez v. Wells Fargo & Co.*, 2010 WL 1233810 (N.D. Cal. Mar. 26, 2010) .

approval would be improper.

### III. THE ALLOCATION OF THE SETTLEMENT PROCEEDS IS ARBITRARY AND CAPRICIOUS, RESULTING IN WINDFALLS TO SOME CLASS MEMBERS AND UNDERPAYMENTS TO OTHERS

The "[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) (citations and internal quotations omitted); *see also Great Neck Capital Appreciation Inv. Partnership, L.P. v. PricewaterhouseCoopers,* L.L.P., 212 F.R.D. 400, 410 (E.D.Wis. 2002) ("A plan of allocation of settlement proceeds in a class action must also be fair and reasonable."); *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, 2001 WL 1568856 *4 (N.D.Ill.) ("The same standards of fairness, reasonableness and adequacy that apply to the settlement apply to the Plan of Allocation."). "The court's principal obligation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund." *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F.2d 956, 964 (3d Cir.1983). Here, the proposed fund distribution is unfair and unreasonable, in that it forces class members to choose a single 45-day period in which to claim a refund overdraft charges, while proposing to release their claims for over *five years* of overdraft charges.

In pertinent part, the Settlement Agreement provides that:

> A Settlement Class Member shall specify on the Claim Form the total amount of Overdraft Fees that the Settlement Class Member incurred during any continuous forty-five (45) day period during the Settlement Class Period, which they must identify by months and year.

> Each Settlement Class Member who submitted a valid Claim Form shall receive the total amount claimed on the Claim Form.

> If the aggregate amount of submitted claims does not exceed the remainder of funds in the Escrow Account, . . . [e]ach Settlement

- 5 -

> Class Member who submitted a valid Claim Form shall receive the
> total amount claimed on the Claim Form; [i]f there are still funds
> remaining in the Escrow Account, the remainder shall be
> distributed on a pro rata basis with each Settlement Class member
> receiving up to . . . three times the amount claimed on their Claim
> Forms. [¶]  If there are still funds in the Escrow Account . . . the
> remainder of the funds . . . shall be paid out through a *cy pres*
> distribution . . . . [¶]  If the total amount of submitted claims
> exceeds the funds available in the Escrow Account . . . the funds
> remaining . . . shall be distributed to Settlement Class Members
> submitted [sic] valid Claim Forms on a pro rata basis.

Settlement Agreement ¶¶ 24, 30.

Neither the Settlement Agreement nor Plaintiffs' moving papers offer any rationale or justification for failing to allocate the settlement proceeds in proportion to the damages sustained by class members over the *entire* class period, which runs from October 21, 2004 through July 1, 2010.  The proposed single 45-day period for claiming a refund of overdraft fees is manifestly unfair and inequitable, in that a class member who paid a larger total amount of overdraft charges over the entire class period would receive less compensation than a class member who paid a *lower* total amount of overdraft fees but incurred a larger portion of the fees during a single 45-day period.  For example, a class member who incurred $1,000 in improper overdraft charges over the class period, but no more than $100 in improper overdraft charges during any 45 days within that period, would be allocated a portion of the settlement fund based on only $100 (*i.e.*, 10% of their damages), while a class member who incurred $200 in improper overdraft charges over the class period, but incurred them all within 45 days, would be allocated a portion of the settlement fund based on twice this amount ($200), even though they sustained only 20% of the other class member's damages.

While courts have tolerated differences in the treatment of class members in distribution, they have done so only "when real and cognizable differences exist" between the "likelihood of ultimate success" for different plaintiffs.  *In re Lucent Technologies, Inc., Securities Litig.*, 307

F. Supp. 2d 633, 649 (D.N.J. 2004). This type of merit-based weighting has been approved by courts where substantially different or additional claims have been asserted by certain class members and not others. *In re PaineWebber LTD Partnerships Litig.,* 171 F.R.D. 104, 133 (S.D.N.Y. 1997) (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 220 (5th Cir.1981). No such differences exist here that would justify anything other than a straight *pro rata* allocation based on the damages sustained by each class member over the *entire* class period.

This mis-allocation of settlement funds is further amplified by the treatment of any funds remaining after the initial distribution. Instead of using the "excess" funds to reimburse class members for Fifth Third overdraft charges they incurred *outside* a narrow 45-day window, the proposed settlement would use that money instead to pay *windfalls* of up to treble damages to class members on charges that have already been fully refunded as part of the initial distribution.

As the plan of allocation embodied in the proposed settlement overcompensates some class members at the expense of others, with no justification for such differential treatment, it is fatally flawed and should be rejected.

