# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RAMONA TROMBLEY, et. al.,<br>on behalf of herself and all others similarly<br>situated,<br><br>Plaintiffs,<br><br>-v-<br><br>NATIONAL CITY BANK<br><br>Defendant. | Civil Action No. 1:10-CV-00232<br><br>Judge John D. Bates |

## OBJECTOR ROBERT MATOS' RESPONSE TO
## NOTICE OF RECENT DEVELOPMENT AND REQUEST FOR ORAL ARGUMENT

Objector Robert Matos ("Objector") responds to the Notice of Recent Development filed on September 15, 2010, by Plaintiffs Ramona Trombley, et al. ("Plaintiffs"), which informs the Court of the order issued by the Honorable Robert M. Dow granting preliminary approval of a class settlement in *Schulte v. Fifth Third Bank*, N.D. Ill. Case No. 1:09-CV-06655 ("*Shulte* Order").[1] Objector also respectfully requests that the Court schedule oral argument on Plaintiffs' motion for preliminary approval and Objector's objection thereto, so that the parties may further address the issues raised in their papers for the Court.

Plaintiffs' selective and misleading characterization of the *Schulte* Order fails to properly acknowledge Judge Dow's *express* concerns regarding the adequacy of the fundamental basis for the proposed *Schulte* settlement.

In the *Schulte* Order, Judge Dow outlined three primary areas of concern that Plaintiffs *must* adequately address, if they can, before he will grant final approval of the *Schulte* settlement.

---

[1] A copy of the *Schulte* Order is attached hereto as Exhibit 1.

First, Judge Dow expressly declined to reach any conclusion regarding the sufficiency of the proposed monetary relief.[2]  To the contrary, Judge Dow found that "the parties have not provided the Court with information regarding the likely 'return to the class of continued litigation,'" and "caution[ed] the parties that it cannot grant final approval unless the parties present evidence that would enable the Court to determine the potential value of Class Members' claims." *Schulte* Order at 5.

Second, Judge Dow expressed concern regarding the use of the claims-made structure for distributing benefits under the *Schulte* settlement.  Judge Dow noted that "claims forms are most appropriate when class members are required to provide 'subjective' information or information not in the defendants' records." *Id*. at 9.[3]  Judge Dow went on to instruct that the "[t]he parties should be prepared to defend the need for a claims process at the final approval hearing," and specifically found that the claims process proposed in the *Schulte* settlement "at least raises an issue worthy of scrutiny at the final approval stage." *Id*.

Third, Judge Dow expressly declined to make conclusions regarding either the adequacy of representation or the implications of plaintiffs' failure to conduct meaningful discovery on the prospects for final settlement approval.  Instead, he instructed Plaintiffs' counsel that they "will, of course, be required to demonstrate for final approval that they have adequately represented the Class." *Id*. at 8.  Moreover, Judge Dow's preliminary approval in *Schulte* was based, at least in part, on the fact that the proposed settlement there included class-wide injunctive relief, *see id*. at

---

[2] Judge Dow also made no findings regarding the appropriateness of the proposed fee—over $3 million—for plaintiffs' counsel.

[3] As with the proposed Settlement here, the information that class members would have to include in their claims forms, under the proposed settlement in *Schulte*, is clearly within the bank's possession.

5, which the proposed Settlement in this case does not.[4]

Therefore, the *Schulte* Order provides no basis to grant preliminary approval of the proposed settlement here.  Instead, it underscores significant concerns regarding the fundamental settlement structure—the same kind of settlement structure that is proposed here.  Accordingly, Objector respectfully submits that the Court should in its sound discretion deny the request for preliminary approval.

Objector respectfully requests that the Court schedule oral argument on the motion for preliminary approval and Objector's objection to preliminary approval to allow the parties to address these issues in greater detail before the Court.

