## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| RAMONA TROMBLEY, et al., on behalf of herself and all others similarly situated, | Case No. 1:10-CV-00232 |
| | The Honorable John D. Bates |
| Plaintiffs, | |
| -v- | |
| NATIONAL CITY BANK, et al., | |
| Defendants. | |

## <u>RESPONSE TO OBJECTOR ROBERT MATOS' REQUEST FOR HEARING</u>

Plaintiffs Ramona Trombley, Jeff Doehner and Brian Wells ("Plaintiffs"), by and through their counsel ("Proposed Settlement Class Counsel"), respectfully respond to the Plaintiffs Executive Committee's ("PEC") recent filing, entitled "Request for Hearing."  Dkt. No. 28.

### *Plaintiffs And Matos Already Requested A Hearing*

The "Request for Hearing" is really no such thing.  Plaintiffs themselves already sought a hearing through the proper procedural mechanism when they filed their motion for preliminary approval on July 28, 2010.  *See* Dkt No. 6, at 1 ("Pursuant to Local Civil Rule 7(f), Plaintiffs hereby request an oral hearing.").  Then, on September 21, 2010, the PEC—purportedly on behalf of Objector Robert Matos—asked the Court to "schedule oral argument on Plaintiffs' motion for preliminary approval and Objector's objections thereto, so that the parties may further address the issues raised in their papers for the Court."  *See* Objector Robert Matos' Response To Notice of Recent Development And ***Request For Oral Argument***, Dkt. No. 27 (emphasis added).  Despite the fact Matos and Plaintiffs had both previously requested oral argument, the PEC purports to be asking for the same relief yet again, this time in the guise of a separate filing

relying on Local Civil Rule 16.1, which governs "Scheduling and Continuances" and has nothing

to do with oral arguments or hearings.  *See* LCvR 16.1.

### *The PEC's Filing Is Just An Excuse For Another Attack On Proposed Settlement Class Counsel*

The substance of this latest filing reveals that its true purpose is to serve as an improper

vehicle to further the PEC's smear campaign against Proposed Settlement Class Counsel.  After

repeating its earlier request for a hearing, the PEC goes on to "inform the Court" of purported

facts that the PEC claims "call into question the proposed adequacy of Hassan Zavareei and

Tycko & Zavareei LLP as class counsel in connection with the proposed settlement in this

case. . ." Dkt. No. 28, at 1.  Then, the PEC attached the four-page declaration of Robert Gilbert

and a brief that the PEC filed with the Judicial Panel on Multidistrict Litigation ("JPML")—

relating to a separate lawsuit.  In short, the PEC claims that the proposed class action settlement

in another matter—*Mathena v. Webster Bank* (D. Conn. 3:10-CV-01448-SRU)—shows that

Proposed Class Counsel engaged in collusive conduct in that case, and is therefore unfit to serve

as class counsel in this case.  Even assuming, *arguendo,* that the Webster settlement was relevant

here—which it is not—the PEC's irresponsible accusations are based upon mischaracterizations

of the settlement in the Webster Bank case by lawyers who have absolutely no basis for

evaluating that settlement.

In his declaration, Gilbert cites to his own brief he filed with the JPML, in which he

claimed (without any factual basis) that counsel for Webster Bank and Proposed Class Counsel

cooperated to "manufacture a settlement of a nationwide class, immediately removing the case,

and then entering into a low-value settlement with plaintiff's counsel in *Mathena* . . ." (Dkt. 28-

1, at 3). This amounts to two accusations.  First, that the settlement in *Mathena* is low value.

Second, that the Proposed Class Counsel (together with their highly esteemed co-counsel and

opposing counsel in Connecticut)[1] engaged in collusion because the complaint was amended and

then removed to federal court.  Neither argument has any factual or legal basis.

### The Mathena Settlement Is An Excellent Settlement, And
### The PEC Has No Factual Basis For Telling The Court It Is A "Low Value" Settlement

The PEC gives no support whatsoever for its incendiary accusation that the *Mathena*

settlement is "low-value."  Indeed, the PEC has no basis to evaluate this settlement—since,

unlike Mathena's lawyers, they have not obtained any information or documents from Webster

Bank to determine the potential exposure Webster faces.  In short (and as Mathena's counsel will

detail in their upcoming motion for preliminary approval of that settlement), the undersigned

counsel represents to the Court that the settlement in *Mathena* represents an extremely large

portion of potential damages against Webster Bank—which only engaged in the allegedly

unlawful activities for a less than two year period of time.   It is highly unprofessional for the

PEC to make these false accusations without any knowledge of the actual work performed in that

case to reach such an extraordinary result.

### The Allegations Of Collusion Are False And Baseless

It is a common feature of modern class action practice that defendants will insist on a

"global peace" when negotiating a settlement agreement.  And there is nothing collusive or

improper about opposing counsel agreeing that plaintiffs' counsel will amend the complaint to

allow for a complete and broader settlement of a class action.  *See Lipuma v. American Express*

*Co.*,  406 F.Supp.2d 1298, 1316 (2005) (holding that it was not collusive for putative class

---

[1] Webster Bank is represented by Day Pitney LLP, a prominent northeastern regional law firm
with over 350 lawyers in Connecticut, Massachusetts, New York, New Jersey, and Washington,
D.C.  In addition to the Proposed Settlement Class Counsel in this case (from Tycko & Zavareei
LLP), Mathena is represented by attorneys from Izard Nobel LLP, a Hartford-based class action
law firm.

counsel to agree with defense counsel to amend complaint to add additional claims and re-file in federal court); *Pergament v. Frazer*, 93 F. Supp. 13, 20 (E.D. Mich. 1950) *aff'd sub nom. Masterson v. Pergament*, 203 F.2d 315 (6th Cir. 1953) ("In all cases after attorneys have arrived at an agreement and it is desired to protect the several parties, it is usual for them to collaborate and make certain that nothing has been overlooked. . . . It is no great wonder, and we don't believe subject to the charge of collusion, that when the several attorneys had arrived at this point it was insisted by defendants that amendments be made to plaintiffs' bill of complaint to include the other actions.")

