# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RAMONA TROMBLEY, et. al.,<br>on behalf of herself and all others similarly situated, | Civil Action No. 1:10-CV-00232 |
| | Judge John D. Bates |
| Plaintiffs, | |
| -v- | |
| NATIONAL CITY BANK | |
| Defendant. | |

## OBJECTOR ROBERT MATOS' NOTICE OF RECENT DECISION

Objector Robert Matos hereby files this Notice of Recent Decision.  Attached hereto as

**Exhibit A** is a true and correct copy of the Eleventh Circuit Court of Appeals' October 15, 2010

decision in *Cappuccitti v. DirecTV*, --- F.3d ----, 2010 WL 4027719 (11th Cir. Oct. 15, 2010).

The attached decision vacates and supersedes the Eleventh Circuit's prior, July 19, 2010

decision[1] in the same matter.

Dated: October 19, 2010                    Respectfully submitted,


                                    ___/s/ Roger M. Adelman_____
                                    Roger M. Adelman  (DC Bar No.  056358)
                                    **Law Office of Roger M. Adelman**
                                    1100 Connecticut Avenue, NW
                                    Suite 730
                                    Washington, DC  20036

---

[1] 611 F.3d 1252 (11th Cir. 2010).

Robert C. Gilbert *(admitted pro hac vice)*
**Alters Boldt Brown Rash & Culmo, P.A.**
4141 N.E. 2nd Avenue
Miami, FL  33137
(305) 571-8550

Michael W. Sobol *(admitted pro hac vice)*
Roger N. Heller *(admitted pro hac vice)*
**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery Street, 29th Floor
San Francisco, CA  94111
(415) 956-1000

Bonny E. Sweeney *(admitted pro hac vice)*
**Robbins Geller Rudman & Dowd LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058

Eric B. Fastiff (DC Bar No.  453854)
**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
(415) 956-1000

*Counsel for Objector Robert Matos*

## CERTIFICATE OF SERVICE

I, Roger N. Heller, one of the attorneys for Objector Robert Matos, hereby certify that pursuant to Local Rule 5.4, the foregoing document was caused to be served, electronically via ECF as to filing users and via United States Mail as to the recipients listed below, on this 19th day of October, 2010.

**/s/ Roger N. Heller**

**Non-Filing User Recipients**

Mariah E. Murphy
BALLARD SPAHR LLP
Woodland Falls Corporate Park
210 Lake Drive East
Cherry Hill, NJ 08002
897582.1

# Exhibit A

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14107

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 15, 2010
JOHN LEY
CLERK

D. C. Docket No. 09-00627-CV-CAP-1

RENATO CAPPUCCITTI,
on behalf of himself and all
others similarly situated,

Plaintiff-Appellee,

versus

DIRECTV, INC.,
a California Corporation,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(October 15, 2010)
ON PETITION FOR REHEARING

Before TJOFLAT, WILSON and EBEL,[*] Circuit Judges.

_____

[*] Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

PER CURIAM:

On July 19, 2010, we issued an opinion in this case.  Cappuccitti v.

DirecTV, Inc., No. 09-14107, slip op. (11th Cir. July 19, 2010).  We based our

decision on our interpretation of the jurisdictional requirements of the Class

Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in

scattered sections of 28 U.S.C.), which we have elsewhere called a "statutory

labyrinth."  Lowery v. Ala. Power Co., 483 F.3d 1184, 1199 (11th Cir. 2007).

Subsequent reflection has led us to conclude that our interpretation was incorrect.

Specifically, CAFA's text does not require at least one plaintiff in a class action to

meet the amount in controversy requirement of 28 U.S.C. § 1332(a).  Accordingly,

we construe both parties' petitions for rehearing en banc to include petitions for

panel rehearing,[1] vacate our earlier opinion, and replace it with this one.

## I.

DirecTV, Inc. ("DirecTV"), a California corporation, is the largest direct-to-

home satellite television provider in the United States, beaming a wide variety of

programs to millions of subscribers throughout the country.  In June 2004, Renato

Cappuccitti, a Georgia resident, entered into an agreement (the "Customer

---

[1] 11th Cir. R. 35-5 ("A petition for rehearing en banc will also be treated as a petition for rehearing before the original panel.").

