UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RAMONA TROMBLEY, et al., on behalf of herself and all others similarly situated,

Plaintiffs,

v.

NATIONAL CITY BANK,

Defendant.

Civil Action No. 10-00232 (JDB)

# MEMORANDUM OPINION

Presently before the Court is Plaintiffs' Unopposed Renewed Motion for Preliminary Approval of the Class Action Settlement, Certification of Settlement Class, and Setting of a Final Fairness Hearing. Through their motion, plaintiffs request that the Court enter an Order: (1) preliminarily certifying a class for settlement purposes only; (2) preliminarily approving the Revised Settlement Agreement filed with the Court on December 22, 2010; (3) approving the notice provisions outlined in the Revised Settlement Agreement; (4) appointing Hilsoft Notifications as Notice Administrator; (5) appointing the claims administrator agreed to by the Settling Parties as Claims Administrator; (6) appointing Ramona Trombley, Jeff Doehner, and Brian Wells as representative plaintiffs; (7) appointing Hassan A. Zavareei of Tycko & Zavareei LLP, as Settlement Class Counsel; and (8) scheduling a Final Fairness Hearing to consider final approval of the settlement.

After careful review and consideration of plaintiffs' motion and supporting memorandum, the objections of Robert Matos, supplemental briefing in response to the objections (including affidavits, declarations, and reports), and the arguments presented at the

preliminary approval hearing and a subsequent telephone conference, the Court will grant plaintiffs' motion for preliminary approval subject to the terms and conditions set forth below. A separate order consistent with this Memorandum Opinion will be issued today.

## BACKGROUND

Plaintiffs filed their class action on February 17, 2010, alleging that defendant National City Bank[1] engaged in unlawful and deceptive practices by improperly charging its customers overdraft fees for insufficient funds on debit card transactions in violation of various state and federal laws. Compl. ¶¶ 2, 13-14. Plaintiffs allege that National City Bank "reorder[ed] electronic debit transactions from the highest dollar amount to lowest dollar amount so as to deplete the customer's available funds as quickly as possible while maximizing the number of overdraft fees collected." Compl. ¶ 2. Plaintiffs also allege that National City Bank provided false and misleading account balance information and failed properly to disclose its overdraft policies. Id. The Court exercises jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332.[2]

In April 2010, the Court received notification from the U.S. Judicial Panel on Multidistrict Litigation ("MDL Panel") that a conditional transfer order had been entered, directing that this case be conditionally transferred to the Southern District of Florida to

---

[1] On December 31, 2008, the PNC Financial Services Group acquired National City Bank. Compl. ¶ 7. National City Bank was merged into PNC Bank, N.A. ("PNC") on November 6, 2009 and no longer exists as a legal entity; for clarity, reference will be made to National City Bank or PNC depending on the context. See Revised Settlement Agreement ¶ 1(m).

[2] Plaintiffs initially raised concerns that a recent Eleventh Circuit case, Cappuccitti v. DirecTV, Inc., 611 F.3d 1252, 1257 (11th Cir. 2010), jeopardized their chance for recovery at trial. See Pls.' Unopposed Mot. in Support of Prelim. Approval at 8. Cappuccitti held that a federal court did not have jurisdiction over a Class Action Fairness Act of 2005 case, because the putative class representative's claim did not satisfy the $75,000 amount-in-controversy requirement of 28 U.S.C. § 1332(a). Id. However, the Eleventh Circuit later reheard the case en banc and vacated its earlier opinion, which was superseded by Cappuccitti v. DirecTV, Inc., 623 F.3d 1118 (11th Cir. 2010). All parties agree that Cappuccitti is no longer relevant to the evaluation of this case.

