**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RAMONA TROMBLEY, et al. on behalf of herself and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>NATIONAL CITY BANK,<br><br>    Defendant. | **Civil Action No. 1:10-cv-00232**<br><br>Judge John D. Bates |

**PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS TO REPRESENTATIVE PLAINTIFFS**

Plaintiffs Ramona Trombley, Brian Wells, and Jeff Doehner ("Plaintiffs" or "Representative Plaintiffs"), individually and on behalf of the proposed Settlement Class, respectfully move the Court to: (1) award attorneys' fees in the amount of $3 million (25% of the Settlement Fund); (2) award Settlement Class Counsel reimbursement of costs and expenses in the amount of $77,857.05; and (3) authorize payment of incentive awards of $5,000 each to Representative Plaintiffs Ramona Trombley, Brian Wells, and Jeff Doehner.

In support of this unopposed Motion (the "Fee Award Motion"), Plaintiffs respectfully submit the Memorandum of Points and Authorities incorporated below, the Declaration of Hassan A. Zavareei in Support of Final Approval of Class Action Settlement, Approval of a Plan of Allocation and Certification of Settlement Class, and for an Award of Attorneys' Fees, Reimbursement of Expenses, and Incentive Award To Named Plaintiffs, and exhibits thereto (the "Zavareei Decl."), filed concurrently herewith, and a Proposed Order, also filed concurrently herewith.

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ............................................................................................. 1

II.     HISTORY OF THE LITIGATION .................................................................. 2

        A.   Initial Research, Analysis, and Filing of Complaint ............................... 2

        B.   Settlement Class Counsel Reverses Transfer of this Action to the MDL ............... 4

        C.   Settlement Class Counsel Begins Discussions Regarding Potential
             Resolution of the Case ...................................................................... 5

        D.   Plaintiffs Design an Appropriate Damages Analysis and Contest
             Defendant's Counter-Analysis ............................................................ 5

        E.   Settlement Class Counsel Engages in Informal and Formal
             Discovery Prior to Settlement ............................................................ 6

        F.   The Parties Reach a Settlement ........................................................... 8

        G.   Settlement Class Counsel Works with Notice Administrator
             to Design Notice Plan and Moves for Preliminary Approval ................... 8

        H.   Settlement Class Counsel Immediately Begins the Process of
             Confirmatory Discovery ................................................................... 9

        I.   Settlement Class Counsel Successfully Opposes Transfer of
             this Action to the Overdraft Fee MDL ............................................... 10

        J.   Settlement Class Counsel Responds to Objections to Preliminary Approval ........ 10

        K.   Settlement Class Counsel Responds To Irrelevant And False
             Accustions By the PEC ................................................................... 10

        L.   The Parties Amend the Settlement Agreement to Address
             this Court's Concerns ..................................................................... 10

        M.   Settlement Class Counsel Implements Notice Plan ............................... 12

        N.   Settlement Class Counsel Negotiates with National City to Increase
             Contribution to Notice and Administration Costs by $1 Million .............. 13

        O.   Close Supervision of Notice Effort .................................................... 13

        P.   Settlement Class Counsel Continues Confirmatory Discovery Process and
             Expert Analysis ............................................................................. 14

        Q.   Settlement Class Counsel Seeks Final Approval .................................. 15

        R.   Settlement Class Counsel Prepares to Initiate the Claims Payment Mechanism ... 15

III.    ARGUMENT ................................................................................................ 15

A.      An Award of Attorneys' Fees Is Appropriate in Common Fund Cases ................ 16

B.      The Percentage of the Fund Method is the Established Approach in This Circuit ................................................................................................................ 17

C.      The Requested Fees Are Appropriate Under the Percentage of the Fund Method ............................................................................................................... 18

        1.      Size of the Fund Created and Number of Persons Benefitted .................... 19

        2.      Presence or Absence of Substantial Objections by Members of the Class to the Settlement Terms and/or Fees Requested by Counsel .......... 20

        3.      The Skill and Efficiency of the Attorneys Involved ................................. 22

        4.      Complexity and Duration ....................................................................... 24

        5.      The Risk of Nonpayment ....................................................................... 25

        6.      The Amount of Time Devoted to the Case by Plaintiffs' Counsel ........... 26

        7.      The Awards in Similar Cases ................................................................. 27

D.      The Expenses Settlement Class Counsel Incurred Were Reasonable and Necessary to the Effective Prosecution of this Action ......................................... 27

E.      Representative Plaintiffs Ramona Trombley, Brian Wells, and Jeff Doehner Should Each Receive a Modest Award for Their Work on Behalf of the Class .... 28

IV.     CONCLUSION ...................................................................................................... 30

# TABLE OF AUTHORITIES

## Cases

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) ............................................................................ 16

*Bogosian v. Gulf Oil Corp.,*
    621 F. Supp. 27 (E.D.Pa. 1985) ........................................................ 28

*Cappuccitti v. DirecTV, Inc.,*
    611 F.3d 1252 (11th Cir. 2010) ........................................................ 10

*Cappuccitti v. DirecTV, Inc.,*
    2010 WL 2803093 (11th Cir. July 19, 2010) ..................................... 3

*Closson v. Bank of America N.A.,*
    No. CGC 04436877 (Cal. Super. Ct.) ......................................... 3, 25

*Cohen v. Chilcott,*
    522 F. Supp. 2d 105 (D.D.C. 2007) ............................................ 22, 26

*Cook v. Niedert,*
    142 F.3d 1004 (7th Cir. 1998) .......................................................... 29

*Democratic Cent. Comm. of the District of Columbia v. Washington Metro. Area Transit*
    *Comm'n,* 12 F.3d 269 (D.C. Cir. 1994) ...................................... 18, 27

*Donovan v. Estate of Frank E. Fitzsimmons,*
    778 F.2d 298 (7th Cir. 1985) ............................................................ 19

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) ............................................................................ 8

*Gutierrez v. Wells Fargo Bank, N.A.,*
    730 F. Supp. 2d 1080 (N.D. Cal. 2010) ........................... 6, 7, 24, 26

*Hassler v. Sovereign Bank,* 644 F. Supp. 2d 509, 521 (D.N.J. 2009) *aff'd,*
    374 F. App'x. 341 (3d Cir. 2010) ............................................ 3, 7, 25

*Hicks v. Morgan Stanley & Co.,*
    2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ................................... 17

*Howes v. Atkins,*
    668 F.Supp.1021 (E.D. Ky. 1987) .................................................... 18

*In re Baan Co. Securities Litigation,*
  288 F. Supp. 2d 14 (D.D.C. 2003) ................................................................. 18, 27

*In re Checking Account Overdraft Litigation,*
  694 F. Supp. 2d 1302 (S.D. Fla. 2010) .................................................. 3, 16, 25, 27

*In re Lorazepam & Clorazepate Antitrust Litigation,*
  2003 WL 22037741 (D.D.C. June 16, 2003) ............................... 18, 19, 27, 28, 29

*In re Sumitomo Copper Litigation,*
  74 F. Supp. 2d 393 (S.D.N.Y. 1999) .............................................................. 16

*In re: Vitamins Antitrust Litigation,*
  2001 WL 34312839 (D.D.C. July 16, 2001) ...................................................... 28

*Luevano v. Campbell,*
  93 F.R.D. 68, 91 (D.D.C. 1981) ...................................................................... 21

*Mathena v. Webster Bank,*
  No. 10 Civ. 01448 (D.Conn.) .............................................................. 11, 15, 27

*Montgomery v. Bank of America Corp.,*
  515 F.Supp.2d 1106 (C.D. Cal. 2007) ........................................................ 3, 25

*Mills v. Electric Auto-Lite Co.,*
  396 U.S. 375 (1970) .......................................................................................... 16

