**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| RAMONA TROMBLEY, et. al., on behalf of herself and all others similarly situated, | Civil Action No. 1:10-CV-00232 |
| | Judge John D. Bates |
| Plaintiffs, | |
| -v- | |
| NATIONAL CITY BANK, | |
| Defendant. | |

**OBJECTIONS TO PLAINTIFFS' UNOPPOSED MOTION AND**
**INCORPORATED MEMORANDUM OF POINT AND AUTHORITIES IN**
**SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Robert Matos and Fernando Hernandez, named plaintiffs in *Matos v. National City Bank*, No. 10-cv-21771 (S.D. Fla.), and *Hernandez. v. PNC Bank, N.A.*, Case No. 10-cv-21868-JLK (S.D. Fla.), overlapping class actions made part of *In re Checking Account Overdraft Litigation*, Multidistrict Litigation Proceeding No. 2036 (S.D. Fla.) (the "Overdraft MDL"), assigned to the Honorable James Lawrence King, through Plaintiffs' Co-Lead Counsel and the Plaintiffs' Executive Committee appointed by Judge King in the Overdraft MDL, respectfully submit the following objections to the Plaintiffs' Unopposed Motion and Incorporated Memorandum of Points and Authorities in Support of Final Approval of Class Action Settlement (the "settlement").  Dkt. No. 41.

## I.    INTRODUCTION

The starting point for this Court's consideration of the settlement should be the litigation itself.  What is the case about?  What is the gravamen of the claims asserted?  What relief is

being sought?  If the settlement does not provide the answers to these fundamental questions, the Court should not grant final approval.

This litigation does *not* challenge the right of banks to charge overdraft fees to their customers.  Likewise, it does *not* challenge the amount of each overdraft fee.  Rather, this is one of a series of cases challenging a banking-industry practice of intentionally re-ordering electronic debit card and ATM transactions on customer accounts from highest to lowest, through an internal re-ordering scheme designed to create more overdrafts in a customer's account than would normally occur if the debit card and ATM charges were processed in chronological order, in order to maximize staggering amounts of overdraft fee revenues for the banks.

In June 2009 the Judicial Panel on Multidistrict Litigation (the "Panel") created the Overdraft MDL because it recognized that centralization was warranted because "[a]ll actions share factual questions relating to the imposition of overdraft fees by various bank defendants on their customer's checking accounts in a manner to maximize these fees."  *See In re Checking Account Overdraft Litig.*, 626 F. Supp. 2d 1333, 1335 (J.P.M.L. 2009).  The Panel also noted that "[w]hile there will be some unique questions of fact from bank-to-bank, these actions share sufficient factual questions relating to industry-wide bank posting policies and procedures to warrant centralization of all actions in one MDL docket."  *Id.*

Since its creation two years ago, the Panel has transferred cases brought against approximately 35 banks to the Overdraft MDL for coordinated pretrial proceedings.  One of the first cases transferred to the Overdraft MDL, against Bank of America, N.A., recently settled for $410 million following nearly two years of active litigation.  A hearing on final approval of that settlement is scheduled for November 7, 2011.

Cases against other banks in the Overdraft MDL are progressing.   Class certification motions have been filed against four banks which were among the earliest group of cases transferred by the Panel.   The most recent group of cases, known as the *fourth tranche*, include those brought against PNC Bank, N.A. ("PNC Bank") and National City Bank ("National City").[1]   In the cases against PNC Bank and National City, Plaintiffs filed their consolidated amended class action complaint, the Court denied the banks' motion to dismiss, PNC Bank and National City filed their answer, discovery is now underway, and class certification motions are due by mid-December 2011.  *See* Exs. A, B, C and D.

At the time it established the Overdraft MDL, the Panel excluded one case, *Gutierrez v. Wells Fargo Bank, N.A.*, which had already been certified as a class action on behalf of a California statewide class and was scheduled for trial soon thereafter.  Following a two week bench trial in mid-2010, U.S. District Judge William Alsup of the Northern District of California issued detailed findings of fact and conclusions of law, finding Wells Fargo liable for $203 million in wrongful overdraft fees based on the same scheme at issue in the cases pending in the Overdraft MDL and the claims originally pleaded in this case.  *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080 (N.D. Cal. 2010) [Dkt. No. 12, Ex. C].  Judge Alsup subsequently entered final judgment against Wells Fargo and the case is now on appeal before the Ninth Circuit.

