**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RAMONA TROMBLEY, *et al.*, | Case No: 10-cv-232 (JDB) |
| Plaintiffs, | |
| v. | Date:  July 14, 2011<br>Time:  9:15 a.m. |
| NATIONAL CITY BANK, | |
| Defendant. | |

## OBJECTION OF ANA ROSEN

Theodore H. Frank (DC Bar. No. 450318)
CENTER FOR CLASS ACTION FAIRNESS LLC
1718 M Street NW, No. 236
Washington, DC 20036
Phone: (703) 203-3848
Email: tedfrank@gmail.com

Attorney for Objector Ana Rosen



RECEIVED

JUN 27 2011
12:40

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ..................................................................................................1

I.     Objector Ana Rosen Is a Class Member. ....................................................2

II.    This Pre-Certification Settlement Merits High Scrutiny. ..........................3

III.   The Settlement Is Unfair Because the Arbitrary Distribution of Benefits Fails to
       Satisfy the Requirement of Intra-Class Equity. ..........................................4

IV.    The Proposed Attorney Fee Award of Nearly $3000/Hour Is Unreasonable,
       Especially Given the Lack of Risk Faced in This Case. ..............................8

V.     The Class Representative Incentives Are Too High Under the Circumstances. ....12

VI.    The Silence of the Class Should Not Be Construed as Acquiescence in the Unfair
       Fee Request and Intra-Class Distribution. ................................................13

VII.   Courts Should Adopt the American Law Institute Standards for Settlement
       Approval. ...................................................................................................15

CONCLUSION .....................................................................................................15

PROOF OF SERVICE ...........................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) .................................................................................................4

*Bogosian v. Gulf Oil Corp.,*
    621 F. Supp. 27 (E.D. Pa. 1985)..................................................................................12

*Grant v. Bethlehem Steel Corp.,*
    823 F.2d 20 (2d Cir. 1987) ..........................................................................................3

*Grove v. Principal Mut. Life Ins. Co.,*
    200 F.R.D. 434 (S.D. Iowa 2001)................................................................................13

*Holmes v. Continental Can Co.,*
    706 F.2d 1144 (11th Cir. 1983) .............................................................................12-13

*In re Ampicillin Antitrust Litig.,*
    526 F. Supp. 494 (D.D.C 1981).....................................................................................5

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d Cir. 2001) .........................................................................................9

*In re Corrugated Container Antitrust Litig.,*
    643 F.2d 195 (5th Cir. 1981) ......................................................................................14

*\* In re Dept. of Veterans Affairs Data Theft Lit.,*
    653 F. Supp. 2d 58 (D.D.C. 2009) ...........................................................................9-11

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
    55 F.3d 768 (3d Cir. 1995) .....................................................................................13-14

*In re GMC Engine Interchange Litig.,*
    594 F.2d 1106 (7th Cir. 1979) ....................................................................................14

*In re Ikon Office Solutions, Inc., Sec. Litig.,*
    194 F.R.D. 166 (E.D. Pa. 2000) .................................................................................4-5

*In re Lorazepam  & Clorazepate Antitrust Litig.,*
    205 F.R.D. 369 (D.D.C. 2002)....................................................................................12

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   No. MDL 1290 (TFH), 2003 WL 22037741 (D.D.C. June 16, 2003) .........................12

*Lonardo v. Travelers Indemnity Ins.*,
   706 F. Supp. 2d 766 (N.D. Ohio 2010).........................................................................10

*McCaffrey v. Mortgage Sources Corp.*,
   2011 WL 32436 (D. Kan. January 5, 2011)................................................................10

*Mirfasihi v. Fleet Mortg. Corp.*,
   356 F.3d 781 (7th Cir. 2004) ............................................................................. 3-4, 7

*Molski v. Gleich*,
   318 F.3d 937 (9th Cir. 2003) ..........................................................................................4

