June 20, 2011

Office of the Clerk of Court
United States District Court
for the District of Columbia
333 Constitution Avenue N.W.
Washington, D.C. 20001

Darryl J. May
Ballard Spahr, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

Hassan A. Zavareei
Jonathon K. Tyko
Tyko & Zavareei LLP
2000 L St. NW, Ste. 808
Washington, D.C. 20036

Re:    Ramona Trombley, et al on behalf of themselves and all others similiarly situated
       v. National City Bank, Case No. 1:10-CV-00232 in the United States District Court For
       the District of Columbia

Dear Sirs:

        Class member Sam P. Cannata ("Objector") hereby objects to the proposed
settlement of the above-entitled class action for the following reasons:

### OBJECTIONS TO PROPOSED CLASS ACTION SETTLEMENT

        1.      The parties should present evidence that would enable the Court to
determine the potential value of Class Members' claims. No such evidence has been
presented by the settling parties. The record before this Court does not support a
finding that the proposed settlement is fair, adequate and reasonable, and will provide
sufficient compensation to the affected customers of NCB. The absence of such
evidence demonstrates that the settlement is inadequate and, therefore, not deserving
of final approval.
        The absence of any pre-settlement discovery shows that class counsel failed to
properly evaluate the merits of the claims at issue in this litigation. It also made it
impossible for class counsel to perform any reliable, independent analysis of the
potential class damages in this case. In fact, there is no evidence that any analysis was
performed prior to entering into the settlement. Under these circumstances, the Court
cannot sufficiently evaluate the adequacy of the proposed settlement, and final
approval is *not* appropriate. *See Reynolds v. Beneficial Nat'l Bank*, 238 F.3d 277, 280-
285 (7th Cir. 2002) (Seventh Circuit criticized approval of class settlement where
reliable damages estimate was lacking and warning of "the practice whereby the
defendant in a series of class actions picks the most ineffectual class lawyers to
negotiate a settlement with in the hope that the district court will approve a weak

1



settlement that will preclude other claims against the defendant."); *Reynolds v. Beneficial Nat'l Bank*, 260 F. Supp. 2d 680 (N.D. Ill. 2003) (declining to approve settlement on remand and disqualifying class counsel because they attempted to settle case without first undertaking sufficient discovery to estimate class damages); *In re Microsoft Antitrust Litig.*, 185 F. Supp. 2d 519, 526-527 (D. Md. 2002) (declining to grant preliminary approval to proposed class action settlement where the record contained insufficient "information by which to . . . reach a conclusion as to a reasonable range of value").

In lieu of presenting a reliable estimate of the NCB customers' damages in this case, the settlement proponents may to try to establish the settlement's "adequacy by analogy." Specifically, the settlement proponents will likely claim that the gross amount offered in this settlement ($12.0 million before deducting attorneys' fees, expenses and administrative costs) is greater (based on NCB's relative assets) than other recent settlements involving the same or similar circumstances, such as the $35 million settlement of claims involving Bank of America approved by a California state court in *Closson v. Bank of America N.A.*, Cal. Super. Ct. No. CGC 04436877.

However, this "adequacy by analogy" argument is no substitute for the "'effort . . . to quantify the net expected value of continued litigation to the class' required by the Seventh Circuit." As the *Microsoft* court explained:

> Assessment of the adequacy of a proposed settlement requires evaluation both of the value of the settlement and the value of the claims being settled...[T]he record contains sufficient information by which to evaluate the parties' respective contentions and reach a conclusion as to a reasonable range of value. However, as to the second factor in the equation, the parties have widely divergent views which, on the present record, are largely theoretical and have not been sufficiently tested.

185 F. Supp. 2d at 526. As in *Microsoft*, any valuation of the customers' claims put forward by the settlement proponents here is theoretical and not sufficiently tested.

Recently, Bank of America (the defendant in *Closson*) reached an agreement in principle to pay $410 million to resolve the claims pending against it in the MDL, which are similar to the claims at issue here. *See* Exhibit A attached hereto.

