IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RAMONA TROMBLEY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL CITY BANK,<br><br>Defendant. | Case No: 10-cv-232 (JDB)<br><br>Date:  July 14, 2011<br>Time:  9:15 a.m. |

**SUPPLEMENTAL MEMORANDUM OF ANA ROSEN
PURSUANT TO COURT'S ORDER OF JULY 27, 2011**

Theodore H. Frank (DC Bar. No. 450318)
CENTER FOR CLASS ACTION FAIRNESS LLC
1718 M Street NW, No. 236
Washington, DC 20036
Phone: (703) 203-3848
Email: tedfrank@gmail.com

Attorney for Objector Ana Rosen

Class counsel argues that a significant portion of the value of the settlement lies in the notice that the settling parties have provided to class members and the administration it has provided in the distribution of monetary benefits to class members. *See, e.g.*, Docket No. 51 at 3. Regrettably, the claim by class counsel that it should receive what is effectively a commission on the costs of notice and administration makes no economic sense. As a normative matter, attorneys' fees should be based only on the benefits that counsel has conveyed to the class; the notion that class counsel is entitled to count the costs of claim administration and notice to the class as a benefit to the class is fundamentally mistaken.

*First*, as a matter of law, post-settlement notice is carried out almost exclusively for the benefit of *defendants*, rather than the class, and thus should not be double-counted as a class benefit. *Second*, the theory that notice and settlement administration should be counted as a class benefit for purposes of evaluating the settlement would lead to absurd results that contradict the Class Action Fairness Act. *Third*, awarding attorneys' fees regardless of whether settlement money is paid to settlement administrators, to the postal service, or to the class members who are the attorneys' actual putative clients creates poor incentives that contradict the purposes behind the D.C. Circuit's "percentage of the recovery" fee approach.

The consideration that defendants receive for settling a class action is a waiver of all claims by class members. But if an individual class member "later claims he did not receive adequate notice and therefore should not be bound by the settlement, he can litigate that issue on an individual basis when the settlement is raised as a bar to a lawsuit he has brought." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). *See also In re Diet Drugs Prods. Liability Litig.*, 385 F.3d 386, 396 (3rd Cir. 2004) (countenancing "a collateral attack on the order approving the Settlement" for claims of inadequate notice); *Kealoha v. Castle,* 210 U.S. 149, 155 (1908) (holding that there can be no *res judicata* without notice). Defendants therefore have every incentive to ensure that classwide

notice meets constitutional requirements. This is far from a hypothetical concern: defendants have found themselves on the wrong end of repeat litigation when class members failed to receive constitutionally-adequate notice. *See, e.g., Besinga v. United States*, 923 F.2d 133, 137 (9th Cir. 1991) (reversing dismissal of plaintiff's case because no notice was given in prior class action). *Cf. Coppolino v. Total Call Intern., Inc.*, 588 F. Supp. 2d 594 (D. N.J. 2008) (holding that plaintiff's claim was not barred by *res judicata* when class notice in earlier settlement was constitutionally inadequate). Notice benefits defendants when it creates claim preclusion that would not otherwise exist. As such, the expense of class notice cannot simply be entered as a benefit on the class's side of the ledger.

Indeed, if the Court adopted the view that notice benefited the class, the very act of settlement could be considered "consideration"—even if class members got nothing in exchange for waiving their rights—simply because those class members received a letter in the mail notifying them of the settlement. For example, imagine a settlement against National City Bank that provided only a token $100 *cy pres* award, but in which the defendant was entitled to deduct half the cost of notice from individual customers' accounts to pay for attorneys' fees. Such a settlement would normally be prohibited by 28 U.S.C. § 1713's prohibition against settlements that create a loss to class members. But if a court adopted the proposition that $1 million of notice expenditures is equal to $1 million in benefits to the class, the skimming of all class members' accounts would be permissible, because the $500,000 expense to the class would be outweighed by the $1 million "benefit" of notice of the skimming. Because such a result would be flatly unjust and impossible to square with the plain import of the Class Action Fairness Act, this suggests that counting notice as a class benefit generally is insupportable and unfair. The Seventh Circuit recently adopted a similar proposition of law in *In re Aqua Dots Prods. Liab. Litig.*, when it noted that the costs of notice and settlement administration are not so much a benefit to the class as a **social cost** that is a factor that weighs against the decision to certify a class. --- F.3d ---, 2011 U.S. App. LEXIS 17039 (7th Cir.

Aug. 16, 2011) (Easterbrook, J.).