## IV.  THE PROPOSED SETTLEMENT WAS NEGOTIATED WITH INSUFFICIENT DISCOVERY

The Seventh Circuit requires a district court to consider "the stage of the proceedings and amount of discovery completed at the time of settlement" in order to determine whether the settlement is "fair, reasonable and adequate." *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996). "This factor 'captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." ' *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Products*

*Liability Litig.*, 55 F.3d 768, 813 (3d Cir. 1995)). Here, the docket reflects no formal or informal discovery, and the early stage of the proceedings suggests that none has been conducted.[3] The lack of discovery necessarily made it impossible for there to be "an adequate appreciation of the merits of the case before negotiating." *Id*. Indeed, the preliminary approval papers contain no discussion whatsoever of the merits of the case.

Nor may the failure to ascertain the merits prior to settlement be cured by the brief, 30-day period of "confirmatory discovery" provided for in the Settlement Agreement—half of which has already elapsed. *See* Settlement Agreement ¶ 37. As one court has explained, confirmatory discovery is an inadequate substitute for adversary discovery. which is meant to take place *prior* to settlement:

> In this case, no discovery occurred prior to negotiations. After a settlement was reached, confirmatory discovery was performed . . . . Confirmatory discovery, by its very nature, is not adversarial. In contrast, "pretrial negotiations and discovery must be sufficiently adversarial so that they are not 'designed to justify a settlement ... [but are] an aggressive effort to ferret out facts helpful to prosecution of the suit.'" *Martens v. Smith Barney, Inc.* 181 F.R.D. 243, 263 (S.D.N.Y.1998) (quoting *Saylor v. Lindsley*, 456 F.2d 896, 899 (2d Cir.1972)). The absence of any adversarial discovery is a negative factor in persuading the Court of the wisdom of settlement, at this time, on these terms . . . .

*Moore v. Halliburton Co.*, 2004 WL 2092019 *7 (N.D.Tex.)

Here, the adversary discovery that should have taken place *prior* to negotiation of the settlement will never occur; instead, counsel for plaintiffs will engage in a brief period of cooperative discovery intended solely to justify the settlement. Accordingly, this factor strongly counsels against a grant of preliminary approval.

---

[3] During a June 8, 2010 conference call, counsel for Objectors asked counsel for Plaintiffs and counsel for Fifth Third whether any discovery had been conducted, but they declined to respond.

## V.     THE CLAIMS PROCESS UNDULY BURDENS CLASS MEMBERS

As noted above, the proposed settlement requires class members to pour over nearly six years of bank statements hunting for the 45-day period during which they were assessed the greatest number of overdraft charges.  Because bank statements are typically issued monthly, this determination cannot be made, for any 45-day period, without examining 2-3 bank statements.  Should a class member succeed in this exercise—which many, if not most would deem not worth the trouble—Fifth Third may, in any event, "verify the information provided on Claim Forms" using "the information contained in its business records relating to the Settlement Class Members' accounts."  Settlement Agreement ¶ 26.  On request, Fifth Third will make only the last 16 months of account statements available online, although the claims period goes back to 2004.  *Id.* ¶ 25.

There is simply no excuse for forcing class members to dig up and dig through nearly six years of account statements, line them up 2-3 at a time, and attempt to determine which 45-day period yielded the greatest amount of overdraft charges, when Fifth Third could easily make that determination for each class member using the very same business records it intends to use to "verify" the claims once submitted, and deposit the appropriate amount directly into their accounts.  Instead, the proposed settlement creates a paperwork nightmare relatively few will find worth the effort, only to have their work double-checked by Fifth Third before payout in any event.  Such an unnecessary claims procedure will unnecessarily deter the filing of claims, and should be rejected.[4]  Indeed, a "claims made" settlement of similar overdraft charge litigation against Wells Fargo resulted in the payment of only 104 claims at $20 each, out of a "claims-made" settlement amount of $3,000,000.  *See* Declaration of Daniel G. Lamb, Jr. re *Smith v.*

---

[4] In addition, the proposed settlement would give class members only 45-days to complete this exercise.  *See* Settlement Agreement ¶ 23.  In light of the amount of materials that must be gathered, and the work required, this is insufficient.

*Wells Fargo Bank, N.A., et al.* Settlement (Himmelstein Decl., Exh. D) ¶¶ 12(c), 19.

## VI.   <u>CONCLUSION</u>

The Court cannot determine whether the proposed settlement is adequate, because the parties have not presented any estimate of class member damages.  The proposed plan of allocation is inequitable and unfair, in that it would give many class members a windfall while leaving others undercompensated.  The settlement was negotiated with insufficient discovery to enable Plaintiffs' counsel to determine the settlement value of the class' claims.  Finally, the proposed claims process is unncecssary, and unduly burdensome to class members.  For all these reasons, the proposed settlement is not deserving of preliminary approval, which should be denied.