---

[4] Additionally, Judge Dow seems to have accepted—at least at the preliminary approval stage— the *Schulte* plaintiffs' representation that, after adjusting for the size difference between Wells Fargo Bank and Fifth Third Bank, the proposed settlement amount in *Schulte* represents approximately 32% of the potential class recovery, based on a comparison to the $203 million restitution award in *Gutierrez v. Wells Fargo*.  Even assuming that the *Schulte* plaintiffs' comparison of the two banks' size is valid for this analysis—which is not clear from their papers—in performing their analysis, the *Schulte* plaintiffs failed to account for the fact that the proposed class period in *Schulte*—*i.e.*, the period during which class members were incurring improper overdraft charges—is significantly longer than the class period at issue in *Gutierrez v. Wells Fargo* (October 2004 through July 2010 in *Schulte*, compared to November 2004 through June 2008 in *Gutierrez*), meaning that the comparison of the proposed *Schulte* settlement to Judge Alsup's restitution award in *Gutierrez* is not nearly as favorable as the *Schulte* plaintiffs argue.  This key omission completely invalidates the *Schulte* plaintiffs' analysis.

| | |
|---|---|
| Dated: September 21, 2010. | Respectfully submitted,<br><br>  _/s/ Roger M. Adelman_<br>Roger M. Adelman  (DC Bar No.  056358)<br>**Law Office of Roger M. Adelman**<br>1100 Connecticut Avenue, NW<br>Suite 730<br>Washington, DC  20036 |
| | Robert C. Gilbert *(admitted pro hac vice)*<br>**Alters Boldt Brown Rash & Culmo, P.A.**<br>4141 N.E. 2nd Avenue<br>Miami, FL  33137<br>(305) 571-8550 |
| | Michael W. Sobol *(admitted pro hac vice)*<br>Roger N. Heller *(admitted pro hac vice)*<br>**Lieff, Cabraser, Heimann & Bernstein, LLP**<br>275 Battery Street, 29th Floor<br>San Francisco, CA  94111<br>(415) 956-1000 |
| | Bonny E. Sweeney *(admitted pro hac vice)*<br>**Robbins Geller Rudman & Dowd LLP**<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>(619) 231-1058 |
| | Eric B. Fastiff (DC Bar No.  453854)<br>**Lieff, Cabraser, Heimann & Bernstein, LLP**<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111<br>(415) 956-1000 |
| | *Counsel for Objector Robert Matos* |

## <u>CERTIFICATE OF SERVICE</u>

I, Roger N. Heller, one of the attorneys for Objector Robert Matos, hereby certify that pursuant to Local Rule 5.4, the foregoing document was caused to be served, electronically via ECF as to filing users and via United States Mail as to the recipients listed below, on this 21st day of September, 2010.

**<u>/s/ Roger N. Heller</u>**

**<u>Non-Filing User Recipients</u>**

Mariah E. Murphy
BALLARD SPAHR LLP
Woodland Falls Corporate Park
210 Lake Drive East
Cherry Hill, NJ 08002

893785.2

# Exhibit 1

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | | | |
|---|---|---|---|
| SHANNON SCHULTE, on behalf of herself and all others similarly situated | ) ) ) | | |
| Plaintiff, | ) ) | Case No. 09-cv-6655 | |
| -v- | ) ) | Judge Robert M. Dow, Jr. | |
| FIFTH THIRD BANK | ) ) | | |
| Defendant. | ) ) ) | | |

## OPINION AND ORDER OF PRELIMINARY APPROVAL, CERTIFICATION OF THE SETTLEMENT CLASS, APPROVAL OF THE NOTICE PLAN, AND SCHEDULING A DATE FOR A FINAL FAIRNESS HEARING

This matter is before the Court on the parties' motion for preliminary approval of class action settlement and publishing of notice, and setting of a final fairness hearing filed by Shannon Schulte, individually and on behalf of the proposed settlement class (as defined below), requesting that the Court enter an Order: (1) finding that the Settlement Agreement, which was filed with the Court on May 27, 2010, is within the range of fair, reasonable, and adequate, and in the best interest of the Settlement Class; (2) approving the Notice Plan; (3) appointing Hilsoft Notifications as the Notice Specialist; (4) appointing Epiq Systems Class Action & Claims Solutions, or any other nationally recognized class action claims administrator agreed upon by the Settling Parties, as Claims Administrator; (5) certifying, pursuant to Federal Rule of Civil Procedure 23, the Settlement Class for settlement purposed only; (6) appointing Ben Barnow, Barnow and Associates, P.C., Burton H. Finkelstein, Finkelstein Thompson LLP, Hassan A. Zavareei, Tycko & Zavareei LLP, and David J. Worley, Evangelista & Associates as Settlement Class Counsel; and (7) scheduling a Final Fairness Hearing to consider final approval of the settlement.