Indeed, the law firms on the PEC have engaged in the exact same conduct that they now claim shows "collusion."  For instance, in *Lipuma*, PEC law firm Lieff Cabraser Heimann & Bernstein ("Lieff Cabraser") and other firms on the plaintiffs' class counsel committee in that case were accused by objectors in that case of engaging in collusive conduct, "settl[ing] cheap," and engaging in a "reverse auction" because, *inter alia*, they had broadened a Florida state court complaint (representing a Florida-only class) to include a national class after removal to federal court—***the very same conduct Objectors complain of here***.  *Lipuma*, 406 F.Supp.2d at 1311.  In *Lipuma*, objectors argued that "[t]he present action, the proposed settlement vehicle, was originally filed in Florida state court on behalf of a class of only Florida citizens. . . . There were no claims brought on behalf of citizens of any other state . . . and there were no claims premised on anything other than Florida state law, most centrally FDUPTA, the Florida state consumer protection law."  *Lipuma*, 406 F.Supp.2d at 1311.  In addition, objectors in *Lipuma* stated that "[o]nly after settlement negotiations were concluded was the Florida complaint amended to expand its scope nationwide."  *Id*.

It should be noted that Lieff Cabraser and other planitiffs' class counsel in *Lipuma* not only broadened the *geographic* definition of the class in order to conclude a settlement agreement, but actually added substantive allegations about American Express' conduct solely so those claims could be released in settlement.   The objectors in *Lipuma* argued:   "The most striking and disturbing feature of the present proposed settlement is that the release reaches claims that were never pleaded in the underlying action and were negotiated away without any effort to assess their value." *Id*, 1311.

While the court in *Lipuma* agreed with objectors that the complaint was broadened markedly, it nonetheless approved the settlement in full: "Undoubtedly, but for the suggestion made by American Express' counsel, the Complaint would not have been amended when it was to add [additional allegations] . . . However . . . there is no evidence of fraud or collusion among Class Counsel and Defendants' counsel."   *Id*., 1315.   The court went on to clarify that the broadening of the original complaint was not a ground for a sustainable allegation of collusion: "American Express **sought to negotiate a global peace**, and ensuring that all possible claims arising from the foreign currency conversion methodology be included was a critical component of any proposed settlement." *Id*.   (emphasis added).   *See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) (plaintiffs, also represented by Lieff Cabraser, consolidated state class actions in one large national class action in federal court, and a settlement agreement was submitted for approval just three days later).

It is dishonest and disingenuous for the PEC here to label as collusive conduct that they know is routine and proper—especially considering it is conduct that they themselves have repeatedly engaged in.   But even beyond this obvious hypocrisy, the PEC here fails to explain that the *Mathena* class action already covered over 85% of Webster's consumers, who live in

Connecticut.  Webster is a regional bank, operating bank branches only in the states of

Connecticut, Massachusetts, Rhode Island and New York.  Understandably, it made no sense for

Webster to settle a case if it could not include the remaining 15% of accountholders outside of

Connecticut.  As such, once a settlement agreement was negotiated in principle (over two long

months of negotiations), the parties agreed to process the settlement in federal court.  The other

lawsuit against Webster was filed after the *Mathena* case in federal court in New York, where

only a small percentage of Webster's customers live.  Although the lawyers in that case

repeatedly approached Webster Bank about settling their case, Webster declined to engage them

while negotiating with Mathena's lawyers, thereby avoiding a reverse auction situation.

### The PEC Speaks Only For One "Objector"

It is important to stress again here, as the PEC continues its series of baseless filings—

which use up precious judicial resources—that "[t]here is no class action rule, statute, or case

that allows a putative class plaintiff or counsel to exercise class rights en masse, either by

making a class-wide objection or by attempting to effect a group-wide exclusion from an existing

class.  Indeed, to do so would infringe on the due process rights of the individual class members,

who have the right to intelligently and individually choose whether to continue in a suit as class

members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998) (citing *Eisen v.

Carlisle & Jacquelin,* 417 U.S. 156, 173-77 (1974)).  The PEC here continues to arrogate for

itself a right to make class-wide objections that it simply does not have.  But in this case, the

PEC is nothing more than a group of self-interested lawyers representing a lone objector.  And

their baseless accusations cannot properly be allowed to hold up preliminary approval of an

excellent settlement that provides valuable relief to thousands of other class members.

6

Mr. Matos (through his large number of lawyers) can have his objections heard at the final fairness hearing, along with any other objectors.

Dated:  October 8, 2010                              Respectfully Submitted,

_____

Hassan A. Zavareei
Jonathan K. Tycko
Jeffrey D. Kaliel
**Tycko & Zavareei LLP**
Suite 808
2000 L Street, N.W.
Washington, D.C. 20036
(202) 973-0900

*Proposed Settlement Class Counsel*

<u>**CERTIFICATE OF SERVICE**</u>

I, Hassan A. Zavareei, hereby certify that pursuant to Local Rule 5.4, the foregoing document was caused to be served, electronically via ECF as to filing users and via United States Mail as to the recipients listed below, on this 8th day of October, 2010.

**Non-Filing User Recipients:**

Darryl J. May
Mariah E. Murphy
BALLARD SPAHR LLP
1735 Market Street
51st Floor
Philadelphia, PA 19103

_____