2

Agreement") to receive DirecTV's service and thereby became a DirecTV subscriber.[2]  In March 2008, Cappuccitti cancelled his subscription.  In response, in April 2008, DirecTV charged him a $420 "early cancellation fee" in accordance with the terms of the Customer Agreement.

On March 6, 2009, Cappuccitti, on behalf of himself and a putative class of DirecTV subscribers in Georgia, brought this action against DirecTV in the United States District Court for the Northern District of Georgia.  Although Cappuccitti had not paid the cancellation fee, his complaint sought recovery of the fee in Count I, a claim for "Money Had and Received," and in Count II, a claim for "Unjust Enrichment."  In Count III, Cappuccitti sought a declaratory judgment invalidating the cancellation fee on the ground that it is unlawful and therefore unenforceable under Georgia law.[3]  On May 11, 2009, DirecTV filed a motion to compel arbitration under the arbitration clause of the Customer Agreement or, alternatively, to dismiss Counts I and II, under Rule 12(b)(6) of the Federal Rules

---

[2]  The Customer Agreement was modified a number of times—in accordance with its terms—between its formation and Cappuccitti's cancellation of DirecTV's service.  Like the district court, we analyze the provisions of the Customer Agreement in effect at the time Cappuccitti cancelled the service.

[3]  Georgia law provides the rule of decision in this case since the Customer Agreement was entered into in Georgia and performed there.  As we indicate in part II.B., infra, nowhere in the three counts of his complaint does Cappuccitti identify the specific Georgia law—whether statutory or case law—that purportedly renders the early cancellation fee unlawful.

of Civil Procedure, on the ground that Cappuccitti had not paid the cancellation

fee.[4]  On July 17, 2009, the district court issued an order denying the motion to

compel arbitration and granting the motion to dismiss Counts I and II.  Count III

remained undisturbed.  DirecTV now appeals the part of the order denying

arbitration.  We have jurisdiction under 9 U.S.C. § 16(a)(1)(B).

II.

In subpart A., we address the question of whether CAFA afforded the

district court subject matter jurisdiction to entertain this class action.  Concluding

that the court did possess jurisdiction, we address, in subpart B., the question of

whether the district court erred in denying DirecTV's motion to compel

arbitration.

A.

Under 28 U.S.C. § 1332(d)(2)(A):

The district courts shall have original jurisdiction of any civil action
in which the matter in controversy exceeds the sum or value of

---

[4] On June 29, 2009, with leave of court, Cappuccitti filed a First Amended Class Action Complaint to add David Ward as a named plaintiff (along with Cappuccitti).  Ward had become a DirecTV subscriber in August 2008.  In May 2009, he refused to enter into a new customer agreement and cancelled his subscription.  DirecTV charged him a $300 early cancellation fee. Ward is not a party in this appeal.  In denying arbitration, the district court did not consider the amended complaint (which, with the exception of references to Ward, is substantively identical to the initial complaint) and Ward's individual claim.  Instead, the district court treated the initial complaint as the operative pleading.  We do likewise.

$5,000,000, exclusive of interest and costs, and is a class action in which–

> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant . . . .

A "class action" includes "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." Id. § 1332(d)(1)(B).

Additionally, the putative class must contain at least 100 members for a district court to exercise subject matter jurisdiction under CAFA. Id. § 1332(d)(5). To determine whether the amount in controversy requirement is met "[i]n any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." Id. § 1332(d)(6).

There is no requirement in a class action brought originally or on removal under CAFA that any individual plaintiff's claim exceed $75,000. See, e.g., 14AA Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3704 (Supp. 2010) ("CAFA . . . extends federal subject matter jurisdiction to class actions when there is minimal diversity and the total amount in controversy exceeds $5,000,000, exclusive of interest and costs, and provides

for aggregation even if no individual class member asserts a claim that exceeds

$75,000.").[5]  Eleventh Circuit precedent does not contradict this proposition.[6]

Applying these requirements to the controversy at hand, it becomes clear

that the district court had subject matter jurisdiction as an original matter.

Cappuccitti brought the action on behalf of himself and all persons similarly

situated pursuant to Rule 23.  The putative class exceeded 100 persons,[7] and the

amount of controversy—in the aggregate—exceeded $5,000,000, exclusive of

interest and costs.[8]  As the plaintiff class was comprised entirely of Georgia

---

[5]  We note that for a mass action to be brought under CAFA, however, additional
jurisdictional requirements must exist.  See 28 U.S.C. § 1332(d)(11)(B)(i); see also Lowery v.
Ala. Power Co., 483 F.3d. 1184, 1199–1207 (11th Cir. 2007).