Multidistrict Litigation Proceeding No. 2036, In re Checking Account Overdraft Litigation ("MDL No. 2036"). On July 28, 2010, plaintiffs and National City Bank (collectively, "the parties") entered into a settlement agreement and filed an unopposed motion for preliminary approval in this Court. On August 9, 2010, the parties informed the MDL Panel that they had reached a settlement, and the MDL Panel then vacated its order to transfer the action to MDL No. 2036, thereby returning the case back to this Court to evaluate the proposed settlement. The MDL Panel's ruling, however, does not bar future transfer of the case to MDL No. 2036 if this Court does not approve the proposed settlement or does not fully resolve the case.

On August 13, 2010, Robert Matos ("Objector") appeared and filed his objections to the proposed settlement. Matos is the named plaintiff in Matos v. Nat'l City Bank, No. 10-CV-21771 (S.D. Fla. June 1, 2010), an overlapping class action that is part of MDL No. 2036. The Court held a hearing on November 18, 2010 and heard arguments from plaintiffs, National City Bank, and Objector relating to preliminary approval of the proposed settlement. On December 17, 2010, the Court also held a brief telephone conference with counsel for plaintiffs and National City Bank to discuss several concerns with the notice and release provisions of the settlement agreement. Following that discussion, the parties filed a renewed motion for preliminary approval, revised settlement agreement, and revised proposed order on December 22, 2010, and the Court then received a further response from Objector and reply from plaintiffs.

The terms of the Revised Settlement Agreement include the following:

- A Settlement Class of "[a]ll persons who hold or ever held a National City Account[3] who

---

[3] "National City Account" means "a non-business consumer deposit account originally maintained by or with National City, and includes any account existing on or before November 6, 2009 that was subsequently converted to a PNC account in connection with National City's merger into PNC. Such term does not include accounts originally opened with PNC or one of PNC's predecessor banks (other than National City)."

at any time during the Class Period incurred at least one Overdraft Fee[4] associated with at least one National City Debit Card Transaction[5] that was not previously reversed, refunded, or returned to the Settlement Class Member by Defendant."

- A $12,000,000 Settlement Fund, inclusive of all attorneys' fees, costs, expenses, and incentive payments to representative plaintiffs, from which Settlement Class Members will receive $36 for each eligible overdraft charge incurred during any two calendar months from July 1, 2004 to August 15, 2010, unless the total amount needed to pay valid claims exceeds funds available in the Settlement Fund. The two months need not be consecutive.

- National City Bank will also provide up to an additional $500,000 for published notice, administration of the settlement, and other notice and claims administration costs. If the costs exceed $500,000, the costs will be deducted from the Settlement Fund.

- If the amount claimed by Settlement Class Members is less than the remaining amount after attorneys' fees, costs, expenses, incentive awards, and notice and claims administration costs are paid, the remainder will be distributed on a pro rata basis, with each Settlement Class Member receiving up to (but not exceeding) three times the amount claimed. Any remaining funds will be distributed through a cy pres to a nonprofit organization or organizations agreed upon by Plaintiffs and National City Bank, and subject to approval by the Court.

## **DISCUSSION**

Generally, preliminary approval of a class action settlement will be granted if it appears to fall "within the range of possible approval" and "does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys." Newberg on Class Actions, § 11:25 (4th ed. 2010) (quoting Manual for Complex Litigation, Third, § 30.41 (1999)); In re Vitamins Antitrust Litig., No. 99-197, 1999 WL 1335318, at *5 (D.D.C.

---

[4] "Overdraft Fee" means "an overdraft fee, daily overdraft fee, continuous overdraft fee, or other similar fee charged by [National City Bank] to a holder of a National City Account and associated with a National City Debit Card transaction."

[5] "National City Debit Card" means a "debit card, check card, or any other bank card used for debit purchases and/or automated teller machine ("ATM") transactions from a National City Account." "National City Debit Card" shall also include a "debit card, check card, or any other bank card issued by PNC, following National City's merger into PNC, to customers who were formerly customers of National City."

-4-

November 23, 1999).