*Northampton Restaurant Group v. FirstMerit Bank, N.A.,*
  No. 5:09-cv-02630, 2010 WL 3069494 (N.D. Ohio Aug. 3, 2010) ................... 25

*Osher v. SCA Realty I, Inc.,*
  945 F. Supp. 298, 305 (D.D.C. 1996) ............................................................... 21

*Radosti v. Envision EMI, LLC,*
  2011 WL 159662 (D.D.C. Jan. 19, 2011) ............................... 17, 18, 22, 26, 27, 30

*Swedish Hospital Corp. v. Shalala,*
  1 F.3d 1261 (D.C. Cir. 1993) .................................................. 1, 16, 17, 18, 27

*Trustees v. Greenough,*
  105 U.S. 527 (1881) .......................................................................................... 16

*Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.,*
  246 F.R.D. 349 (D.D.C. 2007) .................................................................. 22, 29

*Wells v. Allstate Ins. Co.*,
557 F. Supp. 2d 1 (D.D.C. 2008) .................................................................... 18, 22, 28, 29

**Rules**

Federal Rule of Civil Procedure 23(c)(2) ...................................................................... 8

**Regulations**

Federal Reserve Board, Regulation E, 12 C.F.R § 205 (2010)...................................................... 3

## I.  INTRODUCTION

On January 11, 2011, this Court granted preliminary approval to the Settlement

Agreement (the "Settlement") entered into between the parties, which provides for a nationwide

settlement of a consumer class action filed on February 17, 2010 (the "Action").  This Motion

seeks an  attorneys' fees and expenses award to Tycko & Zavareei LLP ("Tycko & Zavareei" or

"Settlement Class Counsel"), the law firm that has diligently represented Ms. Ramona Trombley,

Mr. Brian Wells, and Mr. Jeff Doehner, the Representative Plaintiffs, and the Settlement Class.

The fee award requested is reasonable and should be granted.

First and foremost, and as discussed in great deal in the Unopposed Motion and

Incorporated Memorandum of Points and Authorities in Support of Final Approval of Class

Action Settlement (the "Final Approval Motion"), Settlement Class Counsel has worked

aggressively and diligently to secure substantial monetary compensation for the Settlement

Class.  Having obtained a settlement of $12 million for the benefit of the Class, plus notice and

administration costs of up to $1.5 million, Settlement Class Counsel seek fair and reasonable

compensation for the services they provided to achieve this excellent outcome.

Settlement Class Counsel respectfully requests an award of attorneys' fees in the amount

of $3 million, which is equal to 25% of the $12 million Settlement Fund, and equal to 22% of the

overall Settlement when the notice and administration expenses paid by National City are

included.  This award, based on the percentage of the fund method employed by this Circuit, is

well within the range of acceptable fee awards.  Indeed, it is on the low end of that range.  *See*

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1272 (D.C. Cir. 1993) (awards of between twenty

and thirty percent of a common fund are reasonable).  In addition, Settlement Class Counsel

respectfully requests reimbursement from the Settlement Fund of their out-of-pocket costs and

expenses incurred in connection with the Action in the amount of $77,857.05.  Representative

Plaintiffs Ramona Trombley, Jeff Doehner, and Brian Wells also each respectfully seek a $5,000 incentive award for their time and effort on behalf of the Settlement Class.

## II.  HISTORY OF THE LITIGATION

On February 17, 2010, Plaintiffs initiated this class action on behalf of themselves and others against the defendant, National City Bank, N.A. ("National City" or "Defendant"), alleging, *inter alia*, that National City inadequately disclosed its practice of sequencing its customers' debit card and ATM transactions so that the transactions for each day were posted in order from the highest to lowest monetary value, and that this practice was unlawful, deceptive, and caused Plaintiffs to incur excessive overdraft fees.  Defendant maintains that it did nothing improper.  This Court preliminarily approved the Settlement on January 11, 2011.

### A.      Initial Research, Analysis, and Filing of Complaint

Settlement Class Counsel began work on this matter in late 2009, when Plaintiffs Trombley, Doehner and Wells separately contacted Tycko & Zavareei regarding overdraft fees they incurred at National City Bank.  Zavareei Decl., ¶ 13.  Settlement Class Counsel began conducting research into the factual background of the case, the corporate structure and operations of the potential defendant, the potential causes of action, proper venue, and preemption considerations.  *Id*., ¶ 14.  Settlement Class Counsel carefully reviewed bank records provided by the Plaintiffs.  *Id*., ¶ 17.  Settlement Class Counsel also prepared and revised drafts of the complaint that was ultimately filed.  *Id*.

Settlement Class Counsel commenced the litigation in an uncertain and constantly changing regulatory landscape regarding checking account overdraft fees associated with debit card transactions.  Prior even to filing this lawsuit, Settlement Class Counsel engaged in exhaustive research into the unsettled law surrounding these issues.  *See* Preliminary Approval Motion, Docket Number (hereinafter "Dkt. No.") 6, at n.6.  This research informed Settlement

Class Counsel regarding the legal and factual risks attendant to this case.  Some courts had indicated that the practices were unlawful.  *See In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302 (S.D. Fla. 2010) (denying defendant banks' omnibus motion to dismiss in the multi-district overdraft proceedings).  Others had rejected similar claims altogether on different grounds.  *See Hassler v. Sovereign Bank,* 644 F. Supp. 2d 509, 521 (D.N.J. 2009) *aff'd*, 374 F. App'x. 341 (3d Cir. 2010) (affirming dismissal with prejudice of similar claims against Sovereign Bank relating to its overdraft fee practices); *Montgomery v. Bank of Am. Corp.*, 515 F. Supp. 2d 1106, 1110 (C.D. Cal. 2007) (holding National Bank Act preempted the action).

   *Gutierrez v. Wells Fargo* was still in trial, and had not yet resulted in the $203 million verdict that eventually occurred, and which is now on appeal.  And the Federal Reserve had only recently effectuated new overdraft fee rules.  Federal Reserve Board Regulation E, 12 C.F.R § 205 (2010).  Multidistrict litigation in the Southern District of Florida regarding checking account overdraft fees was underway, but was soon to be temporarily stayed as a result of a decision from the Eleventh Circuit that was ultimately reversed.  *Cappuccitti v. DirecTV, Inc.*, 2010 WL 2803093 (11th Cir. July 19, 2010) (holding that subject matter jurisdiction does not exist over diversity cases filed in federal district court, including class actions, unless at least one plaintiff has pleaded a claim exceeding $75,000).  At the time of filing, only one similar case had resulted in a settlement between a plaintiff consumer and a defendant bank.[1]

   A federally regulated bank, National City was required to make detailed reportings of their revenue sources to the FDIC and SEC, including in "Call Reports."  These reports, a quarterly report of income and financial condition commercial banks file with their federal and

---

[1] A settlement of similar claims against Bank of America was approved by a California state court in *Closson v. Bank of America N.A.*, No. CGC 04436877 (Cal. Super. Ct.).  The *Closson* settlement remains the subject of multiple appeals challenging its adequacy.

state regulatory agencies provided valuable information, which Settlement Class Counsel analyzed in order to gain an understanding of National City's revenues and financial condition.

In addition, overdraft fee practices have been the subject of intense Congressional and regulatory scrutiny, as well as investigation by numerous public interest organizations. Zavareei Decl., ¶ 18. Settlement Class Counsel carefully cumulated, studied, and applied this critical factual information to the negotiation of the Settlement Agreement. Zavareei Decl., ¶ 19. Settlement Class Counsel also consulted with leading consumer rights advocates who had conducted independent research on the questioned overdraft policies. *Id.*, ¶ 20.