Thus, between the many cases being litigated in the Overdraft MDL, including the recent settlement involving Bank of America, and the *Gutierrez* case tried to judgment in the Northern District of California, the hallmark of the litigation brought against these banks involves a

---

[1]  The Panel transferred the first case brought against PNC Bank to the Overdraft MDL on February 3, 2010.  The inclusion of PNC Bank in the Overdraft MDL since February 2010 is noteworthy because National City Bank, the party sued in this case, was merged into PNC Bank on November 6, 2009 and, from that date forward, no longer existed as a separate banking entity.

discrete, but pervasive, industry practice which damaged millions of customers by assessing more overdraft fees than they should have actually experienced.  It is this practice that is the gravamen of these lawsuits.

The proposed final approval of the settlement in this case must be viewed against this backdrop.

## II.    PROCEDURAL BACKGROUND OF THE *TROMBLEY* ACTION

The *Trombley* action was filed on February 17, 2010.  [Dkt. No. 1].  Shortly thereafter, the Panel was notified of the pendency of *Trombley* and it was tagged for transfer to the Overdraft MDL.  Because the parties to the *Trombley* action recognized that it was likely to be transferred to the Overdraft MDL, they filed a joint motion with this Court which specifically referenced the likelihood that this case would be transferred to the Overdraft MDL.  [Dkt. No. 2].

On April 15, 2010, the Panel issued Conditional Transfer Order (CTO-16), which transferred *Trombley* to the Overdraft MDL subject to a 14-stay to allow any party an opportunity to object to transfer.  On April 30, 2010, the Panel lifted the stay, formally transferring *Trombley* to the Overdraft MDL, based on the lack of timely objections from any party.  On May 3, 2010, however, the Panel reinstated the stay based on a potential defect in the service of the original CTO-16, and afforded the parties an additional 14 days within to oppose transfer.

On May 17, 2010, Plaintiffs filed a Notice of Opposition to the transfer of *Trombley* to the Overdraft MDL.  On June 1, 2010, Plaintiffs filed a Motion to Vacate Conditional Transfer Order (CTO-16), and National City Bank filed its Motion to Vacate Conditional Transfer Order (CTO-16) the same day.  On June 25, 2010, Plaintiffs' Lead Counsel and Plaintiffs' Executive Committee in the Overdraft MDL filed a Response in Opposition to Plaintiffs' and National City Bank's Motions to Vacate Conditional Transfer Order (CTO-16) noting, among other points, that

633962_1

PNC Bank and National City were already defendants in the Overdraft MDL.   The Panel scheduled the matter for consideration on its July 29, 2010 non-argument calendar.

On July 28, 2010 – one day prior to the Panel's scheduled consideration of *Trombley* and prior to any motion practice or discovery – Plaintiffs and National City Bank entered into a settlement agreement in *Trombley* and requested that the Panel vacate CTO-16 to allow this Court to consider approval of the proposed class action settlement.   Based on that submission, on August 9, 2010 the Panel issued an Order Vacating Conditional Transfer Order (CTO-16), and noted that '[i]n the event that the settlement is not approved or does not fully resolve *Trombley*, nothing in this order bars future transfer of the action to MDL 2036."

On August 13, 2010, Objector Matos filed his objection to Plaintiffs' motion for preliminary approval of proposed class action settlement (the "*Matos* Objection").   [Dkt. Nos. 11, 12].   On November 18, 2010 this Court heard argument on the motion for preliminary approval and the *Matos* Objection.   At the conclusion of the hearing, the Court indicated it would take the matter under advisement and issue an order.   On December 17, 2010, the Court convened a telephone conference of counsel for Plaintiffs and National City to discuss certain issues pertaining to the request for approval of the original settlement.   [Dkt. No. 33].

On December 22, 2010, Plaintiffs filed the revised settlement along with a motion for preliminary approval.   [Dkt. No. 34].   Objector Matos then filed an objection to the motion for preliminary approval of the revised settlement. [Dkt. No. 35].

On January 11, 2011, this Court granted preliminary approval to the revised settlement. [Dkt. Nos. 37, 38].   The preliminary approval order was modified on March 16, 2011.   [Dkt. No. 40].