*Murray v. GMAC Mortg. Corp.*,
   434 F.3d 948 (7th Cir. 2006) ......................................................................................12

* *Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) .......................................................................................................4

* *Perdue v. Kenny A.*,
   130 S. Ct. 1662 (2010) ...........................................................................................9-12

*Plummer v. Chemical Bank*,
   91 F.R.D. 434 (S.D.N.Y. 1981),
   *aff'd*, 668 F.2d 654 (2d Cir.1982)..............................................................................13

*Radosti v. Envision EMI, LLC*,
   717 F. Supp. 2d 37 (D.D.C. 2010) ........................................................................7, 13

*Silber v. Mabon*,
   957 F.2d 697 (9th Cir. 1992) ..........................................................................................4

*Smith v. District of Columbia*,
   466 F. Supp. 2d 151 (D.D.C. 2006) .............................................................................8

*Swedish Hosp. Corp. v. Shalala*,
   1 F.3d 1261 (D.C. Cir. 1993)..........................................................................................9

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*,
   2010 WL 1751995 (N.D. Ohio 2010).........................................................................10

*Vista Healthplan, Inc. v. Warner Holdings Co. III., Ltd.,*
   246 F.R.D. 349 (D.D.C. 2007) .......................................................................................3

*Vizcaino v. Microsoft Corp.,*
   290 F.3d 1043 (9th Cir. 2002) ......................................................................................9

*Walsh v. Great Atl. & Pac. Tea Co.,*
   726 F.2d 956 (3d Cir. 1983) .........................................................................................5

*Weinberger v. Great N. Nekoosa Corp.,*
   925 F.2d 518 (1st Cir. 1991).........................................................................................9


## Rules and Statutes

Fed. R. Civ. Proc. 23 .........................................................................................................4

Fed. R. Civ. Proc. 23(e)..................................................................................................2, 4


## Other Authorities

* AMERICAN LAW INSTITUTE,
   PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.05 (2010) .....................................15

AMERICAN LAW INSTITUTE,
   PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.05(a)(2) (2010).............................7

AMERICAN LAW INSTITUTE,
   PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.05(c) (2010)...................................3

AMERICAN LAW INSTITUTE,
   PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.05, comment *a* (2010) ...............15

AMERICAN LAW INSTITUTE,
   PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.13(a) (2010) ................................12

AMERICAN LAW INSTITUTE,
   PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.13, comment *a* (2010) ...............12

Brickman, Lester,
> *Lawyer Barons* (Cambridge U. Press 2011).................................................................11

*Court Awarded Attorney Fees, Report of the Third Circuit Task Force*,
> 108 F.R.D. 237 (1985).......................................................................................................9

FEDERAL JUDICIAL CENTER,
> MANUAL FOR COMPLEX LITIGATION § 21.612 (4th. ed. 2004) .....................................4

Fitzpatrick, Brian T., *The End of Objector Blackmail?*,
> 62 VAND. L. REV. 1623, 1635-36 (2009)......................................................................2-3

Frankel, Allison, "Legal Activist Ted Frank Cries Conflict of Interest, Forces
> O'Melveny and Grant & Eisenhofer to Modify Apple Securities Class
> Action Deal," AMERICAN LAWYER LIT. DAILY (Nov. 30, 2010) ..................................2

Leslie, Christopher R., *The Significance of Silence: Collective Action Problems and
> Class Action Settlements*, 59 FLA. L. REV. 71 (2007) ...............................................13-14

Zahorsky, Rachel M., "Unsettling Advocate," ABA J. (Apr. 2010)......................................2

## INTRODUCTION

Before a single contested motion was made in this case, the parties agreed to settle claims relating to allegedly improperly administered overdraft fees for $12 million, $3 million of which would go to the class counsel. This is fishy enough by itself, but the settlement plan involves an arbitrary distribution unrelated to damages class members have suffered, giving some class members windfalls and leaving others short-changed. As a result, the settlement cannot meet the requirement of intra-class equity, and cannot be approved as fair.