Also in August 2010, U.S. District Judge William H. Alsup (N.D. Cal.) issued lengthy findings of fact and conclusions of law in *Gutierrez v. Wells Fargo Bank*, in which he concluded that the very same practices at issue in this litigation were unlawful, and awarded California customers of Wells Fargo Bank approximately $203 million in restitution for that bank's wrongful practices. Even before Judge Alsup issued the $203 million restitution award in *Gutierrez*, the record in that case provided no support for the $12.0 million settlement amount here. After presiding over similar litigation against Wells Fargo, including issuing numerous opinions about the most significant legal issues presented, Judge Alsup refused to grant preliminary approval of a proposed settlement of $16 million for Wells Fargo's California account holders,

finding that "16 million is very low for a case where your expert said the damages were 200 million;" that plaintiffs had "a strong claim, not a weak claim;" that the proposed settlement was not "in the ballpark and even close to a reasonable settlement," calling it "a nonstarter in my judgment;" and strongly indicating that he would not consider approving any settlement that provided class members with a recovery of less than fifty cents on the dollar.

In any event, the fact that the class in *Gutierrez* prevailed on claims that are substantially similar to the claims raised in this case, after a bench trial, and were awarded $203 million in restitution, calls into serious doubt the adequacy of the $12.0 million proposed settlement here. This is especially so given that the restitution award in *Gutierrez* was limited to the very same practice at issue in this case—*i.e.*, the re-sequencing of debit card transactions. *See, e.g., Gutierrez v. Wells Fargo Bank, N.A.,* 2008 WL 4279550 (N.D. Cal. Sep. 11, 2008); *Gutierrez v. Wells Fargo & Co.,* 622 F. Supp. 2d 946, 2009 WL 1246988 (N.D. Cal. May 5, 2009); *Gutierrez v. Wells Fargo & Co.,* 2009 WL 1246689 (N.D. Cal. May 5, 2009); *Gutierrez v. Wells Fargo & Co.,* 2009 WL 1247040 (N.D. Cal. May 5, 2009); *Gutierrez v. Wells Fargo & Co.,* 2010 WL 1233810 (N.D. Cal. Mar. 26, 2010); *Gutierrez v. Wells Fargo & Co.,* 2010 WL 1233885 (N.D. Cal. Mar. 26, 2010) and *See* Himmelstein Decl., Ex. B (Transcript of *Gutierrez* Proceedings, May 13, 2009), at 3:9- 6:18.

Likewise, U.S. District Judge James Lawrence King, (S.D. Fla.), who presides over the MDL litigation, found that the re-sequencing cases in the MDL have "legs," denying the bank defendants' omnibus motions to dismiss, and along with it, their principal legal defenses to liability. Himmelstein Decl., Ex. C (Order Ruling on Omnibus Motions to Dismiss). The MDL litigation, which now involves approximately 35 national banks, including the defendant in this case, and challenges the very same wrongful practices at issue here, has, as stated above, already resulted in the announcement of a $410 million settlement in principle involving one of the defendant banks.

Because this Court cannot tell whether this is a "good" or "bad" deal for the class, granting final approval would be improper.

2.      The "[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *In re Ikon Office Solutions, Inc., Sec. Litig.,* 194 F.R.D. 166, 184 (E.D. Pa. 2000) (citations and internal quotations omitted); *see also Great Neck Capital Appreciation Inv. Partnership, L.P. v. PricewaterhouseCoopers,* L.L.P., 212 F.R.D. 400, 410 (E.D. Wis. 2002) ("A plan of allocation of settlement proceeds in a class action must also be fair and reasonable."); *Retsky Family Ltd. Partnership v. Price Waterhouse LLP,* 2001 WL 1568856 *4 (N.D. Ill. Dec. 10, 2001) ("The same standards of fairness, reasonableness and adequacy that apply to the settlement apply to the Plan of Allocation."). "The court's principal obligation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund." *Walsh v. Great Atlantic & Pacific Tea Co.,* 726 F.2d 956, 964 (3d Cir.1983). Here, the proposed fund distribution is unfair and unreasonable, in that it forces class members to choose up to

3

two months between July 1, 2004 and August 15, 2010 in which to claim a refund of overdraft charges, while proposing to release their claims for over six years of overdraft charges.