Class counsel cites *Staton v. Boeing Co.,* 327 F.3d 938, 975 (9th Cir. 2003), to support its theory that the cost of notice can be understood as a benefit to the class, but that case cites no authority for any such proposition and provides no reasoning for what appears to be the dictum it provides. In the context of *Staton*—which included notice as a class benefit and found the resultant attorneys' fee award impermissibly high—it appears that the Ninth Circuit was assuming that notice costs could be counted as a class benefit only for the sake of the argument. Moreover, any argument to the contrary would have to account for the fact that *Staton* appears to have been legislatively superseded by the enactment in 2005 of the Class Action Fairness Act and 28 U.S.C. § 1713. In choosing whether to follow *Staton* or *Aqua Dots*, this court should adopt the reasoned decision of the Seventh Circuit over the outdated *ipse dixit* of the Ninth Circuit.

The commission that class counsel demands for administrative expenses is similarly indefensible. As part of its share of the settlement, class counsel in effect is demanding a cut of the court-approved fees and expenses of the claims administrator, as well as a cut of the administrative and maintenance fees associated with the settlement fund. Just as in the case of the notice expenses, the money going to the claims administrator is money going to a third party, rather than the class, and should not be considered part of the common fund for purposes of calculating the fee award.

Such an arrangement would create a conflict of interest between the attorney and the class. Under the current structure, every dollar the settlement administrator receives is a dollar the class will not receive. If attorney fees are paid only on what the class receives, class counsel will have appropriate incentive to ensure that settlement administration is efficient and to take steps to prevent overbilling or wasteful expenditures. But if class counsel is given a commission based on the size of administrative expenses, it would have no financial incentive to oversee the efforts of the administrator, creating a perverse system of compensation that discourages assignment of resources

Rosen Supplemental Memo
Case No: 10-cv-232 (JDB)                    3

to the class.

Indeed, the settling parties seem to recognize just this point when they argue in their supplemental brief (correctly in Ms. Rosen's view) that Rule 23(e) does not require the parties to exhaust the settlement fund with comprehensive administration that pinpoints each and every overdraft fee with precision. They can only reach this correct conclusion, however, if one accepts the premise that $1 million of administrative expenses are not equivalent to $1 million of benefit to the class. Otherwise, there would be no reason not to insist on absolute perfection in the distribution, even if that meant that no class member received any funds whatsoever. Again, *Aqua Dots* is informative: class representatives are only satisfying Rule 23(a)(4) adequacy if the potential class settlement is providing actual benefits to the class net of the social costs of class action notice and administration.

These principles are not solely a matter of common-sense economics; Judge Vaughn Walker made precisely this point when he was evaluating competing bids for lead class counsel, one which used a denominator that included settlement-administration expenses, and another that did not: "First, an attorney generally has no incentive to minimize litigation expenses unless his fee award is inversely related to such expenses. Second, when an attorney treats a resource devoted to litigation as a reimbursable expense, the attorney has a clear incentive to substitute that resource for those paid for out of the attorney fee, even if it increases the overall cost of the litigation to the client." *In re Wells Fargo Securities Litigation,* 157 F.R.D. 467, 470 (N.D. Cal. 1994). Put another way, institutional safeguards against running up significant administrative costs are lacking in this context, and there is a related danger of class counsel substituting reimbursable work for work that is otherwise not

reimbursable.[1] Conversely: "If an attorney risks losing some portion of his fee award for each additional dollar in expenses he incurs, the attorney is sure to minimize expenses." *Id.* at 471. This principle of the need to align attorney incentives with maximizing class benefit is what lies behind the D.C. Circuit's adoption of the "percentage-of-the-fund" approach in calculating fee awards. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265-71 (D.C. Cir. 1993). *Cf. also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (attorney fee calculations should use methods that align the interests of attorney and client).[2]

Class counsel may legitimately request a percentage of what the class receives: however, it should not be rewarded for the amounts the defendant pays the post office and the settlement administrator any more than it should be rewarded for the amounts the defendants pay defense counsel. In short, class counsel should only be asking for a share of the money the class *actually* receives. The "key consideration in determining a fee award is reasonableness in light of the benefit *actually conferred*" (emphasis in original). *In re HP Inkjet Printer Litig.,* No. 5:05-cv-3580 JF, 2011 WL 1158635, at *10 (N.D. Cal. Mar. 29, 2011) (quoting *Create-A-Card Inc., v. Intuit, Inc.,* No. C 07-06452 WHA, 2009 WL 3073920, at * 3 (N.D. Cal. Sept. 22, 2009)). "'[N]umerous courts have concluded

---

[1] *Wells Fargo* gives an example of the second danger: class counsel might decide to assign work to paralegals (a reimbursable expense) rather than to secretarial services (a non-reimbursable expense, because the latter expense would typically fall under non-reimbursable costs of overhead). *Id.* at 471. This decision would benefit the interests of class counsel, because it would be subsidized by the settlement fee structure, but it would harm the interests of the class. In this case, class counsel has the similar perverse incentive to delegate tasks to the settlement administrator that it could more efficiently be performing in-house: the settlement administrator's expenses would come out of the class's pockets, while the expense of the in-house performance of tasks by attorneys would reduce the profit of the fee award.