Dated:  June 9, 2010

<div style="margin-left:40%">

Respectfully submitted,

_____*/s/ Timothy P. Mahoney*_____
Timothy P. Mahoney
**Hagens Berman**
1144 W. Lake Street, Suite 400
Oak Park, IL  60301
(708) 628-4961

Local Counsel

Barry R. Himmelstein
**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery Street, 29th Floor
San Francisco, CA  94111
(415) 956-1000

</div>

Bruce S. Rogow
Robert C. Gilbert
**Alters Boldt Brown Rash & Culmo, P.A.**
4141 N.E. 2nd Avenue
Miami, FL  33137
(305) 571-8550

Ruben Honik
**Golomb & Honik, P.C.**
1515 Market Street, Suite 1100
Philadelphia, PA  19102
(215) 985-9177
Robert C. Josefsberg
Victor M. Diaz, Jr.
John Gravante, III
**Podhurst Orseck, P. A.**
City National Bank Building
25 W Flagler Street, Suite 800
Miami, FL  33130-1780
(305) 358-2800

Ted E. Trief
Barbara E. Olk
**Trief & Olk**
150 E 58th Street, 34th Floor
New York, NY  10155
(212) 486-6060

E. Adam Webb
G. Franklin Lemond, Jr.
**Webb, Klase & Lemond, L.L.C.**
1900 The Exchange SE, Suite 480
Atlanta, GA 30339
(770) 444-9325

Russell W. Budd
Bruce W. Steckler
Melissa K. Hutts
Renee M. Melancon
**Baron & Budd, P.C.**
3102 Oak Lawn Ave., Suite 1100
Dallas, TX  75219
(214) 521-3605

Plaintiffs' Executive Committee in *In re Checking Account Overdraft Litigation*, MDL No. 2036 (S. D. Fla.)

Counsel for Objectors Michelle Keyes, Amanda Ratliff, and Verdel Ratliff

- 12 -

GZJ KDKV'R''

# BEFORE THE JUDICIAL PANEL ON
# MULTIDISTRICT LITIGATION

IN RE: CHECKING ACCOUNT      )
OVERDRAFT LITIGATION          )      MDL Docket No. 2036

## BRIEF IN SUPPORT OF MOTION TO VACATE
## CONDITIONAL TRANSFER ORDER (CTO-23)

      Plaintiff Harold J. Joseph, a Missouri citizen, filed the underlying action currently

pending before the Panel for transfer against two Missouri defendants in Missouri state court

raising solely Missouri state law claims. Defendants Commerce Bank, N.A. and Commerce

Bancshares, Inc. (collectively, "Commerce") seek transfer of this action to the Southern District

of Florida for inclusion in the *In re Checking Account Overdraft Litigation* matter. Transfer to a

multidistrict litigation proceeding ("MDL") is appropriate where "one or more common

questions of fact" exist and transfer "will be for the convenience of the parties and witnesses and

will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. Plaintiff's action

involves fundamental questions of law and fact not present in other cases pending before the

MDL court. Transfer of this action, involving only Missouri plaintiffs and Missouri defendants,

to the Southern District of Florida will not be convenient for either the parties or the witnesses.

Finally, forcing Plaintiff to litigate his state law case in not only a federal district court but a

federal district court located outside of the state in which the original state court action was filed

will not promote the just and efficient conduct of his action.   Plaintiff's Motion to Vacate Conditional Transfer Order (CTO-23) should be granted.

## BACKGROUND OF THE LITIGATION

Plaintiff originally filed this action in the Circuit Court of Jackson County, Missouri on June 1, 2010 and amended the petition on June 4, 2010.   Commerce removed the state action to the United States District Court for the Western District of Missouri alleging complete preemption and substantial federal question jurisdiction on July 9, 2010.   Shortly thereafter, Commerce identified Plaintiff's action as a potential "tag-along" proceeding for transfer to the *In re Checking Account Overdraft Litigation.*   Plaintiff filed a Motion to Remand this action in the Western District of Missouri on July 13, 2010 and an Opposition to Conditional Transfer Order with the Panel on July 30, 2010.   Briefing on the remand issue has been completed in the Western District of Missouri and is pending a ruling by Judge Ortie D. Smith.

## FACTUAL AND LEGAL CONTENTIONS

Plaintiff presents three solely state law causes of action against Commerce on behalf of himself and other similarly situated Missouri citizens:   (1) violation of the Missouri Merchandising Practices Act, (2) breach of contract, including the implied covenant of good faith and fair dealing and (3) unjust enrichment.   Plaintiff offers a number of alternative factual theories to support his claims including, but not limited to, re-ordering of electronic debit transactions to maximize overdraft fees, charging overdraft fees when Commerce did not have to pay out more funds than were in a customer's checking account, failing to adequately disclose overdraft polices and providing false and misleading account balance information.   While the allegations included in Plaintiff's Amended Petition admittedly have some similarity to actions currently pending in the *In re Checking Account Overdraft Litigation* important and fundamental

2

distinctions exist that significantly weigh against transfer – Plaintiff's claims involve only state law issues between non-diverse parties.  In addition, even if common questions of fact exist, transfer of this action would not be convenient to the parties or witnesses and would not promote the just and efficient conduct of the action.