Having reviewed and considered the settlement agreement, the motion and memorandum in support of preliminary approval of the settlement, the objections of Michelle Keyes, Amanda Ratliff,

and Verdel Ratliff to the preliminary approval, the Defendant's and Plaintiffs' responses to the objections, and the memoranda submitted on the recent decision in *Gutierrez v. Wells Fargo Bank*, Case No. C07-05923 WHA (N.D. Cal. Aug. 10, 2010) the Court grants the motion for preliminary approval on the terms and conditions set forth below.

## BACKGROUND

Plaintiffs filed their class action complaint on November 21, 2009, alleging that the defendant Fifth Third Bank violated the Illinois Consumer Fraud and Deceptive Business Practices Act, breached its contracts with its customers, and has been unjustly enriched by "improperly assessing customers' overdraft charges for insufficient funds on debit/check card purchases and ATM withdrawals through the re-sequencing of transactions in order to maximize the overdraft charges [defendant] could collect." Compl. at ¶ 1. Jurisdiction was premised on the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d).[1]

After briefing on Defendant's motion to dismiss, the parties entered into a settlement agreement on May 27, 2010. The agreement provides for, *inter alia*:

- A Settlement Class of "[a]ll persons in the United States who hold or held a Fifth Third Account who at any time during the Class Period incurred at least one Overdraft Fee (as defined in the Settlement Agreement) associated with at least one Fifth Third Debit Card Transaction."[2]

- A $9,500,000 Settlement Fund from which Settlement Class Members may receive reimbursement for overdraft charges incurred during any one continuous forty-five day period from October 21, 2004 to July 1, 2010. There is no cap on the amount that an individual Settlement Class Member may recover. If, after fees, costs, expenses, and

---

[1] On February 1, 2010, Marlene Willard filed a similar action in the Northern District of Georgia against Fifth Third. *Willard v. Fifth Third* Bank, N.D. Ga., Case No. 1:10-CV-0271-JOF. While Willard is not a party to this action, she is a party to the settlement agreement, which provides that upon entry of final approval, the *Willard* action will be dismissed with prejudice. Willard and Schulte together are referred to as the "Representative Plaintiffs".

[2] Overdraft Fee means an insufficient funds fee, overdraft fee, or other similar fee, incurred as a result of the "re-sequencing" of a Fifth Third Debit Card Transaction in non-chronological order that was not previously reversed, refunded, or returned to the Settlement Class Member by Defendant.

incentive awards are paid, the amount claimed by Class Members is less than the remaining amount, the remainder will be distributed to claimants on a *pro rata* basis, with each such Settlement Class Member receiving up to (but not exceeding) three times the amount claimed on his or her Claim Form.  All remaining amounts will be distributed through a *cy pres* to one nonprofit credit counseling organization in each of the twelve states in which Fifth Third has branches.

- Fifth Third agrees to modify its business practices to no longer re-sequence debits from highest to lowest amount; rather it will process all charges in the order that they are presented for payment.  Fifth Third further agrees to train its call center telephone operators on issues related to overdraft charges and to authorize those operators to waive any overdraft fee for good cause (including an automatic waiver of one overdraft fee per year).

On June 9, 2010, Michelle Keyes, Amanda Ratliff and Verdel Ratliff (collectively the "Objectors") appeared and filed objections to the motion for preliminary approval of the proposed settlement.  Keyes is the named plaintiff in *Keyes v. Fifth Third Bank*, S.D. Fla. Case No. 10-cv-21283, an overlapping class action filed on April 2, 2010, which has been made part of Multidistrict Litigation Proceeding No. 2036, *In re Checking Account Overdraft Litigation*, which is pending in the Southern District of Florida.  The Objectors are represented by the Plaintiffs' Executive Committee in MDL No. 2036.[3]  This Court considers each of Objectors' arguments below.