[6]  See Miedema v. Maytag Corp., 450 F.3d 1322, 1330–32 (11th Cir. 2006) (considering
whether individual claims valued at less than $1,000 exceeded $5,000,000 in the aggregate in an
extensive discussion of subject matter jurisdiction over a class action under CAFA); Evans v.
Walter Indus., Inc., 449 F.3d 1159, 1163 (11th Cir. 2006) (stating that, "[u]nder CAFA, federal
courts now have original jurisdiction over class actions in which the amount in controversy
exceeds $5,000,000 and there is minimal diversity" and making no mention of a further
requirement that any one plaintiff satisfy the amount in controversy requirement of 28 U.S.C. §
1332(a)).

[7] Plaintiffs do not specifically allege that the class is larger than 100 persons, but simple
arithmetic dictates that it must be far larger. With damages to individuals ranging from $175 to
$480, the class size must be at least 10,417 ($5,000,000 divided by $480).

[8] In his amended complaint, Cappuccitti states that "the matter in controversy exceeds the
value of $5,000,000, exclusive of interests and costs," and DirecTV does not challenge this
assertion.  "If the jurisdictional amount is either stated clearly on the face of the documents
before the court, or readily deducible from them, then the court has jurisdiction."  Lowery, 483
F.3d at 1211.  We assume that the sum claimed here by Cappuccitti was made in good faith, and
it therefore controls.  See St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–89, 58
S. Ct. 586, 590, 82 L. Ed. 845 (1938).  We note, however, that discovery may uncover certain
facts—such as an insufficient number of Georgia subscribers, and therefore an insufficient

residents, there was sufficient diversity, since DirecTV is a California corporation.

These factors alone were sufficient to allow the district court to exercise subject

matter jurisdiction, and the further requirements and exceptions to jurisdiction

under CAFA neither apply nor warrant discussion here.

In sum, Cappuccitti properly requested that the district court certify his

proposed class pursuant to Rule 23(c) in order to obtain declaratory and injunctive

relief under Rule 23(b)(2) and damages under Rule 23(b)(3).

B.

Contractual disputes between Cappuccitti and DirecTV are subject to

binding arbitration[9] in accordance with Section 9 of the Customer Agreement.

Section 9 states:

> You may, in arbitration, seek any and all remedies otherwise available
> to you pursuant to your state's law. . . .  Unless we agree to pay your
> fee for you, you only need to pay an arbitration initiation fee equal to
> [the] filing fee [you would be charged by the state court], not to
> exceed $125. . . .  We also agree to pay the costs of the arbitration
> proceeding.  Other fees, such as attorney's fees and expenses of travel

---

number of class members, to allow for a potential recovery of $5,000,000—that would destroy
the district court's jurisdiction over the case and require the district court to dismiss the case
under Federal Rule of Civil Procedure 12(b)(1).  See id. at 289 (discussing the "legal certainty"
test).

[9] At the top of the Customer Agreement is the following statement: "**THIS
DOCUMENT DESCRIBES THE TERMS AND CONDITIONS OF YOUR RECEIPT
AND PAYMENT OF DIRECTV® SERVICE AND IS SUBJECT TO ARBITRATION
(SECTION 9).**"

7

to the arbitration will be paid in accordance with JAMS Rules.[10]  The
arbitration will be held at a location in your hometown area unless
you and we both agree to another location or telephonic arbitration.

The JAMS Rules in effect at the time the contract was made and when

Cappuccitti cancelled his service provide that the arbitrator can award attorney's

fees and expenses if allowed by applicable state law, here Georgia law.  JAMS

Streamlined Arbitration Rules & Procedures 18–19 (2007), available at

http://www.jamsadr.com/files/Uploads/Documents/JAMS-streamlined_arbitration

_rules-2007.pdf.

Section 9 also states: "Neither you nor we shall be entitled to join or

consolidate claims in arbitration by or against other individuals or entities, or

arbitrate any claim as a representative member of a class or in a private attorney

general capacity."[11]  Section 9 therefore requires that Cappuccitti, proceeding

individually, arbitrate his claim that the early cancellation fee is invalid.