Class actions seeking class certification and settlement at the same time, however, require "closer judicial scrutiny" than settlements that are reached after class certification. Manual for Complex Litigation, Fourth, § 21.612 (2004). Such class actions that settle early in the case "sometimes make meaningful judicial review more difficult and more important." Id; see also Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997) (observing that "settlement-only class certification" requires "undiluted, even heightened" attention that is "of vital importance"); D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001) (calling for "a higher degree of scrutiny in assessing [the] fairness" of settlements negotiated prior to class certification and the need to examine the "negotiating process leading up to the settlement as well as the settlement's substantive terms").

Here, plaintiffs seek preliminary approval of both class certification and settlement. Objector filed his objections to the initial motion for preliminary approval shortly after it was filed and filed his latest objections just days ago, on December 28, 2010. The Court will consider each of Objector's arguments in turn.

**I.     Adequacy of Proposed Settlement Amount**

Objector argues that the Court cannot sufficiently evaluate the adequacy of the proposed settlement, because plaintiffs have not conducted an independent analysis of the merits of their case and adequately explained the basis for a $12 million dollar settlement. See Objections of Robert Matos to Pls.' Mot. for Prelim. Approval ("Obj.'s Mem.") at 3-7; Objections of Robert Matos to Mot. for Prelim. Approval of Revised Class Action Settlement ("Obj.'s Second Mem.") at 2. Objector contends that plaintiffs and National City Bank have not reached a settlement that falls within the range of possible approval. Id.

In evaluating a proposed settlement, the Court's primary role is to evaluate the relief provided in the settlement against the relative strength of plaintiffs' case, including their ability to obtain recovery at trial. Equal Rights Ctr. v. Washington Metro. Area Transit, 573 F. Supp. 2d 205, 211 (D.D.C. 2008) (citing Thomas v. Albright, 139 F.3d 231, 231 (D.C. Cir. 1988)); Blackman v. District of Columbia, 454 F. Supp. 2d 1, 8 (D.D.C. 2006) ("[T]he most important factor" in evaluating a proposed settlement is "comparison of the terms of the proposed settlement with the likely recovery that plaintiffs would realize if they were successful at trial."). The Court may refuse to approve a settlement where the plaintiffs' basis for estimating the potential value of the settlement is not clear. Newberg on Class Actions, supra, at §11:46; see also In re General Motors Corp. Pick-up Truck Fuel Tank Products Liab. Litig., 55 F.3d 768, 806 (3d Cir. 1995) (finding that the district court did not "sufficiently scrutinize the valuations of the settlement . . . and the settlement appears to be inadequate").

In their briefs and at the hearing, the parties have argued that the $12 million settlement represents a fair, adequate, and reasonable outcome given the strengths and weaknesses of their respective positions and the risks, time, and costs of continued litigation. Plaintiffs initially rely on Gutierrez v. Wells Fargo Bank, No. 07-CV-05923, 2010 WL 3155934 (N.D. Cal. August 10, 2010), a class action overdraft fee case that went to trial, as a source of comparison. Plaintiffs reviewed the expert reports in Gutierrez and applied the plaintiffs' expert damage analyses in that case to estimate the projected recovery in this case at trial, which plaintiffs claim is between $52 and $73 million.[6] See Pls.' Unopposed Mot. in Supp. of Mot. for Prelim. Approval ("Pls.'

---

[6] Plaintiffs' expert in Gutierrez provided comparisons of the overdraft fees that Wells Fargo Bank would have charged its customers during the class period under various sequencing methods and calculated the estimated damages if Wells Fargo Bank had not engaged in posting debit transactions from high to low. See Pls.' Mot. at 12-13. Here, Plaintiffs claim that National City Bank's total overdraft fee revenue is approximately 75% of the total

(continued...)