After a significant amount of research into National City Bank and its practices, analyses of potential damages, the ongoing litigation against other banks regarding overdraft fees, and the individual account details of the Representative Plaintiffs, Settlement Class Counsel filed a class action complaint in this Court on February 17, 2010. *Id.*, ¶ 18.

## B.     Settlement Class Counsel Reverses Transfer of this Action to the MDL

In April of 2010, this action was, for a short while, transferred to the MDL proceedings in the Southern District of Florida. Zavareei Decl., ¶ 21. The Judicial Panel for Multidistrict Litigation ("JPML") did not notify Settlement Class Counsel that it had issued a Conditional Transfer Order ("CTO"). *Id.*, ¶ 22. Because they had no notice of the CTO, Settlement Class Counsel was unable to seek to vacate the order, and the transfer became "final." *Id.*, ¶ 23. When Settlement Class Counsel discovered that the JPML had transferred the case to the MDL proceedings, they successfully argued to the JPML that the failure to provide proper notice rendered the transfer invalid. *Id.*, ¶ 24. The action was transferred back to this Court on May 6, 2010, and the JPML re-issued a CTO for the case. *Id.*, ¶ 25. As discussed below, Settlement Class Counsel ultimately succeeded in vacating this CTO.

**C.**     **Settlement Class Counsel Begins Discussions Regarding Potential Resolution of the Case**

In May of 2010, counsel for National City indicated that there was some utility in exploring the possibility of an early settlement of the litigation.  Zavareei Decl., ¶ 26.  The parties agreed to meet by teleconference to discuss structural considerations that would be a part of any eventual settlement.  *Id.*, ¶ 27.  Eventually, the parties agreed to meet in person on June 11, 2010 in Philadelphia.  *Id.*, ¶ 28.  General issues were discussed at this meeting, but little progress toward settlement was made.  *Id.*  An arduous series of teleconferences ensued.  *Id.*, ¶ 29.  Settlement Class Counsel asked National City to provide substantial amounts of information, and insisted on compliance with the request before any further face-to-face meetings.  *Id.*

**D.**     **Plaintiffs Design an Appropriate Damages Analysis and Contest Defendant's Counter-Analysis**

Settlement Class Counsel spent a significant amount of time specifically evaluating damages prior to and during settlement negotiations.  During the course of these negotiations, the parties prepared and exchanged competing confidential damages analyses.  *Id.*, ¶ 30.  These analyses came to different conclusions about the best way to estimate Plaintiffs' damages during the class period.  *Id.*

Settlement Class Counsel's analyses were based on a close look at data publicly reported by National City and its successor, PNC Bank, N.A. ("PNC"), to the Securities and Exchange Commission ("SEC") and the Federal Deposit Insurance Corporation ("FDIC").  *Id.*, ¶ 31.  In addition, Settlement Class Counsel employed a 2008 FDIC Report on overdraft fees across the banking industry and several valuable reports by the Center for Responsible Lending ("CFRL") and other consumer advocacy organizations—all of which helped Settlement Class Counsel fix the damages range by applying industry-wide findings on overdraft fees and bank revenues to the specific facts known about National City.  Zavareei Decl., ¶¶ 33-34.  In short, Settlement Class

Counsel was able to estimate total overdraft fee revenue even before the information was provided in informal, then formal, discovery. *Id.*, ¶ 35.

Settlement Class Counsel's next step was to determine what portion of this overall overdraft fee revenue might be damages. To do so, Settlement Class Counsel employed the expert reports in *Gutierrez v. Wells Fargo*, 730 F. Supp. 2d 1088 (N.D. Cal. 2010). Zavareei Decl., ¶ 36. Settlement Class Counsel reviewed and analyzed in great detail both the plaintiffs' and defendant's expert damages reports in *Gutierrez*, and using these reports, Settlement Class Counsel was able to project the damages range in this case. *Id.* It was upon this internal analysis that settlement negotiations proceeded. *Id.*, ¶ 37.

**E.     Settlement Class Counsel Engages in Informal and Formal Discovery Prior to Settlement**

During settlement discussions, and as a condition of continuing with settlement discussions, Settlement Class Counsel insisted that National City provide detailed nonpublic information regarding National City's practices and policies with regard to deposit accounts. Settlement Class Counsel also insisted on the provision of detailed financial data. Prior to settlement consummation, National City provided a great deal of information, including:

- The amount of overdraft fee revenue earned by the Bank during the class period, net of refunds to accountholders;
- All non-business account disclosures during the class period;
- Certain marketing materials;
- A description of posting practices during the class period, including whether National City posted transactions in "buckets" or commingled all transactions;
- The date the challenged practice of high-to-low reordering began;
- The mechanics and effects of the purchase of National City by PNC;
- National City data storage systems and which class period data was available for use in calculating damages and/or administering a settlement, including whether or not data existed that identified the portion of fee revenue traceable to the challenged practices; and
- PNC's anticipated policies for complying with the revised Regulation E overdraft fee requirements.

Zavareei Decl., ¶ 38.

Through the informal discovery they performed, Plaintiffs' counsel attained valuable nonpublic information, which they used to inform the settlement discussions and test the value of the settlement. *Id.*, ¶ 39. Plaintiffs also reviewed the operative disclosures and interviewed bank personnel regarding National City's marketing practices. *Id.*, ¶ 40. Although Plaintiffs believe these disclosures were inadequate and unlawful, Plaintiffs were compelled to compare such disclosures and marketing practices to those at issue in *Gutierrez* and *Hassler*. *Id.*, ¶ 41. Several differences were noted, some of which significantly impacted Plaintiffs' relative risk of prevailing at trial.

Settlement Class Counsel also received sworn interrogatory responses from National City. These interrogatories were used to confirm under oath informal exchanges of information prior to the culmination of the negotiations. *Id.*, ¶ 42. Specifically, the formal discovery confirmed earlier information provided by National City regarding: (1) when National City first began ordering debit transactions from high to low; (2) total overdraft fee revenue, by year, from 2004 to the present; (3) whether PNC had the ability to identify the amount of fees incurred as a result of high to low re-ordering; (4) the current number of consumer checking accounts held by former National City customers (excluding business accounts); (5) the number of National City accounts from 2004 to the present that have been charged more than one overdraft fee on any single banking day; and (6) PNC's intentions regarding compliance with Regulation E. Zavareei Decl., ¶ 43.[2]

---

[2] There is no protective order in this case. Nonetheless, Settlement Class Counsel have honored National City's request that they not publicly disclose this information. If, however, the Court believes it would aid its analysis of this Motion or the Final Approval Motion, Plaintiffs would certainly be willing to provide those discovery responses with the Court.

**F.      The Parties Reach a Settlement**

After lengthy negotiations, including dozens of telephone conferences and two in-person

settlement conferences, the parties agreed to a settlement in principle.  There were serious,

informed and adversarial negotiations held in arriving at the proposed settlement.  *Id.*, ¶ 44.

Difficult back-and-forth discussions continued throughout the drafting of the Settlement

Agreement.  *Id.*, ¶ 45.

**G.      Settlement Class Counsel Works with Notice Administrator to Design Notice Plan
         and Moves for Preliminary Approval**

Settlement Class Counsel worked extensively with the notice administrator to meet

Federal Rule of Civil Procedure 23(c)(2)'s requirement that "[i]ndividual notice must be sent to

all class members whose names and addresses may be ascertained through reasonable effort."

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974).  In conjunction with the Notice

Administrator, Settlement Class Counsel devised notice materials that included a fair summary

of the parties' respective litigation positions; the general terms of the settlement as set forth in

the Settlement Agreement; instructions for how to opt-out of or object to the Settlement; the

process and instructions for making a claim; and the date, time, and place of the Final Fairness

Hearing.  Zavareei Decl., ¶ 47.