On May 27, 2011, Plaintiffs filed their Unopposed Motion and Incorporated Memorandum of Points and Authorities in Support of Final Approval of Class Action Settlement ("Mem. of P's & A's"), together with supporting declarations and other materials.  [Dkt. Nos. 41, 42].  Pursuant to the Court's preliminary approval order, Objectors now file their objection to final approval of the settlement.

## III.   ARGUMENT

There are several independent bases for objecting to the settlement which are separately addressed below.  Taken together, these shortcomings mandate that final approval be denied.

### A.   The Overly Broad Class Definition.

The proposed settlement is not fair, reasonable or adequate because the settlement class is defined so broadly as to have no relation to the claims pled by Plaintiffs.  The definition of the settlement class is:

> All persons in the United States who hold or ever held a National City Account *who* at any time during the Class Period ***incurred at least one Overdraft Fee*** associated with at least one National City Debit Card Transaction that was not previously reversed, refunded, or returned to the Settlement Class Member by the Defendant.

Settlement Agreement, ¶7 (emphasis added).

This class definition ignores the practices originally challenged by Plaintiffs in the complaint (and which are at issue in the Overdraft MDL), namely, National City's practice of reordering debit transactions in order to maximize overdraft fees.  Plaintiffs alleged in the complaint that National City "reorder[ed] electronic debit transactions from the highest dollar amount to lowest dollar amount so as to deplete the customer's available funds as quickly as possible while maximizing the number of overdraft fees collected," provided false and misleading account balance information, and failed properly to disclose its overdraft policies. Complaint, ¶2.

Instead of defining the settlement class as all persons who were injured by the practices challenged by Plaintiffs – those who were included in the complaint's class definition – the settling parties expanded the class to include anyone who ever incurred a single overdraft fee from a debit card transaction, for any reason, at any time during the class period. The burden of this largess falls squarely on the injured class members who comprised the initial putative class. The settlement provides that "[a] Settlement Class Member shall be eligible to claim compensation for each Overdraft Fee that the Settlement Class Member incurred during any two calendar months during the Class Period." Settlement Agreement, ¶27. Thus, those class members who incurred overdraft fees as a result of the challenged practice – reordering – are forced to share settlement proceeds with non-injured "Settlement Class Members"[2]

The settling parties could have identified those class members who incurred overdrafts as a result of the reordering, as plaintiffs' expert Arthur Olsen did in *Gutierrez*, 730 F. Supp 2d at 1138. [Dkt. No. 12, Ex. C at 86]. Although Plaintiffs appear to claim that National City's records did not allow them to calculate the amount of fees incurred as a result of the high-to-low reordering or identify class members who incurred overdrafts as a result of reordering, it is likely that that information exists, if not for all class members for the entire class period, then for a large portion of the class for a substantial period.[3] The assertion that the electronic information

_____

[2] If class members were recovering through this settlement every debit overdraft fee they incurred as a result of the challenged practice, the expansion of the class might not be as problematic. However, as discussed in the *Matos* Objection, the settlement agreement unfairly and illogically permits members to claim a refund *only* for overdraft charges assessed during two calendar months, while releasing their claims for over *six years* of overdraft charges. Dkt. No. 37, Mem. & Op. at 7-10. Further, the settlement provides that "[i]f the aggregate value of submitted claims exceeds the remainder of funds remitted from the Escrow Account, the funds available to be distributed to Settlement Class Members shall be distributed to Settlement Class Members who submitted valid Claim Forms on a *pro rata* basis." Settlement Agreement, ¶31(c).

[3] The record is somewhat unclear on this point. Plaintiffs' counsel avers that interrogatory responses confirmed that "**National City** did not record and save time-stamp data for debit card

may be in storage, rather than in "live" format, does not mean that it does not exist and cannot be analyzed to identify class members and calculate damages. As Judge Alsup noted in *Gutierrez*, retrieving and analyzing data that has been archived may be difficult and time-consuming, but it is "entirely practical." 730 F. Supp 2d at 1138 ("[P]laintiffs' expert Arthur Olsen has convincingly shown that *it is entirely practical to re-run the computerized data in storage* for each class members' account and determine how many overdrafts were added by the high-to-low practice for debit-card transactions during the class period.") (emphasis added). [Dkt. No. 12, Ex. C at 86]

Moreover, even assuming it truly was not feasible to identify class members who incurred debit overdraft fees as a result of the reordering, the settling parties could have at least narrowed the class to those customers who incurred more than one debit card or ATM overdraft fee on the same day (a necessary prerequisite for determining that the overdraft resulted from the re-ordering).