Even if the settlement is approved, the $3 million fee request—which would correspond to an hourly rate of about $3000 for every partner, associate, and paralegal who billed time on this case—is unconscionably high. Because the environment in which this case was litigated was completely without risk, there is no good public-policy reason to deprive the class of millions of dollars so that class counsel can receive an undeserved windfall of several times what is likely an exaggerated lodestar. The Court should reduce the requested award to class counsel to no more than ten percent of the common fund for their fees and expenses. That figure will still compensate class counsel by over $1000/hour, well over twice their lodestar, more than enough incentive to bring a zero-risk class action where the sixth docket entry is a proposed settlement.

## I.    Objector Ana Rosen Is a Class Member.

On information and belief, Objector Ana Rosen (3504 Charlotte St., Pittsburgh, PA 15201, (412) 584-4100) incurred approximately six to eight overdraft fees during the Class Period as a debit card customer of National Bank; these fees were not reversed, refunded, or returned. She is thus a member of the class with standing to object to the settlement and fee request. Fed. R. Civ. Proc. 23(e); Dkt. No. 38 ¶ 1.

Ms. Rosen's attorney, Theodore H. Frank of the non-profit Center for Class Action Fairness LLC, is representing her *pro bono*, and will appear at the Fairness Hearing. Ms. Rosen does not plan to attend the Fairness Hearing, or to call any witnesses, but reserves the right to cross-examine any witnesses who testify in support of the settlement.

The Center represents class members *pro bono* in class actions where class counsel have acted to benefit themselves at the expense of the class; it has won millions of dollars on behalf of class members. *See, e.g.,* Rachel M. Zahorsky, "Unsettling Advocate," ABA J. (Apr. 2010); Allison Frankel, "Legal Activist Ted Frank Cries Conflict of Interest, Forces O'Melveny and Grant & Eisenhofer to Modify Apple Securities Class Action Deal," AMERICAN LAWYER LIT. DAILY (Nov. 30, 2010). It is perhaps relevant to distinguish the Center's mission from the agenda of those who are often styled "professional objectors." A number of "professional objectors" are for-profit attorneys who attempt or threaten to disrupt a settlement unless plaintiffs' attorneys buy them off

with a share of the attorneys' fees; thus, some courts presume that the objector's legal arguments are not made in good faith. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623, 1635-36 (2009). This is not the business model of the Center for Class Action Fairness, which is funded entirely through charitable donations and court-awarded attorneys' fees. While the Center focuses on bringing objections to unfair class action settlements, it refuses to engage in *quid pro quo* settlements to extort attorneys; the Center has never settled an objection in exchange for payment. In short, Rosen brings this objection in good faith to protect the interests of the class.

## II.     This Pre-Certification Settlement Merits High Scrutiny.

"In reviewing a proposed settlement, a court should not apply any presumption that the settlement is fair and reasonable." American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.05(c) (2010). *Accord Vista Healthplan, Inc. v. Warner Holdings Co. III., Ltd.*, 246 F.R.D. 349, 357 (D.D.C. 2007) ("In considering whether to approve a proposed class action settlement, the Court must strike a balance between a rubber stamp approval and the detailed and thorough investigation that it would undertake if it were actually trying the case.") (quotation omitted).

A "district court ha[s] a fiduciary responsibility to the silent class members." *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir. 1987). "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of

proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004). "Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992).

Where a court is confronted with a settlement-only class certification, the court must look to factors "designed to protect absentees." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "[A]pproval of settlement class actions under Rule 23(e) requires closer judicial scrutiny than approval of settlements reached only after class certification has been litigated through the adversary process." MANUAL FOR COMPLEX LITIGATION § 21.612 (4th. ed. 2004) (citing cases).

Here, a complaint was filed, and the parties settled before there was even a motion to dismiss filed, much less litigated. The parties' decision to settle merits no deference.