The Settlement Agreement does not offer any rationale or justification for failing to allocate the settlement proceeds in proportion to the damages sustained by class members over the entire class period, which runs from July 1, 2004 and August 15, 2010. The proposed two month period for claiming a refund of overdraft fees is manifestly unfair and inequitable, in that a class member who paid a larger total amount of overdraft charges over the entire class period will receive less compensation than a class member who paid a lower total amount of overdraft fees but incurred a larger portion of his fees during the proposed "two calendar month" limitation. For example, a class member who sustained $1,000 in improper overdraft charges over the class period, but no more than $100 in improper overdraft charges during any two calendar month period, would be allocated a portion of the settlement fund based on only $100 (*i.e.*, 10% of their damages), while a class member who incurred $200 in improper overdraft charges over the class period, but incurred them all within class settlement period, would be allocated a portion of the settlement fund based on twice this amount ($200), even though he sustained only 10% of the other class member's damages.

The Objector respectfully urges the Court to consider this issue anew for final approval. The Objector respectfully submits that the Court may be inadvertently combining the question of customers' surprise concerning the assessment of overdraft charges generally, with customers' surprise concerning the bank's concealed manipulation of their transactions—*i.e.*, the re-sequencing their transactions from high-to-low to artificially increase the number of overdraft charges assessed in a given day, which is the specific practice at issue in this case.

In *Gutierrez*, Judge Alsup declined to adopt Wells Fargo's expert's proposed damage analysis that purported to discount damages by eliminating so-called "chronic over-drafters" from the recovery class, and rejected "constructive knowledge" or "actual knowledge" inferences that Wells Fargo attempted to draw with respect to one of the named plaintiffs. Judge Alsup ordered full restitution for all Wells Fargo California customers for all excessive overdraft charges resulting from the bank's re-sequencing practice during the relevant class period. It is revealing of class counsel's inadequacy here that they posit this highly speculative argument without any supporting evidence or legal analysis, and are willing to discount the relief for the class members (producing clear inequities with respect to the proposed allocation of settlement funds) on the basis of this argument alone.

While courts have tolerated differences in the treatment of class members in terms of the distribution of settlement funds, they have done so only "when real and cognizable differences exist" between the "likelihood of ultimate success" for different plaintiffs. *In re Lucent Technologies, Inc., Securities Litig.*, 307 F. Supp. 2d 633, 649 (D.N.J. 2004). This type of merit-based weighting has been approved by courts where substantially different or additional claims have been asserted by certain class members and not others. *In re PaineWebber LTD Partnerships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997) (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 220 (5th Cir.1981). No such differences exist here that

4

justify anything other than a straight *pro rata* allocation based on the damages sustained by each class member over the *entire* class period.

This misallocation of settlement funds is further amplified by the treatment of any funds remaining after the initial distribution. Instead of using the "excess" funds to reimburse class members for NCB's overdraft charges they incurred outside the narrow two calendar month period selected, the proposed settlement will use that money instead to pay up to treble damages to class members on charges that have already been fully refunded as part of the initial distribution or through an undisclosed *cy pres* recipient. Revised Settlement Agreement ¶31 b) (ii)-(iii).

Because the plan of allocation in the proposed settlement over-compensates some class members at the expense of others, with no justification for such differential treatment, it is flawed and should be rejected.

3.      The Seventh Circuit requires a district court to consider "the stage of the proceedings and amount of discovery completed at the time of settlement" in order to determine whether the settlement is "fair, reasonable and adequate." *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996). "This factor 'captures the degree of case development that class counsels have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." ' *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 813 (3d Cir. 1995)).