[2] Moreover, given the existence of competing class counsel seeking to represent this class, it might be worthwhile for this court to follow Judge Walker's methodology in *Wells Fargo*, and solicit a competing bid to see how serious MDL class counsel's objection to the settlement is: are they willing to promise class members more money at a cheaper cost than the settlement this class counsel achieved?

that the amount of the benefit conferred logically is the appropriate benchmark against which a reasonable common fund fee charge should be assessed.'" *In re Prudential Ins. Co. America Sales Practices Litig.,* 148 F.3d 283, 338 (3rd Cir. 1998) (quoting Conte, 1 *Attorney Fee Awards* § 2.05, at 37). "In determining the appropriate amount of attorneys' fees to be paid to class counsel, the principal consideration is the success achieved by the plaintiffs under the terms of the settlement." *Schwartz v. Dallas Cowboys Football Club, Ltd.,* 157 F.Supp.2d 561, 579 (E.D. Pa. 2001). *See also* American Law Institute, *Principles of the Law of the Aggregate Litigation* § 3.13. In short, class counsel is entitled to request a share of the benefits it brings to the class; its demand for a share of expenditures that benefit other parties in the action is not appropriate.

Obviously, costs of administration and notice that invade, and shrink, the total funds available for class compensation are categories of expense that must be borne. But there is no reason to give class counsel a commission on these expenses.

Certainly it is possible for a district court to act as a check on excessive settlement administration expenses through judicial review. But for the same reason that it is inefficient to have judges engage in "gimlet-eyed review" to audit lodestar calculations, it is inefficient to have judges closely scrutinize settlement administrative expenses when it is so simple to merely align class counsel's incentives to optimize the level of those expenses. *Cf. Wal-Mart Stores*, 396 F.3d at 121. Better for this court to establish a rule for a superior system of attorney compensation, rather than attempting to shrink waste by means of judicial monitoring of cost overruns in the future. "Put another way, incentives to minimize expenses and to allocate resources properly go much farther toward cost efficiency than can *post hoc* judicial review." *Wells Fargo,* 157 F.R.D. at 471.

This Court should serve as a fiduciary of the class: in particular, it should require class counsel to be paid on the basis of the benefits that go directly to the class. This practice would have several salutary effects: in particular, it would encourage the settling parties as well as future litigants

to resist the temptation to rack up swollen settlement administration expenses that are ultimately paid by the class. Notably, expenses have apparently swallowed up approximately 15.5% to 15.8% of the entire settlement,[3] although a survey of over 400 settlements referenced in *Wells Fargo* demonstrates that the typical range of administrative and litigation expenses as a percentage of recovery in class action settlements varies from 1.2% to 4.4%. *Id.* at 474 & n. 2. While intervening inflation would justify a slightly higher rate of expenditure for administrative costs, that would not explain a cost figure that seems to be three to ten times what they typically are; the lack of incentive to optimize settlement administration expenses has no doubt played some role in this.

If the Court approves the settlement, the attorney-fee award should be a reasonable percentage of the $11.5 million of benefits actually going to the class, reflecting in part the reduced risk from early settlement before facing so much as an answer to the complaint.

Dated:  September 8, 2011

        Respectfully submitted,

        */s/ Theodore H. Frank*
        Theodore H. Frank (DC Bar No. 450318)
        CENTER FOR CLASS ACTION FAIRNESS LLC
        1718 M Street NW, No. 236
        Washington, DC 20036
        Telephone:  (703) 203-3848
        Email:  tedfrank@gmail.com

        Attorney for Ana Rosen

---

[3] The Final Status Report sets the cost of notice at $192,619.85, the cost of administration at approximately $2.10 million, and another $50,000 in an expense request,  while estimating the total value of the settlement to class members at $13.8 million (which would be $13.6 million minus notice expenses).

Rosen Supplemental Memo
Case No: 10-cv-232 (JDB)       7

## PROOF OF SERVICE

      I hereby certify that, on September 8, 2011, this **SUPPLEMENTAL MEMORANDUM OF ANA ROSEN** was electronically filed through the Court's ECF system, thus providing service to attorneys registered to receive ECF service.

      Executed on September 8, 2011.

                              */s/ Theodore H. Frank*
                              Theodore H. Frank