**I.      Significant factual differences weigh against transfer to the MDL.**

Plaintiff's action involves factual issues significantly different than other actions currently pending before the MDL Court.  Although Plaintiff's claims involve the unfair and unjust imposition of overdraft fees, the specific overdraft policies and actions complained of by Plaintiff are unique to Commerce and are not sufficiently similar to the actions of other banks to warrant transfer to the MDL.  Plaintiff is aware of only one other action pending before the MDL Court involving Commerce, *Wolfgeher v. Commerce Bank*, Case No. 10-cv-00328-ODS.

Even assuming that the existence of factually distinct cases against other banks or the existence of a single other case pending in the MDL Court against Commerce were sufficient to raise a common question of fact under 28 U.S.C. § 1407, the nature of Plaintiff's claims and the parties to the action distinguish it from other cases pending before the MDL.  To Plaintiff's knowledge, most, if not all, of the cases currently before the MDL Court involve diverse parties, affirmative claims for violation of federal law, or both.  Plaintiff's action, on the other hand, does not assert any claim under federal law and involves only Missouri plaintiffs and defendants.  Due to the exclusively state nature of Plaintiff's action and absence of even minimal diversity, transfer to the MDL is not warranted.

**II.      Transfer would not be convenient for the parties or the witnesses.**

As noted, Plaintiff's action involves a Missouri plaintiff seeking to represent a class of Missouri citizens.  Both defendants in Plaintiff's action are also Missouri citizens with their

principal place of business located in Missouri. The parties and witnesses to this action will be located, for the most part, in Missouri. Transfer to the MDL Court in the Southern District of Florida will not only fail to provide any convenience to the parties or witnesses, it will greatly *inconvenience* the parties by requiring them to seek relief in a distant federal district. No just reason exists to require that the parties endure the additional burden of litigating their claims in the Southern District of Florida. Absent convenience to the parties and witnesses, transfer to the MDL does not meet the stated requirements under 28 U.S.C. § 1407 and the Conditional Transfer Order should be vacated.

**III.    Transfer would not promote the just and efficient conduct of Plaintiff's action.**

Section 1407 also requires that transfer to the MDL promote the just and efficient conduct of Plaintiff's action. In this situation, transfer would clearly not promote either just or efficient conduct of Plaintiff's claims. Plaintiff elected, as is his right, to file his action in Missouri state court. Plaintiff disputes Commerce's contention that this action was properly removed to the Western District of Missouri. No just reason exists to require Plaintiff to maintain his action not only in federal court, but a federal court located hundreds of miles away. None of the parties or events surrounding this action has any substantial connection to the Southern District of Florida. The existence of a single case currently before the MDL Court involving Commerce warrants, at the most, coordination of discovery by the two district courts, which can be easily accomplished without consolidation in the MDL. In addition, as discussed below, the issue of remand in Plaintiff's case is more properly determined by a federal court located in Missouri. Forcing plaintiff to seek justice under Missouri law in a distant location does not meet the just and efficient conduct requirement of Section 1407.

**IV.    The federal courts do not have jurisdiction over Plaintiff's action.**

Federal subject matter jurisdiction clearly does not exist over Plaintiff's state law claims. State court actions may be removed to federal court by a defendant only if the action could originally have been filed in federal court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "Removal based on 'federal-question jurisdiction is governed by the "well-pleaded-complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009) (quoting *Caterpillar*, 482 U.S. at 392).    There are two very narrow exceptions to the well pleaded complaint rule "allowing removal where (1) federal law completely preempts a plaintiff's state law claims or (2) an issue of federal law is a necessary and a central element of plaintiff's state law claims." *Mabe v. Golden Living Center-Bransom*, 2007 WL 3326857 (W.D. Mo., Nov. 6, 2007) (internal citations omitted).

No federal question appears on the face of Plaintiff's well pleaded complaint and neither exception warrants federal jurisdiction over plaintiff's action.  Complete preemption exists only where federal law "so completely pre-empt[s] a particular area, that any civil complaint raising this select group of claims is necessarily federal." *M. Nahas & Co., Inc. v. First Nat'l Bank of Hot Springs*, 930 F.2d 608, 612 (8th Cir. 1991) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).  The Supreme Court has applied complete preemption in only three circumstances, including national bank usury claims, which Plaintiff does not raise in his action. *Jacobs v. ABN Amro Bank N.V.*, 2004 WL 869557 at *4 (E.D.N.Y. Apr. 21, 2004).  Jurisdiction may also be found in rare cases where a complaint "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any

congressionally approved balance of federal and state responsibilities" under the substantial federal question exception *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). For this exception to apply Plaintiff's Petition must *necessarily* raise a *substantial* and disputed federal issue. "[I]f the plaintiff can support his claim with even one theory that does not call for an interpretation of federal law, his claim does not 'arise under' federal law for purposes of § 1331." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 817 (4th Cir. 2004). Plaintiff alleges numerous theories supporting his claims, a number of which undeniably do not raise any federal issue, substantial or otherwise.