## DISCUSSION

Courts review a motion for preliminary approval of a class action settlement to determine whether the proposed settlement is within the range of possible approval.  The hearing on the motion is not a "fairness hearing"; its purpose is to determine whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.

---

[3] On June 3, 2010, the Judicial Panel on Multidistrict Litigation ruled that in light of the settlement reached between the Representative Plaintiffs and the Defendant, the *Schulte* and *Willard* cases should not be transferred into MDL No. 2036.  The Panel further ruled that the *Schulte* and *Willard* cases should not be centralized as a separate and new MDL in this district.  The Panel noted that its ruling does not bar either the creation of a new MDL or the transfer of the actions to MDL No. 2036 in the event the settlement here is not approved or does not fully resolve these actions.

*Armstrong v. Board of School Directors of the City of Milwaukee,* 616 F.2d 305, 314 (7th Cir.1980), *overruled on other grounds by Felzen v. Andreas,* 134 F.3d 873 (7th Cir.1998). Also relevant to whether a proposed settlement should be preliminarily approved is whether it "has no obvious deficiencies and does not improperly grant preferential treatment to class representatives or segments of the class." *Kaufman v. American Exp. Travel Related Servs. Co.*, 264 F.R.D. 438, 447 (N.D. Ill. 2009). Judges must exercise "the highest degree of vigilance in scrutinizing proposed settlements of class actions." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 280 (7th Cir. 2002).

In view of this guidance from the court of appeals, this Court postponed ruling on the motion for preliminary approval to allow the filing of written objections. The Court also allowed the parties to respond in writing to the objections.

## A.    Evidence Regarding Value of Class Members' Claims

The Objectors first argue that neither the Court nor the Class Members can determine the adequacy of the proposed settlement, because the parties have not presented a reliable estimate of class member damages against which the benefits of the settlement may be compared. The "most important factor relevant to the fairness of a class action settlement" is the "strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *In re General Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106, 1132 (7th Cir.1979)); *Sutton v. Bernard*, 2002 WL 1794048, *1 (N.D. Ill. Aug. 5, 2002) ("The primary question is whether the proposed settlement amount is reasonable, given the risk and likely return to the class of continued litigation."). In conducting this analysis, the district court should begin by "quantify[ing] the net expected value of continued litigation to the class." *Reynolds,* 288 F.3d at

4

284-85.  To do so, the court should "estimat[e] the range of possible outcomes and ascrib[e] a probability to each point on the range."  *Id.* at 285.  Although the Seventh Circuit has recognized that "a high degree of precision cannot be expected in valuing a litigation," the court should nevertheless "insist that the parties present evidence that would enable possible outcomes to be estimated," so that the court can at least come up with a "ballpark valuation."  *Synfuel Techs., Inc.*, 463 F3d at 653 (quoting *Reynolds*, 288 F.3d at 285).  In essence, a court must weigh the value of the proposed settlement against the total amount that the class could recover, discounted by the weaknesses and risks inherent in the class' claims.

The parties have explained the value of the settlement to class members—which includes both monetary and non-monetary aspects.  The parties also have identified weaknesses in the class' claims and the risks and uncertainties of future litigation.  However, the Objectors correctly observe that the parties have not provided the Court with information regarding the likely "return to the class of continued litigation."  *Sutton*, 2002 WL at 1794048, *1.  Instead, Plaintiffs argue that the settlement is greater, on the basis of the bank's relative assets, than a settlement of similar claims against Bank of America approved by a California state court in *Closson v. Bank of America N.A.*, Cal. Super. Ct. No. CGC 04436877.  The Court agrees with Objectors that this "'adequacy by analogy' argument is no substitute for the 'effort…to quantify the net expected value of continued litigation to the class' required by the Seventh Circuit."  The Court cautions the parties that it cannot grant final approval unless the parties present evidence that would enable the Court to determine the potential value of Class Members' claims.