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., arbitration

agreements generally are considered valid and enforceable.[12]  They may be held

---

[10]  JAMS is an alternative dispute-resolution provider.

[11]  Section 9 contains a severability clause, which states that "[i]f . . . the law of your state
would find this agreement to dispense with class arbitration procedure unenforceable, then this
entire Section 9 [provision for arbitration] is unenforceable."

[12]  The FAA provides that,

unenforceable, however, if, under the controlling state law of contracts, requiring

arbitration of a dispute would be unconscionable.[13]  See Doctor's Assocs., Inc. v.

Casarotto, 517 U.S. 681, 686–87, 116 S. Ct. 1652, 1656, 134 L. Ed. 2d 902

(1996).  Cappuccitti contends that requiring him individually to arbitrate the

validity of the early cancellation fee would be unconscionable under Georgia law.

The Georgia law of contracts deems an arbitration clause unenforceable if,

"in the light of the general commercial background and the commercial needs of

---

> A written provision in . . . a contract evidencing a transaction involving commerce
> to settle by arbitration a controversy thereafter arising out of such contract or
> transaction, or the refusal to perform the whole or any part thereof, or an
> agreement in writing to submit to arbitration an existing controversy arising out of
> such a contract, transaction, or refusal, shall be valid, irrevocable, and
> enforceable, save upon such grounds as exist at law or in equity for the revocation
> of any contract.

9 U.S.C. § 2 (emphasis added).

[13]  We refer to the law of contracts governing "contracts generally and not arbitration
agreements specifically."  Dale v. Comcast Corp., 498 F.3d 1216, 1219 (11th Cir. 2007) (quoting
Bess v. Check Express, 294 F.3d 1298, 1306 (11th Cir. 2002)).

> What States may not do is decide that a contract is fair enough to enforce all its
> basic terms (price, service, credit), but not fair enough to enforce its arbitration
> clause.  The Act makes any such state policy unlawful, for that kind of policy
> would place arbitration clauses on an unequal "footing," directly contrary to the
> Act's language and Congress's intent.

Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686, 116 S. Ct. 1652, 1655, 134 L. Ed. 2d 902
(1996) (quoting Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 281, 115 S. Ct. 834, 843,
130 L. Ed. 2d 753 (1995)).  In Doctor's Associates, the Court mentioned "unconscionability" as a
typical contract law basis for declining to enforce an arbitration agreement.  517 U.S. at 687, 116
S.Ct. at 1656.

the particular trade or case, the clause[ ] involved [is] so one-sided as to be unconscionable <u>under the circumstances existing at the time of the making of the contract</u>." <u>NEC Techs., Inc. v. Nelson</u>, 478 S.E.2d 769, 771 (Ga. 1996) (internal citations omitted) (emphasis added).[14]

Georgia's unconscionability doctrine contemplates both procedural unconscionability, which "addresses the process of making the contract," and substantive unconscionability, which "looks to the contractual terms themselves." <u>Id.</u> (internal citations omitted).  When considering procedural unconscionability, the Georgia courts examine "the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice." <u>Id.</u> at 772 (internal citations omitted).  As for the substantive element, "courts have focused on matters such as the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." <u>Id.</u> (internal citations omitted).  It is obvious from these quotations that

---

[14]  The Supreme Court of Georgia noted that unconscionability is a "flexible doctrine designed to allow courts to directly consider numerous factors which may adulterate the contractual process." <u>NEC Techs., Inc. v. Nelson</u>, 478 S.E.2d 769, 771 (Ga. 1996) (internal quotations and citations omitted).

resolving the issue of unconscionability under Georgia law is a fact-intensive exercise.

A finding that enforcing a contract provision would be unconscionable is a finding of an ultimate fact; it is inferred from a variety of circumstances depending on the nature of the case.[15]   In a sense, a court must conduct a mini-bench trial to reach the finding.[16]   The precise issue we must resolve here is whether the evidence before the district court, and its subsidiary fact findings, were sufficient to justify the inference—the ultimate finding—that requiring Cappuccitti individually to arbitrate his claim that the early cancellation fee is invalid would be unconscionable and would have been so "under the circumstances existing at the time" he and DirecTV entered into the Customer Agreement in force at the time he cancelled his subscription.  See id. at 771.