Mot.") at 13. Plaintiffs calculate that the $12 million settlement amounts to 17% to 24% of the best possible recovery if the case went to trial and therefore represents a fair, adequate, and reasonable settlement. Id. Plaintiffs also argue that the settlement in this case falls within the range of possible approval compared to the settlement amounts approved in Closson v. Bank of America N.A., No. CGC 04436877 (Cal. Super. Ct. July 30, 2008), see Pls.' Mot. at 15, and preliminarily approved in Schulte v. Fifth Third Bank, No. 09-6655 (N.D. Ill. September 10, 2010), see Pls.' Notice of Recent Development at 1-3.

The Court recognizes that the comparison of settlements in similar cases can be relevant when evaluating the fairness, adequacy, and reasonableness of a proposed settlement. See In re Ravisent Techs., Inc. Sec. Litig., No. 00-CV-1014, 2005 U.S. Dist. LEXIS 6680, at *32-34 (E.D. Pa. 2005) (comparing the percentage of recovery in settlements with expected recovery at trial of prior cases when evaluating the reasonableness of the settlement); In re Baan Co. Sec. Litig., 284 F. Supp. 2d 62, 65-66 (D.D.C. 2003) (same); In re Vitamins Antitrust Litig., No. 99-197, 2001 U.S. Dist. LEXIS 25067, at *58-61 (D.D.C. 2001) (same); In re Newbridge Networks Sec. Litig., No. 94-01678, 1998 WL 765724, at *2 (D.D.C. 1998) (same). Objector, however, contends that plaintiffs' reliance on the Gutierrez and Closson cases is misplaced and notes that the Fifth Third Bank settlement was preliminarily approved but not without substantive concerns. See Obj.'s Response to Notice of Recent Development ("Obj.'s Response") at 1-3.

Ultimately, plaintiffs must adequately explain why the Court should look to Gutierrez for

---

[6](...continued)
overdraft fee revenue that Wells Fargo Bank earned during the respective class period and, hence, that plaintiffs' estimated damages in this case should be approximately 75% of those estimated in Gutierrez. Id. Plaintiffs applied one of the seven sequencing methods that the Gutierrez plaintiffs' expert provided to calculate the potential recovery for this case. Id.

guidance.[7] After the filing of plaintiffs' motion for preliminary approval, the Gutierrez court ordered Wells Fargo Bank to pay $203 million in restitution to its customers for its improper overdraft fees and to cease its practice of reordering debit transactions from high to low.[8] In particular, plaintiffs must explain their rationale for selecting only one model from Gutierrez and for disregarding the other models used to estimate potential damages in that case. Although the Gutierrez award resulted from a bench trial and not a settlement, plaintiffs must explain why the Court should focus on only one Gutierrez model but ignore the fact that $203 million in damages was ultimately awarded based on an alternate model, far exceeding the $69 million to $98 million plaintiffs estimated for Gutierrez when calculating the potential recovery in this case.

The Court cautions the parties that they must offer evidence that enables the Court to calculate the potential trial recovery in this case in order to obtain final approval of the settlement. The Court should not have to rely entirely on comparisons to other overdraft fee settlements to properly evaluate the settlement and may not approve a settlement exclusively on those grounds. See Radosti v. Envision EMI, 717 F. Supp. 2d 37, 63 (D.D.C. 2010) ("Ultimately, the reasonableness of the settlement agreement must be considered in the context of this case, not in comparison to terms of other [] settlements."). At the Final Fairness Hearing, the parties should provide the Court with an independent analysis for reaching the agreed settlement amount and explain and defend their methodology to demonstrate that it is a fair, adequate, and reasonable settlement.

---

[7] Objector argues that the eventual $203 million trial award in Gutierrez demonstrates that the $12 million dollar settlement presented to the Court for preliminary approval is inadequate and further notes that the Gutierrez court rejected a $16 million dollar settlement. See Obj.'s Mem. at 4-7. In response, plaintiffs and National City Bank contend that Gutierrez is factually and legally distinguishable from this case, and that the recovery there is reflective of unique California law. See Pls.' Supp. Mot. at 12-14; Nat'l City Bank's Response at 8-14.

[8] The Gutierrez case is currently on appeal to the Ninth Circuit.