Settlement Class Counsel worked to design a notice plan that ensured virtually all

Settlement Class Members, whether current or former customers of National City, received

mailed individual notice.  *Id.*, ¶ 48.  In addition to the individual notice, the notice plan designed

by Settlement Class Counsel and the Notice Administrator included a publication element, a toll-

free informational telephone number with live agents, and a website.  *Id.*, ¶ 49.  Settlement Class

Counsel reviewed and revised each notice, every portion of the website text, and telephone

scripts and recording for the toll-free telephone line. *Id.* These notice materials were included with Plaintiffs' preliminary approval papers, which were filed on July 28, 2010.

**H.     Settlement Class Counsel Immediately Begin the Process of Confirmatory Discovery**

Soon after moving for preliminary approval, Settlement Class Counsel travelled to Pittsburgh to interview representatives of National City regarding the bank's disclosures and ordering practices. *Id.*, ¶ 51. These interviews were used to confirm prior representations made by National City during settlement negotiations. *Id.* Settlement Class Counsel also investigated the manner in which overdraft fee information was stored and could be used for the allocation of the settlement and distribution of the settlement funds. *Id.*, ¶ 53. Settlement Class Counsel also reviewed the operative disclosures and interviewed personnel regarding National City's marketing practices. *Id.*, ¶ 54. Other topics investigated and confirmed included:

- National City's precise transaction posting order during the Class Period;
- The date National City began to reorder transactions from high to low, at least since 1992;
- National City's marketing practices during the Class Period, including whether it marketed its debit cards as providing for "instantaneous" debiting or posting;
- Percentages of accountholders who could be considered "chronic overdrafters";
- The process National City employed when a customer incurred an overdraft fee, including the mailing of overdraft fee notices by U.S. mail;
- National City's acquisition by PNC in 2008 and subsequent conversion of accountholders to PNC throughout 2010.

*Id.*, ¶ 55.

Settlement Class Counsel continued with further interviews of National City employees, investigating, *inter alia*, the following topics:

- Existing data that showed, on a monthly basis, the gross number or overdraft fees charged to individual accounts, the storage and archiving of such data, and potential gaps in such data;
- The cost and difficulty of using such data for notice and claims administration purposes;
- Whether or not National City captured "time stamp" information for relevant transactions;

- Whether an electronic damages analysis that assessed account-by-account damages could be performed with the data maintained by National City.

*Id.*, ¶ 56.

**I.     Settlement Class Counsel Successfully Opposes Transfer of this Action to the Overdraft Fee MDL**

The JPML issued a Conditional Transfer Order (CTO-16) on May 3, 2010, seeking to transfer this litigation to MDL No. 2036 in the Southern District of Florida.  Settlement Class Counsel opposed this transfer.  Subsequent to the Settlement, and in order to ensure this Court's authority to approve and process the Settlement, Settlement Class Counsel drafted and submitted additional filings in opposition to the Conditional Transfer Order.  In light of the settlement, the JPML vacated CTO-16 on August 9, 2010.

**J.     Settlement Class Counsel Responds to Objections to Preliminary Approval**

In an August 18, 2010 Order, the Court asked the parties, as well as the single objector (represented by attorneys from the Plaintiffs' Executive Committee ("PEC") of the overdraft fee MDL), to address two specific issues.  Dkt. No. 13.  First, the Court inquired as to the impact, if any, of a then-recent decision by the Eleventh Circuit, *Cappuccitti v. DirecTV, Inc.*, 611 F.3d 1252 (11th Cir. 2010), on the Court's subject matter jurisdiction.  Second, the Court asked for information regarding the impact, if any, that the proposed settlement would have on other class actions against National City or on the MDL proceedings.

On September 8, 2010, Settlement Class Counsel filed a brief addressing those two issues and also responding to the objections raised by objector Robert Matos.  Dkt. No. 19.

**K.     Settlement Class Counsel Responds To Irrelevant And False Accusations By The PEC**

The PEC also filed a brief on September 8, 2010.  Dkt. No. 16.  But in addition responding to the questions raised by the Court, the PEC made a number of highly inflammatory

and false accusations against Settlement Class Counsel.  *Id., passim*.  Settlement Class Counsel

viewed these accusations as a sideshow, but made it clear to the Court that if the Court had

concerns about the accusations that they would be willing to demonstrate that they were false.  In

order to do so, however, Settlement Class Counsel would need to reveal communications with

the PEC that were arguably privileged.  Thus, if the Court believed the allegations were material,

Settlement Class Counsel asked the Court to allow them to respond to the allegations through an

*in camera* filing: "The Supplemental Matos Brief attempts to discredit the proposed settlement

by ascribing sinister motives to Plaintiffs' counsel.  Those accusations are a distraction from the

straightforward question of whether the Court should preliminarily approve the settlement.  But

if the Court deems that assault on co-counsel as potentially relevant, Plaintiffs respectfully ask

the Court to permit them to file a response *in camera*."  Dkt. No. 21-1, at 8.  Then, on October 1,

2010, the PEC filed a Request for Hearing in this Court, in which it alleged that a settlement

entered into by Settlement Class Counsel in a different case, *Mathena v. Webster Bank,* was

"apparently collusive."  Dkt. No. 28-1, at 3.  Settlement Class Counsel was forced to respond to

this further attack, and filed a responsive brief on October 8, 2010.  *See* Dkt. No. 29.

Subsequently, Judge Stefan Underhill of the District of Connecticut entered preliminary and then

final approval of the settlement in *Mathena*—without objection from any of the hundreds of

thousands of class members who were given notice of the settlement.  *Mathena v. Webster Bank*,

No. 3:10 Civ. 01448 (D. Conn. Mar. 28, 2011).

## L.       The Parties Amend the Settlement Agreement to Address this Court's Concerns

During a December 17, 2010 telephone conference with Settlement Class Counsel and

Defendant's counsel, the Court raised several narrow concerns regarding the proposed

settlement.  Settlement Class Counsel negotiated with Defendant to resolve the Court's concerns.

The parties eventually agreed to a Revised Settlement Agreement that resolved each concern by:

11

(1) clarifying the scope of the release of claims, including a clear and specific release of the claims of the proposed classes whose case is currently pending before the MDL; (2) stating that accounts originally opened at PNC were not included in the Settlement and, thus, no claims relating to such accounts were being released by the Agreement; (3) explicitly stating that the two months for which class members may claim overdraft fee refunds did not need to be consecutive; and (4) substituting an agreement not to sue in place of an injunction.  Settlement Class Counsel worked with the Notice Administrator to ensure that the proposed notices were also amended, where necessary, to reflect these modifications.  Finally, the Proposed Preliminary Approval Order and the Proposed Final Judgment Order were revised to remove language enjoining class members.

Settlement Class Counsel filed a renewed motion for preliminary approval on December 22, 2010.  Dkt. No. 34.  This Court granted preliminary approval of the revised settlement on January 11, 2011.  Dkt. No. 38.

**M.      Settlement Class Counsel Implements Notice Plan**

Immediately after entry of this Court's Preliminary Approval Order, Settlement Class Counsel began working closely with the Notice Administrator in order to comply with the requirement that notice be mailed out by March 14, 2011.  However, unforeseen difficulties arose in collecting and sorting the National City data that was to be used to execute the notice campaign and claims process.  In cooperation with National City and the Notice Administrator, Settlement Class Counsel was forced to devote significant time to resolving these problems. Eventually, Settlement Class Counsel determined that more time would be necessary to mail individual notice in a complete and accurate way.  Zavareei Decl., ¶ 57.

Accordingly, on March 14, 2011, Settlement Class Counsel requested that the Court reset certain deadlines in the Preliminary Approval Order.  Dkt. No. 39.  Settlement Class Counsel

12

asked the Court to set a new deadline for completion of the mailing to all potential class members.  *Id*.  In addition, the parties requested that all dates in the Court's preliminary approval order be adjusted accordingly.  *Id*.  This request was granted on March 16, 2011.  Dkt. No. 40.