Identifying the proper claimants, defining an appropriate settlement class, and calculating the amount of overdraft fees incurred as a result of re-ordering would undoubtedly have added time, expense and complexity to a simple, quickly-consummated settlement. As a result, the settling parties chose instead to expand the class to the detriment of the truly injured members. *See, e.g.*, Dkt. No. 41-3, Edgeworth Economics Expert Report, ¶11 n.4 ("not feasible to obtain a data sample contemporaneous with the Class Period."). Because the proposed settlement class is grossly over-inclusive, the Court should decline to grant final approval.

---

transactions" and that formal discovery confirmed earlier information "regarding . . . whether **PNC Bank** had the ability to identify the amount of fees incurred as a result of high to low re-ordering." Dkt. No. 41-1, Zavereei Declaration, ¶¶42-43.

**B.**     **The Settling Parties Have Not Demonstrated that the Settlement Amount is Fair, Reasonable and Adequate.**

As this Court recognized in its January 11, 2011 Memorandum and Opinion, the most important factor in evaluating a proposed settlement is the relationship between the settlement terms and the likely recovery.  Dkt. No. 37, Mem. & Op. at 6 ("In evaluating a proposed settlement, the Court's primary role is to evaluate the relief provided in the settlement against the relative strength of plaintiffs' case, including their ability to obtain recovery at trial.") (citing *Equal Rights Ctr. v. Washington Metro. Area Transit*, 573 F. Supp.2d 205, 211 (D.D.C. 2008) (citing *Thomas v. Albright*, 139 F.3d 231, 231 (D.C. Cir. 1988); *Blackman v. District of Columbia*, 454 F. Supp. 2d 1, 8 (D.D.C. 2006) ("[T]he most important factor" in evaluating a proposed settlement is "comparison of the terms of the proposed settlement with the likely recovery that plaintiffs would realize if they were successful at trial.")).

In order to evaluate the relationship between the $12 million proposed settlement and the likely recovery Plaintiffs and the class would realize if they were successful at trial, this Court urged the settling parties to submit, in support of final approval, an "independent analysis" justifying the settlement amount and to "explain and defend their methodology to demonstrate that it is a fair, adequate and reasonable settlement."  Dkt. No. 37, Mem. & Op. at 8.   In response, Plaintiffs submitted a report by Edgeworth Economics.   In this report, Plaintiffs' experts relied on assumptions provided by Plaintiffs' counsel and a one-month *post*-class period and *post*-Regulation E sample of data provided by PNC Bank to "estimate the total excess overdraft fees [charged by National City] during the Class Period."

The report submitted by Plaintiffs' experts fails, however, to demonstrate that the proposed settlement is fair, adequate and reasonable, because it does not compare the settlement terms to the potential recovery of the settlement class defined in the settlement agreement.  The

experts estimated the "excess amount of overdraft fees collected by National City Bank" due to the challenged practice of "reordering . . . electronic debit transactions from highest to lowest dollar amount…." Dkt. No. 41-3, Edgeworth Economics Expert Report, ¶7. Comparing overdrafts incurred under PNC Bank's (*not* National City's) high-to-low sequencing to two alternative ordering scenarios (low-to-high and a simulated chronological reordering), the experts estimated total excess overdraft fees at between $116.5 million and 46.0 million. *Id.*, ¶30. Using these numbers, Plaintiffs argue that "[t]he $12 million settlement represents a recovery of between 10% and 26% of these two damages calculations" or between 24% or 60% if the estimates are reduced by limiting damages to the two months in which customers incurred the greatest number of overdrafts. Dkt. No. 41, Mem. of P's & A's at 20. These percentages, according to Plaintiffs, are "well within the realm of settlements previously approved by courts in this District." *Id.*

Plaintiffs' argument ignores the improperly broad scope of the settlement class. As discussed above, anyone who incurred a single debit overdraft fee during the class period, for any reason, is entitled to claim benefits under the settlement. Settlement Agreement, ¶¶ 7, 27. Thus, customers who incurred overdrafts as a result of high-to-low reordering are not the appropriate comparison benchmark. Rather, Plaintiffs and their experts should have compared the settlement amount to the total amount of debit overdraft fees incurred by any class member *for any reason*, even if that class member incurred only one overdraft on one day and so could not have been injured by reordering. This analysis would undoubtedly have yielded a benchmark far higher than the estimated $46 to $116.5 million. Plaintiffs' apples-to-oranges comparison obscures the true value of the settlement, and makes it impossible for this Court to determine whether the settlement amount is fair, reasonable and adequate.