**III.    The Settlement Is Unfair Because the Arbitrary Distribution of Benefits Fails to Satisfy the Requirement of Intra-Class Equity.**

When evaluating the fairness of a settlement under Rule 23, "intraclass equity" is a "requirement." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 863 (1999). The "[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution

plan must be fair, reasonable and adequate." *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) (citations and internal quotations omitted); *see also In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494 (D.D.C 1981). The court has an obligation "to ensure that the fund distribution is fair and reasonable as to all participants in the fund." *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 964 (3d Cir. 1983). The distribution of class benefits in this case, however, is unrelated to the relative value of individual class members' claims, and fails this test.

Under the settlement, class members receive $36 (subject to upward or downward adjustments depending upon the number of claims made and the amount remaining in the settlement fund after attorneys' fees and administration costs are deducted) per overdraft fee incurred in two calendar months. Revised Settlement Agreement ¶¶ 27, 31(b). This is entirely arbitrary: not all of the overdraft fees are contested in the lawsuit;[1] class members were not charged identical overdraft fees;[2] and many class members have incurred overdraft fees in more than two months.

The proposed allocation of settlement funds arbitrarily limits compensation to choices of two calendar months, regardless of whether damages were actually suffered at other times. Nevertheless, class members' claims would be released for an entire six-

---

[1] *See* David Report ¶¶ 24-25 (Dkt. No. 41-3) (six to sixteen percent of overdraft fees represent excess amounts).

[2] *Id.* ¶ 19 ("the amount of the overdraft fee varies by account, and ranges from $25 to $36").

year period. The proposed allocation has no relation to class members' actual harm, overcompensating some class members at the expense of others.

For example, imagine class member Ursula, who incurred thirty challenged $36 overdraft charges over the class period, for a total of $1080 in potential damages, but no more than a total of three overdraft charges during any two calendar months within that period; Ursula would be allocated a portion of the settlement fund based on $108, or ten percent of her damages. But hypothetical class member Orville, who incurred eight $25 overdraft charges over the class period, but incurred them all within two calendar months, would be allocated a portion of the settlement based on $288—even though he was charged only $200 in overdraft charges total, whether or not those overdraft charges were subject to the allegations in the complaint. Ursula is undercompensated; Orville is overcompensated. This is wrong.

The settling parties would perhaps argue that they limited recovery to two calendar months because class members could be expected to learn that National City was reordering bank transactions after the first few times the defendant caused an overdraft fee to occur. *Cf.* Dkt. No. 19 at 18 (making similar argument). But there are two fatal flaws in that argument.

*First*, class members are being paid based on the two months with the *highest number* of overdraft fees, not based on the *first* two months of overdraft fees. If a class member incurs overdraft fees every month from January to December 2007, they will be

paid for the two months with the most overdraft fees—even if those months are November and December—not just for January and February. So even to the extent that the settling parties' proposition has merit, it is a *non sequitur* compared to what is being done in the settlement administration.

*Second*, the argument that class members' overdraft fees in the third and other months are less likely to win damages is an argument for paying *less* for those overdraft fees, not for zeroing them out entirely. It is arbitrary and unfair to award up to 432% of actual damages for overdraft fees incurred in two months and 0% for overdraft fees incurred in other months—especially when those months are not being ordered chronologically to correspond to the theory of the comparative value of the claims.

A district judge has a "duty in a class action settlement situation to estimate the litigation value of the claims of the class and determine whether the settlement is a reasonable approximation of that value." *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004). Courts in this Circuit use less vivid language, but the effective standard is no different, requiring a district court judge to examine "the terms of the settlement in relation to the strength of the plaintiffs' case." *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 54 (D.D.C. 2010). *Accord* American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.05(a)(2). Whatever the strengths of the relative claims, it cannot be the case that the class members who have claims for only two months are entitled to up to 432% of their potential damages (and likely more, given that only a fraction of overdraft fees

are subject to the allegations of the complaint by class counsel's own admission), while those who repeatedly faced overdrafts because of the scheme at issue in the case are entitled to nothing.