Here, the docket reflects that no formal or informal discovery was conducted, and the settlement reached at the early stage of the proceedings suggests that none was conducted. The lack of discovery necessarily made it impossible for there to be "an adequate appreciation of the merits of the case before negotiating." *Id.* The failure to ascertain the merits prior to settlement cannot be cured by the 30-day period of "confirmatory discovery" under the Settlement Agreement. As one court explained, confirmatory discovery is an inadequate substitute for adversary discovery, which is meant to take place *prior* to settlement:

> In this case, no discovery occurred prior to negotiations. After a settlement was reached, confirmatory discovery was performed.... Confirmatory discovery, by its very nature, is not adversarial. In contrast, "pretrial negotiations and discovery must be sufficiently adversarial so that they are not 'designed to justify a settlement ... [but are] an aggressive effort to ferret out facts helpful to prosecution of the suit.'" *Martens v. Smith Barney, Inc.* 181 F.R.D. 243, 263 (S.D.N.Y.1998) (quoting *Saylor v. Lindsley*, 456 F.2d 896, 899 (2d Cir. 1972)). The absence of any adversarial discovery is a negative factor in persuading the Court of the wisdom of settlement, at this time, on these terms . . . .

5

*Moore v. Halliburton Co.*, 2004 WL 2092019, *7 (N.D.Tex. Sep. 9, 2004).

Here, the adversarial discovery that should have taken place *prior* to negotiation of the settlement never occurred; instead, class counsel engaged in a brief period of cooperative discovery – after the parties struck their deal – intended solely to justify the settlement.   This factor weighs strongly against granting final approval.

4.      The proposed claims form to offer class members a choice between "Option 1" and "Option 2" is not only confusing to class members, but is also misdirected and creates underlying problems.
There is no justification for forcing class members to unearth nearly six years of account statements, evaluate which period yielded the greatest amount of overdraft charges, when NCB could easily make that determination for each class member using the very same business records it intends to use to "verify" the claims once they are submitted, and deposit the appropriate amount directly into class members' accounts. The claims process in this settlement creates a paperwork nightmare relatively few class members will find worth the effort, only to be scrutinized by NCB before payout in any event.
Under both "Options," the proposed claims process improperly places the burden on the customer to make a claim instead of simply awarding all injured NCB customers restitution based on the bank's own records.   The claims process will deter class members from submitting claims as it did the similar overdraft charge litigation against Wells Fargo which resulted in the payment of only 104 claims at $20 each, out of a gross "claims-made" settlement amount of $3,000,000. *See* Himmelstein Decl., Ex. D (Declaration of Daniel G. Lamb, Jr. re *Smith v. Wells Fargo Bank, N.A., et al.* Settlement), ¶¶ 12(c), 19.

5.      The final approval hearing – scheduled *prior* to the close of the claims period – appears designed to avoid scrutiny of the functioning and fairness of the burdensome claims-made process which is at the very heart of the Objector's concerns. This sequencing ensures that the Court will be unaware of the claims rate and, hence, the effectiveness of the claims process, at the time of the final approval hearing. Such an approach impedes the Court's ability to evaluate the fairness of the settlement. *See Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (reiterating that the "goal" of a final fairness hearing "is to adduce all information necessary for the judge to rule intelligently on whether the proposed settlement is fair, reasonable, and adequate.") (internal quotation marks and citation omitted).
This will deprive this Court of the ability to truly know – at the time of the final approval hearing – how many class members have actually availed themselves of the proposed benefits under this settlement and, conversely, how many class members found it too burdensome to complete and submit claim forms.
The settling parties' desire to hold the fairness hearing before the claims process is concluded is designed to camouflage a low response rate – a point which should raise a red flag with the Court.   Under the current schedule, however, any

6

information submitted prior to the final approval hearing concerning the filing of claims will necessarily be tentative – and therefore inaccurate. The schedule improperly insulates the settling parties from judicial scrutiny of the success (or failure) of the claims process and, ultimately, of the adequacy of the proposed settlement.

Objector respectfully renews his request that the Court postpone any decision on final approval until after completion of the claims process, and order the settling parties to file a report with the Court shortly after completion of the claims period specifically identifying how many class members have submitted claims and the total amount of such claims, as well as the number of class members who have excluded themselves (*i.e.*, opted out) of the settlement.