A Motion for Remand on the issue of subject matter jurisdiction is currently pending in the Western District of Missouri. Allowing this issue to be resolved prior to any potential transfer to the MDL Court would promote both judicial efficiency and efficient and just resolution of Plaintiff's action. If this transferor district court does not have subject matter jurisdiction over Plaintiff's action neither would the MDL court. *Stone v. Baxter Int'l, Inc.*, 2009 WL 236116 at *2 (D. Neb., Jan. 30, 2009). Because of the interplay between state and federal law necessary in a subject matter determination under the substantial federal question doctrine, the Western District of Missouri is better suited to review this issue than the MDL Court. *See In re Insurance Brokerage Antitrust Litigation*, 2009 WL 1874085 at *4 (D.N.J., June 30, 2009) ("Undeniably, the resolution of Plaintiffs' [subject matter] jurisdictional challenges will require a court to consider and decide detailed issues of substantive Missouri state statutory and common law. . . . The Court believes that such a detailed review may best be undertaken by the court that sits in that state and more frequently applies the law that controls Plaintiff's cases.").

Plaintiff notes that the court in *Johnson v. UMB Bank, N.A. et al.*, Case No. 10-00654-CV-W-GAF, a Western District of Missouri case also involving litigation regarding checking

account overdraft fees recently denied that plaintiff's motion to remand. Plaintiff respectfully disputes that this order properly analyzed substantial federal question jurisdiction under applicable legal precedent by, among other things, failing to fully examine "necessity" under *all* theories supporting *each* of the plaintiff's claims. The *Johnson* plaintiff intends to seek appeal of that order to the Court of Appeals for the Eighth Circuit. The Panel should vacate the Conditional Transfer Order pending resolution of the subject matter jurisdiction issue by the Western District of Missouri and, potentially, the Eighth Circuit. Such a course of action, rather than transferring the action to the MDL Court would further support just and efficient resolution of this action.

## Conclusion

For the reasons stated herein and in Plaintiff's Motion to Vacate Condition Transfer Order (CTO-23) should be granted.

Dated August 13, 2010

Respectfully submitted,

GRAY, RITTER & GRAHAM, P.C.


   /s/ Don. M. Downing
Don M. Downing   Mo. Bar. # 30405
Jason D. Sapp      Mo. Bar. # 58511
701 Market Street, Suite 800
St. Louis, MO  63101-1826
Telephone:  (314) 241-5620
Facsimile:  (314) 241-4140
ddowning@grgpc.com
jsapp@grgpc.com

STUEVE SIEGEL HANSON LLP

Patrick J. Stueve   Mo. Bar. # 37682
Barrett J. Vahle   Mo. Bar. # 56674
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone:  (816) 714-7100
Facsimile:  (816) 714-7101
stueve@stuevesiegel.com
vahle@stuevesiegal.com

TYCKO & ZAVAREEI, LLP

Hassan A. Zavareei
Jeffrey Kaliel
2000 L Street, N.W., Suite 808
Washington, D.C. 20036
Telephone:  (202) 973-0900
Facsimile:  (202) 973-0950
hzavareei@tzlegal.com
jkaliel@tzlegal.com

***Attorneys for Plaintiff Harold J. Joseph***

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2010, Plaintiff Harold J. Joseph's Brief in Support of Motion to Vacate Condition Transfer Order (CTO-23) were filed electronically with the Clerk of the Panel, and via U.S. mail to counsel included on the Panel Service List (CTO-23) attached hereto and listed below:

Andrew D. Carpenter
SHOOK, HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, MO 64108-2613

Richard D. McCune, Jr.
MCCUNEWRIGHT LLP
2068 Orange Tree Lane
Suite 216
Redlands, CA 92374

Barry R. Davidson
HUNTON & WILLIAMS LLP
Mellon Financial Center
1111 Brickell Avenue
Suite 2500
Miami, FL 33131-3136

Lisa M. Simonetti
STROOCK & STROOK & LAVAN LLP
2029 Century Park East
16th Floor
Los Angeles, CA 90067-3086

Robert C. Gilbert
ALTERS BOLDT BROWN RASH & CULMO PA
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137

Laurence J. Hutt
ARNOLD & PORTER LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017-2513

      /s/ Don M. Downing
*Attorney for Plaintiff, Harold J. Joseph*

**IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION**                                    MDL No. 2036

## PANEL SERVICE LIST (CTO-23)

Harold J. Joseph, Jr. v. Commerce Bank N.A., et al., W.D. Missouri, C.A. No. 4:10-685
(Judge Ortrie D. Smith)

Andrew D. Carpenter
SHOOK HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, MO 64108-2613
**acarpenter@shb.com**

Barry R. Davidson
HUNTON & WILLIAMS LLP
Mellon Financial Center
1111 Brickell Avenue
Suite 2500
Miami, FL 33131-3136
**bdavidson@hunton.com**

Don M. Downing
GRAY RITTER & GRAHAM PC
701 Market Street
Suite 800
St. Louis, MO 63101-1826
**ddowning@grgpc.com**

Robert C. Gilbert
ALTERS BOLDT BROWN RASH &
CULMO PA
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
**bobby@abbrclaw.com**