However, comparison of settlements in similar cases is relevant to whether a settlement is fair, adequate and reasonable.  See, e.g. *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003).  That this settlement appears relatively generous when compared to

settlements in analogous circumstances is sufficient to satisfy the standard for *preliminary* approval, placing it "within the range of possible [final] approval." *Armstrong*, 616 F.2d at 314.[4]

## B.    The Allocation of Benefits

Under the settlement, Class Members must specify on their claim form a single, contiguous 45-day period in which they would like overdraft charges incurred during that period to be refunded. The Objectors contend that this allocation of settlement proceeds is unfair, in that a class member who paid a larger total amount of overdraft charges over the entire class period would receive less compensation than a class member who paid a *lower* total amount of overdraft fees but incurred a larger portion of the fees during a single 45-day period. The Objectors argue that the charges instead should be allocated in proportion to the damages sustained by class members over the entire five-year class period.

The Court concludes that this objection is not a sufficient basis on which to deny preliminary approval. As Plaintiffs explain in their response brief, the central thrust of their case

---

[4] The Objectors have provided the Court with the findings of fact and conclusions of law of the Court in *Gutierrez v. Wells Fargo Bank, Case No. C07-05923 WHA* (N.D. Cal. Aug. 10, 2010). In a 90-page opinion following a bench trial, the *Gutierrez* Court excoriated Wells Fargo for its debit reordering practices and ordered it to pay $203 million in restitution to its California customers and cease its reordering practices. While this award is of course the result of a bench trial, not of a settlement, it is relevant both to the strength of the Class's claims and the potential award were the Class to proceed to trial. In response to the Objectors' filing of the *Gutierrez* memorandum, the Plaintiffs contend that the award in *Gutierrez* in fact supports the fairness of this settlement [R. 54]. The Plaintiffs argue that when the *Gutierrez* award is reduced to account for the comparative sizes of Wells Fargo and Fifth Third, a similar award against Fifth Third Bank would have been approximately $29 million. The $9.5 million settlement here (which does not account for the non-monetary relief) accordingly represents 32% of that $29 million potential recovery—an amount within the range of other approved class action settlements. See, *e.g.* R. 54 at 4-5 citing *Lazy Oil Co. v. Witco*, 95 F. Supp. 2d 290, 339 (W.D. Pa. 1997) (approving settlement amounting to 5.35% of damages for the entire class period, and 25.5% of the damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.*, 148 F.R.D. 297, 325 (N.D. Ga. 1993) (12.7 to 15.3%); *In re Newbridge Networks Sec. Litig.*, 1998 WL 765724, *2 (D.D.C. Oct. 23, 1998) (6-12%). Like Plaintiffs, Defendant also submits that *Gutierrez* "helps demonstrate how the proposed settlement in this case is fair, adequate, and reasonable." [57 at 1]. Among other things, Defendant argues that the size of the award in *Gutierrez* reflects much more favorable California law that benefited the plaintiffs in that action, but would not apply in this case. *Id.* at 2-4, see also *Hassler v. Sovereign Bank*, 2010 WL 893134 (3rd Cir. March 15, 2010).

involves the improper disclosure of Fifth Third's debit reordering practices. According to the Plaintiffs, many customers were surprised to find that they had incurred multiple overdraft charges over a certain weekend or other short time period. Reimbursing Class Members for charges incurred during a single 45-day period allows members to recoup these "surprise" charges. Conversely, "chronic overdrafters" can be said to have had actual or constructive notice of Fifth Third's reordering policies, and accordingly have arguably weaker claims.

With the distinction between these two types of Class Members in mind, the proposed plan of allocation of settlement benefits is within the range of fairness and reasonableness required for preliminary approval. *See In re PaineWebber Ltd. Partnerships Litigation*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997) ("[W]hen real and cognizable differences exist between the likelihood of ultimate success for different plaintiffs, it is appropriate to weigh distribution of the settlement in favor of plaintiffs whose claims comprise the set' that was more likely to succeed.") (internal quotations and citations omitted); see also *id*. (collecting cases).

### C. Discovery Prior to Settlement

Next, the Objectors argue that the parties reached a settlement without engaging in sufficient discovery to enable Plaintiffs' counsel to determine the settlement value of the class claims. The stage of the proceedings and amount of discovery completed at the time of settlement are relevant factors in determining whether a settlement is fair, reasonable, and adequate. *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996).