In the district court, Cappuccitti argued that it would be unconscionable to require him individually to submit his claim that the early cancellation fee is

_____

[15]   One could argue that the ultimate finding on the unconscionability issue is also a legal conclusion, i.e., unconscionability is a mixed question of fact and law.  If so, because unconscionabilty is determined on a case-by-case basis, the determination is nonetheless heavily fact laden.

[16]   In most cases, the court will make the finding on the basis of the claims the plaintiff is asserting, the contract documents (including the arbitration clause), the representations of the parties, judicial notice of court judgments, statutes, regulations (such as the amount of state and federal court filing fees), adjudicative facts (see Fed. R. Evid. 201), affidavits, or testimony.

invalid to arbitration for two interrelated reasons. First, he claimed that the amount he could recover in arbitration, $420, would be far less than the expenses he would incur in obtaining the recovery. This was so because his claim was labeled as one for money had and received or for unjust enrichment, and Georgia law did not afford a claimant prevailing on either claim the right to reimbursement for attorney's fees and costs. Second, Cappuccitti argued that his inability to recover attorney's fees and costs in combination with Section 9's bar against consolidating claims for arbitration or pursuing them as a member of a class worked effectively to preclude him from obtaining legal representation. As a result, DirecTV was charging and being paid an invalid cancellation fee with impunity.

The sine qua non of Cappuccitti's argument was, and remains, the unavailability of attorney's fees and costs. DirecTV met the argument head on by drawing the district court's attention to Georgia's Fair Business Practices Act ("FBPA"), O.C.G.A. § 10-1-390 et seq. The FBPA, in O.C.G.A. § 10-1-399(d), provides that

> [i]f the court finds in any action that there has been a violation of [the FBPA], the person injured by such violation shall, in addition to other relief provided for in this Code section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and expenses of litigation incurred in connection with said action.

12

(Emphasis added).[17]

The FBPA, in O.C.G.A. § 10-1-393(a), states that "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful."  DirecTV contended that its practice of charging its subscribers an early cancellation fee clearly involved "consumer transactions" and "practices in . . . commerce."  And, reduced to its essentials, Cappuccitti's claim was that the early cancellation fee was "[u]nfair or deceptive."[18]  Count III alleged as much; it sought a declaration that the cancellation fee is "unenforceable under Georgia law" and is an "illegal penalty provision" that lacks "support in the law."  First Am. Class Action Compl. 14, June 29, 2009, ECF No. 29.  Thus, at least in substance, Count III stated an unfair or deceptive acts or practices claim without citing § 10-1-393(a).

---

[17]  Still another FBPA provision, O.C.G.A. § 10-1-399(c), provides a private right of action for treble damages "so long as the alleged violation [of the FBPA] involves 'the breach of a duty owed to the consuming public in general' and therefore has at least some potential 'impact on the consumer marketplace.' "  Johnson v. GAPVT Motors, Inc., 663 S.E.2d 779, 784 (Ga. Ct. App. 2008) (quoting Brown v. Morton, 617 S.E.2d 198, 202 (Ga Ct. App. 2005)).

Presumably, Cappuccitti could have brought suit under this provision if he had cause to believe that DirecTV intended to act unfairly or deceptively in inserting the early cancellation fee into the Customer Agreement.  A showing of intent, however, is not required to prevail on all FBPA claims.  See O.C.G.A. § 10-1-399(a).

[18]  This essentially is the basis for Cappuccitti's causes of action for money had and received and unjust enrichment.  See infra notes 20 and 21.

In determining whether requiring Cappuccitti to submit his claim to arbitration would be unconscionable, the district court faced the same question we face here: would it have been be unconscionable "under the circumstances existing at the time of the making of the contract"? NEC Techs., 478 S.E.2d at 771. To answer that question the district court needed to consider all of the remedies available to Cappuccitti under Georgia law at the moment he contracted with DirecTV. The FBPA provided the basis for one of those remedies in O.C.G.A. § 10-1-393(a)—namely, a declaration that the cancellation fee was unfair or deceptive and thus unlawful. The FBPA also authorized, in O.C.G.A. § 10-1-399(d), the recovery of "reasonable attorneys' fees and expenses of litigation." Cappuccitti acknowledged all of this in his memorandum in opposition to DirecTV's motion to compel arbitration. The memorandum stated that he could have "theoretically pleaded" an FBPA claim in his complaint, and "d[id] not deny" that he "purposely did not plead [the FBPA] claim in order to be able to proceed as a class."[19] Pl.'s Mem. in Opp'n 18, 17 n.14, May 29, 2009, ECF No. 21. Cappuccitti also acknowledged that the FBPA "provide[d] for enhanced damages and attorneys' fees." Id. at 17.