At the preliminary approval stage, however, the proposed settlement of $12 million, which allegedly represents 17% to 24% of the potential recovery at trial, is within the "range of possible approval" based on other approved class action settlements. See Baan, 284 F. Supp. 2d at 65-66 (finding that a settlement amount representing more than 16% of plaintiff's potential recovery at trial and between 32.5% and 54% of damages estimated by defendant's expert was within the "range of reasonableness" for settlement); Newbridge, 1998 WL 765724 at *2 ("an agreement that secures roughly six to twelve percent of a *potential* trial recovery . . . seems to be within the targeted range of reasonableness"). Although there are not such doubts or deficiencies as to cause this Court to decline to grant preliminary approval based on the settlement amount, the Court will continue to give close scrutiny to the proposed settlement amount in the final fairness assessment.

## II.     Discovery Prior to Settlement

Objector contends that plaintiffs failed to conduct sufficient discovery prior to settlement and could not have adequately evaluated the merits of their case. See Obj.'s Mem. at 3-4; Obj.'s Second Mem. at 2. Plaintiffs, however, contend that they used both informal and formal discovery to gather non-public factual information regarding National City Bank's overdraft fee practices and revenues, including written interrogatories, telephone conferences and in-person meetings, all of which enabled them to properly estimate the potential damages in this case. See Pls.' Mot. at 5, 9; Hassan Zavareei Decl. 20-21; Pls.' Supp. Brief and Response to Obj. of Robert Matos ("Pls.' Supp. Mot.") at 12. Plaintiffs maintain that they engaged in "lengthy and intense arms length negotiations" and "significant factual investigation." See Pls.' Mot. at 1, 11.

In the D.C. Circuit, district courts have routinely considered the "status of litigation at the time of settlement" as a factor in determining whether a proposed settlement warrants final

approval.  See, e.g., Equal Rights Ctr., 573 F. Supp. 2d at 212; Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd., 565 F. Supp. 2d 49, 57-58 (D.D.C. 2008).  Counsel should have "sufficient information, through adequate discovery, to reasonably assess the risks of litigation vis-à-vis the probability of success and range of recovery."  Radosti, 717 F. Supp. 2d at 62 (quoting Meijer, 565 F. Supp. 2d at 57).

But formal discovery is not required for preliminary approval and is not necessarily required even for final approval of a proposed settlement.  See Osher v. SCA Realty I, Inc., 945 F. Supp. 298, 306 (D.D.C. 1996) (finding that a "fair evaluation of the claims [] may be made prior to discovery" and approving settlement even though case "settled very early in the litigation process with little discovery").  Still, the parties must demonstrate to the Court at the final approval stage their sufficient appreciation for the merits of the case and be able to explain in greater detail the "significant factual investigation" made prior to negotiating a settlement.  See In re Vitamins Antitrust Litig., 305 F. Supp. 2d 100, 105 (D.D.C. 2004) (observing that settlement must not "come too early to be suspicious").  For now, however, it is enough that the parties represent that formal and informal discovery facilitated a significant investigation of the relevant facts contributing to arms-length settlement negotiation.  Although the Court will consider the timing of the settlement and the amount of discovery conducted at the final approval stage, the Court will not deny preliminary approval due to the absence of significant discovery at this point.

### III.     Proposed Allocation of Settlement Funds

Objector next argues that the proposed allocation of settlement funds is arbitrary, unfair, and inequitable because it fails adequately to compensate for Class Members' actual harm.  See Obj.'s Mem. at 1, 7-10; Obj.'s Second Mem. at 2-3.  Under the settlement, Class Members can

be reimbursed for an unlimited number of overdraft charges incurred in any two calendar months during the class period. See Revised Settlement ¶ 31. A two-month period, Objector argues, allows insufficient compensation when Class Members must release their claims for overdraft fee charges over a six-year class period. Obj.'s Mem. at 7. Objector contends that two months of reimbursement would unfairly compensate a Class Member who paid particularly high overdraft fees in only two months, because that Class Member will receive more than a Class Member who paid greater total overdraft fees during the entire class period but did not incur particularly high fees in any two months. Id. at 8-9. Rather, Objector believes that Class Members should receive damages in proportion to the charges incurred over the entire class period. Id. at 10.