**N.    Settlement Class Counsel Negotiates with National City to Increase Contribution to Notice and Administration Costs by $1 Million**

Settlement Class Counsel's close management of the notice campaign uncovered an unexpected increase in the number of notices that needed to be sent.  This increase would have significantly increased costs to the settlement fund, leaving less money for distribution to class members.  Zavareei Decl., ¶ 58.  Finding this result unacceptable, Settlement Class Counsel negotiated with National City, and the Bank ultimately agreed to increase its contribution to the notice costs by $1 million.  Settlement Class Counsel worked with National City to memorialize this agreement in an Addendum Regarding Payment of Notice Costs ("Addendum"), which specified that National City agreed to contribute up to an additional $1 million to Third Party Notice and Claims Administration Costs, should such costs exceed the $500,000 that National City had already agreed to contribute.  *Id*., ¶ 59.  Dkt. No. 39.

In addition, and to further insulate the settlement fund from excess notice costs, Settlement Class Counsel asked the Notice Administrator to develop a revised notice plan that would both meet constitutional requirements of due process and be more cost effective.  Based on the recommendations of the Notice Administrator, the parties agreed that individual mailed notice would consist of postcards, which are significantly less expensive to print and mail.

This Court approved the Addendum on March 16, 2011.  Dkt. No. 40.

**O.    Close Supervision of Notice Effort**

Through the concerted efforts of all involved, notice was mailed to class members by April 18, 2011.  In addition, an informational website was established, which contains

documents and other information regarding the Settlement.  A link to this website was placed on www.pnc.com.  A toll-free informational telephone number was also made operational. Settlement Class Counsel reviewed all text and language, and supervised the launch of these services.  Zavareei Decl., ¶ 60.

Since the launch of the notice campaign, Settlement Class Counsel has supervised the continued updating of the website and toll-free telephone number, and has ensured court documents and filings are updated and made available on the website.  *Id*., ¶ 61.  Settlement Class Counsel has also closely monitored and reviewed all disbursements made from the escrow fund.  *Id*.

Further, the notices list Settlement Class Counsel as a contact point for further information or questions about the settlement.  Accordingly, Settlement Class Counsel and support staff have fielded, answered and researched questions presented by numerous Settlement Class Members.  *Id*., ¶ 62.

## P.  Settlement Class Counsel Continues Confirmatory Discovery Process and Expert Analysis

After the Court granted preliminary approval of the Settlement, Settlement Class Counsel engaged in confirmatory discovery.  Most significantly, Settlement Class Counsel convinced National City to provide Settlement Class Counsel voluminous transaction data covering a sample of actual transactions made by real accountholders.  Settlement Class Counsel spent a significant amount of time negotiating for, and analyzing, this data.  *Id*., ¶ 63.  Additionally, the information and data were analyzed and utilized by the economic consulting firm Edgeworth Economics ("Edgeworth") in the preparation of an Expert Report estimating damages in this case, filed concurrently with the Final Approval Motion.  National City also made bank officials available to Settlement Class Counsel and Edgeworth for direct investigation and questioning.

Settlement Class Counsel and Edgeworth participated in several meetings and teleconferences with National City officials during the confirmatory discovery phase to procure and evaluate the transaction data provided.  Zavareei Decl., ¶ 64.

**Q.     Settlement Class Counsel Prepares for Final Approval Hearing**

Settlement Class Counsel completed the research and drafting necessary for the Final Approval papers and for the final fairness hearing on July 14, 2011.  *Id.*, ¶ 65.

**R.     Settlement Class Counsel Prepares to Initiate the Claims Payment Mechanism**

In anticipation of a Final Judgment Order, Settlement Class Counsel has worked with the Claims Administrator to ensure it is prepared to properly make the fund allocation calculations and to initiate payment to Settlement Class Members in an efficient and prompt manner.  *Id.*, ¶ 66.  Difficulties with some portions of the data provided by National City have compelled Settlement Class Counsel to devote a significant amount of time to resolving those problems. *Id.*, ¶ 67.  Ultimately, an operational and effective database has been created, and is ready for use in executing the claims and distribution process.

### III.  ARGUMENT

Settlement Class Counsel respectfully urges this Court to consider the timely, excellent result reached for the Class in the face of a fluid and uncertain legal environment.  Settlement Class Counsel's request of 25% of the common fund based on the percentage of the fund method, or 22% of the overall benefit to the Class, is well-supported by relevant case law in this Circuit and beyond.  The percentage request is on the low-end of the range commonly awarded in such cases—and comparable to the fee awarded in another overdraft fee settlement, *Mathena*, No. 3:10 Civ. 01448 (awarding fee of 25%).  It is also lower than the maximum fee request allowed pursuant to a recent settlement in the overdraft fee MDL, where Bank of America agreed

not to oppose any fee request up to 30% of a $410 million fund.  *In re Checking Account Overdraft Litigation,* No. 1:09-md-02036, Dkt. No. 1471.

Settlement Class Counsel devoted over 1,000 hours of time toward attaining a total value for the class of $13.5 million.  Under any standard, the effort of Settlement Class Counsel and the result attained through this effort are outstanding.  Even after entering into the Settlement Agreement, Settlement Class Counsel has remained a strident and effective advocate for the Class.  For example, Settlement Class Counsel negotiated an additional $1 million contribution by National City to notice and administration costs.  The extraordinarily low level of opt-outs and objections in this case attests to the excellent performance of Settlement Class Counsel.  *See* Affidavit of Cameron Azari ("Azari Aff."), filed concurrently herewith, at ¶ 42.

## A.     An Award of Attorneys' Fees Is Appropriate in Common Fund Cases

The Supreme Court has held that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Swedish Hosp. Corp.*, 1 F.3d at 1265.  The rationale is to compensate counsel fairly and adequately for their services and to prevent unjust enrichment of persons who benefit from a lawsuit without shouldering its costs.  The Supreme Court has long recognized that where, as here, a class plaintiff successfully recovers a common fund for the benefit of a class, the costs of litigation should be spread among the fund's beneficiaries.  *See Boeing*, 444 U.S. at 478 (citing *Trustees v. Greenough,* 105 U.S. 527, 532-537 (1881)); *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 393 (1970); *In re Sumitomo Copper Litig.,* 74 F. Supp. 2d 393, 396-97 (S.D.N.Y. 1999) (citing cases).  The D.C. Circuit has followed this same rule.  *See Swedish Hosp. Corp.*, 1 F.3d 1261 at 1265 ("The underlying justification for attorney reimbursement from a common fund, as explained by the Supreme Court in three early cases, is that unless the

costs of litigation are spread to the beneficiaries of the fund they will be unjustly enriched by the attorney's efforts.").

In addition, other courts have recognized that awards of fair attorneys' fees from a common fund should serve to encourage skilled counsel to represent those who seek redress for damages  inflicted on entire classes of persons, and therefore to discourage future misconduct of a similar nature.  *See, e.g., Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, *9 (S.D.N.Y. Oct. 24, 2005) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.") (citation omitted).

Settlement Class Counsel has negotiated for the benefit of the Settlement Class a common fund in the amount of $12 million, plus $1.5 million in notice and administration costs. Settlement Class Counsel is therefore entitled to recover a reasonable attorneys' fee from this common fund.