Plaintiffs' expert report suffers from additional flaws.  First, it relies on a sample of *PNC Bank* data to estimate damages for *National City* customers.  Dkt. No. 41-3, Edgeworth Economics Expert Report, ¶¶11-17.  Even though the experts received some account data information for *pre-merger* National City customers, they rely solely on *post-merger* PNC Bank data to determine the effects of re-ordering.  This cobbling together of PNC Bank and National City data is all the more troubling in light of Plaintiffs' admitted lack of investigation into PNC's Bank's policies, or the magnitude of PNC Bank's overdrafts, as discussed in more detail below.  Dkt. No. 41-3, Edgeworth Economics Expert Report, ¶¶11-17.

Because of Plaintiffs' failure to make any real attempt to obtain reliable, useable data, Plaintiffs' experts are also forced to rely on assumptions that lack any justification.  Dkt. No. 41-3, Edgeworth Economics Expert Report, ¶11, n.4; (calculation based on sample of transactions post-dating the Class Period because it was "not feasible" to obtain a data sample contemporaneous with the Class Period).  As Plaintiffs' experts recognize, the data sample they used not only *post-dates* the Class Period; it also *post-dates* implementation of the Federal Reserve's amended Regulation E, which prohibits banks from imposing debit overdraft fees on customers who have not affirmatively opted in to overdraft protection. *Id*., ¶14.  Using the *post-Class Period*, *post-Regulation E* data required the experts to assume that "the average characteristics and behavior of customers are the same before and after changes to Regulation E."  Such an assumption is unfounded and renders the expert report and its conclusions unreliable.

C.     **Inclusion of PNC Bank Customers is Not Appropriate and Will Interfere with the Pending Litigation Against PNC Bank in the Overdraft MDL.**

The settlement is also not fair, reasonable and adequate because it releases the claims of PNC Bank customers even though Plaintiffs' counsel conducted absolutely no investigation into

those claims.   Settlement Agreement, ¶5 ("Because National City was merged into PNC on November 6, 2009 and thereafter, at various stages, many National City customers became PNC customers, this Settlement encompasses the debit card transactions of all Settlement Class Members after they became PNC customers….").

As this Court recognized, in determining whether the proposed settlement is fair, adequate and reasonable it must "consider whether counsel had sufficient information, through adequate discovery, to reasonably assess the risks of litigation vis-à-vis the probability of success and range of recovery.'"   *Radosti v. Envision EMI, LLC*, 717 F. Supp 2d 37, 62 (D.D.C. 2010) (quoting *Meijer, Inc. v. Warner Chilcott Holdings Co.*, 565 F. Supp. 2d 49, 57 (D.D.C. 2008)); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 35 (3d Cir. 2001) ("This factor captures the degree of case development that class counsel have accomplished prior to settlement.   Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating.") (citation omitted).   In its Memorandum and Order, the Court required the parties to explain in greater detail the factual investigation conducted by Plaintiff *prior to negotiating the settlement*.   Dkt. No. 37, Mem. & Op. at 10 (at final approval the parties must "be able to explain in greater detail 'the significant factual investigation' made *prior to negotiating* a settlement") (citing *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 105 (D.D.C. 2004) (observing that settlement must not "come too early to be suspicious")) (emphasis added).

The law in this District and Circuit is clear that a class action settlement can be approved *only* where counsel have conducted sufficient discovery to be in a position to appreciate fully the merits of the case.   *See, e.g., Meijer.*, 565 F. Supp. 2d at 52 (approving a partial settlement after "extensive discovery," including document production, depositions and expert discovery, including depositions of more than 25 fact witnesses); *Luevano v. Campbell*, 93 F.R.D. 68, 69

(D.D.C. 1981 ("it is important to consider whether the settlement was reached after extensive factual development"); *cf. Radosti*, 717 F. Supp. 2d 37 (D.D.C. 2010) (approving settlement despite minimal discovery where parties participated in extensive mediation with retired judge).