Ms. Rosen is not asking for a perfect distribution, but the formula for awarding claims should have some minimal relation to the cognizable alleged damages of class members. The parties have failed to carry their burden to show that the procrustean settlement distribution meets the requirements of intra-class equity, and the class settlement cannot be approved unless the parties modify it to more fairly treat class members like Ms. Rosen, whose overdraft fees occurred across several months.

IV.  **The Proposed Attorney Fee Award of Nearly $3000/Hour Is Unreasonable, Especially Given the Lack of Risk Faced in This Case.**

Class counsel asks for a $3 million fee award. They provide no lodestar estimate, but do state that they expended "over 1,000 hours" in attorney and "litigation support" time. One can reasonably infer that "over 1,000 hours," in the absence of a more precise disclosure, can be equated to "under 1,100 hours"; we can also infer that "litigation support" comprised a substantial portion of that time. Class counsel is asking for compensation between $2,725 and $3,000 an hour—somewhere between five and ten times their undisclosed lodestar using *Laffey* Matrix rates. *Cf. Smith v. District of Columbia,* 466 F. Supp. 2d 151, 156 (D.D.C. 2006).

Courts must exercise great vigilance in scrutinizing common fund awards because the Court "must 'act as fiduciary for the beneficiaries (who are paying the fee) … because few if any, of the action's beneficiaries actually are before the court at the time the fees are set,' and because 'there is no adversary process that can be relied upon in the setting of a reasonable fee.'" *In re Dept. of Veterans Affairs Data Theft Lit.*, 653 F. Supp. 2d 58, 60 (D.D.C. 2009) (*quoting Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 251 (1985)). This is especially true when, as here, the defendant has agreed to a "clear sailing" clause and will not challenge the fee request. *See, e.g., Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 522 (1st Cir. 1991).

The D.C. Circuit applies a percentage-of-the-fund technique in awarding attorneys' fees. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993). But it does not prohibit the use of lodestar as a cross-check to determine the reasonableness of the common-fund award. *E.g., In re Dep't of VA Data Theft Lit.*, 653 F. Supp. 2d at 61. The "lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 285 (3d Cir. 2001). In *Perdue v. Kenny A.*, the United States Supreme Court held that a lodestar figure calculated to determine a fee award is presumptively reasonable, "adequate to induce a capable attorney to undertake representation." 130 S. Ct. 1662 (2010). Enhancements might be appropriate in exceptionally protracted litigation where attorneys paid large expenses or went without

pay for an unexpectedly long period of time, but an award containing such an enhancement would be appropriate only in a truly extraordinary case because plaintiffs' lawyers normally expect to go without payment until resolution of cases. *Id.* at 1674. Courts have held that *Kenny A.* provides grounds for capping common-fund awards at the lodestar amount. *E.g., Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 2010 WL 1751995 (N.D. Ohio 2010); *Lonardo v. Travelers Indemnity Ins.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010) (following *Van Horn*); *McCaffrey v. Mortgage Sources Corp.*, 2011 WL 32436, at *5 (D. Kan. January 5, 2011) (citing *Kenny A.* for proposition that Court needed billing information to determine reasonableness of common fund award).

This case settled before any substantive litigation took place. The vast majority of hours expended took place after it was clear that class counsel would be paid for engaging in this litigation. And this is part of a series of several copycat lawsuits against banks with similar policies brought by the same class counsel,[3] reducing the risk still further, since any legal research time devoted to this case could be reused in other cases that are also likely to settle. To request nearly $3000/hour for partner, associate, and paralegal time in such circumstances is unconscionable. *See generally* Lester Brickman, *Lawyer Barons* 47-52 (Cambridge U. Press 2011) (arguing that practice of charging full contingency fees in cases that settle immediately without risk violates ethics rules).