6.     Settlement Class Counsel will ask the Court for Attorney's fees of up to but not more than 25% of the settlement fund ($3 million) along with payment of reasonable costs and expenses. National City agrees not to oppose this request. Notice §19, p. 7. However, this agreement should not be afforded any weight by this Court, and is clearly not binding on this Court. "[A]ny award of attorney's fees to class counsel must be reasonable in comparison to the benefits conferred on the class through counsel's efforts." *Scardelletti v. DeBarr*, 43 Fed. Appx. 525, 528 (4th Cir. 2002) (citations omitted); *see also Brown v. Phillips Petroleum, Co.*, 838 F.2d 451, 453 (10th Cir. 1988). Class Counsel has not shown that the requested fee is reasonable or justified when compared to the benefits conferred on the Class through counsel's efforts.

"Clear sailing provisions ... represent *prima facie* evidence of simultaneous negotiations of merit relief and fees, which is a practice fraught with serious ethical concerns for lawyers representing the class. Both courts and commentators have expressed apprehension that a plaintiff's counsel may be accepting a lower settlement for the class in exchange for a generous and non-adversarial treatment of fees." William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 Tul.L.Rev. 813, 815 (2003) (advocating *per se* ban on clear sailing clauses).     The Fifth Circuit has stated that "A district court is not bound by the agreement of the parties as to the amount of attorneys' fees. In fixing the amount of attorneys' fees the court must, of course, take all [appropriate] criteria into account, including the difficulty of the case and the uncertainty of recovery. [The Court] is not, however, merely to ratify a pre-arranged compact." *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980). Therefore, the Court should disregard the "clear sailing" provision and do its own analysis.

7.     The way that the Settlement Agreement is structured, it is likely that the majority of the benefit will go to as yet unspecified IRC Section 501(c)(3) charitable organization which will be mutually agreed between National City and Settlement Class Counsel. Revised Settlement Agreement ¶32-34. What charitable organizations will be chosen, and how will that be determined? The Revised Settlement Agreement is silent on this issue and the actual mechanism described in the Revised Settlement Agreement leaves many open questions.

In addition, unclaimed funds should be paid to class members who made claims, not third parties. The American Law Institute ("ALI") recommends that unclaimed funds be paid to claimants, not *cy pres:*

§ 3.07 Cy Pres Settlements

(b) If the settlement involves individual distributions to class members and funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair.

Principles of the Law of Aggregate Litigation § 3.07 (b), p. 220 (Proposed Final Draft 2009). Of course, in this case the extra money could easily be given to claimants for no additional costs by simply making the initial payments to claimants large enough so as to exhaust the fund. The ALI further reasons:

[T]his Section generally favors cy pres awards only when direct distribution to class members is not feasible – either because class members cannot be reasonable identified or because distribution would involve such small amounts that, because of the administrative costs involve; such distributions would not be economically viable.

*Id.* cmt. (b), p. 221. Here it would clearly be economically feasible to make the distribution to claimants and they are easily identified – they made a claim. Even if giving this money to claimants would over compensate them (which it would not), the ALI draft finds that that would be preferable to giving the money to third parties:

[A]ssuming that further distributions to the previously identified class members would be economically viable, that approach is preferable to cy pres distributions. This Section rejects the position urged by a few commentators that a cy pres remedy is preferable to further distributions to class members. Those commentators reason that further direct distributions would constitute a "windfall" to those class members. ... [T]his Section takes the view that in most circumstances distributions to class members better approximate the goals of the substantive laws than distributions to third parties that were not directly injured by the defendant's conduct.

*Id.* p. 222.

8.     Objector reserves the right to file supplemental Objections addressed to any subsequent Motion filed with the Court.   Objector will rely on these written Objections, as well as the supplemental Objections to be filed.   Objector does not plan to attend the fairness hearing, but rather will rely on his written Objections.

## CONCLUSION

The proposed settlement is not fair, adequate or reasonable because: (i) the parties have not presented  any reliable estimate of class members' damages to warrant settlement at this inadequate amount; (ii) the proposed plan of allocation is inequitable and unfair, in that it will overcompensate  many  class  members  while leaving     others     undercompensated;     (iii)     the settlement was negotiated with insufficient discovery to enable class counsel to determine the settlement value of the class' claims; (iv) the proposed claims process is unnecessary and unduly burdensome to class members; (v) there exists too much financial disparity and conflicts of interest to certify the class; (vi) any "clear sailing" provision should be disregarded; and (vii) the *cy pres* distribution is not appropriate given the circumstances of this case.   For all these reasons, the settlement is not deserving of final approval.