Laurence J. Hutt
ARNOLD & PORTER LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017-2513
**laurence.hutt@aporter.com**

Richard D. McCune, Jr.
MCCUNEWRIGHT LLP
2068 Orange Tree Lane
Suite 216
Redlands, CA 92374
**rdm@mccunewright.com**
**<rdm@mccunewright.com>**

Lisa M. Simonetti
STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
16th Floor
Los Angeles, CA 90067-3086
**lsimonetti@stroock.com**

Barrett J. Vahle
STUEVE SIEGEL HANSON LLP
460 Nichols Road
Suite 200
Kansas City, MO 64112
**vahle@stuevesiegel.com**

Hassan A. Zavareei
TYCKO & ZAVAREEI LLP
2000 L Street, NW
Suite 808
Washington, DC 20036
**hzavareei@tzlegal.com**

# EXHIBIT Q

# BEFORE THE JUDICIAL PANEL
# ON MULTIDISTRICT LITIGATION

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

*Joseph v. Commerce Bank, N.A., et al.*
   W.D. Mo. Case No. 4:10-cv-685-ODS

MDL Docket No. 2036

## RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO VACATE
## CONDITIONAL TRANSFER ORDER (CTO-23)

Plaintiffs' Lead Counsel and Plaintiffs' Executive Committee in *In re Checking Account Overdraft Litigation* (MDL No. 2036), pursuant to Panel Rule 7.2(c), oppose the Motion to Vacate Conditional Transfer Order (CTO-23) filed by Harold J. Joseph ("Plaintiff"). Contrary to what Plaintiff would have the Panel believe, good cause does not exist to vacate the conditional transfer order previously issued by the Panel. Therefore, Plaintiffs' Lead Counsel and Executive Committee respectfully urge the Panel to deny the motion to vacate CTO-23, and direct that this case be included in MDL No. 2036.

## RELEVANT PROCEDURAL HISTORY

On June 10, 2009, the Panel created *In re Checking Account Overdraft Litigation*, MDL No. 2036. *See* 626 F. Supp. 2d 1333 (J.P.M.L. 2009), based on a finding that five actions against Wachovia Bank, Bank of America and Citibank shared common factual and legal issues relating to the imposition of overdraft fees. 626 F. Supp. 2d at 1335. Since the initial transfer, the Panel has transferred a number of additional related cases, against other banks, to MDL No. 2036, including cases where a certain party, like Plaintiff here, filed a motion to vacate. *E.g., In re Checking Account Overdraft Litigation*, 2009 WL 3460951 (J.P.M.L. Oct. 13, 2009) (order transferring case against BB&T to MDL No. 2036 over bank's objections and transferring case against Bank of America to MDL over the plaintiff's objections); *In re: Checking Account Overdraft Litigation*, 2009 WL 3254021, at *1-2 (J.P.M.L. Oct. 7, 2009) (transferring five actions against Wells Fargo to MDL No. 2036 over objection of plaintiffs and rejecting request to create a Wells Fargo-only MDL); *also In re: Checking Account Overdraft Litigation*, MDL-2036 Pleading No. 133 (J.P.M.L. Feb. 3, 2010) (order transferring cases against Regions Bank, M&T Bank, PNC Bank and BB&T to MDL No. 2036 over banks' objections); *In re: Checking Account Overdraft Litigation*, 659 F. Supp. 2d 1363, 1364 (J.P.M.L. 2009) (order transferring cases against SunTrust to MDL No. 2036).

On June 1, 2010, Harold J. Joseph, filed a putative class action complaint against Commerce Bank, N.A. and Commerce Bancshares, Inc. in the Circuit Court of Jackson County, Missouri. On July 9, 2010, Defendants removed the case to the United States District Court for the Western District of Missouri. The complaint alleges that Commerce Bank, N.A. and Commerce Bancshares, Inc. engage in the "unfair, deceptive, unconscionable, and bad faith assessment and collection of overdraft fees." *See* Amended Class Action Petition, ¶ 2. Plaintiff also alleges, *inter alia,* that Commerce Bank "re-orders electronic debit transactions from the highest dollar amount to lowest dollar amount so as to deplete the customer's available funds as quickly as possible while maximizing the number of overdraft fees. *Id.* at ¶ 56(a).

On July 27, 2010, the Panel issued CTO-23, which conditionally transferred *Joseph* to MDL No. 2036. On July 30, 2010, Plaintiff filed a notice of opposition to CTO-23. Subsequently, Plaintiff filed his motion to vacate on or about August 13, 2010.

Of particular import to the Panel's consideration of this motion is the fact that Commerce Bank is already a defendant before Judge King in MDL No. 2036. On June 17, 2010, a case styled *Wolfegeher v. Commerce Bank, N.A.*, Case No. 4:10-cv-00328ODS (W.D. Mo.), was transferred to the Southern District of Florida for inclusion in MDL No. 2036 pursuant to CTO-17. *See* DE # 4 in Case No. 1:10-

3

cv-22017-JLK (S.D. Fla.). Subsequently, on July 27, 2010, an amended complaint against Commerce Bank was filed by Plaintiff Leslie Wolfegeher. *See* DE # 8 in Case No. 1:10-cv-22017-JLK (S.D. Fla.). Given the fact that Commerce Bank is already a part of the MDL proceeding, there is no basis to exclude the *Joseph* case.