The Objectors point to the fact that the proceedings are at an "early stage" and that the docket does not reflect that formal or informal discovery has been conducted. Plaintiffs' counter that they participated in "months of arms-length negotiations" and performed "significant factual investigation and legal analysis" prior to settling. The Plaintiffs also point to the strength of the

settlement and counsels' broad class action experience as evidence that the class has been adequately represented.

That counsel conducted no formal discovery prior to settlement does not necessarily preclude eventual final approval of the proposed settlement. *In re Prudential Ins. Co. of America Sales Practices Litigation,* 148 F.3d 283, 319 (3rd Cir. 1998); see also *In re Corrugated Container Antitrust Litigation,* 643 F.2d 195, 211 (5th Cir. 1981) (finding settlement appropriate, despite absence of formal discovery, when "plaintiffs did have access to information"); *Cotton v. Hinton,* 559 F.2d 1326, 1332 (5th Cir.1977) ("It is true that very little formal discovery was conducted and that there is no voluminous record in the case. However, the lack of such does not compel the conclusion that insufficient discovery was conducted.").

Plaintiffs' counsel will, of course, be required to demonstrate for final approval that they have adequately represented the Class. But, at this early stage, especially where there is no evidence of collusion,[5] the lack of formal discovery by Plaintiffs' counsel does not remove the settlement from being "within the range of possible [final] approval." *Armstrong*, 616 F.2d at 314.

**D.     Claims Process**

Finally, the Objectors argue both that the claims process is unnecessary and that it is unduly burdensome on Class Members and will deter the filing of claims.

As an initial matter, requiring claimants to submit claim forms in order to receive payment is an ordinary and unobjectionable feature of modern class action litigation. *See, e.g. Milliron v. T-Mobile,* 2009 WL 3345762, *6 (D.N.J. 2009) ("the Court finds it perfectly

---

[5] "The decisions indicate that the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." William B. Rubenstein, Alba Conte and Herbert B. Newberg, 4 NEWBERG ON CLASS ACTIONS § 11:51 (4th ed. 2002) (collecting cases).

appropriate to require Class members to submit certain information proving they are entitled to collect the relief awarded in this case"); William B. Rubenstein, Alba Conte and Herbert B. Newberg, 3 NEWBERG ON CLASS ACTIONS § 8:45 (4th ed. 2002) (settlements employing proof of claim requirement are "commonly employed" in consumer fraud cases). However, claim forms are most appropriate when class members are required to provide "subjective" information or information not in the defendants' records. See, e.g. *DeHoyas v. Allstate Corp.*, 240 F.R.D. 269, 314 (W.D. Tex 2007) (claim form needed so class members could self-identify as African-American, Hispanic, or Latino). The Court notes that while a claims process was employed in the *Closson* settlement, the judge in the *Gutierrez* case ordered direct restitution without any claims process (at least to those customers who continued to do business with Wells Fargo Bank). The parties should be prepared to defend the need for a claims process at the final approval hearing. Similarly, that the claims process requires Class Members to scour their own records to determine which 45-day period contained the most overdraft charges when Defendant has that information in its possession at least raises an issue worthy of scrutiny at the final approval stage.

At the same time, the form itself is short and clear, and claims may be filed either by mail or on the Internet. Moreover, because the defendant's total monetary payment to the Settlement Fund will be $9.5 million regardless of the number of claims filed, it seems unlikely that the claims process is designed to limit the "take rate" of the Class Members. On balance, the claims process is not so unduly burdensome so as to preclude preliminary approval, but again, it remains subject to further examination prior to any final approval. In the event the Court determines, with the benefit of further argument and in the light of future developments, that the claims process is in fact unduly burdensome or otherwise objectionable, the Court may order the

parties to disregard the claim forms submitted and employ the direct-payment process ordered in the *Gutierrez* case.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. Terms and phrases in this Order shall have the same meaning as defined in the Settlement Agreement.