---

[19] O.C.G.A. § 10-1-399(a) authorizes private actions under the FBPA but specifically precludes a private plaintiff from bringing such a claim "in a representative capacity."

According to Cappuccitti, he was "entitled to have DIRECTV's motion evaluated on the basis of his complaint as filed, not based on additional causes of action he could have pleaded." Id. at 18.  The district court bought this argument. In doing so, the court disregarded the circumstances prevailing at the time of the contract, and, instead, substituted for those circumstances the circumstances Cappuccitti's attorneys created in limiting their client's remedies to money had and received[20] and unjust enrichment.[21]  In effecting this substitution, the court

---

[20] In Georgia, a claim for money had and received is quasi contractual.  It "is comprised of the following elements: a person has received money of the other that in equity and good conscience he should not be permitted to keep; demand for repayment has been made; and the demand was refused." Fernandez v. WebSingularity, Inc., 681 S.E.2d 717, 721 (Ga. Ct. App. 2009) (internal quotations and citations omitted).  More generally,

> [a]n action for money had and received, although legal in form, is founded on the equitable principle that no one ought to unjustly enrich himself at the expense of another, and is a substitute for a suit in equity.  Such a claim exists only where there is no actual legal contract governing the issue.

Id. (internal quotations and citations omitted); see generally Gulf Life Ins. Co. v. Folsom, 349 S.E.2d 368 (Ga. 1986).

Although we need not decide the issue, it appears that a cause of action for money had and received is not available in this case because the dispute at issue arises out of an express contract, the Customer Agreement.

[21] In Georgia,

> The theory of unjust enrichment is basically an equitable doctrine that the benefitted party equitably ought to either return or compensate for the conferred benefits when there was no legal contract to pay.  The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received.

was able to conclude that Cappuccitti could not recover his attorney's fees and costs if he prevailed individually in arbitration.[22]

The court erred.  As Cappuccitti readily conceded in opposing DirecTV's motion to compel arbitration, attorney's fees and litigation expenses would be available to him if he prevailed on the theory that the early cancellation fee is invalid as "[u]nfair or deceptive" under O.C.G.A. § 10-1-393(a).  The JAMS Rules provide for the award of attorney's fees and litigation expenses if allowed by state law, and O.C.G.A. § 10-1-399(d) authorizes them.

In light of this, it is apparent that the district court's order denying arbitration must be vacated and the case remanded for further proceedings

---

Morris v. Britt, 620 S.E.2d 422, 424 (Ga. Ct. App. 2005) (internal quotations and citations omitted); see also Tuvim v. United Jewish Cmtys., Inc., 680 S.E.2d 827, 829–30 (Ga. 2009) (quoting Engram v. Engram, 463 S.E.2d 12, 15 (Ga. 1995)) ("Unjust enrichment applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for.").  As we observed in note 20, supra, the dispute here arises out of an express contract, not a quasi contractual obligation.

[22] The district court denied DirecTV's motion to compel arbitration on paper as opposed to a face-to-face hearing with counsel.  The evidence therefore was limited to Cappuccitti's complaint, DirecTV's motion to compel arbitration or, alternatively, to dismiss Counts I and II, and Cappuccitti's memorandum in opposition to DirecTV's motion to compel.  In its order denying the motion, the court made no reference to the FBPA or to the specific provisions of Section 9 of the Customer Agreement and the JAMS Rules, which incorporated Georgia law and thus authorized the award of attorney's fees and litigation expenses to successful FBPA claimants in arbitration.

consistent with this opinion.  We therefore VACATE the order and REMAND the

case for further proceedings.[23]

       SO ORDERED.

---

[23]  We note that this action has been transferred pursuant to 28 U.S.C. § 1407 to the District Court for the Central District of California for consolidated pretrial proceedings. Transfer Order, Oct. 13, 2009, ECF No. 45.