The Court finds that Objector's concern is not sufficient to deny preliminary approval. Reimbursing for the highest amount of overdraft fees incurred in any two calendar months – the two months do not have to be consecutive – enables Class Members to receive compensation, even though they may have had reasonable notice of the manner in which overdraft fee charges are imposed. There is also no cap on the number of overdraft fees that Class Members may recover for the two calendar months that they select for reimbursement. Limiting the recovery period to two months also prevents chronic overdrafters, who had notice of National City Bank's overdraft policies yet continued incurring overdraft fees anyway, from being unfairly rewarded for their behavior. It appears to be, therefore, a reasonable allocation methodology for the settlement funds, with the remaining funds then distributed among Class Members on a pro rata basis.

Moreover, as the parties have argued to the Court, the "two calendar month" structure could even be considered over-inclusive. National City Bank is allegedly unable to distinguish

between check and debit overdraft fees; thus, Class Members may wind up being reimbursed for check overdraft fees, which are not at issue in this case. See Nat'l City Bank's Response at 17. National City Bank also allegedly cannot determine which overdraft fees were charged due to its re-sequencing method of posting transactions from high to low, and thus Class Members would be reimbursed for the total amount of overdraft charges incurred, whether or not the overdraft fee was incurred as a result of National City Bank's re-sequencing of transactions. Id. Accordingly, the Court concludes at the preliminary approval stage that the two calendar month structure is not outside the realm of possible ultimate approval as a fair and reasonable settlement distribution methodology.

IV.     **Claims Process**

Objector argues that the claims process is unnecessary and unduly burdensome, because it forces Class Members to submit a claim form to receive reimbursement. See Obj.'s Mem. at 10-11; Obj.'s Second Mem. at 4. Objector contends that National City Bank can calculate and directly return each Class Member's individual share of damages and hence he calls for restitution without a claims process. Obj.'s Mem. at 10-11. Objector further notes that the Gutierrez case did not require a claims process. Id. As discussed earlier, plaintiffs and National City Bank maintain that National City Bank cannot calculate each Class Member's share of damages, and they argue that a claims process is therefore necessary to validate claims. See Pls.' Supp. Mot. at 15; Nat'l City Bank Response at 17. For example, National City Bank allegedly did not maintain time stamp data for the "large majority of transactions" and did not keep the records in a format that would allow expert analysis similar to that conducted in Gutierrez. See Pls.' Supp. Mot. at 15-16.

Class actions often require a claims process to ensure money is fairly distributed for valid

claims.  See, e.g., Bynum v. Gov't of Dist. of Columbia, 384 F. Supp. 2d 342, 363 (D.D.C. 2005); Vista Healthplan, Inc. v. Bristol-Myers Squibb Co., 266 F. Supp. 2d 44, 47 (D.D.C. 2003); In re Lorazepam & Clorazepate Antitrust Litig., 205 F.R.D. 369, 381 (D.D.C. 2002). Under the settlement here, Class Members must either (1) specify the two calendar months in the class period during which they believe they incurred the highest overdraft fees or (2) allow the Claims Administrator to determine the two highest months worth of overdraft fees based on National City Bank records.  See Revised Settlement Agreement ¶ 27.  Class Members can submit claims by mail or the Internet, and the proposed claim form is short, clear, and straightforward, requiring only basic information for reimbursement.  Class Members need only provide their name and address and check one of two boxes; additional information does not have to be submitted unless their claims are contested by National City Bank and further information is later requested.  Although the Court reserves the right ultimately to decline to adopt the proposed claims process, requiring claimants to submit the proposed claim forms does not fall outside the range of possible approval for this settlement.