**B.      The Percentage of the Fund Method is the Established Approach in This Circuit**

The D.C. Circuit uses the percentage of the fund method in order to determine reasonable attorneys' fees in common fund cases.  *See Swedish Hosp.*, 1 F.3d at 1271 ("In sum, we join the Third Circuit Task Force and the Eleventh Circuit, among others, in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases."); *Radosti v. Envision EMI, LLC*, 2011 WL 159662, *3 (D.D.C. Jan. 19, 2011).  Several important benefits of this method have been outlined by both the D.C. Circuit and this Court.  For instance, the percentage of the fund method promotes efficiency but disincentivizes attorneys from racking up numerous billable hours on unnecessary tasks.  As the D.C. Circuit stated in *Swedish Hosp.*, "in the common fund case, if a percentage-of-the-fund calculation controls, inefficiently expended hours only serve to reduce the per hour compensation of the attorney expending them."  1 F.3d at 1269.  The court also noted that this

17

method "accurately reflects the economics of litigation practice" in that it is "result-oriented." *Id.* (citing, in part, *Howes v. Atkins*, 668 F. Supp. 1021 (E.D. Ky. 1987)).

The D.C. Circuit's endorsement did not end there. The court also made note of the fact that the percentage of the fund method is "less demanding of scarce judicial resources" and "less subjective" than the lodestar method because it does not require the court "second-guess the judgment of counsel as to whether a task was reasonably undertaken or hours devoted to it reasonably expended." *Id.*, at 1269-1270. This Court has made it clear that the percentage of the fund method is "favored because [it] directly align[s] the interests of the class and its counsel and provide[s] a powerful incentive for the efficient prosecution and early resolution of litigation." *Radosti*, 2011 WL 159662, at *3.

## C.    The Requested Fees Are Appropriate Under the Percentage of the Fund Method

"Awards of between twenty and thirty percent of the common fund have been deemed reasonable." *Id.* (citing *Swedish Hosp.*, 1 F.3d at 1272, and *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 6 (approving a 45% award)). Here, Settlement Class Counsel is requesting an award of 25% of the common fund, or 22% of the overall value of the Settlement. These percentages are more than reasonable. Not only are they well within the acceptable range of awards, they are at the low-end of the acceptable range. *See, e.g.*, *Swedish Hosp.*, 1 F.3d 1261, 1272 (20% award); *Democratic Cent. Comm. of the District of Columbia v. Washington Metro. Area Transit Comm'n*, 12 F.3d 269, 271 (D.C. Cir. 1994) (23.3% award); *Radosti*, 2011 WL 159662, *5 (award of just under 33% of the fund); *In re Lorazepam*, 2003 WL 22037741, *8 (D.D.C. June 16, 2003) (30% award); *In re Baan Co. Securities Litigation*, 288 F. Supp. 2d 14 (D.D.C. 2003) (28% award).

In evaluating the reasonableness of a fee request in common fund cases, this Court has examined seven factors:  (1) the size of the fund created and the number of persons benefited; (2)

the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.  *In re Lorazepam,* 2003 WL 22037741, at *7.  Each one of these factors is discussed below and each supports the reasonable award requested by Settlement Class Counsel.

### 1.      Size of the Fund Created and Number of Persons Benefitted

The $12 million Settlement Fund represents a substantial monetary recovery for the Settlement Class.  Settlement Class Members will receive a significant benefit as a result of the Settlement.  Indeed, there is no limit on the number of Overdraft Fees incurred during any two months that a Settlement Class Member may recover, and many Settlement Class Members are likely to receive payments in the hundreds of dollars.  National City has also agreed to pay up to $1,500,000 for notice and administration costs.  Though that amount is not included as part of the common fund, it nonetheless accrues to the benefit of the Settlement Class.

Importantly, the fund represents between 10% and 26% of Plaintiffs' estimated damages without adjusting for "chronic overdrafters," and between 24% and 60% when making this adjustment, assuming that Plaintiffs could actually recover all such damages after what would likely be a long, expensive, and arduous litigation and trial.  *See* Expert Report.  Moreover, these significant benefits were negotiated in a timely manner, further enhancing the value of the Settlement to Settlement Class Members, whose access to a recovery now—not three or more years from now, after litigation and appeals—raises the value of the settlement significantly.  *See Donovan v. Estate of Frank E. Fitzsimmons*, 778 F.2d 298, n.3 (7th Cir. 1985) (a $2 million settlement sum today is worth the same as a $3.6 million recovery five years from now, at a prime interest rate of 12.5%). Thus, this factor favors approval of the requested award.

2.      **Presence or Absence of Substantial Objections by Members of the Class to the Settlement Terms and/or Fees Requested by Counsel**

The reaction by members of the Class has been overwhelmingly positive.  As of May 25, 2011, Settlement Class Members have submitted 98,743 claims.  Azari Aff., ¶ 43.  While the objection deadline has not yet passed, as of May 25, 2011, no Settlement Class Member has properly filed an objection pursuant to Court's Preliminary Approval Order.  Dkt. No. 38, at 6.  The Claims Administrator received three documents that, if liberally construed, may be considered "objections."  Settlement Class Counsel also received correspondence from two additional Settlement Class Members could also be liberally construed as objections.  For the Court's convenience, all five of these documents are attached to the Zavareei Declaration as Exhibit B.  However, not only do these items fail to comply with the Court's order regarding the proper process for making objections, none of them provide any basis to deny final approval.

One "objection," by Kurt Vierling, simply states, in relevant part, that his account was transferred.  It does not contain any objections to the terms of the Settlement.  *Id*.  The second objector, Elizabeth Garaux, states that she does not believe that National City was "dishonest" and that she does not believe that her transactions were reordered, a practice that National City has conceded to employing.  *Id*.  The third objector, Wayne L. Harris, objects to the Settlement because it does not include, as damages, the "other hidden expenses" incurred by consumers as a result of the challenged practices.  *Id*.  However, seeking the type of "damages" suggested by Mr. Harris on a class wide basis would pose significant challenges and none of overdraft fee cases that have either settled or proceeded to trial have included such damages.  Another potential Settlement Class Member, Linda K. Bryan, sent a letter to the Court, along with an incomplete but signed Claim Form, that did not contain any objections to the Settlement but indicates that she intends to file suit against National City regarding a claimed unauthorized

withdrawal from her bank account by her ex-husband.  The Court forwarded the letter to

Settlement Class Counsel.  *Id*.  Finally, potential Settlement Class Members Carlton and Mary

Niemann sent Settlement Class Counsel a letter in which they detailed the difficulties they have

endured as a result of the Bank's challenged practices and state that they "will be included in the

class action suit[.]"  *Id*.  However, they also later make a demand to National City for $9,000 and

state that they are "willing to go to court."  *Id*.  The Niemanns never state that they object to the

Settlement.  *Id*.  In sum, none of these "objections" (if very liberally construed as such) should

negatively impact this Court's decision-making process regarding final approval of the

Settlement.

As of May 25, 2011, only 44 class members have opted out of the Class.  Azari Aff., ¶

42.  This represents less than .0005% of persons who submitted claims.  These extraordinarily

low levels of opt-out and objection are a strong sign that the Class supports this Settlement.  *See*

*Osher v. SCA Realty I, Inc.,* 945 F. Supp. 298, 305 (D.D.C. 1996) ("the Court concludes that the

reaction of the Class members is overwhelmingly in favor of the proposed settlement.  Only 30

Class members have requested to be excluded from the Settlement Class out of the

approximately 14,000 Class members given Notice of the proposed settlement.  Furthermore,

only one objection to the proposed settlement has been received by Class and Derivative

Counsel."); *Luevano v. Campbell*, 93 F.R.D. 68, 91 (D.D.C. 1981) ("The fact that only one-sixth

of one percent of the class has chosen to object to the settlement is an important indication of its

fairness and adequacy.").