Despite this Court's request for a description of the factual investigation *undertaken prior to the negotiation of the settlement*, Plaintiffs' counsel's declaration in support of the settlement reveals that there was *no investigation at all of PNC Bank's practices*, whether through pre-filing investigation, or informal or formal discovery. *See* Dkt. No. 41-1, Zavareei Decl., ¶¶ 16-18, 30-43, 50-56, 63-64 (describing the informal and formal investigation conducted with respect to *National City Bank* before and after settlement). Thus, there is no basis upon which Plaintiffs can rely for the claim that the settlement is fair, reasonable and adequate for PNC Bank customers, like Messrs. Matos and Hernandez, whose claims stand to be released against PNC Bank for *post-merger* re-ordering activity.

Further, as the *Matos* Objection previously urged, the lack of any meaningful, *pre-settlement* discovery – even of National City's practices – made it impossible for Plaintiffs to properly evaluate the merits of their claims at the time they agreed to release them in exchange for $12 million. *See* Dkt. No. 37, Mem. & Op. at 2-7. And while Plaintiffs have supported the motion for final approval with a more detailed discussion of *post-settlement confirmatory discovery* (*see* Dkt. No. 41-1, Zavareei Decl., ¶¶42-43), that is not sufficient. *See, e.g., Moore v. Halliburton Co.*, No. 03-CV-1152-M, 2004 WL 2092019, at *7 (N.D. Tex. Sept. 9, 2004) ("Confirmatory discovery, by its nature, is not adversarial. In contrast pretrial negotiations and discovery must be sufficiently adversarial so that they are not designed to justify a settlement [but are] an aggressive effort to ferret out facts helpful to prosecution of the suit.") (citing *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)). Plaintiffs' counsel's

633962_1

declaration makes clear that, *before the settlement was agreed to*, Plaintiffs' counsel had obtained *no* information about the amount of overdraft fees imposed on PNC Bank's customers as a result of reordering.  Dkt. No. 41-1, ¶38 (prior to settlement consummation, National City informally provided information about *overall* overdraft fee revenue).  Lacking that critical information, Plaintiffs were in no position to bargain away the class members' rights against PNC Bank.

### D.    The Claims Process Renders This Settlement Inadequate

In the *Matos* Objection, Objector Matos challenged the use of a claims process as the method for determining which settlement class members would receive benefits from the settlement fund.  This Court correctly noted that there is nothing inherently wrong with class action settlements which include claims–made requirements.  Dkt. No. 37, Mem. & Op., at 12-13.  While Objectors agree with the broad principle that there is nothing inherently wrong with claims-made settlements, Objectors continue to assert that a claims–made settlement in this particular case is unfair and unwarranted, and renders this settlement inadequate.

The recent Bank of America settlement is pertinent to this Court's consideration of this point.  Objectors assert that the proposed claims process here is unfair and unwarranted because, *inter alia*, it requires settlement class members to self-identify even though class members could be identified by National City's records.   In contrast, the Bank of America settlement demonstrates the feasibility of a direct distribution of settlement benefits to class members without the requirement of self-identification.   *See* Exs. E and F (Motion for Preliminary Approval and Order Preliminarily Approving Class Settlement and Certifying Settlement Class, *Torres v. Bank of America, N.A.*, *In re Checking Account Overdraft Litig.*).  There, plaintiffs' experts and the settlement administrator will identify and then notify settlement class members who suffered re-ordering damages during the period 2004-2011, and settlement class members

who are still Bank of America customers will have credits automatically posted directly to their accounts, and in the case of former customers, have checks sent to their most recent address. There will be no self-identification required of settlement class members, and the submission of claims will not be necessary.

There has been no showing in this case that direct distribution of the settlement proceeds could not be accomplished.  Because the settling parties have not adopted a direct distribution process for the settlement proceeds, a fraction of the overall settlement class will reap the benefits of this settlement.  For example, if the total settlement class consists of approximately 2.5 million account holders, based on the approximate 100,000 claims submitted to date, nearly 2.4 million settlement class members – as defined in this settlement – would receive no benefits at all because they have not submitted claims (but will nevertheless be releasing National City and PNC Bank).[4]  On the other hand, if a direct-distribution of settlement proceeds were utilized, using a process similar to that in the Bank of America settlement, all or nearly all of the 2.5 million settlement class members would automatically receive a credit in their accounts (if they are still National City/PNC Bank customers), or they would receive a check in the mail (if they are former customers).