---

[3] *See* http://www.tzlegal.com/practice-areas/bank-overdraft-fee-litigation/.

If the court reduces the total award to class counsel to ten percent of the common fund, or $1.2 million, class counsel will receive over $1000/hour for fees for partners, associates, and paralegals, which is somewhere between two and four times the *Laffey* Matrix lodestar rates, even after expenses are accounted for—and that is making the generous assumption that the 1,000 hours claimed were reasonably expended in a case that is part of a series of copycat lawsuits against banks with similar policies and where the only litigation was over the fairness of the settlement. *E.g., In re Dep't of VA Data Theft Lit.,* 653 F. Supp. 2d at 61 (rejecting request of three times lodestar and finding two times lodestar sufficient).

(Section 31 of the Settlement Agreement, in combination with the March 16, 2011 Order, permits National City to deduct notice and administration expenses from the settlement fund if those expenses exceed $1.5 million. The parties have not disclosed to the class whether such deductions will take place. If so, then class counsel's fee request should be reduced proportionately: class counsel is not entitled to a commission on the costs of notice and settlement administration.)

(Similarly, under the terms of the Settlement, the defendant is allowed to challenge claims made by class members, but class members will depend upon class counsel to defend against any such challenges. Yet class counsel's fee request is based upon the size of the settlement fund, rather than on the amount that class members will receive; worse, the settlement provides that class counsel will be paid before the class is.

Revised Settlement Agreement § 10(a). As a result, class counsel will have no incentive to assist class members once the settlement is approved. The award of class counsel's fee request should be contingent upon the amounts *actually received* by their clients, not just the hypothetical size of the potential award. American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.13(a) *and* comment *a* (citing cases).)

## V.   The Class Representative Incentives Are Too High Under the Circumstances.

This case was settled before any substantive litigation took place. Ms. Rosen does not disagree with class counsel that the class representatives should receive a "modest" award. Dkt. No. 42 at 28; *In re Lorazepam & Clorazepate Antitrust Litig.*, No. MDL 1290 (TFH), 2003 WL 22037741, at *10 (D.D.C. June 16, 2003) (emphasis added) (*quoting Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985)). But $15,000 is far from modest in the circumstances of this case, where the plaintiffs faced no discovery and did not sit for deposition. Incentive awards are intended "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *In re Lorazepam*, 205 F.R.D. 369, 400 (D.D.C. 2002) (citations and internal quotation marks omitted). When the incentive award is so wildly disproportionate to the value of the claim and the risks taken, the windfall is "untenable." *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) (incentive award of $3000 proof that "the class device had been used to obtain leverage for one person's benefit"); *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1148 (11th Cir.

1983) (when "representative plaintiffs obtain more for themselves by settlement than they do for the class for whom they are obligated to act as fiduciaries, serious questions are raised as to the fairness of the settlement to the class" (*quoting Plummer v. Chemical Bank*, 91 F.R.D. 434, 441-42 (S.D.N.Y. 1981), *aff'd*, 668 F.2d 654 (2d Cir.1982))).

This Court has the discretion to refuse an incentive award entirely. *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 52 (D.D.C. 2010). Here the class representatives did next to nothing to represent the interests of the class; the fact that the class representatives acquiesced in a $3 million attorney fee at the expense of the class suggests that this settlement was attorney-driven. An award of $5,000 to be split among the three class representatives provides more than enough compensation given the lack of risk and lack of participation in the case of the class representatives.

## VI.   The Silence of the Class Should Not Be Construed as Acquiescence in the Unfair Fee Request and Intra-Class Distribution.