Attached hereto is confirmation that the Claim Form of Sam P. Cannata has been submitted.

Respectfully submitted,

Sam P. Cannata
9555 Vista Way, Ste. 200
Cleveland, Ohio 44125

(216) 214-0796   Telephone

# **EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Tornes, et al v. Bank of America, N.A.*
S.D. Fla. Case No. 1:08-cv-23323-JLK

*Yourke, et al v. Bank of America, N.A.*
S.D. Fla. Case No. 1:09-cv-21963-JLK
N.D Cal. Case No. 3:09-2186

## NOTICE OF SETTLEMENT

Plaintiffs and Bank of America, N.A., through their respective undersigned counsel, hereby notify the Court that on or around January 27, 2011, they executed a Memorandum of Understanding evidencing an agreement in principle, under which Bank of America will pay the total sum of four hundred ten million and 00/100 dollars ($410,000,000.00) in exchange for a full and complete release of all claims brought against Bank of America in this multidistrict litigation. The proposed settlement will be memorialized in a complete written settlement agreement and related documents, which the parties will endeavor to file with the Court as part of a motion for preliminary approval within approximately 45 days. The parties proposed settlement is expressly subject to and conditioned upon the completion of the written agreement, and obtaining preliminary and final approval from this Court.

Dated: February 4, 2011.

Respectfully Submitted,

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Jeremy W. Alters, Esquire
Florida Bar No. 0111790
jeremy@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Miami, Florida 33137
Tel:  (305) 571-8550
Fax:  (305) 571-8558

*Plaintiffs' Lead Counsel*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, Florida 33134
Tel:  305-442-8666
Fax:  305-779-9596

/s/ Laurence J. Hutt
Laurence J. Hutt, Esquire
(*pro hac vice*)
Laurence.Hutt@aporter.com
Christopher S. Tarbell, Esquire
(*pro hac vice*)
Christopher.Tarbell@aporter.com
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone:  213-243-4100
Facsimile:  213-243-4199

*Attorneys for Defendant*
*BANK OF AMERICA, N.A.*

-2-

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382


/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
David S. Stellings, Esquire
New York Bar No. DS 5343
dstellings@lchb.com
Roger Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: 415-956-1000
Fax: 415-956-1008

-3-

/s/ Edward Adam Webb
Edward Adam Webb, Esquire
Georgia Bar No. 743910
adam@webllc.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
flemond@webbllc.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange SE, Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 East 58th Street, 34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

*Plaintiffs' Executive Committee*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, Florida 33137
brogow@rogowlaw.com

-6-

Trombley v National City Bank
No 1 10-CV-232

# National City Overdraft Settlement

Home      FAQ's      Submit a Claim      Documents      Contact Us      Español



Submit a Claim Online



Paper Claim Form

## Important Dates:

**June 27, 2011**
Deadline to request exclusion from the Settlement

**June 27, 2011**
Deadline to object to the Settlement

**July 15, 2011**
Fairness Hearing

**August 26, 2011**
Deadline to submit a claim for benefits

## Submit a Claim

### Confirmation

Thank you  Your claim has been successfully submitted  Your Confirmation Code is.

**09B98F**. This Confirmation Code will also be sent to the e-mail address you provided  Please keep this Code for your records

Payments will be mailed to Settlement Class Members who submitted valid Claim Forms after the Court grants "final approval" to the settlement and after any appeals are resolved  If an appeal is lodged, resolution can take time  Please be patient  It is your responsibility to update the Claims Administrator if you move or your contact information changes (including e-mail address)  If you have any questions, please visit www.NationalCityClass.com, send an e-mail to info@NationalCityClass.com or call 1-866-960-5706

**Questions? 1-866-960-5706 or info@NationalCityClass.com**



© 2011 Epiq Systems  Inc  All rights reserved, | Privacy Policy | last updated March 25, 2011