## ARGUMENT AND CITATION OF AUTHORITY

Pursuant to 28 U.S.C. § 1407(a), the three statutory requirements for transfer and consolidation are that (1) the cases "involve[d] one or more common questions of fact;" (2) the transfer would further "the convenience of the parties and witnesses;" and (3) the transfer "will promote the just and efficient conduct of [the] actions." 28 U.S.C. § 1407(a). Once a conditional transfer order has been issued by the Panel, such order may only be vacated upon a showing of good cause. *E.g.*, *In re Multidistrict Commodity Credit Corp. Litig.*, 319 F. Supp. 533, 534 (J.P.M.L. 1970). Unfortunately for Plaintiff, no good cause exists to vacate CTO-23 with respect to this case.

**I.    No Different Questions of Law or Fact Exist Between *Joseph* and The Other Cases Within MDL No. 2036.**

Plaintiff's first argument in support of its motion to vacate is that there are significant factual differences between *Joseph* and the existing cases within MDL No. 2036 to warrant the transfer of this case to the Southern District of Florida. *See* Brief in Support, p. 3. However, this argument is completely undermined by the fact that Plaintiff openly concedes that the causes of action asserted against

4

Commerce Bank "admittedly have some similarity to actions currently pending" in MDL No. 2036. Thus, not only are the claimed differences grossly exaggerated, but claims regarding the purported differences between banks have previously been presented and rejected by the Panel.

In light of the fact that the Panel previously found that "[a]ll actions share factual questions relating to the imposition of overdraft fees by various bank defendants on their customer's checking accounts in a manner to maximize these fees," the admission that Commerce Bank engages in this same practice is more than sufficient to warrant its inclusion in MDL No. 2036.[1] Indeed, at the inception of this MDL, the Panel noted "[w]hile there will be some unique questions of fact from bank-to-bank, these actions share sufficient factual questions relating to industry-wide bank posting policies and procedures to warrant centralization of all actions in one MDL docket." 626 F. Supp. 2d at 1335. Moreover, as noted previously, Plaintiff's arguments on this point are completely undermined by the fact that the *Wolfegeher* case is already a part of MDL No. 2036.

The central factual question emphasized by the Panel in its initial Transfer Order – the imposition of overdraft fees by banks in a manner to maximize these fees – lies at the heart of the complaint in *Joseph*. *See* Amended Class Action Petition, ¶¶ 2-7 (alleging that Commerce Bank improperly charges overdraft fees

---

[1] 626 F. Supp. 2d at 1335.

in numerous ways). Therefore, the benefits of centralization emphasized by the Panel are equally applicable to *Joseph*.

## II.   Jurisdictional Questions Provide No Basis To Vacate CTO-23.

Plaintiff also argues that CTO-23 should be vacated because a motion to remand is currently pending in the Western District of Missouri and therefore this jurisdictional question should be resolved prior to transfer. *See* Brief in Support, pp. 5-7. However, as the Panel noted in *In re Zyprexa Products Liability Litig.*, 542 F. Supp. 2d 1358, 1359 (J.P.M.L. 2008), a party subject to a transfer order can "present any motions on jurisdictional issues to the transferee court." Moreover, a pending motion for remand provides absolutely no basis to vacate a transfer order. *E.g.*, *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 170 F. Supp. 2d 1346, 1347-48 (J.P.M.L. 2001) ("We note, first, that remand motions can be presented to and decided by the transferee judge"). As the Panel noted in *In re Prudential Insurance*, "there is no need to delay transfer in order to accommodate any interest of the transferor court in resolving a pending remand motion." (citing *In re Ivy*, 901 F.2d 7 (2nd Cir. 1990); *In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 368 F. Supp. 812, 813 (J.P.M.L. 1973)). Therefore, Plaintiff's motion to vacate on this ground should be rejected.

6

## III. Arguments Regarding Inefficiency And Inconvenience Are Unpersuasive.

Plaintiff also argues that the transfer of this case to MDL No. 2036 increases the burdens on the parties and the Panel. See Brief in Support, pp. 3-4. This argument is without merit for two reasons. First, since the Panel has recognized a central factual question regarding the overdraft practices of the defendant banks and the industry as a whole, the risk of conflicting rulings on discovery, class certification and dispositive motions should not be viewed on an individual bank basis.

Furthermore, as noted previously, Commerce Bank is currently defending a case already transferred to the Southern District of Florida as part of MDL No. 2036, namely, *Wolfegeher*. Thus, the Southern District of Florida is a convenient jurisdiction for the bank. Thus, excluding *Joseph* from MDL No. 2036, would actually result in a greater inconvenience for the bank under these circumstances.