2. Having made the findings set forth below, the Court hereby certifies a plaintiff class for settlement purposes only in accordance with the terms of the Settlement Agreement (the "Settlement Class"). The Settlement Class is defined as:

> All persons in the United States who hold or held a Fifth Third Account who at any time during the Class Period incurred at least one Overdraft Fee (as defined in the Settlement Agreement) associated with at least one Fifth Third Debit Card Transaction.

Excluded from the Settlement Class are Fifth Third Bank, any parent, subsidiary, affiliate or sister company of Fifth Third Bank, and all officers or directors of Fifth Third Bank, or any parent, subsidiary, affiliate or sister company at any time during the Class Period, and the legal representatives, heirs, successors, and assigns of any of the foregoing. The Court presiding over any motion to approve the Settlement Agreement is excluded from the Settlement Class. Also excluded from the Settlement Class is any person who timely submits a valid request to be excluded from this Settlement.

As provided for in the Settlement Agreement, if the Court does not grant final approval of the settlement set forth in the Settlement Agreement, or if the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, then the Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Actions shall proceed as though the Settlement Class had never been certified, without prejudice to any party's position on the issue of class certification or any other issue.

3. The Settlement Class is so numerous that joinder of all members is impracticable.

4. The Court finds, based on the terms of the settlement described in the Settlement Agreement, that:

    a. There are questions of law and fact common to the Settlement Class;

    b. The claims of Representative Plaintiffs are typical of the claims of members of the Settlement Class;

    c. Representative Plaintiffs and Settlement Class Counsel will fairly and adequately represent the interests of the Settlement Class. There are no conflicts of interest between Representative Plaintiffs and members of the Settlement Class;

    d. Questions of law and fact common to Settlement Class Members predominate over any questions affecting only individual members of the Settlement Class; and

    e. Certification of the Settlement Class is superior to other methods for the fair and efficient adjudication of this controversy.

5. Accordingly, the Court hereby certifies the Settlement Class, for settlement purposes only, pursuant to Rule 23.

6. The Court preliminarily approves the settlement set forth in the Settlement Agreement as being within the range of fair, reasonable, and adequate, within the meaning of Rule 23 and the Class Action Fairness Act of 2005 ("CAFA"), subject to final consideration at the Final Fairness Hearing provided for below.

7. The Court appoints Ben Barnow, Barnow and Associates, P.C., Burton H. Finkelstein, Finkelstein Thompson LLP, Hassan A. Zavareei, Tycko & Zavareei LLP, and David J. Worley, Evangelista & Associates as counsel for the Settlement Class ("Settlement Class Counsel").

8. Shannon Schulte and Marlene Willard are appointed as Representative Plaintiffs.

9. A hearing (the "Final Fairness Hearing") shall be held before this Court on January 14, 2011 at 9:30am, in Courtroom 1919 of the United States District Court for the Northern District of Illinois to determine: (a) whether the settlement set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class; (b) whether a Judgment Order, as provided for in the Settlement Agreement, should be entered granting final approval of the settlement; and (c) whether, and in what amount, attorneys' fees, costs, and expenses, and Representative Plaintiff incentive awards should be paid to Settlement Class Counsel for distribution. The Court may adjourn and/or continue the Final Fairness Hearing without further notice to Settlement Class Members.

10. The Court approves as to form and content the Notice Plan.

11. The Court approves and appoints Hilsoft Notifications as Notice Specialist and Epiq Systems, Inc., or any other nationally recognized class action claims administrator agreed upon by the Settling Parties, as Claims Administrator, as set forth in the Settlement Agreement.

12. Fifth Third shall comply with the obligation to give notice under CAFA, 28 U.S.C. § 1715, in connection with the proposed settlement, and, pursuant to the settlement, shall notify Settlement Class Counsel of its compliance.

13. As soon as is possible, notice shall be issued consistent with the Notice Plan and the Settlement Agreement.

14. The Court finds that compliance with the Notice Plan is the best notice practicable under the circumstances, and constitutes due and sufficient notice of this Order to all persons entitled thereto and is in full compliance with the requirements of Rule 23, applicable law, and due process.

15. Prior to the Final Fairness Hearing, the Settling Parties shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with the Notice Plan.

16. To be excluded from the Settlement, a Settlement Class Member must individually sign and timely submit written notice clearly manifesting his or her intent to a designated Post Office

Box established for said purpose. The written notice must refer to *Schulte, et al. v. Fifth Third Bank* or *Willard, et al. v. Fifth Third Bancorp* and must list the account number(s) of the Settlement Class Member's Fifth Third account(s) linked to a Fifth Third debit card. In addition, the written notice must include, for each account listed: (1) the full names and current addresses of everyone whose name is on the account; (2) a statement that everyone whose name is a Settlement Class Member; (3) a statement of intention to exclude everyone whose name is on the account from the Settlement Class; and (4) the signature of every person whose name is on the account. To be effective, written notice must be postmarked at least twenty-one (21) days prior to the date as set by the Court in the Notice for the Final Fairness Hearing.

17. All persons falling within the definition of the Settlement Class who do not request to be excluded from the Settlement Class shall be bound by the terms of the Settlement Agreement, the Judgment Order entered thereon, and all Orders entered by the Court in connection with the settlement set forth in the Settlement Agreement. All persons who submit valid and timely notice of their intent to be excluded from the Settlement Class shall neither receive any benefits nor be bound by the terms of the Settlement Agreement.

18. Settlement Class Members who qualify for and wish to submit a claim for any benefit under the settlement as to which a claim is required shall do so in accordance with the requirements and procedures of the Settlement Agreement. All Settlement Class Members who qualify for any benefit under the settlement as to which a claim is required but fail to submit a claim therefore in accordance with the requirements and procedures of the Settlement Agreement shall be forever barred from receiving any such benefit, but will in all other respects be subject to and bound by the provisions of the Settlement Agreement, and the releases contained therein.

19. To object to the settlement, a Settlement Class Member must timely file a written statement of objection with the Court. The written statement of objection must set forth: (i) the title of the Action; (ii) the objector's full name, address, and telephone number, (iii) all grounds for the

objection, accompanied by any legal support for the objection known to the objector or his or her counsel; (iv) the identify of all counsel representing the objector; (v) the identity of all counsel representing the objector who will appear at the Final Fairness Hearing; (vi) a list of all persons who will be called to testify at the Final Fairness Hearing in support of the objection; (vii) a statement confirming whether the objector intends to personally appear and/or testify at the Final Fairness Hearing; (viii) a list of all other objections filed by the objector during the five (5) years prior to the date the objection was filed with the Court; (ix) a list of all other objections filed by the objector's counsel during the five (5) years prior to the date the objection was filed with the Court; and (x) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representations). To be timely, a written statement of an objection in appropriate form must be filed with the Clerk of the United States District Court for the Northern District of Illinois, at a courthouse location to be designated by the Court, twenty-one (21) days prior to the date set in the notice for the Final Fairness Hearing, and also served on Proposed Settlement Class Counsel, Ben Barnow, Barnow and Associates, P.C., One North LaSalle Street, Suite 4600, Chicago, Illinois, 60602, and Defendant's counsel, Patrick F. Fischer, Keating, Muething & Klekamp PLL, One East Fourth Street, Suite 1400, Cincinnati, Ohio 45202.

20. All discovery and pretrial proceedings in this litigation, other than confirmatory discovery provided for in the Settlement Agreement, are stayed and suspended until further order of the Court.

21. Pending the final determination of the fairness, reasonableness, and adequacy of the settlement set forth in the Settlement Agreement, no Settlement Class Member, either directly, representatively, or in any other capacity, shall institute, commence, or prosecute any of the Released Claims in any action or proceeding in any court or tribunal.

22. Neither the Settlement Agreement nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement: (a) is or may be deemed to be, or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of Fifth Third; or (b) is or may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of Fifth Third, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

23. In the event the Court does not grant final approval of the Settlement Agreement or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, the Settling Parties shall be restored to their respective positions in the litigation, except that all scheduled litigation deadlines shall be reasonably extended so as to avoid prejudice to any Settling Party or litigant. In such event, the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in the litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*.

**SO ORDERED.**

_____
Robert M. Dow, Jr.
United States District Judge

Dated: September 10, 2010