V.     **Impact on Objector's Claims and MDL Related Claims**

Objector contends that counsel for plaintiffs hastily settled the case to avoid transfer to the MDL litigation and that this settlement interferes with the prosecution of related cases in the MDL.  Supp. Mem. of Obj. Robert Matos ("Obj.'s Supp. Mem.") at 9-13.  Objector argues that the proposed settlement would release the claims in Objector's case and other cases against PNC Bank ("PNC") that are now pending in the MDL.  See Obj.'s Supp. Mem. at 7-8.  Objector also argues that the parties' Revised Settlement Agreement fails to clarify the scope of the release and provide proper notice because the release wrongfully extends to claims against PNC.  Obj.'s Second Mem. at 4-5.

The Court must conclude that a proposed settlement is "not the product of collusion between the parties" in order to grant final approval. Pigford v. Glickman, 206 F.3d 1212, 1215 (D.C. Cir. 2000) (quoting Pigford v. Glickman, 185 F.R.D. 82, 98 (D.D.C. 1999)). Objector raises concerns about the timing of the settlement and plaintiffs' counsel's conduct in negotiating a settlement when Objector's case is pending in the MDL. Obj.'s Supp. Mem. at 9-10. Here, plaintiffs' counsel filed this case four months before Objector filed his case and the MDL Panel transferred this case back to this Court to evaluate the proposed settlement, with full knowledge that the Matos case was simultaneously pending in the MDL. See Nat'l City Bank's Response at 6-8. Absent some evidence of actual collusion in negotiating the settlement, the Court will not deny preliminary approval on this ground.

The Court agrees that if the settlement is ultimately approved the class claims alleged in Matos will be extinguished, including claims against PNC,[9] but it has no reason to believe that the settlement will affect the other pending cases against PNC in the MDL litigation. The parties have repeatedly assured the Court that the settlement was deliberately drafted to prevent releasing the claims of PNC customers who opened PNC accounts directly with PNC (rather than through the merger of National City Bank into PNC). Id. at 6; Pls.' Supp. Mot. at 7. The Court also held a brief telephone conference with the parties to address such concerns. After the conference, the parties filed a renewed motion for preliminary approval and revised settlement agreement, specifying "that accounts originally opened at PNC or one of PNC's predecessor banks other than National City are not included in the settlement and that no claims relating to

---

[9] Objector, in his latest motion, informed the Court that he filed a Consolidated Amended Complaint on December 6, 2010 against PNC as successor to National City Bank. See Obj.'s Second Mem. at 5. To the extent Objector's claims against PNC are based on accounts that were originally opened at National City Bank, those claims will be extinguished for any Class Member who has not opted out of the settlement if the settlement in this case is approved at the Final Fairness Hearing.

such accounts will be released by the agreement." See Pls.' Unopposed Renewed Mot. for Prelim. Approval ("Pls.' Second Mot.") at 2; Revised Settlement Agreement ¶ 4. The release of claims against PNC therefore only applies to those claims that are based on accounts opened originally with National City Bank; it does not extend to cases, such as those pending in the MDL litigation, concerning PNC accounts with no prior association with National City Bank. Settlement Class Members can be class members of both this settlement and those PNC cases. The Court finds that the settlement in this case will not adversely impact claims pending against PNC in the MDL litigation in a manner warranting denial of preliminary approval.

## VI. Agreement Not to Sue

Finally, Objector argues in his latest motion that the Revised Settlement Agreement is ambiguous as to when the agreement not to sue becomes effective. See Obj.'s Second Mem. at 5-6.[10] The Revised Settlement states that "Releasing Parties, and each of them, agree not to file or prosecute, and agree immediately to withdraw, with prejudice, any equitable or legal proceeding against any Released Party that are authorized or required by this Settlement Agreement or by the Judgment." Revised Settlement Agreement ¶ 39. It also states that "[t]he Court shall retain jurisdiction to enforce the judgment, releases, and agreements contemplated by this Settlement and to be embodied in the Judgment." Id. Objector contends that the agreement not to sue could be construed inappropriately as prohibiting Objector and other National City account holders from pursuing their claims against PNC in the MDL litigation upon this Court's preliminary approval of the settlement. See Obj.'s Second Mem. at 5. Any agreement not to

---

[10] After the Court held a telephone conference with the parties, the parties submitted a Revised Settlement Agreement that substituted an agreement not to sue in place of an injunction, which had enjoined Releasing Parties from "prosecuting any equitable or legal proceeding against any Released Party with respect to any of the Released Claims."

sue, Objector maintains, should be effective only upon the final approval of the settlement. Id. Plaintiffs respond that the agreement not to sue only applies to "Releasing Parties," which has been defined as "Plaintiffs and members of the Settlement Class (including members of the proposed National City national class and state subclass in the MDL Proceedings) who do not opt out of the Settlement," see Revised Settlement Agreement ¶ 1(y), and thus the agreement not to sue cannot become effective until at least after the opt-out process is completed, see Pls.' Response to Obj. of Robert Matos ("Pls.' Second Response") at 3. Plaintiffs argue that there is nothing in the Revised Settlement Agreement that requires Objector or other National City account holders to dismiss their cases pending before the MDL; Settlement Class Members, including Objector, may opt out of the settlement. See Pls.' Second Response at 2.

The Court will enforce the agreement not to sue only after final approval of the Revised Settlement Agreement. Generally, covenants not to sue in settlement agreements are not effective until final approval of the settlement. See, e.g., Skilstaf, Inc. v. CVS Caremark Corp., No. 09-02514, 2010 WL 199717, at *5 (N.D. Cal. January 13, 2010); Carpenters and Joiners Welfare Fund v. Smithkline Beecham Corp., No. 04-3500, 2008 WL 4435734, at *4 (D. Minn September 30, 2008); Hill v. Merrill Gardens LLC, No. 04CV-248, 2005 WL 2465250, at *9 (N.D. Ind. October 6, 2005); In re Managed Care Litigation, MDL No. 1334, 2003 WL 22218324, at *4 (S.D. Fla. 2003). Although the Revised Settlement Agreement could be more precise on this issue, nothing in the language of the agreement indicates an intent to depart from this practice. The "Releases" section of the Revised Settlement Agreement begins with "[as] of the Effective Date[11]" and can be construed as stating that all provisions in the section become

---

[11] The "Effective Date" is the thirty-fifth day after the Court has entered a judgment in this case if there is no appeal. See Revised Settlement Agreement ¶ 35. If an appeal is filed, the "Effective Date" is ten days after the
(continued...)

effective as of the Effective Date, including the agreement not to sue provision. The settlement agreement also provides that the release of claims is effective upon final approval of the settlement. It would be bizarre to require Class Members to withdraw their claims with prejudice prior to the effective date of the release.

Moreover, to enforce covenants not to sue prior to final approval would raise significant fairness concerns. If the Court does not grant final approval to the settlement here, a narrow interpretation would require "Releasing Parties"– Class Members who do not opt out of the settlement – to "agree to immediately withdraw, with prejudice, any equitable or legal proceeding against any Released Party," even though the Court has not granted final approval of the settlement. Therefore, Class Members who do not opt out would be required immediately to withdraw from any pending litigation and give up the right and the opportunity to litigate their claims in other forums, even though this settlement has not been and may not be finally approved. The Court has expressed its concerns in the preliminary approval hearing, the telephone conference, and this opinion that Class Members should not prematurely release their claims. The Court therefore construes the agreement not to sue as being binding only after final approval of the settlement.

## CONCLUSION

For the reasons stated above, the Court will preliminarily approve the revised proposed settlement and class certification. A separate Order accompanies this Memorandum Opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: January 11, 2011

---

[11](...continued)
appeal has been dismissed entirely or the judgment has been affirmed and not subject to further review. Id.