Moreover, the notices clearly state that Settlement Class Counsel would apply for an

award of fees of not more than 25% ($3,000,000) of the Settlement Fund, plus reimbursement of

all costs and expenses.  As such, the Class was on clear notice of this fee request.  To date, not

one person has filed an objection to the fee request or the expense reimbursement sought.  In short, this encouraging response by the members of the Class supports the conclusion that the Settlement—including the fee award and expense reimbursement provisions—is fair and reasonable.

### 3.    The Skill and Efficiency of the Attorneys Involved

To evaluate the "skill and efficiency of the attorneys involved," this Court has often looked to the experience of the plaintiffs' counsel as well as the complexity of the legal issues involved.  *See Radosti*, 2011 WL 159662, *4 (D.D.C. Jan. 19, 2011); *Wells*, 557 F. Supp. 2d at 7; *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 122 (D.D.C. 2007); *Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349, 364 (D.D.C. 2007).

Settlement Class Counsel are experienced class action litigators.  Zavareei Decl. ¶¶ 4-12. The individual attorneys are graduates of top law schools, and both partners worked at a well-known and established national law firm (Gibson, Dunn & Crutcher LLP) prior to forming their current firm.  *Id.*, ¶ 12.  While at Gibson, Dunn & Crutcher, LLP, Settlement Class Counsel represented numerous defendants in class action and mass action lawsuits spanning numerous substantive areas of law, including products liability, insurance law, environmental law, and state common law.  *Id*.  Since forming Tycko & Zavareei LLP, Settlement Class Counsel have represented plaintiffs in consumer class actions, antitrust class actions, products liability class actions, and employment class actions.  *Id*.  In addition to their general experience in class action litigation, Settlement Class Counsel has a specific expertise in overdraft fee litigation.  In addition to this case, Settlement Class Counsel is currently litigating similar cases against 15 banks in the MDL and in state courts across the country.  *Id*., ¶ 5.  In those cases (which are in varying stages of litigation), Settlement Class Counsel have: (1) briefed and argued numerous

motions to dismiss; (2) prevailed on one motion to dismiss; (3) conducted fact discovery; (4) conducted expert discovery; and (5) attained preliminary and final approval of class action settlements. *Id.*, ¶¶ 6-10.

Settlement Class Counsel employed their experience and expertise to represent the class with skill and efficiency. While a significant amount of overdraft fee litigation existed at the time this case was filed, this Action was in many ways innovative and unique. It was no mere copycat of existing litigation. Settlement Class Counsel independently researched banking practices, rules, and regulations, and analyzed how each of those issues would impact the legal claims to be brought. Zavareei Decl., ¶¶ 14-15. Settlement Class Counsel's research indicated that the Class would be served by making a claim based on the Electronic Funds Transfer Act and Regulation E—claims which had not previously been made in other overdraft fee litigation. *See* Dkt. No. 1. Perhaps most significantly, prior to the work of Settlement Class Counsel, the overdraft fee litigation was focused almost exclusively on the massive nationwide banks, including Wells Fargo Bank and Bank of America. Settlement Class Counsel was discouraged by lawyers involved in the lawsuits against the larger banks from bringing cases against smaller banks (including National City) because of the high costs and relatively lower potential rewards. Zavareei Decl., ¶ 15. Settlement Class Counsel shouldered significant risk in order to ensure that consumers from smaller regional banks had an avenue for redressing their injuries.

In this case, Settlement Class Counsel began a series of challenging settlement negotiations with Defendant's counsel, ultimately resulting in an excellent settlement. Counsel participated in numerous teleconferences and met in person on two separate occasions, always opposed by experienced and skillful counsel for National City. As settlement talks progressed, Settlement Class Counsel analyzed and calculated numerous versions of damages analyses, using

publicly reported information by National City, and making efficient and innovative use of the expert reports in *Gutierrez*.

Having dealt with these challenges, Settlement Class Counsel then prepared and exchanged multiple drafts of the Settlement Agreement.  Because the Settlement Agreement itself is fairly complex, involving a detailed claims process and allocation, the drafting process required significant time and attention, as well as careful consideration.

Moreover, Settlement Class Counsel's effective representation was not limited strictly to legal acuity.  Beyond the standard mechanics of drafting and executing a complex class action settlement agreement, this case presented unique challenges with regard to overdraft fee data, data storage, and data interpretation.  Settlement Class Counsel worked through tremendous uncertainty regarding National City data that was in some cases 6 years old, archived, unavailable, or incomplete.

### 4.        Complexity and Duration

As explained in part above, Settlement Class Counsel was confronted with significant complexities while investigating, negotiating, and settling this case.  The law and facts of the case were complex, and Settlement Class Counsel devoted a large amount of time to understanding and preparing for the litigation.  Such complexities would support the fee award requested, even if this case existed in a vacuum.  But it does not.  In fact, this action shares a complicated litigation landscape with dozens of cases against dozens of banks pending in federal and state courts around the country.  As counsel for plaintiffs in that MDL litigation, and in their role as counsel to the Settlement Class, Settlement Class Counsel must monitor the cases on a daily basis.  And the progress and developments in those MDL cases impact the risks involved in this case.  In fact, the legal status of the claims involved in the various overdraft fee cases are

very much in flux.  For example, over 60 overdraft fee cases have been coordinated by the

Judicial Panel on Multidistrict Litigation before the Honorable James L. King in the Southern

District of Florida.  *In re Checking Account Overdraft Litigation,* No. 1:09-md-02036 (S.D. Fla.).

Although the plaintiffs in those proceedings have achieved some early victories, Judge King has

not rendered any final decisions.  In short, developments in the ongoing MDL litigation may

cause ripple effects within the overdraft fee litigation environment and Settlement Class Counsel

must be aware of such developments, as well as effectively analyze and evaluate them.

     **5.**     **The Risk of Nonpayment**

     Settlement Class Counsel have received no compensation during the course of this

litigation despite having committed a substantial amount of time and expenses in order to

achieve a successful result for the Class.  To date, over 1,000 hours have been expended.

Zavareei Decl., ¶ 69.  Any fee award or expense reimbursement to Settlement Class Counsel has

always been contingent on the result achieved and on this Court's exercise of its discretion in

making any award.  Settlement Class Counsel exclusively bore the risk that it would receive no

compensation whatsoever for its work.  Settlement Class Counsel also bore the risk that it might

not be reimbursed for the expenses it has incurred in this case, which total over $77,000.

     These risks were especially heavy here, in light of the strong defenses available to

National City and the uncertain and complex legal landscape, including the multidistrict

litigation.  For instance, at the time the case was filed, similar overdraft fee claims had been

dismissed in three separate federal courts.  *See Hassler*, 644 F. Supp. 2d at 521; *Montgomery,*

515 F. Supp. 2d at 1110; *Northampton Restaurant Group v. FirstMerit Bank, N.A.*, No. 5:09-cv-

02630, 2010 WL 3069494 (N.D. Ohio Aug. 3, 2010).  At that time, other than *Closson*, no other

filed case had settled.

Further, no court had ever ruled—and to this day, has still not ruled—that the types of disclosures used by National City were unlawful.  While the favorable ruling in *Gutierrez* improved the legal environment for Plaintiffs, it was announced *after* this action was brought, and *after* this case was settled.  Further, even assuming that Plaintiffs were to defeat a motion to dismiss, obtain class certification, overcome a motion for summary judgment, and win a jury verdict in their favor, Plaintiffs would still face the possibility of appeal.  And, taking into account the complexities of the case (including the complicated damages analyses), Plaintiffs would still confront the possibility that, following victory and appeals, they could be awarded a diminished amount.

Settlement Class Counsel's assumption of these clear risks favors entry of the requested fee award.  *See, e.g., Radosti*, 2011 WL 159662, *5 ("The Court also finds that Class Counsel faced a significant risk of nonpayment, having taken the case on a contingency basis and expending significant resources on investigation before negotiating the settlement. Class Counsel's recovery was threatened by significant obstacles to class certification."); *Cohen*, 522 F. Supp. 2d at 123 (finding significant risk of nonpayment where case was brought on contingency).

### 6.     The Amount of Time Devoted to the Case by Plaintiffs' Counsel

Settlement Class Counsel has expended significant time and effort on legal and factual research, informal and formal discovery, working with a Notice Administrator, Claims Administrator, and an expert (on a damages analysis), and fielding inquires from Class Members. As noted above, through May 27, 2011, Settlement Class Counsel has spent over 1,000 hours of attorney and litigation support time and incurred $77,857.05 in costs and expenses to prosecute this case.  *See* Zavareei Decl., ¶ 69; ¶ 70, Exh. A.

In sum, Settlement Class Counsel achieved an excellent Settlement for the Class, and has steadfastly continued to shepherd the settlement forward and vigorously represent the interests of the Class.  This factor weighs in favor of the requested fee award.

7.     **The Awards in Similar Cases**

Courts in this Circuit have deemed awards in the amount of 20% and 30% of the fund as reasonable in common fund cases.  *See, e.g., Swedish Hosp.*, 1 F.3d 1261, 1272 (20% award); *Radosti*, 2011 WL 159662, *5 (award of just under 33% of the fund); *In re Lorazepam*, 2003 WL 22037741, *8 (30% award); *In re Baan*, 288 F. Supp. 2d at 16 (28% award); *Democratic Cent. Comm.,* 12 F.3d at 271 (23.3% award).

The percentage request here is on the low-end of the range commonly awarded in similar cases—and it is comparable to the fee awarded in another overdraft fee settlement.  *See Mathena* (awarding 25% of the common fund).  It is also lower than the maximum fee request allowed pursuant to a recent settlement in the overdraft fee MDL, where Bank of America agreed not to oppose any fee request up to 30% of a $410 million fund.  *In re Checking Account Overdraft Litigation,* No. 1:09-md-02036 (S.D. Fla.), at Dkt. No. 1471.

Moreover, the fee award request is justified by the specific circumstances of this litigation described above, including its substantial complexity, the multi-faceted legal landscape, the unquestionable litigation risks, and the significant time and effort expended by Settlement Class Counsel, which culminated in an excellent recovery for the Class.  This factor supports the fee request.

D.     **The Expenses Settlement Class Counsel Incurred Were Reasonable and Necessary to the Effective Prosecution of this Action**

"In addition to being entitled to reasonable attorneys['] fees, class counsel in common fund cases are also entitled to reasonable litigation expenses from that fund."  *Radosti,* 2011 WL

159662, *5 (citing *Wells,* 557 F. Supp. 2d at 8).  "[T]here is no doubt that any attorney who has

created a common fund for the benefit of the class is entitled to reimbursement of. . . reasonable

litigation expenses from that fund."  *In re: Vitamins Antitrust Litigation,* 2001 WL 34312839 *13

(D.D.C. July 16, 2001).  Settlement Class Counsel requests reimbursement for $77,857.05 in

expenses it incurred while prosecuting this action.  *See* Zavareei Decl., ¶ 69; ¶ 70, Exh. A.  The

most significant expense was for expert witnesses, who Settlement Class Counsel retained to

calculate damages in this case.  The costs of that valuable analysis are extremely reasonable,

especially in light of the significant discount ($22,278.75) that Settlement Class Counsel

negotiated.  Most of the remainder of the expenses are for travel back and forth from meetings

with Defendant during the negotiation of the settlement agreement.  *Id.*, at Exh. A.  A table

detailing all of these costs and expenses is attached to the concurrently filed Declaration of

Hassan A. Zavareei, at Exh. A.  Settlement Class Counsel has reviewed the expense records

carefully and determined that the expenses were necessary to the successful prosecution of this

case.  *Id.*  This relatively modest amount of expenses should be reimbursed.

**E.**     **Representative Plaintiffs Ramona Trombley, Brian Wells, and Jeff Doehner Should Each Receive a Modest Award for Their Work on Behalf of the Class**

"Courts routinely approve incentive awards to compensate named plaintiffs for the

services they provided and the risks they incurred during the course of the class action

litigation."  *In re Lorazepam*, 2003 WL 22037741, at *10.  In *In re Lorazepam*, the Court put it

concisely: "The propriety of allowing modest compensation to class representatives seems

obvious…" *Id.*, at *11 (citing *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985)).

"In deciding whether to grant incentive awards and the amounts of such awards, courts consider

factors such as the actions the plaintiff has taken to protect the interests of the class, the degree to

which the class has benefited from those actions, and the amount of time and effort the plaintiff

expended in pursuing the litigation." *Id.* (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Plaintiff and Settlement Class Counsel respectfully submit that Ms. Trombley, Mr. Wells, and Mr. Doehner should each receive a reasonable incentive award of $5,000 for their time and efforts in this action.  National City has agreed not to oppose such request.  *See* Dkt. No. 34, Exh. 1, ¶ 12.

Each Representative Plaintiff actively assisted in the prosecution and settlement of this case.  They participated in many telephone calls with Settlement Class Counsel.  Zavareei Decl., ¶ 71.  During the preparation of the complaint, each provided detailed descriptions of their banking behavior and experiences, as well as documentary evidence (in the form of bank records) that supported their allegations.  *Id.*, at ¶ 72.  Further, Ms. Trombley made herself available for repeated consultations during settlement negotiations.  *Id.*, at ¶ 73.  Overall, their efforts—as well as their willingness to publicly disclose detailed information about their personal finances—contributed to an excellent recovery for tens of thousands of their fellow bank customers.

The incentive award amounts to only 0.125% of the settlement fund, *see In re Lorazepam,* 2003 WL 22037741, at *11 (granting incentive award that amounted to 0.2% of fund), and not a single objection has been made to the award.  *See Vista Healthplan, Inc.*, 246 F.R.D. at 365 (noting that "Class Members were advised of these potential awards via the notice program, and that no objections to the incentive awards were received).  In short, the requested awards appropriately recognize the Representative Plaintiffs' efforts and contributions and are well within the range of the incentive awards granted in other cases in this Circuit.  *See, e.g., Wells,* 557 F. Supp. 2d at 9 ($10,000 incentive award to each named plaintiff); *Vista Healthplan,*

*Inc.*, 246 F.R.D. at 365 ($12,500 incentive award to each named plaintiff); *Radosti*, 2011 WL 159662, *6 ($2,500 incentive award to each of six named plaintiffs).

Plaintiffs respectfully request that they be reasonably rewarded for their contributions to this litigation and the excellent result obtained for the Class.

## IV.
## CONCLUSION

For the reasons set forth above, Representative Plaintiffs and Settlement Class Counsel respectfully request that the Court enter an order approving (1) an award of attorneys' fees in the amount of $3,000,000; (2) an award of $77,857.05 in costs and expenses to Settlement Class Counsel; and (3) an incentive award of $5,000 to each Representative Plaintiff, with these amounts to be deducted from the $12 million common Settlement Fund.

Dated:  May 27, 2011

_____

Hassan A. Zavareei
Jonathan K. Tycko
Jeffrey D. Kaliel
Andrea R. Gold
TYCKO & ZAVAREEI LLP
2000 L Street, N.W.
Suite 808
Washington, D.C. 20036
(202) 973-0900

*Settlement Class Counsel*

## CERTIFICATE OF SERVICE BY ELECTRONIC MEANS

I, Hassan A. Zavareei, one of the attorneys for Plaintiffs, hereby certify that the proceeding document was caused to be served electronically this 27th day of May 2011, pursuant to ECF as to Filing users, and that I shall comply with LR 5.5 as to any party who is not a filing user or represented by a filing user.

_____