There has been no adequate showing, and therefore no justification, for utilizing a claims-process in this settlement.  Absent an adequate showing and justification, final approval should not be granted.

---

[4]  The motion for final approval and supporting papers are devoid of any information describing the actual or even estimated size of the settlement class. This is an obvious red flag and the Court is encouraged to inquire of the settling parties' counsel into the actual number of settlement class members, the total amount of overdraft fees charged to the settlement class members by National City *pre-merger*, and the total amount of overdraft fees charged to settlement class members by PNC Bank *post-merger*.  This data is critical to the Court's analysis of the settlement.

**VI.** **INFORMATION REQUIRED PURSUANT TO PARAGRAPH 18 OF THE PRELIMINARY APPROVAL ORDER**

a,      The title of this action is *Trombley v. National City Bank*;

b.      The Objectors' full names, addresses and telephone numbers are:

> Robert Matos, c/o WEBB KLASE & LEMOND, 1900 The Exchange, S.E., Suite 480, Atlanta, GA 30339, Tel: 770-444-9325

> Fernando Hernandez, c/o Trief & Olk, 150 E. 58th Street, 34th Floor, New York, NY 10155, Tel: 212-486-6060

c.      The reasons for the objection are set forth herein;

d.      The names of all attorneys representing the Objectors are set forth below;

e.      The following attorneys representing the Objectors intend to appear at the Final Fairness Hearing:

> Roger M. Adelman
> Robert C. Gilbert

f.      Objectors do not presently plan to call any witnesses at the Final Fairness Hearing, but reserve their right to do so in the event Plaintiffs and/or National City submit any additional evidence in support of the settlement;

g.      The Objectors do not intend to personally appear and/or testify at the Final Fairness Hearing; and

h.      The electronic signatures of the Objectors' counsel appear below.

V.    **CONCLUSION**

Based on the foregoing, the Court should deny final approval of the settlement.

Dated:  June 27, 2011.

Respectfully submitted,

/s/   *Roger M. Adelman*
Roger M. Adelman
District of Columbia Bar No. 056358
Law Office of Roger M. Adelman
1100 Connecticut Avenue, N.W., Suite 730
Washington, DC  20036
Telephone:  202/822-0600
202/822-6722 (fax)

*Local Counsel*

Bonny E. Sweeney (*pro hac vice*)
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Bruce S. Rogow
Alters Law Firm, P.A.
4141 N.E. 2nd Avenue
Miami, FL  33137
(305) 571-8550

Aaron S. Podhurst
Podhurst Orseck, P. A.
City National Bank Building
25 W Flagler Street, Suite 800
Miami, FL  33130-1780
(305) 358-2800

Robert C. Gilbert (*pro hac vice*)
District of Columbia Bar No. 420950
Grossman Roth, P.A.
2525 Ponce de Leon Blvd.
Suite 1150
Coral Gables, FL 33134
(305) 442-8666

Michael W. Sobol (*pro hac vice*)
Roger N. Heller (*pro hac vice*)
Eric B. Fastiff
Lieff, Cabraser, Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
(415) 956-1000

Ruben Honik
Golomb & Honik, P.C.
1515 Market Street, Suite 1100
Philadelphia, PA  19102
(215) 985-9177

Ted E. Trief
Barbara E. Olk
Trief & Olk
150 E 58th Street, 34th Floor
New York, NY  10155
(212) 486-6060

E. Adam Webb
G. Franklin Lemond, Jr.
Webb, Klase & Lemond, L.L.C.
1900 The Exchange SE, Suite 480
Atlanta, GA 30339
(770) 444-9325


Russell W. Budd
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX  75219
(214) 521-3605

*Counsel for Objectors*

CERTIFICATE OF SERVICE

I, Roger M. Adelman, one of the attorneys for Plaintiffs, hereby certify that the proceeding document was caused to be served electronically this 27th day of June 2011, pursuant to ECF as to Filing users, and that I shall comply with L.R. 5.3 as to any party who is not a filing user or represented by a filing user.

s/ Roger M. Adelman
ROGER M. ADELMAN

District of Columbia Bar No. 056358
Law Office of Roger M. Adelman
1100 Connecticut Avenue, N.W., Suite 730
Washington, DC  20036
Telephone:  202/822-0600
202/822-6722 (fax)

E-mail:        radelman@rcn.com

633962_1