The court should not infer anything from the relatively low number of objectors. Silence is simply *not* consent. *Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 447 (S.D. Iowa 2001), *citing In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 789 (3d Cir. 1995). "Silence may be a function of ignorance about the settlement terms or may reflect an insufficient amount of time to object. But most likely, silence is a rational response to any proposed settlement even if that settlement is inadequate. For individual class members, objecting does not appear to be cost-beneficial. Objecting

entails costs, and the stakes for individual class members are often low." Christopher R.

Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59

FLA. L. REV. 71, 73 (2007). Without *pro bono* counsel to look out for the interests of the

class, filing an objection is economically irrational for any individual.

"[A] combination of observations about the practical realities of class actions has

led a number of courts to be considerably more cautious about inferring support from a

small number of objectors to a sophisticated settlement." *In re GMC Pick-Up Litig.*, 55

F.3d at 812 (*citing In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217–18 (5th

Cir. 1981)). "Acquiescence to a bad deal is something quite different than affirmative

support." *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1137 (7th

Cir. 1979) (reversing approval of settlement).

The reason this case is being pursued as a class action is because individual class

members cannot economically pursue this case without aggregation. Given that class

counsel is arguing that law class members cannot perfect an objection without jumping

through hoops (Dkt. No. 41 at 32), given that the class notice failed to disclose that class

counsel was requesting nearly $3000/hour in payment, and given that it is plainly fiscally

irrational for a class member to pay for an attorney to object to the unfair aspects of this

settlement, this Court should infer nothing from the small number of objections.

## VII.   Courts Should Adopt the American Law Institute Standards for Settlement Approval.

Plaintiffs cite a variety of factors that this Court should consider in evaluating the fairness of the settlement. Dkt. No. 41 at 10-11. For example, they argue that the opinion of experienced counsel who agreed to the settlement is evidence in favor of settlement approval. *Id.* at 31. But this makes no sense: counsel negotiated the settlement, and are never going to go to the Court and ask them to disregard what they negotiated, regardless of the underlying fairness of the settlement. "[T]he lawyers who negotiated the settlement will rarely offer anything less than a strong favorable endorsement." *Principles* § 3.05, comment *a*. Ms. Rosen recognizes that this court is bound by D.C. Circuit precedent on the question, but asks the Court to adopt ALI's *Principles* § 3.05 in evaluating the settlement, and downplay the importance of factors that do nothing to distinguish between good settlements and bad ones.

## CONCLUSION

The settlement is unfair. When Ms. Rosen argues this, she is not arguing that the settlement should have been $24 million or $36 million instead of $12 million, but that the arbitrary distribution of the settlement fund shortchanges some class members to provide others windfalls. As such, it violates the requirement of intra-class equity.

If the Court is to approve the settlement, it cannot approve the $3 million fee request, which reflects impermissible self-dealing by the attorneys. The proposed

recovery of nearly $3000 for every hour spent by a partner, associate, and paralegal on the case cannot be reasonable, given the lack of risk faced by the class counsel in a case where a settlement was announced on the sixth docket entry.

Dated: June 27, 2011

Respectfully submitted,

*/s/ Theodore H. Frank*
Theodore H. Frank (DC Bar No. 450318)
CENTER FOR
CLASS ACTION FAIRNESS LLC
1718 M Street NW, No. 236
Washington, DC 20036
Telephone: (703) 203-3848
Email: tedfrank@gmail.com

Attorney for Ana Rosen

## PROOF OF SERVICE

I hereby certify that, on June 27, 2011, this **OBJECTION OF ANA ROSEN** was served by First Class Mail to:

> Hassan A. Zavareei
> Tycko & Zavareei LLP
> 2000 L St. NW
> Suite 808
> Washington, D.C. 20036
>
> Darryl J. May
> Ballard Spahr, LLP
> 1735 Market St.
> Philadelphia, Pennsylvania 19103

I also provided electronic copies of this document to these attorneys at hzavareei@tzlegal.com and may@ballardspahr.com.

Executed on June 27, 2011.

> _/s/ Theodore H. Frank_
> Theodore H. Frank