Likewise, the Panel has already addressed such concerns regarding the applicability or necessity of certain discovery issues in previous orders. As the Panel held previously:

> [t]he MDL No. 2036 transferee court can employ any number of pretrial techniques – such as establishing separate discovery and/or motion tracks – to efficiently manage this litigation. Opponents' concerns regarding the manner and extent of coordination or consolidation of the pretrial proceedings can be presented to the transferee judge.

626 F. Supp. 2d at 1335. Any concerns Plaintiff have regarding duplication or overlap of effort can be raised before Judge King in the Southern District of Florida.

Moreover, there are mechanisms in place to alleviate any potential inconvenience to the Plaintiff in *Joseph*. As the Panel noted in *In re Investors Funding Corp. of New York Securities Litigation*, 437 F. Supp. 1199, 1203 (J.P.M.L. 1977):

> we note that transfer of an action under Section 1407 does not mean that all discovery must take place in the transferee district. For example, depositions of witnesses may still occur where they reside, see Fed.R.Civ.P. 45(d)(2), and of course any party may request an order from the transferee court that its documents be inspected at its offices or at another convenient location in or near the city in which it is located, *see* Manual for Complex Litigation, Part I, § 2.50 (rev. ed. 1973).

*See also In re Stirling Homex Corp. Securities Litigation*, 442 F. Supp. 547, 549 (J.P.M.L. 1977) (same). Thus, any concerns regarding the convenience of witnesses and the location of documents provide no basis for excluding *Joseph* from MDL No. 2036.

## CONCLUSION

Plaintiff has not provided this Panel with any meritorious reasons to vacate CTO-23 issued in *Joseph*. Therefore, Plaintiffs' Lead Counsel and Executive Committee respectfully request that the motion to vacate CTO-23 be denied.

DATED:  September 2, 2010.

Respectfully submitted,

*Robert C. Gilbert* w/ express permission (GFC)

Bruce S. Rogow, Esquire
Florida Bar No. 067999
bruce@abbrclaw.com
Robert C. Gilbert, Esquire
Florida Bar No. 561861
bobby@abbrclaw.com
ALTERS BOLDT BROWN
 RASH & CULMO, P.A.
4141 N.E. 2nd Avenue
Miami, Florida 33137
Tel:  (305) 571-8550
Fax:  (305) 571-8558

*Lead Counsel for Plaintiffs in MDL 2036*

Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
GOLUMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

Barry R. Himmelstein, Esquire
California Bar No. 157736
bhimmelstein@lchb.com
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
Mikaela Bernstein, Esquire
California Bar No. 261301
mbernstein@lchb.com
LIEFF CABRASER HEIMANN &
 BERNSTEIN LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Tel: 415-956-1000
Fax: 415-956-1008

Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Victor M. Diaz, Jr., Esquire
Florida Bar No. 503800
vdiaz@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P. A.
City National Bank Building
25 W Flagler Street
Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E 58th street
34th Floor
New york, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

Edward Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, LLC
1900 The Exchange, SE
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Melissa K. Hutts, Esquire
Texas Bar No. 0188015
mhutts@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

*Plaintiffs' Executive Committee in MDL 2036*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 2, 2010 I served a copy of the foregoing upon all parties of record by electronic mail to the interested parties on the attached Panel Service List.

_Robert C. Gilbert_ w/ express permission (GRL)

Robert C. Gilbert
On Behalf of the Plaintiffs' Lead Counsel
and Plaintiffs' Executive Committee in
MDL 2036

11

GZJ KDKV'T''

**UNITED STATES JUDICIAL PANEL**
**on**
**MULTIDISTRICT LITIGATION**

Jul 27, 2010

FILED
CLERK'S OFFICE

**IN RE: CHECKING ACCOUNT**
**OVERDRAFT LITIGATION**

| | | |
|---|---|---|
| Harold J. Joseph, Jr. v. Commerce Bank N.A., et al., | ) | |
| W.D. Missouri, C.A. No. 4:10-685 | ) | MDL No. 2036 |

## CONDITIONAL TRANSFER ORDER (CTO-23)

On June 10, 2009, the Panel transferred three civil actions to the United States District Court for the Southern District of Florida for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* 626 F.Supp.2d 1333 (J.P.M.L. 2009). Since that time, 53 additional actions have been transferred to the Southern District of Florida. With the consent of that court, all such action have been assigned to the Honorable James Lawrence King.

It appears that the action on this conditional transfer order involves questions of fact that are common to the actions previously transferred to the Southern District of Florida and assigned to Judge King.

Pursuant to Rule 7.4 of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation</u>, 199 F.R.D. 425, 435-36 (2001), this action is transferred under 28 U.S.C. § 1407 to the Southern District of Florida for the reasons stated in the order of June 10, 2009, and, with the consent of that court, assigned to the Honorable James Lawrence King.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Southern District of Florida. The transmittal of this order to said Clerk shall be stayed 14 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 14-day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel